**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:21-cv-00040-CJN |
| v. | ) ) | |
| SIDNEY POWELL, SIDNEY POWELL, P.C., and DEFENDING THE REPUBLIC, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Lawrence J. Joseph
D.C. Bar No. 464777
LAW OFFICE OF LAWRENCE J. JOSEPH
1250 Connecticut Av NW Suite 700-1A
Washington, DC 20036
Tel: (202) 355-9452
Fax: (202) 318-2254
ljoseph@larryjoseph.com

*Local Counsel for All Defendants*

Howard Kleinhendler
N.Y. Bar No. 2657120, admitted *pro hac vice*
HOWARD KLEINHENDLER ESQUIRE
369 Lexington Ave. 12th Floor
New York, New York 10017
Tel: (917) 793-1188
Email: howard@kleinhendler.com

*Counsel for Sidney Powell, Sidney Powell, P.C.*

Jesse R. Binnall
D.C. Bar No. 79292
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Email: jesse@binnall.com

*Counsel for Defending The Republic, Inc.*

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Index of Exhibits ..................................................................................................... ix

Introduction ...............................................................................................................1

Summary of Allegations in the Complaint ...............................................................2

Argument ...................................................................................................................4

I.   This Court lacks personal jurisdiction over the Defendants. .............................4

    A.   Standard of Review .......................................................................................4

    B.   Plaintiffs do not allege nor does the court possess general jurisdiction
        over Defendants. .............................................................................................6

    C.   There is no basis for specific jurisdiction over Defendants. ........................8

        1.   Plaintiffs fail to establish jurisdiction under § 13-423(a)(1). ...............8

        2.   Plaintiffs fail to establish jurisdiction under § 13-423(a)(3) or (a)(4). ...................11

        3.   Plaintiffs' alter ego allegations are insufficient as a matter of law. .........................13

II.  Venue is improper and inconvenient. ..............................................................14

    A.   Venue is improper in this District. ..............................................................14

    B.   Venue should be transferred. .......................................................................16

III. The Complaint fails to state a claim. ...............................................................19

    A.   Standard of Review .....................................................................................19

    B.   Choice of Law .............................................................................................20

    C.   Applicable Defamation Law ........................................................................20

    D.   The statements alleged in the Complaint are constitutionally protected
        and not actionable. .......................................................................................24

        1.   The challenged statements relate to matters of public concern. ..........24

        2.   Dominion is a public figure. ................................................................25

        3.   The statements at issue are protected and not actionable. ....................27

        4.   Plaintiffs cannot show that the statements at issue were made with
            malice. ..................................................................................................36

    E.   The Complaint fails to state a claim for defamation against DTR ...............40

IV.  The Complaint fails to state a claim for deceptive trade practices ...................42

Conclusion ...............................................................................................................43

## <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

\* *Adelson v. Harris,*
   973 F. Supp. 2d 467 (S.D.N.Y. 2013).........................................................................22, 28

*Annapolis Citizens Class Overcharged for Water-Sewer, by Loudon Operations,*
   *LLC v. Stantec, Inc.,* 2021 U.S. Dist. LEXIS 4286 (D.D.C. Jan. 8, 2021) .........................7

*Arpaio v. Cottle,*
   2019 U.S. Dist. LEXIS 236331 (D.D.C. Dec. 3, 2019)....................................................39

\* *Ashcroft v, Iqbal,*
   556 U.S. 662 (2009)........................................................................... 13-14, 19, 41

\* *Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC,*
   2020 U.S. Dist. LEXIS 197814 (D.D.C. Oct. 23, 2020)..........................................5-7, 12

*Bauman v. Butowsky,*
   377 F. Supp. 3d 1 (D.D.C. 2019) ...............................................................22, 33

\* *Bell Atlantic Corp. v. Twombly,*
   550 U.S.544 (2007)..................................................................................14, 41

*Bigelow v. Garrett,*
   299 F. Supp. 3d 34 (D.D.C. 2018) ...........................................................................7

*Biospherics, Inc. v. Forbes, Inc.*
   151 F.3d 180 (4th Cir. 1998) ...................................................................................22

*Blumenthal v. Drudge,*
   992 F. Supp. 44 (D.D.C. 1998) ..............................................................................12

*BNSF Ry. v. Tyrrell,*
   137 S. Ct. 1549 (2017)...........................................................................................7

*Bose Corp. v. Consumers Union,*
   466 U.S. 485 (1984)...............................................................................................25

*Brown v. O'Bannon,*
   84 F. Supp. 2d 1176 (D. Colo. 2000)....................................................................40

*Bucher v. Roberts,*
   595 P.2d 235 (Colo. 1979)......................................................................................27

*Burman v. Phoenix Worldwide Indus.,*
   437 F. Supp. 2d 142 (D.D.C. 2006) ....................................................................5, 12

*Bustos v. United States,*
    257 F.R.D. 617 (D. Colo. 2009) ......................................................................23

*California Transport v. Trucking Unlimited*,
    404 U.S. 508 (1972)..........................................................................................34

*Ciralsky v. CIA,*
    353 F.3d 661 (D.C. Cir. 2004) ...........................................................................1

*City of San Diego v. Roe,*
    543 U.S. 77 (2004)............................................................................................24

*City of W. Palm Beach v. United States Army Corps of Eng'rs*,
    317 F. Supp. 3d 150 (D.D.C. 2018) .................................................................17

*Corsi v. Caputo,*
    2020 U.S. Dist. LEXIS 60958 (D.D.C. April 7, 2020).....................................12

*Corsi v. Infowars, LLC,*
    2020 U.S. Dist. LEXIS 41133 (D.D.C. Mar. 10, 2020).....................................16

*Crane v. N.Y. Zoological Soc'y,*
    894 F.2d 454 (D.C. 1990) ...................................................................................4

*Curling v. Raffensperger*,
    2020 U.S Dist. LEXIS 188508 (N.D. Ga. Oct. 11, 2020)...........................27, 30

*Daimler AG v. Bauman,*
    571 U.S. 117 (2011)..............................................................................7, 22, 33

*Democracy Partners v. Project Veritas Action Fund,*
    453 F. Supp. 3d 261 (D.D.C. 2020) ..................................................................32

* *Diversified Management v. Denver Post,*
    653 P.2d 1103 (Colo. 1982)....................................................................23, 36, 40

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
    472 U.S. 749 (1985)..........................................................................................24

*Examination of Bd. Of Prof. Home Inspectors v. Int'l Ass'n of Certified Home*
    *Inspectors,* 221 U.S. Dist. LEXIS 25274 (D. Colo. Feb. 10, 2021) ...........21, 24

* *Exelon Generation Co. v. Grumbles,*
    380 F. Supp. 3d 1 (D.D.C. 2019) ......................................................................15

*Fairbanks v. Roller,*
    314 F. Supp. 3d 85 (D.D.C. 2018) ....................................................................19

*Fay v. Humane Soc'y of the United States,*
2021 U.S. Dist. LEXIS 8969 (D.D.C. Jan. 19, 2021) ........................................................5

\* *Forest Cnty. Potawatomi Cmty. v. United States*,
169 F. Supp. 3d 114 (D.D.C. 2016) ...............................................................................16

\* *Garrison v. Louisiana,*
379 U.S. 64 (1964).................................................................................................21, 36

\* *Gertz v. Welch,*
418 U.S. 323 (1974).........................................................................................................23

*Gorman v. Ameritrade Holding Corp.,*
293 F.3d 506 (D.C. Cir. 2002)..........................................................................................7

*Greater Yellowstone Coal. v. Bosworth*,
180 F. Supp. 2d 124 (D.D.C. 2001) ................................................................................16

*GTE New Media Servs., Inc. v. BellSouth Corp.,*
199 F.3d 1343 (D.C. Cir. 2000) ....................................................................................6, 9

*Helmer v. Doletskaya,*
393 F.3d 201 (D.C. Cir. 2004) ........................................................................................12

\* *Holder v. Haarmann & Reimer Corp.*,
779 A.2d 264 (D.C. 2001) ..........................................................................................9-11

\* *Hourani v. PsyberSolutions LLC,*
164 F. Supp. 3d 128 (D.D.C. 2006) .......................................................................12-13, 20

\* *IMAPizza LLC v. At Pizza, Ltd.,*
334 F. Supp. 3d 95 (D.D.C. 2018) ............................................................................4, 9-10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
2004 U.S. Dist. LEXIS 32268 (D.D.C. May 18, 2004) ....................................................26

\* *Int'l Shoe v. Washington,*
326 U.S. 310 (1946)...........................................................................................................7

\* *Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus.*
*Hygienists,*
625 F. Supp. 2d 1310 (D. Ga. 2008) .........................................................................42-43

*Jankovic v. Int'l Crisis Grp.*,
822 F.3d 576 (D.C. Cir. 2016) ...................................................................................38, 40

\* *Kahl v. Bureau of Nat'l Affairs, Inc.*,
856 F.3d 106 (D.C. Cir. 2017) ........................................................................................19

* *Keohane v. Stewart,*
  882 P.2d 1293 (Colo. 1994)............................................................. 21-22, 27, 31

* *Klaxon v. Stentor Electric Mfg. Co.,*
  313 U.S. 487 (1941)......................................................................................20

* *Lewis v. Colorado Rockies Baseball Club,*
  941 P.2d 266 (Colo. 1997)............................................................................23

*Mar-Jac Poultry, Inc. v. Katz,*
  773 F. Supp. 2d 103 (D.D.C. 2011).............................................................20

*McFarlane v. Esquire Magazine,*
  74 F.3d 1296 (D.C. Cir. 1996)....................................................................19

*Members of City Council of Los Angeles v. Taxpayers for Vincent,*
  466 U.S. 789 (1984)......................................................................................21

* *Milkovich v. Lorain Journal Co.,*
  497 U.S. 1 (1990)................................................................................. 21-22, 33

*Moldea v. N.Y. Times Co.,*
  22 F.3d 310 (D.C. Cir. 1994).......................................................................23

*Moldea v. New York Times Co.,*
  15 F. 3d 1137 (D.C. Cir. 1994)....................................................................23

*Motir Servs. v. Ekwuno,*
  191 F. Supp. 3d 98 (D.D.C. 2016).......................................................... 13-14

*Moulton v. VC3,*
  2000 U.S. Dist. LEXIS 19916, 2001-1 Trade Cas. (CCH) P73,202 (N.D.
  Ga. Nov. 6, 2000)........................................................................................43

* *N.Y. Times Co. v. Sullivan,*
  376 U.S. 254 (1964)............................................................. 21, 23, 25, 33, 36-37

* *NAACP v. Button,*
  371 U.S. 415 (1963).............................................................................. 34-35

*Nat'l Sec. Counselors v. CIA,*
  811 F.3d 22 (D.C. Cir. 2016).......................................................................14

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
  138 S. Ct. 2361 (2018).................................................................................24

* *NBC Subsidiary (KDNC-TV) v. Living Will Ctr.,*
  879 P. 2d 6 (Colo. 1994)...................................................................... 21-22, 33

*Norair Engineering Assoc's, Inc. v. Noland Co.,*
  365 F. Supp. 740 (D.D.C. 1973) ................................................................13

*Old Dominion Branch No. 496 v. Austin,*
  418 U.S. 264 (1974) ...............................................................................38

*Oveissi v. Islamic Republic of Iran,*
  573 F.3d 835 (D.C. Cir. 2009) ..................................................................20

*People v. Ford,*
  773 P.2d 1059 (Colo. 1989) ....................................................................23

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists,*
  244 F.3d 1007 (9th Cir. 2001) .................................................................32

*Pruneyard Shopping Center v. Robins,*
  447 U.S. 74 (1980) .................................................................................23

*Rock the Vote v. Trump,*
  2020 U.S. Dist. LEXIS 202069 (N. D. Cal. Sept. 14, 2020) ...........................32

*Ruffin v. New Destination*,
  773 F. Supp. 2d 34 (D.D.C. 2011) ............................................................14

*Second Amendment Found. v. U.S. Conf. of Mayors*,
  274 F.3d 521 (D.C. Cir. 2001) ...................................................................4

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ........................................................................ 17-18

* *St. Amant v. Thompson,*
  397 U.S. 727 (1968) ..................................................................... 37-38, 40

*Steaks Unlimited v. Deaner*,
  623 F.2d 264 (3d Cir. 1980) ....................................................................25

* *Tah v. Global Witness Publ.,*
  2021 U.S. App. LEXIS 8046 (D.C. Cir. Mar. 19, 2021) .......................... 38-40

*Tavoulareas v. Piro*,
  817 F.2d 762 (D.C. Cir. 1987) (*en banc*)...................................................38

*Thompson Hine LLP v. Smoking Everywhere Inc.,*
  840 F. Supp. 2d 138 (D.D.C. 2012) .......................................................8, 11

*Thompson Hine, LLP v. Taieb,*
  734 F.3d 1187 (D.C. Cir. 2013) .................................................................8

*Trump v. Comm. on Ways & Means,*
    415 F. Supp. 3d 98 (D.D.C. 2019) ..................................................9

*United States v. Alvarez,*
    567 U.S. 709 (2012) ...................................................................24

*United States v. Philip Morris Inc.,*
    116 F. Supp. 2d 116 (D.D.C. 2000) ............................................4

*Watts v. United States,*
    394 U.S. 705 (1969) ...................................................................32

*Zimmerman v. Hanks,*
    2000 U.S. App. LEXIS 33710 (7th Cir. Dec. 19, 2000) ..............39

*Zueger v. Goss,*
    343 P.3d 1028 (Colo. App. 2014) ...............................................27

## STATUTES

U.S. CONST. amend. I ..............................................19, 21, 23-24, 33-34, 36-37, 43

U.S. CONST. amend. XIV, § 1, cl. 3 ..............................................................6, 10

28 U.S.C. § 1391(a)(1) ...............................................................................17

28 U.S.C. § 1391(b) ...............................................................................14-15

28 U.S.C. § 1391(b)(2) ...............................................................................15

28 U.S.C. § 1404(a) ..........................................................................1, 16, 19

28 U.S.C. § 1406(a) ...............................................................................1, 18

COLO. CONST. art. II, § 10 .............................................................................21

D.C. CODE § 13-334 ......................................................................................7

D.C. CODE § 13-422 ...................................................................................5-6

D.C. CODE § 13-423 ...................................................................................5, 8

D.C. CODE § 13-423(a)(1) ......................................................................8-12, 17

D.C. CODE § 13-423(a)(3) ........................................................................8, 10-13

D.C. CODE § 13-423(a)(4) ....................................................................8, 10-11, 13

D.C. CODE § 13-423(b) ........................................................................6, 8-9, 11

Georgia Deceptive Trade Practices Act,
   O.C.G.A. §§ 10-1-370-375 ..................................................................16

O.C.G.A. § 10-1-372(a)(8) ......................................................................42

## RULES AND REGULATIONS

FED. R. CIV. P. 4(k)(1)(A) ........................................................................5

FED. R. CIV. P. 8 ......................................................................................1

FED. R. CIV. P. 8(a)(2)..............................................................................1

FED. R. CIV. P. 8(e)(1) ..............................................................................1

FED. R. CIV. P. 12(b)(2).......................................................................1, 15

FED. R. CIV. P. 12(b)(3)....................................................................... 1-2

FED. R. CIV. P. 12(b)(6).............................................................. 1-2, 19, 40

## OTHER AUTHORITIES

Alexa Corse, *Sidney Powell Is Sued by Voting-Machine Company Dominion for
   Defamation*, WSJ.com, Jan. 8, 2021 ......................................................26

Alexa Corse, *Dominion Sues MyPillow, CEO Mike Lindell Over Election Claims*,
   WSJ.com, Politics, Election 2020, Feb. 22, 2021 .................................26

Brad Johnson, *Texas Rejected Use of Dominion Voting System Software Due to
   Efficiency Issues*, THE TEXAN (Nov. 19, 2020).................................. 38-39

John Poulos, *Voting System Vendors, Local Election Officials And Computer
   Science Professors Testified On 2020 Election Security Before The House
   Administration Committee*, C-SPAN, January 9, 2021................................26-27

http://www.publiccounsel.org/press_releases ................................................35

https://ag.ny.gov/press-releases ...............................................................35

https://ij.org/press-releases/ ................................................................35

https://oag.ca.gov/media/news ...............................................................35

https://www.justice.gov/news .................................................................35

## INDEX OF EXHIBITS

EXHIBIT 1: Declaration of Patrick M. Byrne ..................................................................1

EXHIBIT 2: Declaration of Sidney K. Powell ...............................................................3

EXHIBIT 3: Alexa Corse, *Dominion Sues MyPillow, CEO Mike Lindell Over Election Claims*, WSJ.com, Politics, Election 2020, Feb. 22, 2021[a] ...............................4

EXHIBIT 4: Alexa Corse, *Sidney Powell Is Sued by Voting-Machine Company Dominion for Defamation*, WSJ.com, Jan. 8, 2021[b] ........................................................7

EXHIBIT 5: John Poulos transcript, Voting System Vendors, Local Election Officials And Computer Science Professors Testified On 2020 Election Security Before The House Administration Committee, C-SPAN, January 9, 2021[c] .................................10

EXHIBIT 6: Fred Lucas, *The Top Five Rigged U.S. Presidential Elections*, Newsweek (Oct. 23, 2016)[d]........................................................................................................................12

EXHIBIT 7: Brad Johnson, Texas Rejected Use of Dominion Voting System Software Due to Efficiency Issues, THE TEXAN (Nov. 19, 2020)[e] ................................................25

---

[a]      Available at   https://www.wsj.com/articles/dominion-sues-mypillow-ceo-mike-lindell-over-election-claims-11613996104?mod=searchresults_pos2&page=1   (last visited Mar. 22, 2021).

[b]      Available at   https://www.wsj.com/articles/sidney-powell-is-sued-by-voting-machine-company-dominion-for-defamation-11610124461 (last visited Mar. 22, 2021).

[c]      Available at https://www.c-span.org/video/?467976-1/2020-election-security# (last visited Mar. 22, 2021) (the excerpted Poulos testimony is runs from 19:35-22:27 of the 2:40:39 video).

[d]      Available at   https://www.newsweek.com/top-five-rigged-us-presidential-elections-511765 (last visited Mar. 22, 2021).

[e]      Available at   https://thetexan.news/texas-rejected-use-of-dominion-voting-system-software-due-to-efficiency-issues/ (last visited Mar. 22, 2021).

## INTRODUCTION

For the past several months, plaintiffs Dominion Voting Systems Corporation ("DVS"), U.S. Dominion, Inc., and Dominion Voting Systems, Inc. (hereinafter collectively "Plaintiffs" or "Dominion") have engaged in a well-orchestrated public relations campaign to save their business. Since the November 3, 2020 general election, Dominion has publicly touted the reliability of its election machines and software used by 40% of the US electorate. They began this campaign by sending dozens of "cease and desist" letters to various public figures who had criticized their operations, which received widespread media coverage. Then they threatened litigation against a host of unspecified alleged wrongdoers, which again received widespread media coverage. Then they finally filed this action with a sprawling and impermissibly incoherent Complaint.[1] Defendants Sidney Powell, Defending the Republic, Inc. ("DTR"), and Sidney Powell, P.C. (hereinafter collectively "Defendants") respectfully ask this Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), (b)(3), and (b)(6) or, alternatively, to transfer this action to the U.S. District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) and § 1406(a).

The Complaint should be dismissed. First, under Federal Rule of Civil Procedure 12(b)(2),

---

[1]   In *Ciralsky v. CIA,* 353 F.3d 661 (D.C. Cir. 2004), the District of Columbia Circuit noted that a complaint that "weighed in at 119 pages and 367 numbered paragraphs" failed to comply with Fed. R. Civ. P. 8's requirements that a pleading contain a "short and plain statement of the claim" and that "each averment of a pleading shall be simple, concise and direct." *Id.* at 668-69 (citing Rules 8(a)(2) and (e)(1)). The Complaint here is 124 pages with over 230 separate paragraphs and subparagraphs, not to mention 107 separate exhibits constituting over 230 MB with 1837 pages of additional materials. Thus, Plaintiffs have placed an impermissible burden on this Court and on Defendants "who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Ciralsky,* 353 F.3d at 669 (quoting *Salhuddin v. Cuomo,* 861 F. 2d 40, 42 (2d Cir. 1988) (quoting 5 WRIGHT & MILLER § 1281, at 365 (1969)).

Plaintiffs have failed to allege facts supporting personal jurisdiction over any of the Defendants. Second, should the court disagree, the Complaint should be dismissed pursuant to Rule 12(b)(3) for improper venue, or transferred to the United States District Court for the Northern District of Texas. Finally, should the Court decide to address the Complaint's substantive allegations, the Complaint fails to state a claim under Rule 12(b)(6).

## SUMMARY OF ALLEGATIONS IN THE COMPLAINT

Plaintiffs are two Delaware corporations (U.S. Dominion, Inc. and Dominion Voting Systems, Inc.)., both with principal places of business in Denver, Colorado; and one Ontario, Canada corporation with its principal place of business in Toronto, Canada. Compl. at ¶¶ 12-14.[2] The Complaint does not allege that any of the Plaintiffs has any presence in, business in or connections to the District of Columbia.

Defendant Sidney Powell is an attorney and member of the State Bar of Texas who resides and is domiciled in Texas. *Id.* at ¶ 15. Defendant Sidney Powell, P.C. is a professional corporation registered and domiciled in Texas. *Id.* at ¶ 16. Defendant DTR is a corporation formed, registered, and domiciled in Texas. *Id.* at ¶ 21 (the foregoing collectively hereinafter referred to as "Defendants").

Plaintiffs' claims arise from a series of allegedly defamatory statements made by Sidney Powell in which she is claimed to have accused Plaintiffs of rigging the 2020 United States presidential election. *See generally* Compl. at ¶ 1 and *passim*. These statements were associated with a series of lawsuits filed elsewhere in the country by Powell and other counsel, all arising

---

[2] Although the Complaint alleges that plaintiff DVS is a Canadian corporation with its principal place of business in Toronto (Compl. at ¶ 14), the Complaint caption lists a Denver address for DVS (*id.* at 1) and makes clear that DVS is a wholly owned subsidiary of plaintiff U.S. Dominion, Inc.

from the 2020 presidential election. *See, e.g.,* Compl. at ¶¶ 75-83, 87-96, 97-103, 104-109.

Given the sheer volume of the Complaint, the allegations relating to activity in or involving the District of Columbia are remarkably sparse. One focal point is a press conference held by Powell and others at the Republican National Committee headquarters in Washington, D.C. on November 19, 2020. *Id.* at ¶¶ 1, 24, 27, 61-63, 66, 87, 181(k) and 187. During that press conference, Powell and others discussed in some detail the substance and content of a recount petition already filed in Wisconsin, and lawsuits that Powell was preparing to file just days later in federal courts in Georgia and Michigan. *Id.* Plaintiffs allege that many of the statements made at the press conference were defamatory. *Id.*

Plaintiffs also allege that Powell made defamatory statements "from within Washington, D.C." on the following occasions: i) during November 8 and 15, 2020 appearances on the Fox News program *Sunday Morning Futures* with Maria Bartiromo (Compl. at ¶ 181(b) and (g)); ii) during November 13 and December 10, 2020 appearances on the Fox News Business program *Lou Dobbs Tonight* (Compl. at ¶ 181 (e) and (z)); iii) from a hotel room of the Trump International Hotel during a December 13, 2020 interview given to The Epoch Times program *American Thought Leaders* (Compl. at ¶ 181(aa)); and iv) from "within the Trump International Hotel" when she published a 270-page document to Zenger News (Compl. at ¶ 181(ff)).

Elsewhere in the Complaint, Plaintiffs allege that Powell, *inter alia,* i) repeatedly visited President Donald Trump in the White House, and ii) regularly transacts business in and derives substantial revenue from services rendered in the District of Columbia, including by soliciting funds to her website and by having represented Gen. Michael Flynn in the United States District Court for the District of Columbia. *Id.* at ¶¶ 24, 80. The Complaint does not tie any of these allegations to specific alleged defamatory statements. *Id.*

With respect to Sidney Powell, P.C., the allegations are even more sparse. Plaintiffs allege that Sidney Powell, P.C. regularly transacts business in the District of Columbia through i) its prior representation of Gen. Flynn; ii) by employing two attorneys who are members of the District of Columbia Bar and work from an office in the District; iii) by making defamatory statements through Sidney Powell; and v) as the alter ego of Sidney Powell. *Id.* at ¶ 25.

Finally, DTR is alleged to have transacted business in the District of Columbia by i) advertising for and soliciting donations worldwide, including from District of Columbia residents; ii) through Sidney Powell's defamatory media appearances in the District; iii) by funding the work of Powell and Sidney Powell, P.C.; iv) by employing attorneys and maintaining an office in the District; and v) as Sidney Powell's alter ego. *Id.* at ¶ 26.

## ARGUMENT

## I.  THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

### A.  Standard of Review

Plaintiffs bear the burden of establishing jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. 1990). They "must allege specific acts connecting [each] defendant with the forum." *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting *First Chi. Int'l v. United Exch. Co.,* 836 F.2d 1375, 1378 (D.C. Cir. 1988)). To survive a motion to dismiss for lack of personal jurisdiction, Plaintiffs must "make a *prima facie* showing of the pertinent jurisdictional facts." *IMAPizza LLC v. At Pizza, Ltd.,* 334 F. Supp. 3d 95, 107 (D.D.C. 2018) (quoting *First Chi. Int'l,* 836 F.3d at 1378)), *aff'd,* 965 F.3d 871 (D.C. Cir. 2020).

When reviewing a challenge to personal jurisdiction, a court may review declarations and consider other matters outside of the pleadings. *See, e.g., United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n. 4 (D.D.C. 2000) (quoting 5A C. WRIGHT & A. MILLER, *Federal Practice*

*and Procedure* § 1351 (1990)). Although factual discrepancies must be resolved in favor of the plaintiff, conclusory statements or bare allegations regarding a defendant's action do not satisfy a plaintiff's burden. *Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC,* 2020 U.S. Dist. LEXIS 197814, at *8 (D.D.C. Oct. 23, 2020).

A federal court sitting in the District of Columbia may exercise personal jurisdiction only to the extent of a court of general jurisdiction in the District. Fed. R. Civ. P. 4(k)(1)(A); *Fay v. Humane Soc'y of the United States,* 2021 U.S. Dist. LEXIS 8969, at *9 (D.D.C. Jan. 19, 2021). Personal jurisdiction can be satisfied by demonstrating that the court has general jurisdiction pursuant to D.C. CODE § 13-422, or that the court has personal jurisdiction pursuant to the District of Columbia long-arm statute, D.C. CODE § 13-423. *Burman v. Phoenix Worldwide Indus.,* 437 F. Supp. 2d 142, 147 (D.D.C. 2006).

As this Court recently explained in *Ashhab-Jones,*

> There are two types of personal jurisdiction: [1] general or all-purpose jurisdiction and [2] specific or case-linked jurisdiction. A defendant is subject to general jurisdiction when the defendant's affiliations with the forum State are so continuous and systematic as to render the defendant "at home" in the forum State. Specific jurisdiction, on the other hand, arises out of or relates to the defendant's contacts with the forum.
>
> To establish specific jurisdiction over a nonresident, the Court "must first examine whether jurisdiction is applicable under the D.C. long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process. The D.C. long-arm statute authorizes specific jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from" certain contacts that person may have with the forum. *D.C. Code § 13-423(a)* (2020). As relevant here, a defendant's contacts with the District of Columbia can establish specific jurisdiction if the claim arises from the defendant's:
>
>> (1) transacting any business in the District of Columbia;
>>
>> . . .

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

*§ 13-423(a)*. "When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in [*subsection 13-423(a)*] may be asserted against him." *§ 13- 423(b)*.

*Ashhab-Jones* at \*\*6-7 (internal quotations and citations omitted, brackets in original).

Finally, even if Plaintiffs satisfy the long-arm statute, they must still satisfy the Due Process Clause by showing that Defendants have "minimum contacts" with the forum such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at \*8 (quoting *GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C. Cir. 2000)).

## B.    <u>Plaintiffs do not allege nor does the court possess general jurisdiction over Defendants</u>

Plaintiffs do not allege that this Court has general jurisdiction over any of the Defendants. To the contrary, the Complaint's jurisdictional allegations as to all three Defendants are based exclusively on the District of Columbia long-arm statute. *See* Compl. at ¶¶ 23 (citing D.C. CODE § 13-423). In any event, none of the Defendants is subject to the Court's general jurisdiction.

D.C. CODE § 13-422 provides general jurisdiction over a party domiciled in, organized under the laws of, or maintaining its principal place of business in the District. All three Defendants are domiciled in Texas, and the corporate Defendants have their principal places of business there. *Id.* at ¶¶ 15-17. Thus, on its face, general jurisdiction under § 13-422 is lacking.

In rare cases, a non-resident party may be subject to general jurisdiction where its contacts

with the District are so pervasive, continuous, and systematic that the party is deemed "at home" in the District. *Ashhab-Jones,* 2020 U.S. Dist. LEXIS at *6 (citing *Daimler AG v. Bauman,* 571 U.S. 117, 137-39 (2011)). The bar for establishing general jurisdiction in such circumstances is high. *Annapolis Citizens Class Overcharged for Water-Sewer, by Loudon Operations, LLC v. Stantec, Inc.,* 2021 U.S. Dist. LEXIS 4286, at *16 (D.D.C. Jan. 8, 2021). "[T]he continuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe v. Washington,* 326 U.S. 310, 318 (1946). Plaintiffs' allegations do not vault this high bar.

Plaintiffs allege that Sidney Powell, P.C. and DTR do business in the District, advertise and solicit donations, and that DTR has an office here. *See* Compl. at ¶¶ 23-27. But simply doing business or having an office (or multiple offices) in a forum does not confer general jurisdiction.[3] *See, e.g., Daimler AG,* 571 U.S. at 137-39 (2011) (multiple facilities and regional office insufficient); *BNSF Ry. v. Tyrrell,* 137 S. Ct. 1549, 1559 (2017) (2000 miles of railroad track and 2000 employees in state insufficient). Nor do mere advertising or fundraising rise to the level of constitutionally sufficient contacts. *See, e.g., Bigelow v. Garrett,* 299 F. Supp. 3d 34, 42 (D.D.C. 2018) (substantial expenditures for fundraising and advertising in the District, and receiving payments from donors in the District, insufficient to establish general jurisdiction).

In any event, the allegations regarding DTR doing business are wrong. DTR does not have a physical office in the District, but only a "virtual office" that functions as a mail drop. Declaration

---

[3]     D.C. CODE § 13-334 authorizes jurisdiction over a foreign corporation "doing business" in the District of Columbia. But that statute contains a "specific jurisdictional requirement" requiring that service "be made in the District of Columbia." *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 514 (D.C. Cir. 2002) (quoting *Everett v. Nissan Motor Corp.,* 628 A.2d 106, 108 (D.C. 1993)). That provision does not apply here as neither of the corporate Defendants was served in the District of Columbia. *See* Affidavits of Service at Dkt. 3, Dkt. 9.

of Patrick M. Byrne at ¶¶ 7-8 (attached as Exhibit 1). It has no employees in the District, nor does it transact business here. *Id.* at ¶¶ 9-10.

The Complaint nowhere alleges the type of pervasive, continuous, and systematic contacts with the District of Columbia that would justify the exercise of general jurisdiction over any of the Defendants. Thus, the analysis proceeds to the question of specific jurisdiction.

C.     **There is no basis for specific jurisdiction over any Defendants**

Plaintiffs assert personal jurisdiction under the District of Columbia long-arm statute, D.C. CODE § 13-423. Compl. at ¶ 23. Specifically, Plaintiffs allege that each of the Defendants: i) transacted business within the District of Columbia, ii) caused tortious injury by acts committed within the District of Columbia, and iii) caused tortious injury by acts committed outside the District of Columbia, while regularly doing business within, engaging in persistent conduct within and deriving substantial revenue from services rendered within the District of Columbia. *Id.* These allegations roughly (but not fully) track the language of § 13-423(a)(1), § 13-423(a)(3) and § 13-423(a)(4), respectively. As noted above, when jurisdiction over a person is predicated on any of these sections of the long-arm statute, "only a claim for relief arising from acts enumerated in this section may be asserted against him." § 13-423(b).

1.     **Plaintiffs fail to establish jurisdiction under § 13-423(a)(1)**

To establish jurisdiction under § 13-423(a)(1), a plaintiff must show that i) the defendant transacted business in the District, ii) the claim arose from that business, and iii) the business constituted minimum contacts such that the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. *Thompson Hine LLP v. Smoking Everywhere Inc.,* 840 F. Supp. 2d 138, 142 (D.D.C. 2012), *aff'd sub nom. Thompson Hine, LLP v. Taieb,* 734 F.3d 1187 (D.C. Cir. 2013). The "transacting business" clause has been interpreted to be coextensive with the Constitution's due process requirements, and thus the statutory and

constitutional prongs of the statute merge into a single inquiry. *GTE New Media,* 199 F.3d at 1347.

The mere fact that a defendant has some contacts with the District is not sufficient to establish jurisdiction under § 13-423(a)(1). "To satisfy the due process requirements associated with the Superior Court's exercise of personal jurisdiction over a nonresident defendant under § 13-423(a)(1), the plaintiff must show that the defendant has purposefully engaged in some *commercial or business-related activity directed at District residents*." *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270-71 (D.C. 2001) (emphasis added); *see also Trump v. Comm. on Ways & Means,* 415 F. Supp. 3d 98, 107 (D.D.C. 2019) (quoting *Haarmann*). Ultimately, the determination of personal jurisdiction turns on the facts of the particular case. *Haarmann,* 779 A.2d at 271.

With respect to Sidney Powell, the only specific acts alleged to fulfill the requirements of *both* § 13-423(a)(1) (transacting business in the District) and § 13-423(b) (relating to the claim for relief) are her appearance at the November 19, 2020 press conference (*see* Compl. at ¶¶ 1, 24, 27, 61-63, 66, 87, 181(k) and 187); her interviews with Fox News, Fox Business News and The Epoch Times (*see* Complaint ¶¶ 181(b), 181(e) and 181(aa)); and her publication of a binder to Zenger News while in the District (¶ 181(ff)). These activities are insufficient to establish specific jurisdiction over Powell.

First, such activities are not business transactions as contemplated by *Haarmann* and the cases applying it. None of these alleged circumstances arise out of any commercial or transactional relationship involving the District. *See, e.g., Comm. on Ways & Means,* 415 F. Supp. 3d at 107 ("D.C. and federal courts have consistently interpreted subsection (a)(1) to require a commercial or business activity."). They do not constitute "commercial deal-making activities like negotiating or performing contracts." *IMAPizza,* 334 F. Supp. 3d at 111.

Notably, Defendants were not involved in any business transaction with Plaintiffs from which their injuries allegedly arose. There is no breach of contract or other business-related transaction alleged. Plaintiffs' claims against Defendants arise, not from the transaction of any business, but from the alleged tort of defamation. If, as Plaintiffs appear to suggest, Powell's allegedly defamatory press conference and interviews are construed to constitute "transacting business" under § 13-423(a)(1),[4] then the tort-based jurisdictional provisions of § 13-423(a)(3) and § 13-423(a)(4) (discussed below) would be rendered superfluous, and their specific jurisdictional requirement of an in-forum injury bypassed. As the *Haarmann* Court put it: "Any interpretation of section 13-423(a)(1) which would apply to contexts other than the transaction of business in the District … cannot be correct. Indeed, we have noted that the other provisions of the long-arm statute [*i.e.,* § 13-423(a)(3) and § 13-423(a)(4)] may not authorize the exercise of jurisdiction to the full extent permitted by the Due Process Clause." 779 A.2d at 270, n. 5.[5] *See also IMAPizza,* 334 F. Supp. 3d at 111 (citing *Haarmann* for the proposition that the in-state commission of a tort does not constitute "doing business.").

Even if these appearances and the alleged defamatory statements were considered "transacting business" for purposes of § 13-423(a)(1), the Complaint fails to allege a necessary element for application of the subsection: that the defendant directed her business activity at

---

[4]     *See* Compl. at ¶ 24 (stating that Powell "made defamatory statements about Dominion from within the District of Columbia … and during various media appearances in November and December.); ¶ 26 (stating that DTR "transacted business within the District of Columbia by soliciting donations from within the District of Columbia through Sidney Powell's defamatory media appearances").

[5]     Indeed, elsewhere in *Haarmann* the Court of Appeals observed that the District of Columbia long-arm statute, unlike the statutes of other jurisdictions, does not contain a provision under which the in-state commission of a tort is defined as "doing business" in the forum. 779 A.2d at 275, n.10.

District residents, as *Haarmann* requires. To the contrary, the Complaint is filled with allegations that Powell's defamatory statements were directed *globally*. *See, e.g.,* Compl. at ¶ 66 (stating that tweets of Powell's accusations at the D.C. press conference irreparably damaged Plaintiffs' reputation "to a global audience"); ¶ 91 (Powell and Wood "repeatedly told national audiences that Dominion had bribed Georgia's Republican governor and secretary of state"); ¶ 117 (Plaintiffs suffered harm as "a result of the false accusations disseminated to a global audience by Powell"); ¶ 175 (Defendants used their website to solicit donations from a global internet audience).

Finally, the remaining allegations regarding Powell's allegedly "transacting business" are not related to Plaintiffs' claims for relief, as § 13-423(b) requires. To the extent she represented Gen. Flynn, visited with President Trump, engaged in fundraising activities, or stayed in the Trump International Hotel, Plaintiffs' claims do not arise from those activities, as the long-arm statute requires. *See Thompson Hine,* 840 F. Supp. 2d at 142 (discussing relationship between § 13-423(a)(1) and § 13-423(b)).

The same is true for the other Defendants, DTR and Sidney Powell P.C. To the extent they are alleged to be transacting business in the District – such as by having an office, employing attorneys, fundraising, or representing Gen. Flynn – Plaintiffs' claims do not arise from those activities. Accordingly, they cannot subject Defendants to jurisdiction under § 13-423(a)(1).

### 2.   Plaintiffs fail to establish jurisdiction under § 13-423(a)(3) or (a)(4)

Plaintiffs also seek to invoke personal jurisdiction under §§ 13-423(a)(3) and (a)(4) through their allegations i) that Defendants caused tortious injury by actions within the District and ii) that Defendants caused tortious injury by actions outside the District while regularly doing business within, engaging in persistent conduct within and deriving substantial revenue from services rendered within the District of Columbia. Compl. at ¶ 23. Neither of these sections supports personal jurisdiction over Defendants.

Unlike section 13-423(a)(1), section 13-423(a)(3) does not extend jurisdiction to the limits of due process. Rather, it is "'a precise and intentionally restricted tort section which stops short of the outer limits of due process,' and requires that both act and injury occur in the District of Columbia." *Burman,* 437 F. Supp. 2d at 152 (quoting *Helmer v. Doletskaya,* 393 F.3d 201, 208 (D.C. Cir. 2004)). Even if tortious activity occurs within the District, jurisdiction will not lie under § 13-423(a)(3) if the plaintiff's injury was not also suffered "in the District." *Helmer,* 393 F.3d at 209-10; *Ashhab-Jones,* 2020 U.S. Dist. LEXIS at *13. That is the situation here.

First, as in *Ashhab-Jones,* Plaintiffs do not even allege that they were injured in the District. Their paraphrase of the statute alleging jurisdiction carefully omits any reference to injuries occurring "in the District." Compl. at ¶ 23(ii).

To the extent the Complaint does allege the locale of any injuries, they occurred outside the District. The Complaint alleges, *inter alia,* that its contracts have been subject to scrutiny by state legislators in Arizona, Florida, Louisiana, Pennsylvania, Michigan, and Georgia. Compl. at ¶¶ 141-42. No such claims are made regarding the District of Columbia. The failure to allege injury in the District renders the Complaint facially defective under the long-arm statute.

Nor could Plaintiffs amend to correct this deficiency, because they did not suffer any injury in the District of Columbia as a matter of law. In a defamation action, the injury occurs where the plaintiff lives and works. *See, e.g., Blumenthal v. Drudge,* 992 F. Supp. 44, 53 (D.D.C. 1998 (plaintiffs in defamation action citizens of and injured in the District); *Hourani v. PsyberSolutions LLC,* 164 F. Supp. 3d 128, 138 (D.D.C. 2006) (plaintiffs in libel action citizens of and injured in Virginia); *Corsi v. Caputo,* 2020 U.S. Dist. LEXIS 60958, at *8 (D.D.C. April 7, 2020) (plaintiff in defamation action citizen of and injured in New Jersey). Here, that is Colorado. *See infra* pp. 20-21. The Complaint does not allege any other facts suggesting that Plaintiffs

actually suffered or even could have suffered any injury in the District of Columbia. In fact, the Complaint does not allege that Plaintiffs have any connection with the District whatsoever.

The identical result obtains under § 13-423(a)(4). That section likewise requires that the plaintiff allege an injury "in the District." *Id. See also Hourani,* 164 F. Supp. 3d at 138 (noting that both subsections (a)(3) and (a)(4) require an injury "in the District"). There is no such allegation.[6] Thus, there is no basis for jurisdiction under § 13-423(a)(4).

### 3.   Plaintiffs' alter ego allegations are insufficient as a matter of law

Plaintiffs suggest that the Court exercise personal jurisdiction over Defendants Sidney Powell, P.C. and DTR by finding that each entity is an "alter ego of Sidney Powell." Compl. at ¶¶ 25- 26. But, because we have shown that this Court does not have personal jurisdiction over any of the Defendants, Plaintiffs' attempt to bootstrap Sidney Powell, P.C. and DTR onto Sidney Powell for jurisdictional purposes is irrelevant. In any event, the Complaint fails to allege facts sufficient to support an alter ego finding.

This court has recognized that a finding of "alter ego" or "veil-piercing" is an "extraordinary measure that is not to be use[d] lightly[.]… [The] case [must] present[] the extreme circumstances that call for disregard of the corporate form." *Motir Servs. v. Ekwuno*, 191 F. Supp. 3d 98, 109 (D.D.C. 2016) (quoting *Schattner v. Giurard*, 668 F.2d 1366, 1370 (D.C. Cir. 1981)). Unity of ownership alone is insufficient. The District of Columbia Circuit has emphasized that "[a] corporation is 'viewed as a distinct entity, even when it is wholly owned by a single individual'"

---

[6]    The Complaint repeatedly alleges that Defendants transact business in and derive substantial revenue from providing services in the District. Compl. at ¶¶ 23-27. Even assuming those allegations met *Iqbal*'s plausibility standard (which they do not), they are irrelevant. There is no need to evaluate those factors under § 13-423(a)(4), where, as here, the Plaintiffs suffered no injury in the District. *Norair Engineering Assoc's, Inc. v. Noland Co.,* 365 F. Supp. 740, 743 (D.D.C. 1973).

and that "the law takes seriously the formal line between a corporation and a natural person, even when the corporation is, in effect a one-person firm." *Nat'l Sec. Counselors v. CIA*, 811 F.3d 22, 31 (D.C. Cir. 2016) (quoting *Quinn v. Butz,* 510 F. 2d 743, 757 (D.C. Cir. 1975)).

In determining whether to pierce the corporate veil a court will consider whether there has been a commingling of individual and corporate funds, property, or staff; whether the corporation is adequately capitalized; whether corporate formalities have been observed; and, perhaps most importantly, whether the corporate form has been used to perpetuate a fraud. *Motir Serv.,* 191 F. Supp. 3d at 108; *Ruffin v. New Destination*, 773 F. Supp. 2d 34, 41 (D.D.C. 2011). The Complaint does not properly allege any of these factors. Instead, Plaintiffs make the bald claim that Sidney Powell, P.C. and DTR are Sidney Powell's "alter egos." This is nothing more than a legal conclusion which "is insufficient to provide the requisite factual support particularly for what the D.C. Circuit has described as an extraordinary measure." *Motir Serv.* 191 F. Supp. 3d at 109 (holding that an allegation that a corporation "merely serves as an alter ego for defendant…with a co-mingling of assets and no separate identit[y]" was insufficient to adequately plead a claim of alter ego or piercing the corporate veil).

Plaintiffs do not plead facts that would enable this Court to make an alter ego finding. On the contrary, Plaintiffs' alter ego allegations are precisely the type of bare legal assertions that courts routinely reject, consistent with the principles articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S.544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rejection of Plaintiffs' alter ego claims is similarly appropriate here.

## II.    VENUE IS IMPROPER AND INCONVENIENT

### A.    <u>Venue is improper in this District</u>

The federal venue statute provides as follows:

>    **Venue in general.** A civil action may be brought in—

> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Plaintiffs claim that venue is proper pursuant to subsection (b)(2) on the grounds that "a substantial part of the events giving rise to the claims in this Complaint occurred in this District and … because Defendants are subject to the Court's personal jurisdiction in this District." *See* Compl. at ¶ 28. This is incorrect.

To determine whether venue is proper under § 1391(b)(2), the court "undertake[s] a 'commonsense appraisal' of the 'events having operative significance in the case.'" *Exelon Generation Co. v. Grumbles,* 380 F. Supp. 3d 1, 11 (D.D.C. 2019) (quoting *Lamont v. Haig,* 590 F.2d 1124, 1134 (D.C. Cir. 2014)). A commonsense appraisal leads to the conclusion that venue is not proper here under subsection (b)(2).

First, as discussed above, very few of the events giving rise to the claims occurred in the District. Aside from the November 19, 2020 press conference at the Republican National Committee, the only acts alleged to have "occurred" in the District are Sidney Powell's four appearances on Fox News broadcasts, an appearance on an Epoch Times news program, and the publication of a 270-page document from "within the Trump International Hotel." *See supra* note 4. Where those acts occurred are hardly relevant in light of their dissemination, largely via media broadcast, throughout the country.

Other than that, this case has nothing to do with the District. None of the parties reside

here. None of the alleged injuries occurred here. The lawsuits containing the underlying allegations – exhibits and evidence on which the alleged defamatory statements were based –were filed in Georgia, Wisconsin, Arizona, and Michigan. *See* Compl. at ¶¶ 75-83. The "Stop the Steal" rally occurred in Georgia. *Id.* at ¶ 78. The remaining tweets, press releases, web postings and the like occurred outside the District. *Id.* at ¶ 181. Venue is thus not proper in this District. *See, e.g., Corsi v. Infowars, LLC,* 2020 U.S. Dist. LEXIS 41133 (D.D.C. Mar. 10, 2020) (in defamation case, where defendants resided in Texas and all the statements at issue were made on programs originating from Texas, venue was not proper in this District). Similarly, Plaintiffs' claim for violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370-375, could only have occurred in that state.

### B.   Venue should be transferred

These same facts also support transfer to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. In determining whether transfer is appropriate, this Court undertakes a two-part inquiry: first, it determines whether the transferee forum is one where the action might have been brought initially; and, second, it evaluates public and private interests to determine whether they weigh in favor of transfer. *Forest Cnty. Potawatomi Cmty. v. United States*, 169 F. Supp. 3d 114, 117 (D.D.C. 2016). Private-interest factors include (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). Public-interest factors include: (1) the proposed transferee court's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the

relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id.* at 128.

There is no dispute that this case could have been brought in the District Court for the Northern District of Texas, as all Defendants are residents of Dallas, Texas, where the proposed transferee court is located. 28 U.S.C. § 1391(a)(1) ("A civil action may be brought in…a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."). The United States District Court for the Northern District of Texas was an appropriate forum to bring this action initially.

On balance, the private factors weigh in favor of transferring this lawsuit to Texas. *First*, requiring Defendants to defend this case in the District of Columbia would be inconvenient, burdensome, expensive, and prejudicial to them, as they reside nearly 1,300 miles from the District of Columbia. Powell does not have a home or an office in or near the District of Columbia, or a law license in the District. Her law practice, Sidney Powell P.C., is based entirely in Texas. *See* Declaration of Sidney K. Powell, ¶¶ 2-4 (attached as Exhibit 2). DTR is incorporated and has its principal place of business in Texas. Byrne Decl. ¶ 6 (attached as Exhibit 1).

Transferring this case to Texas would not prejudice Plaintiffs in any way. Plaintiffs are Colorado and Canada residents who live anywhere between 940 to 1,600 miles from the District of Columbia, and operate out of Denver, which is much closer to Dallas than to Washington, D.C. When they filed their complaint, plaintiffs did not identify an office in the District of Columbia, nor are their electronic voting systems used in the District. While courts typically give deference to a plaintiff's choice of forum, this deference "is lessened when the plaintiff does not choose its 'home forum.'" *City of W. Palm Beach v. United States Army Corps of Eng'rs*, 317 F. Supp. 3d 150, 154 (D.D.C. 2018); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422,

430 (2007) ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable.") (internal quotation marks and citation omitted).

Second, the witnesses relevant to this defamation action are not in the District of Columbia. Obviously, Sidney Powell will be a principal witness. The election lawsuits underlying this matter were filed in Georgia, Michigan, Arizona, and Wisconsin. The declarations and information relied upon by Powell to publicly discuss Plaintiffs' involvement in the 2020 election were not based on information gained from District of Columbia residents. In fact, to counsel's best knowledge, only one witness has a principal place of operation in the District of Columbia. Russell Ramsland, whom Plaintiffs brutishly disparage, is headquartered in Dallas, Texas. Compl. at ¶ 106, Exh. 56. Other witnesses, evidentiary data, and information pertinent to this litigation are also located in Texas.

Finally, public factors weigh in favor of transferring this litigation to Texas. This District has experienced immense overcrowding of its docket in light of the January 6, 2021 events at the Capitol and post-presidency lawsuits. It is public knowledge that this docket is backlogged, congested, and overwhelmed. Transferring this lawsuit to Texas would not prejudice Plaintiffs and would likely assist in resolving this dispute more expeditiously. Nor is this Court any more familiar with the applicable defamation law (that of Colorado) than the Northern District of Texas, and there is no local interest in deciding local controversies at home, since the dispute concerns matters far removed from Washington, D.C.

Pursuant to 28 U.S.C. § 1406(a), where venue is laid in an improper district, that court shall either dismiss the case, or if it be in the interests of justice, transfer to any district where it could

have been brought. The case may also be transferred pursuant to 28 U.S.C. § 1404(a).[7] Accordingly, this Court should either dismiss this case or transfer it to the United States District Court for the Northern District of Texas, where all Defendants reside.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM

### A.   <u>Standard of Review</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. To survive a motion to dismiss, the complaint must contain sufficient factual matter … to state a claim for relief that is plausible on its face." *Iqbal,* 556 U.S. at 678. A claim is plausible on its face when it contains sufficient factual matter to permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In doing so, well-pleaded facts must be construed in the plaintiff's favor, but the court need not accept as true legal conclusions or threadbare recitals of a cause of action. *Id.*

"[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 108 (D.C. Cir. 2017). "Early resolution of defamation cases under Federal Rule of Civil Procedure 12(b)(6) 'not only protects against the costs of meritless litigation but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive.'" *Fairbanks v. Roller,* 314 F. Supp. 3d 85, 89 (D.D.C. 2018) (quoting *Palin v. New York Times Co.*, 264 F. Supp. 3d 527, 533 (S.D.N.Y. 2017)).

---

[7]   *See McFarlane v. Esquire Magazine,* 74 F.3d 1296, 1301 (D.C. Cir. 1996) (noting the "nearly hopeless muddle of conflicting reasoning and precedent as to which statute [§ 1404 or § 1406] applies.") (internal quotation and citation omitted).

## B.    <u>Choice of Law</u>

When sitting in diversity, this Court applies the District of Columbia's choice of law rules to determine which state's substantive law applies. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). "To determine which jurisdiction's substantive law governs a dispute, District of Columbia courts blend a 'governmental interests analysis' with a 'most significant relationship' test." *Oveissi v. Islamic Republic of Iran,* 573 F.3d 835, 842 (D.C. Cir. 2009). "'Under the governmental interests analysis, a court must evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review.' To determine which jurisdiction has the most significant relationship to a case, a court must consider the factors enumerated in the Restatement [(Second) of Conflict of Laws] § 145." *Id.* at 842 (internal alterations and citations omitted) (quoting *Hercules & Co v. Shama Rest. Corp.,* 566 A.2d 31, 40-41 (D.C. 1989)).

In applying this test to defamation cases, this Court has applied the law of the place of the plaintiff's injury. *See, e.g., Hourani v. PsyberSolutions LLC,* 164 F. Supp. 3d 128, 140 (D.D.C. 2016) *aff'd,* 690 F. App'x 1 (D.C. Cir. 2017). In a defamation case, that is the place where the plaintiff suffered reputational injury, *i.e.,* the plaintiff's domicile. *Id. See also Mar-Jac Poultry, Inc. v. Katz,* 773 F. Supp. 2d 103, 112 (D.D.C. 2011) (same). Here, Plaintiffs' domicile is Colorado.[8] To the extent that state common law governs Plaintiffs' claims, this Court should apply the law of Colorado.

## C.    <u>Applicable Defamation Law</u>

Claims of defamation must be evaluated to see whether the statements at issue are protected

---

[8]    *See supra* note 2.

by the First Amendment or article II, section 10 of the Colorado constitution. *See NBC Subsidiary (KDNC-TV) v. Living Will Ctr.,* 879 P. 2d 6, 9 (Colo. 1994). The United States Supreme Court has recognized the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964). As the Supreme Court has also noted, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana,* 379 U.S. 64, 74-75 (1964). Consequently, courts have consistently ruled that political speech "is entitled to the fullest possible measure of constitutional protection." *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 816 (1984).[9]

Both the United States and Colorado Supreme Courts also recognize that, in order to be actionable, a statement must be capable of being proven true or false. "[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation, or which cannot reasonably [be] interpreted as stating actual facts about an individual, continues to receive full constitutional protection." *Keohane v. Stewart,* 882 P.2d 1293, 1299 (Colo. 1994) (quoting *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 20 (1990)) (internal quotes and citations omitted).

In *Keohane,* the Colorado Supreme Court identified a two-step inquiry to determine whether a statement is protected. The first is whether the statement is "sufficiently factual to be susceptible of being proved true or false." *Id.* (quoting *Milkovich,* 497 U.S. at 20). The second is whether "reasonable people" would conclude that the assertion is one of fact. *Id.* "The factors

---

[9]     Whether a statement involves a matter of public concern is a question of law to be resolved on a case-by-case basis. *Examination of Bd. Of Prof. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors,* 221 U.S. Dist. LEXIS 25274, at *21 (D. Colo. Feb. 10, 2021).

relevant to the second inquiry are: (1) how the assertion is phrased; (2) the context of the entire statement; and (3) the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed." *Id.* (citing *Burns v. McGraw-Hill Broadcasting Co.,* 659 P.2d 1351, 1360 (Colo. 1983)).

Of particular importance in evaluating the actionability of a statement is whether the underlying facts on which it is based have been disclosed. In *NBC Subsidiary,* decided the same day as *Keohane,* the Colorado Supreme Court applied this test in determining that two broadcasts stating that the plaintiff's living-will package was a "scam," and that plaintiff's customers had been "totally taken" were not actionable. 879 P.2d at 7-8. Discussing the United States Supreme Court's decision in *Milkovich,* the Colorado Supreme Court noted that the statements were based on facts disclosed during the broadcasts. The Court thus concluded:

> [*Milkovich*] unquestionably excludes from defamation liability not only statements of rhetorical hyperbole – the type of speech at issue in the Bressler-Letter Carriers-Falwell cases – but also statements clearly recognizable as pure opinion because their factual premises are revealed. Both type of assertions have an identical impact on readers – neither reasonably appearing factual – and hence are protected equally under the principles espoused in *Milkovich.*

*Id.* at 12 (brackets in original) (citing *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 731 n.13 (1st Cir. 1992)).

This makes sense, because "when a defendant provides the facts underlying the challenged statements, it is 'clear that the challenged statements represent his own interpretation of those facts,' which 'leav[es] the reader free to draw his own conclusions.'" *Bauman v. Butowsky,* 377 F. Supp. 3d 1, 11 at n. 7 (D.D.C. 2019) (quoting *Adelson v. Harris,* 973 F. Supp. 2d 467, 490 (S.D.N.Y. 2013), *aff'd* 774 F.3d 803 (2d Cir. 2014)). "When 'the bases for … the conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related.'" *Biospherics, Inc. v. Forbes, Inc.* 151 F.3d 180, 185

(4th Cir. 1998) (quoting *Chapin v. Knight-Ridder, Inc.,* 993 F.3d 1087, 1093 (4th Cir. 1993)); *see also Moldea v. N.Y. Times Co.,* 22 F.3d 310, 317 (D.C. Cir. 1994) ("Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation.") (quoting *Moldea v. New York Times Co.,* 15 F. 3d 1137, 1144-45 (D.C. Cir. 1994)).

Importantly, the states are free to provide greater protections to individual liberties – including free speech – than those provided by the First Amendment. *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 81 (1980). With respect to its own constitution, the Colorado Supreme Court has stated that "[t]he object of article II, section 10 is to 'guard against the trammels of political power, and to secure to the whole people a full and free discussion of public affairs.'" *People v. Ford,* 773 P.2d 1059, 1066 (Colo. 1989) (quoting *Cooper v. People,* 22 P. 790, 798 (Colo. 1889)). Accordingly, the Colorado Constitution "provides greater protection of free speech than does the First Amendment[.]" *Lewis v. Colorado Rockies Baseball Club,* 941 P.2d 266, 271 (Colo. 1997) (citing *Bock v. Westminster Mall Co.,* 819 P.2d 55, 59 (Colo. 1991)).

Under Colorado law, where an allegedly defamatory statement relates to a matter of public concern, plaintiff must prove that the statement was made with actual malice by clear and convincing evidence. *Diversified Management v. Denver Post,* 653 P.2d 1103 (Colo. 1982). This is true even if the plaintiff is not a public figure or public official as defined in *Gertz v. Welch,* 418 U.S. 323 (1974). Thus, plaintiff must prove by clear and convincing evidence that the statement was either false or made with reckless disregard as to whether the statement was true. *Diversified,* 653 P.2d at 1105; *Bustos v. United States,* 257 F.R.D. 617, 621 (D. Colo. 2009).

Whether speech addresses a matter of public concern is determined by looking at its

"content, form and context, as revealed by the whole record." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 761 (1985) (plurality opinion) (quoting *Connick v. Myers,* 461 U.S. 138, 147-48 (1983)). Public concern is something that is a matter of legitimate news interest and of concern to the public at the time of publication. *City of San Diego v. Roe,* 543 U.S. 77, 83-84 (2004).

Further, claims of defamation must be viewed through the lens of the First Amendment regardless of whether they are offensive to some. "Though few might find respondent's statements anything but contemptible, his right to make those statements is protected by the Constitution's guarantee of freedom of speech and expression." *United States v. Alvarez*, 567 U.S. 709, 727-28 (2012). And "[s]peech is not unprotected merely because it is uttered by 'professionals.'" *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371-72 (2018). With these fundamental principles in mind, Defendants proceed to explain why Plaintiffs fail to state a claim.

### D.  The statements alleged in the Complaint are constitutionally protected and not actionable

Because the statements on which Plaintiffs premise their defamation claims are protected by the First Amendment and not actionable, Plaintiffs fail to state a defamation claim.

#### 1.  The challenged statements relate to matters of public concern

Whether a statement involves a matter of public concern is a question of law to be resolved on a case-by-case basis. *Examination of Bd. of Prof. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors,* 2021 U.S. Dist. LEXIS 25274, at *21 (D. Colo. Feb. 10, 2021). There can be no doubt that the statements at issue here relate to matters of public concern. They involve the 2020 presidential election and specifically address the reliability of the voting machines and processes used to determine the results of that election. The Complaint itself contains scores of references to tweets from President Donald Trump, statements by public officials, the content of related

litigation and national press coverage of the issues. The statements and comments at issue are alleged to have been broadcast nationally and internationally. Whether considered under federal or Colorado standards, this case clearly involves matters of public concern.

### 2.   Dominion is a public figure

"A rule compelling the critic of official conduct to guarantee the truth of all his factual assertions – and to do so on pain of libel judgments virtually unlimited in amount – leads to a comparable 'self-censorship.'" *N.Y. Times Co.*, 376 U.S. at 279. Thus, to recover on a defamation claim, the public figure must prove that the defendant acted with malice. *Id.* ("The constitutional guarantees require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' – that is, with knowledge that it was false or with reckless disregard of whether it was false.").

To determine whether a plaintiff is a public figure, the courts are guided by several considerations. First, public figures usually enjoy significantly greater access to channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater. Effective access is "regular and continued access to the media." *Steaks Unlimited v. Deaner*, 623 F.2d 264, 273 (3d Cir. 1980) (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979)).

The status of a plaintiff as a public figure is determined as a matter of law. *Bose Corp. v. Consumers Union*, 466 U.S. 485, 510 (1984).

Dominion has publicly held itself out as a public figure. "The company says it supplies

election equipment used by more than 40% of U.S. voters**.**"[10] Indeed, Dominion's CEO stated

publicly that "harm" to Dominion is "harm[ to] the credibility of U.S. elections":

> "For us, it has been building up for many weeks and months,"
> Dominion Chief Executive John Poulos said in an interview.
>
> He said, in a statement, that the lies told about the company and
> government election officials also had harmed the credibility of U.S.
> elections.

Alexa Corse, *Sidney Powell Is Sued by Voting-Machine Company Dominion for Defamation*,

WSJ.com, Jan. 8, 2021 (attached as Exhibit 4).

On January 9, 2021, Mr. Poulos testified before the House Administration Committee and

admitted that Dominion conducted nearly 300 elections in the past year alone:

> The company abides by these principles to this day. Driving
> innovations and advancements for auditability and resilience
> directed by federal, state, and local election officials. Supporting
> elections is a full-time proposition for our company. **This past year
> alone, Dominion assisted state and local election officials in
> conducting nearly 300 elections. Complete with a rigorous
> public scrutiny that comes with it.** … Moreover, we actively
> engage with the EAC, DHS, and other trusted third parties to
> maintain and enhance our enterprise security[.] … Finally, we all --
> we meet all independent testing requirements, including EAC
> standards developed in conjunction with NIST and requirements …
> set forth by individual states. … **Our systems ensure federal
> protections for privacy and equal voting rights, and ballot
> casting options for all, including American service members
> abroad.** The existence of nation state threats means that **we must
> actively defend against any attempts to undermine faith in our
> democratic institutions**. In this regard, we hope to see Congress
> continuing its work with state and local election officials to keep

---

[10]     *Dominion Sues MyPillow, CEO Mike Lindell Over Election Claims*, WSJ.com, Politics,
Election 2020, by Alexa Corse, February 22, 2021 (attached as Exhibit 3). "The Court may take
judicial notice of … matters of public record pursuant to Federal Rule of Evidence 201, and the
Court's consideration of judicially noticed facts does not transform a motion for judgment on the
pleadings into one for summary judgment." *In re Lorazepam & Clorazepate Antitrust Litig.*, 2004
U.S. Dist. LEXIS 32268, at *21 n.1 (D.D.C. May 18, 2004). "The Court may also take judicial
notice of newspaper articles." *Id.* at n. 3 (collecting cases).

> election systems secure. We commend Congress on its bipartisan
> investment of an additional $425 million to help election officials
> modernize their infrastructure.

John Poulos, *Voting System Vendors, Local Election Officials And Computer Science Professors Testified On 2020 Election Security Before The House Administration Committee*, C-SPAN, January 9, 2021 (emphasis added) (excerpt attached as Exhibit 5).

At a minimum, Plaintiffs are limited purpose public figures. Whether a person is a limited purpose public figure involves two inquiries: whether the defamatory statements involve a matter of public concern, and whether the level of the plaintiff's participation invites scrutiny. *Zueger v. Goss*, 343 P.3d 1028, 1035-36 (Colo. App. 2014) (quoting *Lewis v. McGraw-Hill Broad. Co.*, 839 P.2d 1118, 1122 (Colo. App. 1992)). Both requirements are fulfilled here. Not only does this case involve a matter of public concern, Plaintiffs' products and services had already been subject to scrutiny well before the matters giving rise to this action even transpired. *See Curling v. Raffensperger*, 2020 U.S Dist. LEXIS 188508, at *26 (N.D. Ga. Oct. 11, 2020) (ruling on motion for preliminary injunction where plaintiffs alleged, inter alia, that Dominion Voting Systems software and hardware were subject to being accessed and manipulated through hacking, unauthorized intrusion, cyberattacks or malware).

### 3.    The statements at issue are protected and not actionable

Determining whether a statement is protected involves a two-step inquiry: Is the statement one which can be proved true or false? And would reasonable people conclude that the statement is one of fact, in light of its phrasing, context and the circumstances surrounding its publication. *Keohane*, 882 P.2d at 1299. This inquiry is determined as a matter of law. *Bucher v. Roberts*, 595 P.2d 235, 241 (Colo. 1979) ("Whether a particular statement constitutes fact or opinion is a question of law."). Analyzed under these factors, and even *assuming, arguendo,* that each of the statements alleged in the Complaint *could* be proved true or false, no reasonable person would

conclude that the statements were truly statements of fact.

With respect to context, it is helpful to consider both broad and specific contexts, as the court did in *Adelson*, 973 F. Supp. 2d at 489-491. As in that case, the broader societal context of the statements here is a political one: the 2020 election. As the *Adelson* court noted,

> While "often decr[ied]" by the media and others, "[t]he 'low level' of campaign tactics or rhetoric" in this nation's national campaigns is, now more than ever, a generally accepted fact of American life. *Secrist v. Harkin*, 874 F.2d 1244, 1249 (8th Cir. 1989) (citation omitted); *see also id.* ("There may be no public context more contentious than a political campaign.") Thus, courts "shelter strong, even outrageous political speech," on the ground that "the ordinary reader or listener will, in the context of political debate, assume that vituperation is some form of political opinion neither demonstrably true nor demonstrably false." Sack, *Sack on Defamation*, at § 4:3:1[B], 4-43; *see also id.*, at § 4:3:1[A], 4-31 ("Potentially defamatory statements in the guise of statements of fact uttered during a bitter political debate are particularly likely to be understood as rhetorical opinion.").

*Id.* at 489.

The statements at issue fit precisely in this mold. They *all* concern the 2020 presidential election, which was both bitter and controversial. Indeed, the very first statement attributed to Powell is from November 8, 2020, during an appearance on the Fox News program *Sunday Morning Futures* with Maria Bartiromo. Compl. at ¶ 181(b). As the screen-capture reproduced in the Complaint makes abundantly clear, her appearance there was to discuss the topic "Trump Team Set To File New Lawsuits Over Balloting":



*Id.*

Furthermore, it is clear that Powell's statements were made as an attorney-advocate for her preferred candidate and in support of her legal and political positions. This was repeatedly confirmed in other appearances screenshotted in the Complaint, as the following examples show. Compl. ¶ 181(g) ("Trump Legal Team Challenges Remain Active in Several Battleground States"):



Compl. ¶ 181(j) ("Trump Legal Team's Examination Into Voter Fraud"):



Compl. ¶ 181(k) ("Sidney Powell Trump Campaign Lawyer"):



Compl. ¶ 181(l) ("The Battle for the White House Trump's Legal Team Lays Out Multiple Paths to Victory"):



Compl. ¶ 181(r) ("The Battle for the White House Powell Says Lawsuit Could Be Filed In GA Tomorrow"):



Notably, one of the focal points of the Complaint is the press conference held by Sidney Powell and others on November 19, 2020 at the *Republican* National Committee headquarters in Washington, D.C. Compl. at ¶¶ 24, 27, 62, 63, 181(k). Obviously, any press conference originating from the Republican National Committee is political to its core.

The Complaint further alleges President Trump's wholesale endorsement and encouragement of Sidney Powell's efforts (at least initially). The Complaint notes that President Trump tweeted as follows on November 14, 2020: "I look forward to Mayor Giuliani spearheading the legal effort to defend OUR RIGHT to FREE and FAIR ELECTIONS! Rudy Giuliani, Joseph diGenova, Victoria Toensing, Sidney Powell, and Jenna Ellis, a truly great team, added to our other wonderful lawyers and representatives!" *Id.* at ¶ 59. And on the morning of the RNC press conference, the President tweeted "Important News Conference today by lawyers on a very clear and viable path the victory. Pieces are very nicely falling into place. RNC at 12 p.m." *Id.* at ¶ 61.

The highly charged and political nature of the statements likewise underscores their political and hence partisan nature. Powell alleged that "Democrats were trying to 'steal the vote' from Trump and that 'they ha[d] developed a computer system to alter votes electronically." *Id.* at

¶ 52. She and others appeared at a rally called "Stop the Steal," which the Complaint identifies as a "Georgia political rally." *Id.* at ¶ 1. She claimed that she had evidence that the election result was the "greatest crime of the century if not the life of the world." *Id.* at ¶ 181(bb).[11]

Reasonable people understand that the "language of the political arena, like the language used in labor disputes … is often vituperative, abusive and inexact." *Watts v. United States,* 394 U.S. 705, 708 (1969). It is likewise a "well recognized principle that political statements are inherently prone to exaggeration and hyperbole." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists,* 244 F.3d 1007, 1009 (9th Cir. 2001). Given the highly charged and political context of the statements, it is clear that Powell was describing the facts on which she based the lawsuits she filed in support of President Trump. Indeed, Plaintiffs themselves characterize the statements at issue as "wild accusations" and "outlandish claims." *Id.* at ¶¶ 2, 60, 97, 111. They are repeatedly labelled "inherently improbable" and even "impossible." *Id.* at ¶¶ 110, 111, 114, 116 and 185. Such characterizations of the allegedly defamatory statements further support Defendants' position that reasonable people would not accept such statements as fact but view them only as claims that await testing by the courts through the adversary process.

Furthermore, Sidney Powell disclosed the facts upon which her conclusions were based. "[W]hen a defendant provides the facts underlying the challenged statements, it is 'clear that the

---

[11]    Such statements are hardly rare in the political context, particularly in connection with a national presidential election. *See* Fred Lucas, *The Top Five Rigged U.S. Presidential Elections*, Newsweek (Oct. 23, 2016) (attached as Exhibit 6). Allegations of election fraud permeated the 2020 campaign. President Trump himself made this a central a focus of the election in the months leading up to the election. *See, e.g., Rock the Vote v. Trump,* 2020 U.S. Dist. LEXIS 202069, at * 4-6 (N. D. Cal. Sept. 14, 2020) (discussing Trump tweets about election fraud in summarizing allegations in Complaint against presidential Executive Order). Others did as well. *See, e.g., Democracy Partners v. Project Veritas Action Fund,* 453 F. Supp. 3d 261 (D.D.C. 2020) (litigation arising from defendant's YouTube series "Rigging the Election.").

challenged statements represent his own interpretation of those facts,' which 'leav[es] the reader free to draw his own conclusions.'" *Bauman,* 377 F. Supp. 3d at 11 at n. 7 (citations omitted). The documents supporting the various lawsuits were made available to the public on the DTR website, as the Complaint makes clear. *See, e.g.,* Compl. at ¶¶ 6, 77, 82, 85, 87, 89. Similarly, all the documents related to the election lawsuits filed were publicly available through the websites of the various courts.[12] Likewise, on December 23, 2020, the Complaint alleges, Powell published a 270-page document to the Zenger News website. She added a link to the Zenger website on her own website with the caption, "READ IT: SIDNEY POWELL BINDER OF ELECTION FRAUD EVIDENCE." *Id.* at ¶ 149.

In short, the speech at issue here is not actionable. As political speech, it lies at the core of First Amendment protection; such speech must be "uninhibited, robust, and wide-open." *N.Y. Times Co.,* 376 U.S. at 270. Additionally, in light of all the circumstances surrounding the statements, their context, and the availability of the facts on which the statements were based, it was clear to reasonable persons that Powell's claims were her opinions and legal theories on a matter of utmost public concern. Those members of the public who were interested in the controversy were free to, and did, review that evidence and reached their own conclusions—or awaited resolution of the matter by the courts before making up their minds. Under these circumstances, the statements are not actionable. *Keohane,* 882 P.2d at 1299; *NBC Subsidiary,* 879 P.2d at 11, 12; *Milkovich,* 497 U.S. at 20.

---

[12]    *See King v. Whitmer*, United States District Court for the Eastern District of Michigan, Case No. 20-cv-13134; *Bowyer v. Ducey*, United States District Court for the District of Arizona, Case No. 2-20-cv-02321; *Feehan v. Wisconsin Elections Comm'n, et al.,* United States District Court for the Eastern District of Wisconsin, Case No. 2:20-cv-1771; *Pearson, et al. v. Kemp, et al.,* United States District Court for the Northern District of Georgia, Case No. 120-cv-4809.

Finally, the statements in question are not actionable because they were made in the context of pending and impending litigation. The Supreme Court long ago recognized that "the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition." *California Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). And First Amendment protections are not limited to filing lawsuits; they extend to activities that precede or are concomitant with the litigation, such as soliciting clients, publicizing the possibility of legal redress, and gaining public support. *NAACP v. Button*, 371 U.S. 415 (1963). This is so because "'Free trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts." *Id.* at 437 (quoting *Thomas v. Collins*, 323 U.S. 516, 537 (1945)). First Amendment protections apply with particular force where a party "[r]esort[s] to the courts to seek vindication of constitutional rights" or "employs constitutionally privileged means of expression to secure constitutionally guaranteed civil rights." *Id.* at 443, 441. "The exercise … of First Amendment rights to enforce constitutional rights through litigation, as a matter of law, cannot be deemed malicious." *Id.* at 439.

All the allegedly defamatory statements attributed to Defendants were made as part of the normal process of litigating issues of momentous significance and immense public interest. The statements were tightly focused on the legal theories they were advancing in litigation and the evidence they had presented, or were going to present, to the courts in support of their claims that the presidential election was stolen, denying millions of Americans their constitutional rights to "one person, one vote" by deliberately mis-counting ballots, diminishing the weight of certain ballots while enhancing the weight of others and otherwise manipulating the vote tabulation process to achieve a pre-determined result.

Making public announcements as to the status of cases that affect the public interest is an

accepted and time-honored means of keeping the public advised about litigation that may have a profound effect on their lives. Such announcements are routine by lawyers engaged in public interest litigation, including the U.S. Justice Department, https://www.justice.gov/news, state attorneys general, *e.g.* https://ag.ny.gov/press-releases, https://oag.ca.gov/media/news and public interest organizations, *e.g.* http://www.publiccounsel.org/press_releases, https://ij.org/press-releases/. And there are various websites dedicated to helping private lawyers publicize their cases. For example, https://www.lawfirmnewswire.com/ advises: "Legal news from attorneys and law firms drives the success of today's lawyer. No other form of law firm marketing has the ability to reach hundreds of thousands of readers, websites, blogs, news networks, news outlets, and most importantly, potential clients."

Keeping the public informed about ongoing litigation, particularly litigation that affects the public interest, is not merely an accepted and widely practiced strategy in the legal profession, it is an indispensable concomitant of pursuing the case in court. Public disclosure helps gain community and financial support, alert potential clients with similar grievances and identify witnesses who may come forward when they learn of the litigation. As the Supreme Court recognized in *NAACP v. Button*, "broadly curtailing group activity leading to litigation may easily become a weapon of oppression," 371 U.S. at 436, as it would pose "the gravest danger of smothering all discussion looking to the eventual institution of litigation on behalf of the rights of members of an unpopular minority." *Id.* at 434. It would make no sense, and serve no public purpose, to give immunity for statements made during the course of litigation – which are themselves public – but burden lawyers with the threat of billion-dollar defamation verdicts when the same allegations are made at press conferences and news releases announcing and discussing the case. Under the authority of *NAACP v. Button* and the other cases holding that litigation is

protected by the First Amendment, none of the alleged defamatory statements is actionable.

> **4.      Plaintiffs cannot show that the statements at issue were made with malice**

As previously explained Plaintiffs cannot prevail unless they can show by clear and convincing evidence that Defendants made the allegedly defamatory statements with actual malice, meaning that Defendants knew the statements were false or were reckless about their truth or falsity. *N.Y. Times Co.,* 376 U.S. at 279; *Diversified Management,* 653 P.2d at 1106. This Plaintiffs cannot do because, on the face of their Complaint, they disclose that Defendants relied on sworn declarations that supported their statements regarding the vulnerability and manipulability of the Dominion voting machines. *See, e.g.* Complaint ¶ 97 ("During her defamatory media campaign, Powell has asserted that her accusations of Venezuelan election-rigging against Dominion are supported by the declaration of an anonymous purported Venezuelan military officer."); ¶ 98 ("his declaration blithely asserts that Smartmatic software is 'in the DNA' of every vote tabulating company's software and system"); ¶ 105 (declaration of Terpsichore Maras-Lindeman); ¶ 106 (declaration of Russell Ramsland); ¶ 107 (declaration of William Briggs); ¶ 108 (declaration of Navid Keshavarz-Nia); ¶ (declaration of Josh Merritt). As the Complaint acknowledges, these declarations were under oath and many of them were filed in various courts across the country. Public statements based on sworn declarations cannot, as a matter of law, support a finding that Defendants made the allegedly defamatory statements "with the high degree of awareness of their probable falsity demanded by *New York Times*[.]" *Garrison*, 379 U.S. at 74.

Plaintiffs' attempts to impugn the various declarations as unreliable, attack the veracity or reliability of various declarants or point to later statements that are arguably inconsistent are beside the point. Journalists usually repeat statements from sources (usually unsworn, often anonymous) on whom they rely for their stories, and sometimes those statements turn out not to be true. Yet

much of the protection afforded to the press by *N.Y. Times Co. v. Sullivan* would be lost if newspapers and television stations could be drawn into long court battles designed to deconstruct the accuracy of sources on which they rely. Journalists must be free to rely on sources they deem to be credible, without being second-guessed by irate public figures who believe that the journalists should have been more skeptical.

Lawyers involved in fast-moving litigation concerning matters of transcendent public importance, who rely on sworn declarations, are entitled to no less protection. If malice, as that term is defined by *N. Y. Times Co. v. Sullivan*, is to be judged by the kind of hindsight proffered by Plaintiffs, it will render *N. Y. Times Co. v. Sullivan* a dead letter. The true victim will be the public, which will be denied the "uninhibited, robust, and wide-open" discourse that the Supreme Court contemplated. *N.Y. Times Co.*, 376 U.S. at 270.

Fortunately, the protections provided by the First Amendment are far more robust. As the Supreme Court spelled out in *St. Amant v. Thompson,* 397 U.S. 727 (1968),

> reckless conduct is not measured by whether a reasonably prudent man would have published, **or would have investigated before publishing**. There must be sufficient evidence to permit the conclusion that **the defendant in fact entertained serious doubts as to the truth of his publication**. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*Id.* at 731 (emphasis added). The Complaint comes nowhere close to meeting this daunting standard. It alleges no facts which, if proven by clear and convincing evidence, would show that Sidney Powell knew her statements were false (assuming that they were indeed false, which Defendants dispute). Nor have Plaintiffs alleged any facts showing that Powell "in fact entertained serious doubts as to the truth of h[er] publication." In fact, she believed the allegations then and she believes them now.

Plaintiffs also allege that Powell had improper motives for making the statements, claiming

that she did so to raise funds, to raise her public profile and to curry favor with Donald Trump. *See, e.g.,* Compl. at ¶¶ 75, 80, 185. But Plaintiffs offer no facts to support these allegations and, in any event, ill-will or improper motive are not elements of the actual malice standard and are insufficient to establish actual malice. *Old Dominion Branch No. 496 v. Austin,* 418 U.S. 264, 281 (1974). As the D.C. Circuit noted just last week, "[o]ur court … has made clear that evidence of ill will 'is insufficient by itself to support a finding of actual malice.'" *Tah v. Global Witness Publ.,* 2021 U.S. App. LEXIS 8046, at *23 (D.C. Cir. Mar. 19, 2021) (quoting *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) (*en banc*).

The same is true of Plaintiffs' repeated claims that Powell had constructed a "preconceived narrative." Compl. at ¶¶ 1, 8, 52, 53, 55, 96, 111, 117. In the same recent case, the D.C. Circuit held that "'preconceived notions' or 'suspicion[s]' usually do 'little to show actual malice.' . . . After all, virtually any work of investigative journalism begins with some measure of suspicion. Thus, 'concoct[ing] a pre-conceived storyline' by itself is 'not antithetical to the truthful presentation of facts.'" *Tah,* 2021 U.S. App. LEXIS 8046, at *18-19 (quoting *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 597 (D.C. Cir. 2016) (alteration in original). "It would be sadly ironic for judges in our adversarial system to conclude … that the mere taking of an adversarial stance is antithetical to the truthful presentation of facts." *Tavoulareas*, 817 F.2d at 795.

In another futile attempt to allege actual malice, Plaintiffs repeatedly parrot *St. Amant's* "inherently improbable" language while attacking Powell's evidence. Compl. at ¶¶ 110-111, 114-116, 185. But there is nothing "inherently improbable" about questioning the reliability of a voting system repeatedly rejected by at least one state because "they had a vulnerability to fraud and unauthorized manipulation." Brad Johnson, *Texas Rejected Use of Dominion Voting System Software Due to Efficiency Issues*, THE TEXAN (Nov. 19, 2020) (quoting Texas Attorney General

Ken Paxton) (attached as Exhibit 7). In fact, as Plaintiffs' own Director of Product Strategy and Security, Dr. Eric Coomer, admitted under oath, "**all computers can be hacked with enough time and access**[.]" *Curling,* 2020 U.S. Dist. Lexis 188508, at \*47 (emphasis supplied).

The only purported facts Plaintiffs cite to support this conclusory allegation is that a purportedly "independent audit" and Georgia's Republican governor and secretary of state refuted Powell's claims; that then Attorney General William Barr did the same; and that Powell "has not explained how a decades-old election-rigging conspiracy … could have evaded detection for so long." *Id.* at ¶ 116. But the failure to explain, or even discuss, contrary contentions is not evidence of malice. The same is true of allegations that Powell "purposefully avoided checking" (*id.* at ¶ 105) publicly available sources that undercut her claims. But this is not nearly enough to support a claim of actual malice. *See, e.g., Arpaio v. Cottle,* 2019 U.S. Dist. LEXIS 236331, at \*2 (D.D.C. Dec. 3, 2019) (that defendants "purposefully avoided interviewing anyone who could contradict their story" and "purposefully avoided interviewing sources and following fundamental reporting practices in order to avoid the truth" does not demonstrate actual malice). "[E]ven an extreme departure from professional standards' is insufficient to prove actual malice on its own." *Tah,* 2021 U.S. App. LEXIS 8046, at \*20 (quoting *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989)).

At the end of the day, Plaintiffs' claims of actual malice are reduced to their allegations that Powell's evidence and witnesses were unreliable or should not have been believed. *See, e.g.,* Compl. at ¶¶ 79-82, 87-96, 104-108. In support, Plaintiffs allege that certain witnesses did not draft their own declarations, but rather they were drafted by counsel. *Id.* at ¶¶ 6, 90, 97. The suggestion that this undermines credibility is risible. *See, e.g., Zimmerman v. Hanks,* 2000 U.S. App. LEXIS 33710, at \*6 (7th Cir. Dec. 19, 2000) ("It is common practice for lawyers to draft affidavits for

their client's signature; we know of no court that refuses to consider an affidavit simply because it is not personally written by the witness."). Likewise, Plaintiffs' claim that Powell's legal contentions and conclusions are unsupported by the evidence does not demonstrate malice; rather it is a legal conclusion itself. Plaintiffs were required to allege facts that would "permit the conclusion that [Powell] **in fact entertained serious doubts** as to the truth of [her] publication." *St. Amant,* 390 U.S. at 731 (emphasis added). "The speaker's failure to meet an objective standard of reasonableness is insufficient; rather the speaker must have actually 'harbored subjective doubt.'" *Tah,* 2021 U.S. App. LEXIS 8046, at \*16 (quoting *Jankovic*, 822 F.3d at 589). Plaintiffs have failed to allege anything of the sort and hence the Complaint must be dismissed.

### E.     The Complaint fails to state a claim for defamation against DTR

Aside from the fact that the purported defamatory statements alleged in the Complaint are not actionable under Colorado law, the Complaint's defamation claims against DTR should also be dismissed because such allegations fail to state a claim for relief. Fed. R. Civ. P. 12(b)(6).

Under Colorado law, a well pled defamation claim must include sufficient allegations that (a) a defamatory statement concerning another (b) was published to a third party (c) with culpability amounting to at least negligence on the part of the publisher and (d) that plaintiff was damaged because of the defamation. *Brown v. O'Bannon*, 84 F. Supp. 2d 1176, 1181 (D. Colo. 2000). Furthermore, because the speech at issue involves a matter of important public concern, Plaintiffs here must also allege and prove by clear and convincing evidence that that the statements were made with actual malice. *Diversified Management,* 653 P.2d at 1106. Plaintiff's Complaint does not plead the existence of any of these elements regarding DTR. Thus, its claim for defamation against DTR should be dismissed.

The Complaint's substantive allegations about DTR are limited to the following: that certain materials referenced in the Complaint are "available at" DTR's website (*e.g.*, Compl. ¶¶ 6

n.6, 17 n.8, 57 n.31, 58 n.33, 85 n.52, 90 n.59, 175 n.125); that DTR is the "corporate form" for "Powell's fundraising website that was not created until December 1, 2020, *after* Powell had appeared on television to solicit donations to the website" (*id.* at ¶ 17) (emphasis in original); that DTR shares a mailing address with Sidney Powell, P.C. (*id.* at ¶ 21); that Powell controls the content of DTR's website (*id.* at ¶ 170); that attorneys employed by Sidney Powell's law firm sign pleadings under DTR's name (*id.* at ¶ 167); that DTR regularly transacts business in the District by soliciting donations from residents and by funding the work of the other two Defendants (*id.* at ¶ 26); that DTR maintains an office in D.C. and employs attorneys who practice law in D.C. (*id.*); that DTR is the alter ego of Defendant Powell (*id.*); that Powell stated that DTR is a non-profit which helps fund Powell's litigation defense (*id.* at ¶ 32); and that Sidney Powell and Sidney Powell P.C. advertise DTR to solicit donations (*id.* at ¶ 175).

None of these allegations, taken separately or combined, comes close to pleading a plausible claim of defamation under the *Iqbal* and T*wombly* standards. First, the Complaint contains no allegation that DTR was the individual or entity that made any of the defamatory statements about Plaintiff alleged in the Complaint. The most the Complaint alleges is that certain of these statements might be available at DTR's website, but this is no different than the allegations made throughout the Complaint that these statements are also available at many other widely available sites.[13]

Moreover, the Complaint includes no allegation regarding the third element of a viable defamation claim, namely that the publisher had the requisite culpability at the time the alleged

---

[13]     *See generally* Compl. ▐ 181 nn. 131-154, noting publication of various statements at websites such as Johnfrederckradio.com, www.theepochtimes.com, www.youtube.com; www.newsmax.com, www.cbsnews.com, www.washingtonexaminer.com, **www.c-span.org**, www.iheart.com/podcast, foxnews.com, and criticalmention.com.

publication was made. Because the subject matter of the alleged statements at issue involved matters of public concern, Plaintiff would need to show, and would at least need to allege in its Complaint, that DTR acted with actual malice. No plausible factual allegations supporting malice are made anywhere in the Complaint. Finally, because Plaintiffs do not allege a viable claim that DTR published any statements which defamed Plaintiffs, the Complaint cannot satisfy the final element of a plausible defamation claim – that DTR's defamatory statements (which have not been alleged to exist) damaged Plaintiffs.

In sum, Plaintiffs' Complaint fails to allege a plausible claim of defamation against DTR. Consequently, Defendants respectfully request that DTR be dismissed from the litigation.

## IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR DECEPTIVE TRADE PRACTICES

Plaintiffs claim that the political speech at issue in this case "constitute[s] deceptive trade practices in violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372(a)(8), as they disparage Dominion's goods and services by false and misleading representations of fact." Complaint ¶ 192. The claim fails on its face because Plaintiffs make no allegation that Sidney Powell, "a media figure" and "attorney; Sidney Powell, PC, a law practice; or DTR, a (c) Corp., at all relevant times, were engaged in trade and commerce of goods, such as election voting systems.

"'[T]he publication, sale and distribution of matter concerning an article of trade by a person not engaged or financially interested in commerce in that trade is not an unfair or deceptive act or practice[.]'" *Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists*, 625 F. Supp. 2d 1310, 1318 (D. Ga. 2008) (quoting *Scientific Mfg. Co. v. FTC*, 124 F.2d 640, 644, 34 F.T.C. 1793 (3d Cir. 1941)). In *Brominated Solvents*, the court "struggle[d] to accept Plaintiffs' characterization of their UDTPA claims"—which the court characterized as

"novel" and "an end run around" the First Amendment—and "remain[ed] unconvinced that the cause of action created in the UDTPA should be able to stifle [the] dissemination of [the] opinions" of someone "neither in the business of selling or distributing the [products] at issue, nor in the business of selling or distributing products similar to those sold and distributed by Plaintiffs." *Id.* Plaintiffs make the same baseless UDTPA claim here.

Moreover, even in cases potentially involving trade and commerce, it has been held that a statement that is not defamatory because it is protected opinion and not actionable under the UDTPA. *See Moulton v. VC3*, 2000 U.S. Dist. LEXIS 19916, *10-11, 2001-1 Trade Cas. (CCH) P73,202 (N.D. Ga. Nov. 6, 2000) (citing *Dominy v. Shumpert*, 235 Ga. App. 500, 506, 510 S.E.2d 81 (1998)). As explained above, Defendants' complained-of statements are, among other things, protected opinion.

Accordingly, this claim should also be dismissed as against all Defendants for failure to state a claim.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that their motion to dismiss for lack of personal jurisdiction or improper venue be granted, or that the Court transfer the case to the Northern District of Texas. Should the court reach the Complaint's substantive allegations, then it should dismiss the Complaint in its entirety for failure to state a claim.

Dated: March 22, 2021

Respectfully submitted,

 /s/ Lawrence J. Joseph
Howard Kleinhendler

N.Y. Bar No. 2657120, admitted *pro hac vice*

HOWARD KLEINHENDLER ESQUIRE

369 Lexington Ave. 12th Floor

New York, New York 10017

Tel: (917) 793-1188

Email: howard@kleinhendler.com

*Counsel for Sidney Powell, Sidney Powell, P.C.*

Jesse R. Binnall

D.C. Bar No. 79292

BINNALL LAW GROUP

717 King Street, Suite 200

Alexandria, VA 22314

Tel: (703) 888-1943

Email: jesse@binnall.com

*Counsel for Defending The Republic, Inc.*

Lawrence J. Joseph

D.C. Bar No. 464777

LAW OFFICE OF LAWRENCE J. JOSEPH

1250 Connecticut Av NW Suite 700-1A

Washington, DC 20036

Tel: (202) 355-9452

Fax: (202) 318-2254

ljoseph@larryjoseph.com

*Local Counsel for All Defendants*