**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

US DOMINION, INC., DOMINION VOTING
SYSTEMS, INC., and DOMINION VOTING
SYSTEMS CORPORATION,

      Plaintiffs,

      v.

SIDNEY POWELL, SIDNEY POWELL, P.C., and
DEFENDING THE REPUBLIC, INC.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:21-cv-00040-CJN

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Lawrence J. Joseph
D.C. Bar No. 464777
LAW OFFICE OF LAWRENCE J. JOSEPH
1250 Connecticut Av NW Suite 700-1A
Washington, DC 20036
Tel: (202) 355-9452
Fax: (202) 318-2254
ljoseph@larryjoseph.com

*Counsel for All Defendants*

Howard Kleinhendler
N.Y. Bar No. 2657120, admitted *pro hac vice*
HOWARD KLEINHENDLER ESQUIRE
369 Lexington Ave. 12th Floor
New York, New York 10017
Tel: (917) 793-1188
Email: howard@kleinhendler.com

*Counsel for Sidney Powell, Sidney Powell, P.C.*

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

Introduction ..................................................................................................................... 1

Argument ......................................................................................................................... 2

I.      Plaintiffs make significant concessions. ............................................................ 2

II.     This court lacks personal jurisdiction over defendants. ..................................... 3

        A.      Plaintiffs fail to establish jurisdiction under D.C. CODE § 13-
                423(a)(1). ................................................................................................. 3

        B.      Plaintiffs fail to establish jurisdiction under D.C. CODE § 13-
                423(a)(3) or (a)(4). .................................................................................. 7

        C.      Plaintiffs' alter ego allegations are insufficient as a matter of law. ....... 10

III.    Venue is improper and should be transferred. .................................................. 12

IV.     The statements at issue are protected and not actionable. ................................ 14

V.      Plaintiffs cannot establish actual malice. ......................................................... 19

VI.     The complaint fails to state a claim against DTR. ............................................ 23

VII.    The complaint fails to state a claim under the Georgia Deceptive Trade
        Practices Act. .................................................................................................... 24

Conclusion ..................................................................................................................... 25

## **TABLE OF AUTHORITIES**

### **CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................14

*\*Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC*,
   2020 U.S. Dist. LEXIS 197814 (D.D.C. October 23, 2020) ......................... 7-8

*Atlantigas Corp. v. Nisource, Inc.*,
   290 F. Supp. 2d 34 (D.D.C. 2003) ....................................................5

*\*Bauman v. Butowsky*,
   377 F. Supp. 3d 1 (D.D.C. 2019) ....................................................17

*Betz v. Aidnest*,
   2018 U.S. Dist. LEXIS 183632 (D.D.C. October 26, 2018) ............................4

*Bigelow v. Garrett*,
   299 F. Supp. 2d 34 (D.D.C. 2018)................................................ 4-6, 10

*\*Blumenthal v. Drudge*,
   992 F. Supp. 44 (D.D.C. 1998) ..................................................... 7-8

*Burman v. Phoenix Worldwide Indus.*,
   437 F. Supp. 2d 142 (D.D.C. 2006) ................................................. 8-9

*City of Palm Beach v. United States Army Corps of Eng'rs*,
   317 F. Supp. 3d 150 (D.D.C. 2018) ..................................................13

*Corsi v. Caputo*,
   2020 U.S. Dist. LEXIS 60958 (D.D.C. April 7, 2020).................................8

*Dooley v. United Technologies Corp.*,
   786 F. Supp. 65 (D.D.C. 1992) .......................................................5

*Enigma Software Grp., USA, LLC v. Bleeping Computer LLC*,
   194 F. Supp. 3d 263 (D.D.C. 2016) ..................................................19

*Farmer v. Disability Program Manager*,
   2020 U.S. Dist. LEXIS 90416 (D.D.C. May 21, 2020)..................................6

*Flocco v. State Farm Mut. Ins. Co.*,
   752 A.2d 147 (D.C. 2000) ............................................................5

*Flowers v. Carville*,
   310 F. 3d 1118 (9th Cir. 2002) .....................................................20

*Forest Cnty. Potawatomi Cmty. v. United States*,
169 F. Supp. 3d 114 (D.D.C. 2016) ...............................................................................13

*\*Garrison v. Louisiana*,
379 U.S. 64 (1964) ..................................................................................................... 20-21

*Gross v. N.Y. Times Co.*,
82 N.Y. 2d 146 (1993) ..................................................................................................19

*Harris v. City of Seattle*,
152 F. App'x 565 (9th Cir. 2005) ...................................................................................21

*\*Holder v. Haarman & Reimer Corp.*,
779 A.2d 264 (D.C. 2001) ........................................................................................ 3-4, 9

*\*Hourani v. Psybersolutions, LLC*,
164 F. Supp. 3d 128 (D.D.C. 2016) ............................................................................ 7-8

*Howser v. Pearson*,
95 F. Supp. 936 (D.D.C. 1951) .......................................................................................8

*\*IMAPizza LLC v. At Pizza, Ltd.*,
334 F. Supp. 3d 95 (D.D.C. 2018) ..............................................................................4, 9

*IMark Mktg. Servs, LLC. v. Geoplast S.p.A.*,
753 F. Supp. 2d 141 (D.D.C. 2010) .............................................................................12

*Int'l Brominated Solvent Ass'n v. Am. Conf. of Governmental Indu. Hygienists*,
625 F. Supp. 2d 1310 (D. Ga. 2008) ............................................................................24

*Kelleher v. Dream Catcher, L.L.C.*,
263 F. Supp. 3d 322 (D.D.C 2017) ..............................................................................11

*\*Keohane v. Stewart*,
882 P.2d 1293 (Colo. 1994) ..........................................................................................14

*Lapointe v. Van Note*,
2004 U.S. Dist. LEXIS 27691 (D.D.C. November 9, 2004) .............................................8

*Lewy v. S. Poverty Law Ctr., Inc.*,
723 F. Supp. 2d 116 (D.D.C. 2010) ...............................................................................9

*Lopes v. Jetset DC, LLC*,
994 F. Supp. 2d 135 (D.D.C. 2014) ......................................................................... 11-12

*McFarlane v. Sheridan Square Press*,
91 F.3d 1501 (D.C. Cir. 1996) ................................................................................. 22-23

*McWilliams Ballard Inc. v. Broadway Management Co.,*
636 F. Supp. 2d 1 (D.D.C. 2009) ...................................................................12

*Milkovich v. Lorain Journal Co.,*
497 U.S. 1 (1990) ................................................................................ 17-18

*Moldea v. New York Times Co.,*
15 F. 3d 1137 (D.C. Cir. 1994) ............................................................ 17-18

*Motir Servs. v. Ekwun,*
191 F. Sup. 3d 98 (D.D.C. 2016) ...............................................................11

*Moulton v. VC3,*
2000 U.S. Dist. LEXIS 19916 (N.D. Ga. Nov. 6, 2000) ..............................25

*N.Y. Times Co. v. Sullivan,*
376 U.S. 254 (1964)........................................................... 15-16, 19, 22, 24

*NAACP v. Button,*
371 U.S. 415, 443, 441 (1963)....................................................................15

*Norair Engineering Assoc.'s, Inc. v. Noland Co.,*
365 F. Supp. 740 (D.D.C. 1973) ................................................................10

*Parsi v. Daiolislam,*
890 F. Supp. 2d 77 (D.D.C. 2012) ..............................................................22

*People v. Ford,*
773 P.2d 1059 (Colo. 1989).........................................................................17

*Reuber v. United States,*
750 F.2d 1039 (D.C. Cir. 1984) ....................................................................8

*Secrist v. Harkin,*
874 F.2d 1244 (7th Cir. 1989) .....................................................................15

*Slaughter v. Friedman,*
32 Cal. 3d 149 (1982) ..................................................................................19

*St. Amant v. Thompson,*
397 U.S. 727 (1968)...............................................................................19, 22

*Stephenson v. Cox,*
223 F. Supp. 2d 119 (D.D.C. 2002) ..............................................................2

*Tah v. Global Witness Publ., Inc.,*
991 F.3d 231 (D.C. Cir. 2021) ............................................................. 20-22

*Tavoulareas v. Piro,
    817 F.2d 762 (D.C. Cir. 1985)..........................................................................22

Thompson Hine LLP v. Smoking Everywhere Inc.,
    840 F. Supp. 2d 138 (D.D.C. 2012), aff'd sub nom.Thompson
    Hine, LLP v. Taieb, 734 F.3d 1187 (D.C. Cir. 2013) .......................................3

Watts v. United States,
    394 U.S. 705 (1969)........................................................................................15

Wilbanks v. Wolk,
    121 Cal. App. 4th 883 (App. Ct. 2004).............................................................19

Zimmerman v. Al Jazeera Am., LLC,
    246 F. Supp. 3d 257 (D.D.C. 2017)..................................................................22

## STATUTES

U.S. CONST. amend. I................................................................................... 15-16

28 U.S.C. § 1391(b)(2) .......................................................................................12

28 U.S.C. § 1404(a) ............................................................................................13

D.C. CODE § 13-423(a)..........................................................................................3

D.C. CODE § 13-423(a)(1) .................................................................................. 3-5

D.C. CODE § 13-423(a)(3) ................................................................................ 2, 7-8

D.C. CODE § 13-423(a)(4) .............................................................................. 2, 7-10

D.C. CODE § 13-423(b) ...................................................................................... 3-5

Georgia Deceptive Trade Practices Act,
    O.C.G.A. §§ 10-1-370-375 ......................................................................... 24-25

## RULES AND REGULATIONS

FED. R. CIV. P. 12(b)(2)......................................................................................3, 7

FED. R. APP. P. 32.1(a) ........................................................................................21

Ninth Circuit Rule 36-3(a) ...................................................................................21

## INTRODUCTION

Defendants Sidney Powell, Defending the Republic, Inc. ("DTR"), and Sidney Powell, P.C. (collectively "Defendants") respectfully file this reply in support of their Motion to Dismiss (ECF #22). Because the opposition ("Pls.' Opp'n") filed by plaintiffs Dominion Voting Systems Corporation, U.S. Dominion, Inc., and Dominion Voting Systems, Inc. (collectively "Plaintiffs") does not establish this Court's jurisdiction over Defendants or proper venue, this Court should dismiss this action on those bases. If the Court maintains jurisdiction, the action should be dismissed for failure to state a defamation or deceptive-practices claim.

Plaintiffs admittedly conduct no business in this district, suffered no injury in this district, and do not reside or own real estate in this district. Defendants all reside in Texas. So what is this case doing here? One can speculate that Plaintiffs wanted to avoid the difficulty of sustaining their case in their home state of Colorado, where defamation laws protect the speech defendants are accused of making. Or perhaps Plaintiffs felt a Texas jury would somehow come to doubt their election integrity claims. After all, Texas banned their voting machines—*twice*—leading up to the 2020 election. Whatever venue is proper for Plaintiffs to defend their voting equipment and software as free from all intrusion and manipulation, it is not this Court.

To their credit however, in a rare moment of candor, Plaintiffs concede that as a public figure they must establish that Ms. Powell—the only human among defendants capable of uttering defamatory statements—acted with malice. Thus, if this Court somehow finds jurisdiction, this case must be dismissed. Nowhere in U.S. jurisprudence has a court found someone liable for defamation for publishing the basis of claims in four federal lawsuits supported by a combination of over 170 separate affidavits, declarations, and expert reports. Defs.' Mem. at 33 n.12. This Court cannot hold Ms. Powell liable for pressing her clients' claims based on ample evidence, even assuming—as the Court must for a motion to dismiss—Plaintiffs' allegations in their complaint.

1

## ARGUMENT

**I.     PLAINTIFFS MAKE SIGNIFICANT CONCESSIONS.**

"[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case." *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002). By failing to address Defendants' arguments, Plaintiffs' Opposition makes several concessions, including the following:

- Plaintiffs have no presence in, business in or connections to the District of Columbia whatsoever (*see* Defs.' Mem. at 2);

- Sidney Powell is a resident of Dallas, Texas, does not reside in, own real property in or have a law or business office in the District of Columbia (*see* Defs.' Mem. Exhibit 2);

- Defending the Republic ("DTR") is a Texas corporation with its principal place of business in Dallas, Texas, does not have and never has had a physical office in the District of Columbia, does not transact business in the District, does not employ any attorneys, and has never had any attorneys appear on its behalf in District of Columbia courts (*see* Defs.' Mem. Exhibit 1):

- Plaintiffs are public figures, this case involves matters of public concern, and the substantive law of Colorado—including the Colorado Constitution's enhanced protection of free speech rights—applies in this case (*see* Defs.' Mem. at 20-27);

- Plaintiffs' Complaint does not allege that Plaintiffs sustained any injury in the District of Columbia, rendering the Complaint facially defective under D.C. CODE § 13-423(a)(3) and (a)(4) (*see* Defs.' Mem. at 12).

As will be discussed below, these concessions figure significantly into the reasons that Defendants' Motion to Dismiss should be granted.

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

Because Plaintiffs have not established personal jurisdiction over any Defendant, this action must be dismissed. FED. R. CIV. P. 12(b)(2).

### A.   Plaintiffs fail to establish jurisdiction under D.C. CODE § 13-423(a)(1).

As demonstrated in Defendants' motion, in order to establish jurisdiction under § 13-423(a)(1) of the long-arm statute, a plaintiff must show that i) the defendant transacted business in the District, ii) the claim arose from that business, and iii) the business constituted minimum contacts such that the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. *Thompson Hine LLP v. Smoking Everywhere Inc.*, 840 F. Supp. 2d 138, 142 (D.D.C. 2012), *aff'd sub nom. Thompson Hine, LLP v. Taieb*, 734 F.3d 1187 (D.C. Cir. 2013).

Not just any kind of contact with the District constitutes "transacting business" under the statute. Rather, "the plaintiff must show that the defendant has purposefully engaged in some *commercial or business-related activity directed at District residents.*" *Holder v. Haarman & Reimer Corp.*, 779 A.2d 264, 270-71 (D.C. 2001) (emphasis supplied).

Plaintiffs argue that, if they can establish that any of the defendants "purposefully engaged in some type of commercial or business-related activity directed at District residents ... *[t]hat is the end of the inquiry*." Pls.' Opp'n at 28 (emphasis supplied). They are clearly wrong. Rather, as the text of the long-arm statute expressly states, when jurisdiction over a person is predicated under any of the subsections of § 13-423(a), "only a claim for relief arising from acts enumerated in this section may be asserted against him." § 13-423(b). Plaintiffs cannot meet these standards with respect to any of the Defendants.

As Defendants' motion demonstrates, the *only* specific acts by Sidney Powell alleged to fulfill the requirements of *both* § 13-423(a)(1) (transacting business in the District) *and* § 13-423(b) are her appearance at the November 19, 2020 press conference (*see* Compl. at ¶¶ 1, 24, 27, 61-63, 66, 87, 181(k) and 187); her interviews with Fox News, Fox Business News and The Epoch Times (*see* Complaint ¶¶ 181(b), 181(e) and 181(aa)); and her publication of a binder to Zenger News while in the District (¶ 181(ff)). Defs.' Mem. at 9.

Plaintiffs do not dispute this characterization. Nor, for that matter, do Plaintiffs even claim that such activities by Powell constitute "transacting business" under the long-arm statute, which would be contrary to well-established precedent. *See*, *e.g.*, *Haarmann*, 779 A.2d at 270-71 ("transacting business" requires commercial or business-related activities); *IMAPizza LLC v. At Pizza, Ltd.,* 334 F. Supp. 3d 95, 111 (D.D.C. 2018) ("transacting business refers to 'business transactions' in the everyday sense of commercial deal-making activities like negotiating or performing contracts"). The issue is thus conceded.

Instead, Plaintiffs focus on a number of other alleged activities by Powell (and the other defendants) that either fail to constitute the transacting of business, are unrelated to Plaintiffs' claims, or both. For example, Plaintiffs assert that "Powell and her fundraising website defamed Dominion while advertising and soliciting donations from residents in D.C. in support of the defamatory campaign." Pls.' Opp'n at 27. Putting aside for a moment the unsupported conflation of "Powell" and "her fundraising website," this Court "has consistently held that the maintenance of a website that is merely accessible by District of Columbia residents is insufficient to establish the minimum contacts necessary to establish personal jurisdiction over an out-of-state defendant." *Betz v. Aidnest*, 2018 U.S. Dist. LEXIS 183632, at *21-22 (D.D.C. October 26, 2018) (citing *Doe v. Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005)); *see also Bigelow v. Garrett*, 299 F. Supp. 2d

34, 46 (D.D.C. 2018) (allegation that defendant raised funds from and communicated with District residents insufficient to show that defendants solicited business, engaged in persistent course of conduct or derived substantial revenue from District activity).

Likewise, Plaintiffs allege that Powell promoted her website to sell books and t-shirts, represented Michael Flynn, employed two members of the D.C. Bar to work in the District, held out DTR as having a District address, and travelled to and rented office space and hotel rooms in the District. Pls.' Opp'n at 27. But even if these allegations were true, they are irrelevant, as they are unrelated to Plaintiffs' claimed injury, which arises solely from alleged defamatory statements, as required by § 13-423(b). *See Dooley v. United Technologies Corp.*, 786 F. Supp. 65, 71 (D.D.C. 1992) (noting that "the reach of a Court's jurisdiction under the 'transacting business' clause is limited by Section 423(b)"). They also fail to establish a basis for jurisdiction over Powell, as opposed to DTR.

Simply put, Plaintiffs' opposition does not proffer any facts or law that would support the exercise of personal jurisdiction under § 13-423(a)(1) over defendant Sidney Powell.

A similar conclusion follows with respect to defendants DTR and Sidney Powell, P.C. Notably, it is Plaintiffs' obligation to establish personal jurisdiction individually with respect to each defendant. *See Flocco v. State Farm Mut. Ins. Co.*, 752 A.2d 147, 162 (D.C. 2000). Plaintiffs "cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

Furthermore, contrary to Plaintiffs' implication, it is not sufficient to claim that each defendant was an agent for the other, without spelling out how it is that each defendant's contacts are sufficient to establish personal jurisdiction. *See*, *e.g.*, *id.* (noting that when an individual's

contacts with the jurisdiction were to perpetuate a corporation's business, rather than to transact business as an individual, the defendant cannot be sued individually under the "transacting business" prong of the long-arm statute).

Plaintiffs' Opposition makes no effort to assess the contacts of these Defendants individually. In any event, and as discussed above, the allegations of the Complaint are wholly insufficient to establish personal jurisdiction under the "transacting business" requirement of the long-arm statute against any of the Defendants. Plaintiffs have not disputed that DTR does not transact business in the District, does not employ any attorneys and does not have a physical presence here. DTR's maintenance of a website that is capable of being accessed by District residents does not constitute transacting business. *Bigelow*, 299 F. Supp. 2d at 46. Nor does DTR's use of a mailing address suffice to establish the transaction of business or a basis for personal jurisdiction. *See*, *e.g.*, *Farmer v. Disability Program Manager*, 2020 U.S. Dist. LEXIS 90416, at 8 (D.D.C. May 21, 2020) (holding a D.C. mailing address alone insufficient to confer general personal jurisdiction).

As for Sidney Powell, P.C., there are no specific allegations of transacting business, other than Powell's representation of Michael Flynn in a case wholly unrelated to Plaintiffs. Representing a client in federal court does not render an out-of-jurisdiction lawyer subject to the general personal jurisdiction of the state or district where the federal court is located. And, again, jurisdiction must be established separately as to each defendant, but Plaintiffs make no effort to identify specific acts by Sidney Powell, P.C. that might constitute transacting business in the District. The jurisdictional allegations are insufficient on their face.

**B.** **Plaintiffs fail to establish jurisdiction under D.C. CODE § 13-423(a)(3) or (a)(4).**

Plaintiffs spend much time addressing whether Defendants were physically present in the District when the alleged tortious actions occurred (Pls.' Opp'n at 29-30) and whether Defendants' activities in the District establish a persistent course of conduct for purposes of the long-arm statute (*id.* at 31-33). These are straw men. The central point of Defendants' argument under § 423(a)(3) and § (a)(4) is that Plaintiffs' Complaint fails to allege any *injury* in the District, and that Plaintiffs cannot establish such injury for purposes of the statute. Defs.' Mem. at 11-13. Plaintiffs largely ignore, and ultimately fail to refute this argument.

First, Plaintiffs do not dispute that both subsections (a)(3) and (a)(4) of the long-arm statute expressly require Plaintiffs to allege and establish that they suffered an injury "in the District." *See*, *e.g.*, *Hourani v. Psybersolutions, LLC*, 164 F. Supp. 3d 128, 138 (D.D.C. 2016). Nor do Plaintiffs dispute that their Complaint does not allege that they were injured in the District. Indeed, the only allegations that remotely suggest any injury to Plaintiffs concern scrutiny of its contracts by state legislators in Arizona, Florida, Louisiana, Pennsylvania, Michigan, and Georgia. Compl. at ¶¶ 141-42. In other words, Plaintiffs concede that their Complaint fails on its face to establish a basis for personal jurisdiction under subsections (a)(3) and (a)(4). For this reason alone, the Complaint must be dismissed for failing to adequately allege jurisdiction. FED. R. CIV. P. 12(b)(2).

Furthermore, Plaintiffs' Opposition does not contain any declaration or other exhibit claiming or even suggesting that Plaintiffs suffered an injury in the District. Indeed, as was the case in *Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC*, 2020 U.S. Dist. LEXIS 197814, at *13 (D.D.C. October 23, 2020), Plaintiffs' Complaint and brief "are devoid of any allegation that [they] were ever physically present in the District[.]" And Plaintiffs completely ignore the directly on-point holdings in *Ashhab-Jones*, *Blumenthal v. Drudge*, 992 F. Supp. 44, 53

(D.D.C. 1998), *Hourani*, 164 F. Supp. 2d at 138, and *Corsi v. Caputo*, 2020 U.S. Dist. LEXIS 60958, at *8 (D.D.C. April 7, 2020).

Notwithstanding these authorities, Plaintiffs make the specious claim that it is "axiomatic" that defamatory statements cause injury where they are published. Pls.' Opp'n at 30. As the foregoing authorities amply establish, that is clearly not the case with respect to the District's long-arm statute. Nor do the authorities Plaintiffs cite support their conclusion. *Howser v. Pearson*, 95 F. Supp. 936 (D.D.C. 1951), did not even involve the District's long-arm statute, but rather addressed a choice-of-law issue involving where the tortious act occurred. *Id.* at 937-38. In *Lapointe v. Van Note*, 2004 U.S. Dist. LEXIS 27691 (D.D.C. November 9, 2004), Judge Walton expressly *declined* to decide the issue of where the plaintiff's injury occurred as unnecessary, because he determined that the plaintiff had failed to establish jurisdiction under subsections (a)(3) and (a)(4) on other grounds. *Id.* at **18-19 & n. 5. Likewise, *Reuber v. United States*, 750 F.2d 1039 (D.C. Cir. 1984), affirmed dismissal of the plaintiff's action because of his failure to satisfy the long-arm statute's other requirements for establishing jurisdiction (no tortious act or persistent course of conduct by defendants in the District). *Id.* at 1049-51. The court's footnoted comment on injury is, at best, *dicta*.[1]

---

[1]     More to the point, *Reuber* cited the Supreme Court's then-recent decision in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), for its comment that the failure to establish a pre-existing reputation in the District was not necessarily fatal to plaintiff's claim. 750 F.2d at 1049 n.12. *Keeton* is of no relevance here because the long-arm statute at issue there not only extended to the limits of due process, 465 U.S. at 774, it had recently been amended to eliminate any requirement that a tort be committed against a New Hampshire resident. *Id.* at 777. By contrast, subsections (a)(3) and (a)(4) of the District's long-arm statute *do not* extend to the limits of due process, but rather constitute "a precise and intentionally restricted tort section which stops short of the outer limits of due process." *Burman v. Phoenix Worldwide Indus.*, 437 F. Supp. 2d 142, 152 (D.D.C. 2006) (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004)).

Additionally, and as Plaintiffs concede, specific jurisdiction may be exercised over non-resident defendants under sub-section (a)(4) only if the defendants satisfy one of three "plus factors": regularly doing business in the District, engaging in a persistent course of conduct, or deriving substantial revenue from services rendered in the District. *See* § 13-423(a)(4); *see also Lewy v. S. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 123 (D.D.C. 2010). As this Court has noted, the contacts necessary to establish that a party regularly does business or engages in a persistent course of conduct must at least be continuing in character. *Burman*, 437 F. Supp. 2d at 153. Those continuing operations must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." *Id.* (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 318 (1945)). And the "substantial revenue" prong means "enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be haled into court there." *Id.* (quoting *McFarlane v. Esquire Magazine*, 1994 U.S. Dist. LEXIS 9497, at *17 (D.D.C. June 8, 1994)).

The Complaint makes no such allegations. As noted in Section II.A, *supra*, Sidney Powell's appearances at a press conference or on television broadcasts from a District hotel room do not constitute "transacting business." *Haarmann*, 779 A.2d at 270-71; *IMAPizza LLC*, 334 F. Supp. 3d at 111. The only other business Sidney Powell is alleged to have transacted is her representation of Michael Flynn, who is not a resident of the District,[2] in this Court and the D.C. Circuit. Although Plaintiffs make no allegations regarding the amount of revenue Ms. Powell derived from this representation, it is certain that it was not "substantial" enough to have a commercial impact in the

---

[2]     When Powell represented Gen. Flynn, he was a resident of Rhode Island. *See* https://www.thenewportbuzz.com/thieves-steal-trump-flag-from-lt-general-flynns-home/27209 (last visited May 24, 2021).

District, nor would an attorney merely appearing in a federal case in this District expect to be haled into court here on wholly unrelated matters. The same holds true for Sidney Powell, P.C., against whom the only specific allegations of activity relate to the representation of General Flynn.

As for DTR, as demonstrated above and by the uncontradicted declaration of Mr. Byrne, it transacts no business in the District, has no physical presence here, does not employ any attorneys (either in the District or elsewhere) and has not engaged in litigation here. There is no allegation that it derives substantial revenue from activities in the District, and the claim that it has raised money from District residents is insufficient to confer jurisdiction as a matter of law. *Bigelow*, 299 F. Supp. 2d at 46.

Finally, whether or not Defendants engaged in activities to satisfy the "plus factors" requirement of sub-section (a)(4) is irrelevant unless Plaintiffs can show an injury in the District, which they neither allege nor attempt to establish. *Norair Engineering Assoc.'s, Inc. v. Noland Co.*, 365 F. Supp. 740, 743 (D.D.C. 1973). The Complaint fails to establish any basis for personal jurisdiction, and accordingly should be dismissed.

### C.      Plaintiffs' alter ego allegations are insufficient as a matter of law.

Defendants' Motion showed that the Complaint fails to allege the facts necessary to support an alter ego or "veil piercing" claim under District of Columbia law, such as whether the corporate form has been used to perpetuate a fraud, corporate formalities have been disregarded, or the corporation has been inadequately capitalized. Defs.' Mem. at 14. Plaintiffs do not deny that the Complaint fails to make any such allegations. Instead, the Opposition falsely states or implies that certain of these factors—which are nowhere to be found in the Complaint—were in fact alleged in the pleading. For example, to support the fraud component of its alter ego claim, the Opposition states that "Powell seeks to abuse the corporate forms she created for her law firm and fundraising website to hide funds that she raised through her defamatory campaign." Pls.' Opp'n at 35.

10

However, there is absolutely no claim about using corporate entities to "hide" money anywhere in the 124-page Complaint, nor does the Opposition cite any part of the Complaint to support Plaintiffs' fanciful "hidden money" argument.

The Complaint is also bereft of any allegation that the defendant entities did not observe corporate formalities which, for purposes of alter ego analysis, include proper corporate filings and passing resolutions authorizing payments. *See*, *e.g.*, *Motir Servs. v. Ekwun*, 191 F. Sup. 3d 98, 108 (D.D.C. 2016). Although the Opposition notes that the Complaint did allege such things as commonality of addresses, none of these claims have anything to do with the corporate formalities, the absence of which must be pled in support of an alter ego theory.

In sum, the Opposition identifies no allegation in the Complaint sufficient to plead a viable alter ego claim, nor is the case law it cites of any consequence. For example, the Opposition claims (at 36) that in *Kelleher v. Dream Catcher, L.L.C.*, 263 F. Supp. 3d 322 (D.D.C 2017), this Court found that alter ego was sufficiently alleged "on facts similar to those alleged here." But the facts in *Kelleher* are nothing like those Plaintiffs have alleged. On the contrary, the *Kelleher* court sustained the alter ego claim because it found that plaintiff's complaint had alleged that the entity in question "was undercapitalized" and "did not observe corporate formalities." *Id.* at 325. The court also found that fraud had been adequately alleged, *i.e.*, that the individual defendants deposited funds payable to the corporation into the college savings account of their daughter. Similar allegations regarding the elements of an alter ego claim are absent from Plaintiff's complaint.[3]

---

[3]       *Lopes v. Jetset DC, LLC*, 994 F. Supp. 2d 135, 146 (D.D.C. 2014), cited at page 36 of the Opposition, is also inapposite. In *Lopes,* unlike here, the plaintiff had alleged that "corporate formalities have been disregarded" in addition to other salient factors. 994 F. Supp 2d at 147. Even

*(Footnote cont'd on next page)*

Plaintiffs also cite *McWilliams Ballard Inc. v. Broadway Management Co.,* 636 F. Supp. 2d 1 (D.D.C. 2009). There, the court found that plaintiff had properly pled an alter ego claim by alleging that the corporation at issue was undercapitalized, that defendants were engaged in fraud and "that all defendants disregarded corporate formalities and commingled corporate and personal funds and assets." 636 F. Supp. at 9. Plaintiffs' Complaint does not allege any of these factors.

Likewise, *IMark Mktg. Servs, LLC. v. Geoplast S.p.A.*, 753 F. Supp. 2d 141 (D.D.C. 2010), is nothing like this case because defendants there held themselves out to the public as being unified (one said it was the branch of the other), used identical logos and maintained only a single bank account. *Id.* at 151. Thus, none of the cases cited in the Opposition would support a finding that the complaint adequately pleads an alter ego claim that would justify piercing the corporate veil.

## III.   VENUE IS IMPROPER AND SHOULD BE TRANSFERRED.

Plaintiffs accept that the only proper basis for venue in this District would be pursuant to 28 U.S.C. § 1391(b)(2), which requires that a "substantial part of the events or omissions giving rise to the claim occurred" here. But Plaintiffs fail to acknowledge that the propriety of venue under the statute is determined by a "commonsense appraisal" of the "events having operative significance in the case."

Plaintiffs concede that the only events of any significance that occurred in this District are the November 19, 2020 news conference at the Republican National Committee, Powell's appearance on Fox News broadcasts and an Epoch Times news program, and her alleged "publication" of a document—via computer—from "within the Trump International Hotel." But the "operative significance" of those events is not Powell's physical location at the time they

---

so, the *Lopes* court found that Plaintiff had just "barely" met the pleading requirements for an alter ego claim. *Id.*

occurred but, rather, how widely they were published and the content of the publication. Powell's physical presence at the time of these publications is merely incidental.

Everything else of significance occurred elsewhere, including every other alleged defamatory publication (whether via tweet, press release, web posting or other television appearance), the lawsuits on which the alleged defamatory statements were based, the "Stop the Steal" rally in Georgia, and Plaintiffs' alleged injuries. *See* Defs.' Mem. at 15-16. Nor do any of the parties reside in this District; indeed, Plaintiffs have not alleged that they have any presence in this District whatsoever.

Nor do the factors applied in determining whether venue should be transferred pursuant to 28 U.S.C. § 1404(a) support continued prosecution in this District. *See generally*, *Forest Cnty. Potawatomi Cmty. v. United States*, 169 F. Supp. 3d 114, 117 (D.D.C. 2016). *First*, Plaintiffs' choice of forum is of lessened significance given that it chose not to file in its home forum. *See City of Palm Beach v. United States Army Corps of Eng'rs*, 317 F. Supp. 3d 150, 154 (D.D.C. 2018). *Second*, as Defendants' home forum, the Northern District of Texas, is significantly more convenient for Defendants, and it is likewise so for Plaintiffs given its closer geographic proximity to their home in Colorado. *Third*, much of the evidence in  Defendants'  possession would be in Texas, where their principal places of business are located, as are at least several witnesses. *Fourth*, the court docket data on which Plaintiffs rely go only through September 2020, and thus fail to account for impact on this Court's docket of the criminal matters arising from the January 6, 2021 events at the Capitol. *See* Pls.' Opp'n at 38, n.6. In any event, that same data shows that the median time from filing to trial is 46.7 months in this District, but only 20.2 months in the Northern District of Texas. *Id*

There is no plausible reason for this matter to be in this Court. It should be transferred.

## IV.     THE STATEMENTS AT ISSUE ARE PROTECTED AND NOT ACTIONABLE.

Once again engaging with straw men, Plaintiffs labor to establish that Powell's statements are capable of being proven true or false, and that there is no wholesale defamation exception for opinions. Pls.' Opp'n at 2-6. Defendants never made these arguments. Indeed, Defendants' arguments assumed that each of the statements alleged in the Complaint could be proven true or false. Defs.' Mem. at 27. Rather, the heart of the argument under applicable Colorado law is this: "would reasonable people conclude that the statement is one of fact, in light of its phrasing, context and the circumstances surrounding its publication." *Keohane v. Stewart*, 882 P.2d 1293, 1299 (Colo. 1994). Plaintiffs unwittingly concede the point when they state: "The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." Pls.' Opp'n at 6 (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289-90 (1986)).

Plaintiffs seek to avoid answering this question by focusing on whether the assertions can be proven true or false. As the foregoing authorities establish, the question whether a statement is *actionable* is frequently distinct from whether it is provably true or false. More importantly, the speaker's belief in the truth of the statements is not relevant to this inquiry. Without a doubt Sidney Powell believes the statements to be true—that is why she instituted litigation in four separate jurisdictions to establish their truth. Rather, the question is,[4] given the "phrasing, context and the

---

[4]     For purposes of a motion to dismiss, the Court "should assume [the] veracity" of any "well-pleaded factual allegations … and then determine whether they plausibly give rise to an entitlement to relief" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), so the question *is not* whether Ms. Powell was right or wrong about Plaintiffs' voting systems. If the Court finds that Plaintiff has properly *alleged* that Ms. Powell was wrong, the court would still need to decide whether a reasonable person would believe Ms. Powell's statements were statements of fact or opinion.

circumstances surrounding [the statements'] publication," how reasonable people would view the statements: (a) as statements of fact, or (b) as statements of the gravamen of the litigation and her opinion, which she hoped to prove in the litigation. *See* Defs.' Mem. at 32. Given the full context of a lawyer presenting her clients' claims and evidence, the statements were clearly intending to tell the audience what the litigation sought to prove.

As noted in Defendants' Motion, the actionability of the statements must be considered in both their broad and specific contexts. Defs.' Mem. at 28-35. Here, the broad context is a bitter and controversial presidential campaign. That context is not, as Plaintiffs seem to suggest, irrelevant in the defamation context. Indeed, "[t]here may be no public context more contentious than a political campaign." *Secrist v. Harkin*, 874 F.2d 1244, 1249 (7th Cir. 1989). Courts—and reasonable people—recognize that the language of the political arena "is often vituperative, abusive and inexact." *Watts v. United States*, 394 U.S. 705, 708 (1969). As a consequence, such speech must be "uninhibited, robust and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

The specific context of the statements is the post-election litigation in which Powell herself was serving as counsel. Defs.' Mem. at 29-31. As Defendants note, and Plaintiffs do not contest, "Powell's statements were made as an attorney-advocate for her preferred candidate and in support of her legal and political positions." *Id.* at 29. Plaintiffs do not contest that First Amendment protections apply where a party "[r]esorts to the courts to seek vindication of constitutional rights" or "employs constitutionally privileged means of expression to secure constitutionally guaranteed rights." *NAACP v. Button*, 371 U.S. 415, 443, 441 (1963). Indeed, "[t]he exercise ... of First Amendment rights to enforce constitutional rights through litigation, as a matter of law, cannot be deemed malicious." *Id.* at 439.

Plaintiffs respond to these and other cases on which Defendants rely for the proposition that First Amendment protections apply with particular force in the context of litigation involving issues of immense public concern and constitutional significance[5] by stating that they are not defamation cases. Pls.' Opp'n at 12. They are mistaken. *N.Y. Times Co. v. Sullivan* involved an advertisement making very serious charges (that were found by the jury to be libelous) in an "an appeal for funds for three purposes: support of the student movement, 'the struggle for the right to vote,' and the legal defense of Dr. Martin Luther King, Jr., leader of the movement, against a perjury indictment then pending in Montgomery." 376 U.S. at 256-57. The applicable law calls for evaluating allegedly defamatory statements in their context. The context here is litigation regarding the legitimacy of ballots and election results in a fierce and hotly disputed presidential election. Reasonable people understand the role of advocates in such circumstances, and likewise understand that their claims, assertions, and allegations are but one side of the story. Understood in this context, the statements are not actionable.[6]

These free speech concepts carry particular force in this case, given the application of Colorado law and its expansive state constitutional protections of free speech—another point Plaintiffs ignore. As the Colorado Supreme Court has stated with respect to its own constitution, "[t]he object of article II, section 10 is to 'guard against the trammels of political power, and to

---

[5]     *See* Def. Mem. at 34-35 (noting that "the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right to petition") (citing *California Transport v. Trucking Unlimited,* 404 U.S. 508, 510 (1972)).

[6]     Nor have Defendants claimed that attorneys can lie with impunity, another straw man with which Plaintiffs do battle. *See* Pl. Opp'n at 10-11. Defendants nowhere claim that statements by attorneys are absolutely privileged. Rather, as demonstrated in text, given the broad and specific contexts of the statements at issue here, they are not actionable.

secure to the whole people a full and free discussion of public affairs.'" *People v. Ford*, 773 P.2d 1059, 1066 (Colo. 1989) (quoting *Cooper v. People*, 22 P. 790, 798 (Colo. 1889)).

That Powell disclosed the facts on which her statements were based underscores the conclusion that they are not actionable. As even the Complaint makes clear, the documents and affidavits in support of the various lawsuits were publicly available on the DTR website. *See*, *e.g.*, Compl. at ¶¶ 6, 77, 82, 85, 87, 89. Likewise, the lawsuits themselves and all attendant filings were publicly available on the various court websites. *See* Defs.' Mem. at 33 n.12. And as the Complaint likewise makes clear, Powell published a 270-page document to the Zenger News website under the caption "READ IT: SIDNEY POWELL BINDER OF ELECTION FRAUD EVIDENCE." Compl. at ¶ 33.

"[W]hen a defendant provides the facts underlying the challenged statements, it is 'clear that the challenged statements represent his own interpretation of those facts,' which leav[es] the reader free to draw his own conclusions." *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 11, n.7 (D.D.C. 2019) (citations omitted). "Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation." *Moldea v. New York Times Co.*, 15 F. 3d 1137, 1144-45 (D.C. Cir. 1994).

There could not be a more apt example of this concept than Powell's repeated publication of evidence as reflected in the Complaint itself. Plaintiffs argue, citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990), that where the "those facts are either incorrect or incomplete, ... the statements may still imply a false assertion of fact." Pls.' Opp'n at 6. But this argument is misleading in several respects.

First, the issue in *Milkovich* was whether there was a wholesale defamation exemption for anything that might be considered "opinion." *Id.* 18. The Court concluded that there was no need for such an "artificial dichotomy between 'opinion' and fact" because the "breathing space" necessary for freedom of expression was "adequately secured by existing constitutional doctrine." *Id.* at 19. Here, of course, Defendants do not claim that there is a wholesale constitutional exception (state or federal) for anything that might be labelled "opinion." Rather, Defendants claim that under the applicable law, and given the phrasing, context, and circumstances of the statements, they are "not actionable in defamation." *Moldea*, 15 F. 3d at 1144-45.

Furthermore, Powell's statements were based upon the evidence she had developed and presented to courts around the country. Plaintiffs clearly dispute the import of or conclusions to be drawn from that evidence, but they cannot say that Powell did not base her statements on what she disclosed. That is to say, given the context of the statements and Powell's broad disclosure of the bases for them, they cannot "be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." Pls.' Opp'n at 6 (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289-90 (1986)). Thus, unlike cases cited by Plaintiffs, this is not a case where there is an "implication that the speaker knows certain facts, unknown to the audience, which supports [the speaker's] opinion and are detrimental to the person being discussed." *See* Pls.' Opp'n at 6-7 (quoting *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014)).

The suggestion that the statements are actionable because Powell is "an attorney and former federal prosecutor" is misguided. *See* Pls.' Opp'n at 7. Indeed, the Complaint establishes, and Plaintiffs concede, that Powell was neither non-partisan nor independent. As an attorney for her chosen political candidate, reasonable people would understand her statements to be the partisan allegations advocating for her client. The cases on which Plaintiffs rely for their assertion bear no

similarity to this case. *See Enigma Software Grp., USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263 (D.D.C. 2016) (action by computer software company against computer support website for disparaging comments); *Gross v. N.Y. Times Co.*, 82 N.Y. 2d 146 (1993) (action by former medical examiner against newspaper for allegedly defamatory articles); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883 (App. Ct. 2004) (action against insurance agent for allegedly defamatory statements about viatical settlements); *Slaughter v. Friedman*, 32 Cal. 3d 149 (1982) (action by oral surgeon against insurance company director for statements about unnecessary and overcharged services).

Although Plaintiffs object that "Powell advocates for a piece-by-piece approach" to the allegations and evidence, Pls.' Opp'n at 17, that is mere projection. It is Plaintiffs who seek to avoid the entire context of the matters addressed in their Complaint. Doing so leads inescapably to the conclusion that Powell's statements are not actionable and the Complaint should be dismissed.

## V.   PLAINTIFFS CANNOT ESTABLISH ACTUAL MALICE.

Plaintiffs' Opposition does little more than repeat the same litany of grievances against Powell's evidence found in their Complaint and then assert that no one (least of all Powell) could possibly have believed it. While Plaintiffs correctly cite the law—in some cases—they cannot bring themselves to correctly apply it. A proper understanding of that law leads to the conclusion that their claims of actual malice cannot be sustained.

Plaintiffs of course cannot dispute that to establish actual malice, their pleading must plausibly allege that Powell made the allegedly defamatory statements either with knowledge of their falsity or with reckless disregard for their truth or falsity. *N.Y. Times Co.*, 376 U.S. at 279. Nor can they plausibly allege that Powell "in fact entertained serious doubts" as to the truth of her statements. *St. Amant v. Thompson*, 397 U.S. 727, 731 (1968). As the D.C. Circuit recently put it,

> The actual malice standard is famously "daunting." … A plaintiff must prove by clear and convincing evidence that the speaker made the statement with knowledge that it was false or with reckless disregard of whether it was false or not. … [A]lthough the concept of reckless disregard cannot be fully encompassed in one infallible definition, the Supreme Court has made clear that the defendant must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication. … The speaker's failure to meet an objective standard of reasonableness is insufficient; rather the speaker must have actually harbored subjective doubt.

*Tah v. Global Witness Publ., Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021) (internal citations and quotations omitted).

Plaintiffs first disparage Defendants' reliance on *Garrison v. Louisiana*, 379 U.S. 64 (1964), for the proposition that reliance on sworn declarations cannot support a finding of actual malice on the grounds that *Garrison* "does not rely on declarations[.]" Pls.' Opp'n at 13. Plaintiffs then purport to refute Defendants' contention by relying on *Flowers v. Carville*, 310 F. 3d 1118 (9th Cir. 2002), a case that ... does not rely on declarations. In fact, *Flowers* is nothing like this case, as it involved the defendants' claimed reliance for their statements on a news broadcast that the plaintiff claimed was false. Indeed, in the paragraph following Plaintiffs' cherry-picked quote, the *Flowers* court stated that it *agreed* with the defendants' statement of the law that "reliance on reports of reputable news sources cannot constitute actual malice as a matter of law," but simply found it inapplicable in light of the allegations and the stage of the case. *Id.* at 1130.

Plaintiffs likewise object that Powell "deliberately embellished" declarations, misrepresented the content of a letter from members of Congress, and that one of the declarants was trying to "backtrack" on his declaration. Pls.' Opp'n at 15-16. This would hardly be the first case in which such allegations were levelled against an attorney's evidence, but Powell's publication of the challenged documents (repeatedly) for the world to see is hardly indicative of her entertaining "serious doubts" about their veracity.

That Powell believed the allegations when she made them and believes them now is more than a "common refrain," Pls.' Opp'n at 16; it is a substantial impediment to Plaintiffs' claims. The point is not that Powell's belief is an indulgence entitling her to dismissal, but rather to emphasize Plaintiffs' burden to plausibly allege that Powell "in fact entertained serious doubts as to the truth of h[er] publication." Indeed, as the Supreme Court observed in *Garrison*, speech that is "honestly believed contributes to the free interchange of ideas and the ascertainment of truth." 379 U.S. at 73.

Likewise, Plaintiffs cannot establish that the claims were inherently improbable, particularly given the existence of declarations and affidavits from dozens of witnesses included in the lawsuits she filed. The undersigned counsel cannot locate a case where an attorney was held to answer in defamation for reliance on sworn declarations, nor have Plaintiffs cited any. Nor can Plaintiffs' arguments survive by asserting that Ms. Powell referred to a tape that Plaintiffs could change one million votes or to fraud relating to the Governor of Georgia. Even if those specific allegations were not in her four lawsuits, similar and stronger allegations were made, and thus these statements cannot sustain a finding of malice.

Plaintiffs cite the nonprecedential disposition[7] in *Harris v. City of Seattle*, 152 F. App'x 565 (9th Cir. 2005), for their claim that allegations and proof of a "preconceived story line" can constitute "powerful evidence" of malice. Pls.' Opp'n at 18. Plaintiffs fail to note, however, that the D.C. Circuit recently considered and rejected this very argument in *Tah*, noting that

---

[7]     Ninth Circuit Rule 36-3(a) states: "**Not Precedent.** Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." *See also* FED. R. APP. P. 32.1(a) ("A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been … designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like; and … *issued on or after January 1, 2007*.") (emphasis added).

"'preconceived notions' or 'suspicion[s]' usually do 'little to show actual malice.'" *Tah*, 991 F.3d at 241 (quoting *Jankovic v. International Crisis Group*, 822 F.3d 576, 597 (D.C. Cir. 2016)).

The same is true for Plaintiffs' assertions of Powell's alleged ill will and financial motive. Pls.' Opp'n at 21-22; *see Tah*, 991 F.3d at 243 (noting that evidence of ill will or improper motive are insufficient to support a finding of actual malice); *see also Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1985) (evidence of ill will insufficient by itself to support a finding of malice); *Parsi v. Daiolislam*, 890 F. Supp. 2d 77, 81 (D.D.C. 2012) ("Subjective ill will does not establish actual malice, nor does a malevolent motive for publication.").

Plaintiffs likewise argue that reliance on facially unreliable sources can be evidence of actual malice. Pls.' Opp'n at 18. But none of the cases they cite involve reliance on sworn declarations prepared for and submitted to federal and state courts, and the "serious doubt" standard is not measured by whether a "reasonably prudent man" would have investigated those declarations further before publishing the statement. *St. Amant*, 397 U.S. at 731. Rather, a plaintiff must offer evidence that plaintiff "in fact harbored subjective doubt" regarding the source's veracity. *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 281 (D.D.C. 2017) (quoting *Jankovic v. Int'l. Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016)).

And while Plaintiffs suggest (relying on authorities from other jurisdictions) that Powell's failure to retract is evidence of malice, Pls.' Opp'n at 24, that is a dubious proposition. As the Supreme Court observed in *N.Y. Times*, "failure to retract upon respondent's demand ... is likewise no adequate evidence of malice for constitutional purposes." 376 U.S. at 286-87. The D.C. Circuit has likewise stated "[plaintiff] presents no authority, nor are we aware of any, for the proposition that a publisher may be liable for defamation because it fails to retract a statement upon which grave doubt is cast after publication." *McFarlane v. Sheridan Square Press*, 91 F.3d 1501, 1515

(D.C. Cir. 1996); *see also Montgomery v. Risen*, 197 F. Supp. 3d 219, 266 (D.D.C. 2016) (failure to retract not evidence of malice).

Plaintiffs' allegations, even taken as true, fail to meet the "daunting standard" of actual malice. The Complaint should be dismissed.

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DTR.

Defendants' Motion showed that the defamation claims against DTR must be dismissed because the Complaint failed to plead essential elements of a defamation cause of action. In particular, the motion demonstrated that the Complaint contained no allegation that DTR was the individual or entity that made any allegedly defamatory statements, nor did it allege that DTR acted with actual malice, a necessary component of any defamation claim in this matter because the statements at issue involved matters of public concern. *See* Defs.' Mem. at 40-42.

Plaintiffs' Opposition contains no legitimate counter to these arguments. Plaintiffs' principal response is that because the Complaint "defines 'Powell' to include all three defendants in this case—*i.e.*, Sidney Powell, her law firm … and … Defending the Republic," then when the Complaint alleges that *Powell* made certain remarks with malice, it is also alleging that those remarks were made maliciously by *DTR*. Pls.' Opp'n at 39-40. That is not a good-faith argument. Do Plaintiffs really expect the Court to believe that when the Complaint alleges, for example in paragraph 181, that Ms. Powell made certain statements in TV appearances, described in the Complaint with screen shots of Ms. Powell from the appearances, the Complaint is also alleging that DTR made each of those statements? Of course not; such an expectation would be absurd. Indeed, the November 19, 2020 press conference that is one of the linchpins of the Complaint occurred nearly two weeks before DTR was allegedly created on December 1, 2020. *See* Compl. at ¶ 21. Yet that is the crux of Plaintiffs argument as to why the Court should find its defamation claim against DTR to have been well pled. Opp. at 40.

Plaintiffs also argue the DTR republished certain defamatory statements made by Powell. *Id.* at 40-41. But Plaintiffs do not identify where, if at all, DTR allegedly did so with malice. Plaintiffs must plausibly allege facts that would allow a reasonable trier of fact to conclude by clear and convincing evidence that DTR acted with actual malice. *N.Y. Times Co.*, 376 U.S. at 279. The Opposition's remaining arguments on this issue are just a hodgepodge of musings that have no bearing on whether a viable defamation claim has been pled. For example, Plaintiff argues that it has satisfied defamation pleading requirements by alleging that DTR "solicited contributions" and "hired attorneys" to assist the "defamatory campaign." *Id.* The Complaint fails to do so, and accordingly its defamation claim against DTR must be dismissed.

## VII.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE GEORGIA DECEPTIVE TRADE PRACTICES ACT.

Defendants' Motion showed that Plaintiffs' Georgia Uniform Deceptive Trade Practices Act ("UDTPA") count should be dismissed because none of the Defendants were "engaged or financially interested in commerce in [the voting machine] trade" that is the subject of Plaintiff's deceptive practice claim. *Int'l Brominated Solvent Ass'n v. Am. Conf. of Governmental Indu. Hygienists*, 625 F. Supp. 2d 1310, 1318 (D. Ga. 2008) (*quoting Scientific Mfg. Co. v. FTC*, 124 F.2d 640, 644 (3d. Cir. 1941)). Plaintiffs Opposition (at 41-42) misapprehends *International Solvents*, which clearly stated that the court would not make the "unprecedented leap that [defendant], which is neither in the business of selling or distributing the substance at issue, nor in the business of selling or distributing products similar to those distributed by Plaintiffs, has engaged in trade practices that are likely to injure Plaintiffs in the future, making injunctive relief appropriate." 625 F. Supp. 2d at 1318. The same is true here, and for similar reasons this Court should refuse to take the "unprecedented leap" invited by Plaintiffs.

Finally, for the reasons also stated in Defendants' Motion because the statements at issue are constitutionally protected, they are not actionable under the UDTPA. *See*, *e.g.*, *Moulton v. VC3*, 2000 U.S. Dist. LEXIS 19916, *10-11 (N.D. Ga. Nov. 6, 2000) (citing *Dominion v. Shumpert*, 510 S.E.2d 81 (Ga. App. 1998)).

<u>**CONCLUSION**</u>

For all the foregoing reasons, Defendants respectfully request that their motion to dismiss for lack of personal jurisdiction or improper venue be granted. Should the court decide to reach the Complaint's substantive allegations, then it should be dismissed in its entirety for failure to state a claim.

Dated: May 24, 2021                                  Respectfully submitted,


                                                     ____/s/ Lawrence J. Joseph_____

Howard Kleinhendler                                  Lawrence J. Joseph
N.Y. Bar No. 2657120, admitted *pro hac vice*        D.C. Bar No. 464777
HOWARD KLEINHENDLER ESQUIRE                           LAW OFFICE OF LAWRENCE J. JOSEPH
369 Lexington Ave. 12th Floor                        1250 Connecticut Av NW Suite 700-1A
New York, New York 10017                             Washington, DC 20036
Tel: (917) 793-1188                                  Tel: (202) 355-9452
Email: howard@kleinhendler.com                       Fax: (202) 318-2254
                                                     ljoseph@larryjoseph.com
*Counsel for Sidney Powell, Sidney Powell, P.C*
                                                     *Counsel for All Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 24th day of May 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have caused service of the counsel for the parties.

/s/ Lawrence J. Joseph
Lawrence J. Joseph