**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:21-cv-00040-CJN |
| SIDNEY POWELL, SIDNEY POWELL, P.C., and DEFENDING THE REPUBLIC, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF DOMINION'S
<u>MOTION TO DISMISS POWELL'S COUNTERCLAIM</u>**

**Table of Contents**

**Page**

I.      INTRODUCTION.................................................................................................... 1

II.     LEGAL STANDARDS ........................................................................................ 2

III.    ARGUMENT ........................................................................................................ 4

       A. ....Powell's claim fails because it is based on the filing and maintenance of this lawsuit.
       .................................................................................................................................4

       B.     Powell's other allegations about the lawsuit do not make her claim actionable. ....... 5

       C.    Powell does not salvage her claim by pointing to events before or outside the
       lawsuit. .................................................................................................................. 6

IV.    CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 ....................................................................................................................2

*Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*,
  383 F. Supp. 2d 32 (D.D.C. 2005)...............................................................................2, 3, 4, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................................2

*Bown v. Hamilton*,
  601 A.2d 1074 (D.C. 1992) ...............................................................................................2

*Cooper v. Trent*,
  551 S.W.3d 325 (Tex. App. 2018)......................................................................................1

*Hall v. Hollywood Credit Clothing Co.*,
  147 A.2d 866 (D.C. 1959) .................................................................................................3

*Harrison v. Howard Univ.*,
  846 F. Supp. 1 (D.D.C. 1993)............................................................................................4

*Houlahan v. World Wide Ass'n of Specialty & Schools*,
  677 F. Supp. 2d 195 (D.D.C. 2010)...........................................................................3, 7, 8, 9

*Jacobson v. Thrifty Paper Boxes, Inc.*,
  230 A.2d 710 (D.C. 1967) .................................................................................................3

*Kopff v. World Rsch. Grp., LLC*,
  519 F. Supp. 2d 97 (D.D.C. 2007)..................................................................................4, 5

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994)...........................................................................................2

*Lemon v. Kramer*,
  270 F. Supp. 3d 125 (D.D.C. 2017)................................................................................1, 5

*Moore v. United States*,
  213 F.3d 705 (D.C. Cir. 2000)........................................................................................3, 5

*Morowitz v. Marvel*,
  423 A.2d 196 (D.C. 1980) .............................................................................................2, 3

*Palmer v. Diaz*,
    214 P.3d 546 (Colo. App. 2009) ............................................................................1

*Rockwell Cap. Partners, Inc. v. CD Int'l Enterprises, Inc.*,
    311 F. Supp. 3d 52 (D.D.C. 2018) ...........................................................2, 3, 5, 10

*Swanson v. Howard Univ.*,
    249 F. Supp. 3d 255 (D.D.C. 2017) .......................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................2, 10

**Treatises**

Wright & Miller, 13A Fed. Prac. & Proc. Juris. § 3531.9 (3d ed.) ..................................9

US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion") move to dismiss the sole counterclaim asserted by Defendants Sidney Powell, Sidney Powell, P.C., and Defending the Republic, Inc. (collectively, "Powell"). *See* ECF No. 49, Powell Answer & Countercl. 28–52.

## I.    INTRODUCTION

Powell's counterclaim is for abuse of process. She asserts that Dominion brought this lawsuit to "punish and make an example of" her "for speaking out and drawing attention to the vulnerabilities in Dominion's election machines and software." Countercl. 28 ¶ 1. That is wrong. Dominion brought this lawsuit to recover for Powell's many false and defamatory statements, among them that Dominion was created in Venezuela to rig elections for Hugo Chavez, that Dominion bribed Georgia officials for a no-bid contract, and that Dominion rigged the 2020 election. When this Court denied Powell's motion to dismiss earlier this year, it recognized that Dominion's defamation claims are properly based on Powell's statements. In the Court's words, "[t]his is not a close call." ECF No. 45, MTD Mem. Op. 16.

For this motion, however, it does not matter whether Powell's allegations of Dominion's motives are true. In the District of Columbia, filing a lawsuit is not actionable as abuse of process, regardless of motive.[1] A claimant must also plead that *after* filing suit, the plaintiff took actions

---

[1]    Powell asserts "a claim for abuse of process in this District" and paraphrases D.C.'s standard for asserting the claim. Countercl. ¶ 68. She is thus embracing D.C. law, and Dominion agrees that D.C. law applies to this motion. "Under District of Columbia choice-of-law principles, the absence of a true conflict compels the application of District of Columbia law by default." *Lemon v. Kramer*, 270 F. Supp. 3d 125, 144 n.13 (D.D.C. 2017). This Court should apply D.C. law not just because the parties agree, but also because the elements of the claim are the same in Texas and Colorado, the only other potentially relevant jurisdictions. *See Cooper v. Trent*, 551 S.W.3d 325, 333–34 (Tex. App. 2018) (requiring proof of ulterior motive and improper use of the judicial process); *Palmer v. Diaz*, 214 P.3d 546, 550 (Colo. App. 2009) (same).

that perverted the legal process. Powell does not do that anywhere in her 24-page counterclaim. As a result, the Court should dismiss Powell's abuse of process counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARDS

This Court is well versed in the standards of Rule 12(b)(6). For this motion, the following are determinative: "When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor" ***but*** "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Swanson v. Howard Univ.*, 249 F. Supp. 3d 255, 257 (D.D.C. 2017) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Therefore, to survive Dominion's motion to dismiss, Powell's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In the District of Columbia, courts apply a restrictive standard to claims for abuse of process. *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 46 n.10 (D.D.C. 2005); *see also Bown v. Hamilton*, 601 A.2d 1074, 1080 (D.C. 1992) (describing the standard as "cautious"). "Underlying this standard is the purpose of allowing 'unfettered access to the courts' and avoiding any 'chilling and inhibitory effect on would-be litigants of justiciable issues.'" *Bannum*, 383 F. Supp. 2d at 46 n.10 (quoting *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)); *see also Rockwell Cap. Partners, Inc. v. CD Int'l Enterprises, Inc.*, 311 F. Supp. 3d 52, 55 (D.D.C. 2018) (same) (quoting *Bannum*, 383 F. Supp. at 46 n.10).

Under the restrictive standard, a claim for abuse of process is defective unless a party adequately alleges **both** an ulterior motive and "that 'process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'"[2] *Houlahan v. World Wide Ass'n of Specialty & Schools*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) (quoting *Morowitz*, 423 A.2d at 198); *see also Moore v. United States*, 213 F.3d 705, 712 (D.C. Cir. 2000) (quoting *Jacobson v. Thrifty Paper Boxes, Inc.*, 230 A.2d 710, 711 (D.C. 1967)).

With respect to the second prong, the rule is straightforward. Filing a lawsuit cannot constitute abuse of process: "[M]ere issuance of process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use **after** issuance." *Rockwell Cap. Partners, Inc. v. CD Int'l Enterprises, Inc.*, 311 F. Supp. 3d 52, 55 (D.D.C. 2018) (quoting *Morowitz,* 423 A.2d at 198 (emphasis in original)); *see also Bannum*, 383 F. Supp. 2d at 46 (same) (quoting *Hall v. Hollywood Credit Clothing Co.,* 147 A.2d 866, 868 (D.C. 1959)).

Nor can pursuing a claim constitute abuse of process in and of itself. No claim exists when the legal process has been invoked for the purpose for which it was intended, to obtain the relief it offers: "If the relief is within the power of the court or agency to grant, and is warranted by the

---

[2]     Courts sometimes phrase the second prong slightly differently. *See, e.g., Houlahan*, 677 F. Supp. 2d at 199 (also describing the second prong as "an **act** in the use of process other than such as would be proper in the regular prosecution of the charge" (emphasis in original)); *Rockwell,* 311 F. Supp. 3d at 55 ("To prevail on a claim for abuse of process under D.C. law, the moving party must demonstrate a 'perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge.'" (quoting *Morowitz*, 423 A.2d at 198)). However phrased, the D.C. courts interpret the second prong the same.

merits, the process has been lawfully employed." *Harrison v. Howard Univ.*, 846 F. Supp. 1, 3 (D.D.C. 1993).[3]

Applying these standards, Powell has not stated a counterclaim upon which relief can be granted.

## III.    ARGUMENT

### A.    Powell's claim fails because it is based on the filing and maintenance of this lawsuit.

Powell's counterclaim is 24 pages long. *See* Countercl. 28–52. Although it includes many purported facts, and many allegations,[4] Powell articulates the crux of her claim in Count I: "Dominion's initiation and maintenance of its lawsuit against Defendants constitutes an abuse of process." *Id.* at 52 ¶ 73. Notably, Powell does not assert that Dominion used the judicial system against Powell in any way except through filing and pursuing this lawsuit.

As explained above, ***filing and maintaining a lawsuit cannot constitute an abuse of process***. Powell has therefore failed to state a claim upon which relief can be granted, and her counterclaim should be dismissed. *See, e.g.*, *Kopff v. World Rsch. Grp., LLC*, 519 F. Supp. 2d 97, 100 (D.D.C. 2007) (granting motion to dismiss abuse of process claim because "simply filing a lawsuit is not actionable, regardless of the motive that may have prompted the suit"); *Bannum*, 383

---

[3]    The Court ruled on August 11, 2021 that Dominion has adequately stated a claim for relief. *See* ECF No. 44, MTD Order (denying Powell's 12(b)(6) motion to dismiss).

[4]    Many of Powell's allegations about how Dominion's voting machines operate are flat wrong, many are nonsensical, and nearly all misrepresent and confuse how the voting process works. They also are tangential, at best, to her counterclaim, primarily because not one of them identifies an *act* by Dominion allegedly relevant to her claim. *See* ECF No. 49, Powell Answer & Countercl. 31–42 & ¶¶ 17–42. It is hard to escape the notion that Powell filed her counterclaim simply to allow her to assert absurd allegations—as well as make false and unfounded arguments of spoliation, *id.* at 51 ¶ 70—in the protected context of a court filing. If Powell's absurd allegations remain in this lawsuit (they should not), Dominion will debunk them all as the case progresses.

F. Supp. 2d at 47 (granting motion to dismiss abuse of process counterclaim because filing a lawsuit is not actionable, even though defendant alleged "plaintiff filed a frivolous action to harass, cause mental anguish, humiliate and retaliate against defendants").

As demonstrated below, the remainder of Powell's counterclaim is nothing more than an attempt to plead around this clear and unequivocal D.C. law.

### B.    Powell's other allegations about the lawsuit do not make her claim actionable.

The only complaint Powell makes about Dominion's conduct within the lawsuit—and the law requires that she focus on the judicial proceeding she challenges—is that she has "suffered personal and business-related damages and ha[s] incurred and continue[s] to incur costs to defend the abusive litigation Dominion has brought against [her]." Countercl. 52 ¶ 73.

Those allegations do not save Powell's counterclaim because, again, abuse of process requires proof that the judicial process itself was misused: "the critical concern in abuse of process cases is whether process was used to accomplish an end unintended by law." *Moore*, 213 F.3d at 712. Defending against a lawsuit simply does not qualify as "some collateral thing which [a defendant] could not legally and regularly be required to do." *Bannum*, 383 F. Supp. 2d at 47. As a result, D.C. courts recognize that events that flow naturally from the existence of a lawsuit simply do not constitute misuse. *See, e.g., Rockwell*, 311 F. Supp. 3d at 56 (causing "high attorneys' fees and expenses" does not constitute misuse); *Lemon v. Kramer*, 270 F. Supp. 3d 125, 144 (D.D.C. 2017) (causing upset and trauma in defending against lawsuit does not constitute misuse); *Kopff*, 519 F. Supp. 2d at 100 ("inconvenience and harassment" are "the unhappy incident of almost any litigation and are an insufficient basis for an abuse of process counterclaim"); *Bannum*, 383 F. Supp. 2d at 47 ("significant inconvenience and loss of resources as a result of this case" are "an insufficient basis for an abuse of process claim"). Powell's focus on the personal costs of defending

against this lawsuit do not transform her claim from one that simply challenges filing and pursuit. Her claim is still insufficient as a matter of law.

**C.**     **Powell does not salvage her claim by pointing to events before or outside the lawsuit.**

The remainder (and, in fact, most) of the allegations Powell pleads focus on events, and alleged inferences drawn from the events, that took place either before Dominion filed this lawsuit or outside of it. None of them aid Powell in stating a claim.

The story Powell's counterclaim tells is that Dominion did not file suit to recover damages. That is evident, she asserts, by what she calls the "ludicrous" amount Dominion pled. *See, e.g.*, Countercl. 28 ¶ 1 ("Dominion did not bring this litigation with the primary purpose of winning, much less of recovering money damages"); *id.* at 48 ¶ 59 (Dominion "does not expect to recover the grossly exaggerated damage amounts alleged in the lawsuit"); *id.* at 51 ¶ 69 ("Dominion's motive in suing Defendants was not to obtain the ludicrous amount of over $1 billion in damages").[5]

Instead, according to Powell, before it filed suit, Dominion was experiencing negative publicity about claims that its voting machines were "vulnerable" to outside influence, including negative publicity Powell generated by challenging the 2020 election results. *Id.* at 31 & ¶ 17. Again according to Powell, Dominion therefore hired a public relations firm, sent out a series of cease-and-desist letters and evidence preservation letters to Powell and others who supported her election challenges, filed this lawsuit, and publicized it. *Id.* at 42–47 & ¶¶ 43–58. Under Powell's theory Dominion's motive was to "change the narrative, to hide the truth, and to discourage future

---

[5]     Dominion intends to obtain a jury verdict in excess of $1 billion in damages. Although a large number in the context of a single individual, her small law firm, and her small "nonprofit," the context that matters is the characteristics of Powell's defamation, not her worth. In that context, the damages Dominion seeks are entirely reasonable given the harm she caused by her defamatory campaign against Dominion.

challenges and negative reporting" about alleged vulnerabilities in Dominion voting machines, *id.* at 29 ¶ 4, as well as to restore its reputation by "eras[ing] or chang[ing] the subject from the prior negative attention" surrounding those alleged vulnerabilities, *id.* at 48–49 & ¶ 61.

The allegations Powell makes and the inferences she draws about Dominion's motives are not true for many reasons, including because Dominion did not sue Powell (or any other defendant) for making statements about alleged, theoretical, vulnerabilities. Dominion sued Powell (and others) for falsely saying that Dominion *in fact rigged the 2020 presidential election*. For example, the single cease-and-desist letter Powell includes with her counterclaim does not even address Powell's statements about alleged vulnerabilities with Dominion's voting machines. *See id.* at 43 n.23 (linking to Dominion's letter to Sidney Powell at https://www.dominionvoting.com/legal-updates-learn-how-we-are-defending-dominion/). Instead, the letter focuses on the false and defamatory statements on which Dominion bases its claims (*e.g.*, that Dominion was created in Venezuela to rig elections for Hugo Chavez, that Dominion bribed Georgia officials for a no-bid contract, and that Dominion rigged the 2020 election). As this Court previously recognized, these are very different things. *See* Ex. 1, Transcript of June 24, 2021 Hearing, *US Dominion, Inc. v. Powell* (Case No. 21-cv-040), at 32:21–33:16 (recognizing that "statements by various people that there are concerns about election security" are "wildly different kinds of statements" from "saying a particular company intentionally committed voter fraud").

Be that as it may, and even accepting Powell's allegations as true for this motion, none of the acts she alleges demonstrate that Dominion used the legal process "to accomplish some end which is without the regular purview of the process." *See Houlahan*, 677 F. Supp. 2d at 199.

On this point, the decision in *Houlahan* is particularly apt. Houlahan, a journalist, wrote a series of articles about improprieties at "teen behavior modification" facilities that World Wide

operated. When it learned of the articles, World Wide sued Houlahan in Utah for defamation, among other claims. The Utah court ultimately dismissed World Wide's claims for lack of jurisdiction. Afterward, Houlahan sued World Wide in D.C. for abuse of process. *Id.* at 197.

In support of his claim, Houlahan alleged "ten related but distinct improper purposes" of World Wide's lawsuit, which the D.C. court distilled down to two "general alleged improper purposes": "(1) Defendants filed their suit in order to prevent publication of Houlahan's work and (2) Defendants filed suit in order to obtain public relations advantages." *Id.* at 199 (brackets and footnotes omitted). [6]

The D.C. court dismissed Houlahan's abuse of process claims, finding that he had failed to identify any action in connection with the Utah suit that could be characterized as "not proper in

---

[6] The similarities between the acts Houlahan alleged and those Powell alleges warrant setting Houlahan's allegations forth in full:

> Specifically, Houlahan alleges that WWASPS filed their suit to prevent publication by: (1) "Effecting a prior restraint on publication by intimidating Houlahan's publisher"; (2) "Obtaining the dismissal of Houlahan from United Press International by using the lawsuit as a weapon with which to denounce Houlahan in the eyes of his editor"; (3) "Getting Houlahan's editor not to run the series by using the lawsuit as a weapon with which to discredit Houlahan in the eyes of his editor"; (4) "Relaying charges against Houlahan to his editor"; and (5) "Wrongfully drawing Houlahan into distant and costly bad faith litigation in the hope that Houlahan lacked the resources to fight the false claims and would be bankrupted in the process."

> Specifically, Houlahan alleges that WWASPS filed their suit in order to obtain a public relations advantage by using the lawsuit: (1) "To immunize themselves in the public eye against the revelations they expected should their primary object of preventing publication fail"; (2) "To divert media attention away from charges of abuse and neglect at their facilities"; (3) "As a weapon with which to discredit Houlahan in the eyes of the public at large"; (4) "To make public charges against Houlahan, which, if made outside of court, would have been legally actionable"; and (5) "To attempt to give the allegations creditability [sic] in the minds of the general public where there is actually no creditability [sic] to these claims."

*Houlahan*, 677 F. Supp. 2d 195, 199 nn.4–5 (brackets omitted).

the regular prosecution of the proceedings." *Id.* at 201. By design, a defamation suit is "meant to silence individuals from making defamatory or otherwise harmful statements." *Id.* at 200. Therefore, using the lawsuit to "silence" Houlahan was accomplishing what the legal process intended. *Id.* Nor was the court impressed by Houlahan's argument that by sending an email to Houlahan's editor informing him of the lawsuit, World Wide improperly used "the lawsuit as a weapon to discredit" Houlahan and prevent publication of the series. *Id.* at 201. "The contact between [the editor] and [World Wide] falls far short of the usual case of abuse of process where there is an attempt at extortion in a matter collateral to the litigation." *Id.*

Powell's narrative is the same as Houlahan's. And like the acts upon which Houlahan based his claim, Dominion did not misuse or abuse the judicial process by hiring a public relations firm, sending cease-and-desist letters, or making public statements in support of its lawsuit.[7]

In fact, Powell's decision to focus her counterclaim on these specific acts is hubris. Powell made and repeated her defamatory statements about Dominion to national audiences. Others

---

[7]     Much of what Powell pleads to support her counterclaim does not do so for other reasons, as well. For example, Dominion filed its Complaint against Powell on January 8, 2021. ECF No. 1, Compl. Powell cannot base her abuse of process claim on actions Dominion took before filing. *See Houlahan,* 677 F. Supp. 2d at 201 n.7 (refusing to consider acts taken prior to filing the offending lawsuit because "an action for abuse of process 'lies in the improper use *after* issuance'") (emphasis in original). Many of the acts Powell alleges are undated and it is impossible to tell which could even properly be considered. But some—like the cease-and-desist letter Dominion sent to Powell—indisputably occurred before Dominion filed suit. *See* Countercl. 43 n.23 (linking to December 16, 2020 demand letter sent to Sidney Powell at https://www.dominionvoting.com/legal-updates-learn-how-we-are-defending-dominion/).

        Powell likewise has no standing to complain of cease-and-desist and document preservation letters sent to anyone other than her. No legitimate claim exists for those letters, and even if such a claim were made, that claim belongs to someone else and Powell cannot assert it. *See* Wright & Miller, 13A Fed. Prac. & Proc. Juris. § 3531.9 (3d ed.) ("When private rights are involved, it is easy to understand that one person cannot seek to recover on a claim that belongs to someone else."). This Court should therefore ignore all allegations related to those letters as well.

republished and repeated those defamatory statements, also to national audiences. All the acts Powell's motion labels improper are acts Dominion took to stop Powell and others from repeating and further spreading the defamatory statements. Had Dominion not tried to stop the spread, Powell would be arguing that Dominion failed to mitigate its damages. In Powell's world, Dominion is damned because it took defensive actions and would have been damned if it hadn't.

Stripped of these acts, Powell is left with a bare claim that filing and maintaining this lawsuit constitutes an abuse of process. She has not stated a claim, whether under D.C. law or any other potentially applicable law.[8]

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Powell's counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* ECF No. 49, Powell Answer & Countercl. 28–52.

---

[8]    The tort of malicious prosecution is the claim, under D.C. law, that applies to the wrongful filing and maintenance of a lawsuit. *See Rockwell*, 311 F. Supp. 3d at 5 (identifying elements of claim). However, Powell has no malicious prosecution claim either. That claim would exist only if this lawsuit were resolved in her favor, Dominion had no probable cause for bringing it, and Powell suffered some special injury as a result of the lawsuit. *Id.* Special injury is an arrest, a seizure of property, or some like damage. It does not include injury to reputation, emotional distress, loss of income, or the expense of defending against the lawsuit. *See id.*

Dated: November 15, 2021

Respectfully submitted,

/s/ Florence T. Chen

Justin A. Nelson (D.C. Bar No. 490347)
Mary Kathryn Sammons (*pro hac vice pending*)
Laranda Walker (D.C. Bar No. TX0028)
Florence T. Chen (D.C. Bar No. TX0025)
Brittany Fowler (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1000 Louisiana Street, #5100
Houston, Texas 77002
(713) 651-9366
jnelson@susmangodfrey.com
lwalker@susmangodfrey.com
fchen@susmangodfrey.com
bfowler@susmangodfrey.com

Stephen Shackelford, Jr. (Bar No. NY0443*)*
Elisha Barron (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1301 6th Avenue
New York, NY 10019
(212) 336-8330
sshackelford@susmangodfrey.com
ebarron@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117*)*
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
dbrook@susmangodfrey.com

Stephen E. Morrissey (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA  98101
(206) 516-3880
smorrissey@susmangodfrey.com

Thomas A. Clare, P.C. (D.C. Bar No. 461964)
Megan L. Meier (D.C. Bar No. 985553)
Dustin A. Pusch (D.C. Bar No. 1015069)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
tom@clarelocke.com
megan@clarelocke.com
dustin@clarelocke.com

Rodney Smolla (Bar No. 6327)
4601 Concord Pike
Wilmington, DE 19803
rodsmolla@gmail.com
(864) 373-3882

*Attorneys for Plaintiffs*

11