**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>SIDNEY POWELL, SIDNEY POWELL, P.C., and DEFENDING THE REPUBLIC, INC.,<br><br>Defendants. | Civil Action No. 1:21-cv-00040-CJN |

<u>**MEMORANDUM OF LAW IN SUPPORT OF COUNTER-PLAINTIFFS' OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM**</u>

Lawrence J. Joseph
D.C. Bar No. 464777
LAW OFFICE OF LAWRENCE J. JOSEPH
1250 Connecticut Av NW Suite 700-1A
Washington, DC 20036
Tel: (202) 355-9452
Fax: (202) 318-2254
ljoseph@larryjoseph.com

*Local Counsel for All Defendants*

Howard Kleinhendler
N.Y. Bar No. 2657120, admitted *pro hac vice*
HOWARD KLEINHENDLER ESQUIRE
369 Lexington Ave. 12th Floor
New York, New York 10017
Tel: (917) 793-1188
Email: howard@kleinhendler.com

*Counsel for Sidney Powell, Sidney Powell, P.C.*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................................. i

Introduction ........................................................................................................................................ 1

Standard of Review ............................................................................................................................ 2

Summary of Argument ....................................................................................................................... 3

Argument ........................................................................................................................................... 4

I.   Counter-Plaintiffs have standing for their counterclaim. ....................................................... 4

     A.   Dominion misstates the standard for an abuse of process. ............................................ 4

     B.   Counter-Plaintiffs do not assert third-parties' injuries. ................................................ 6

II.  Counter-Plaintiffs state a claim for abuse of process. ........................................................... 7

     A.   Dominion does not dispute the ulterior motive. ............................................................ 8

     B.   Dominion's arguments under the second element fail. .................................................. 9

          1.   Dominion's legal analysis is flawed because an abuse-of-process
               tort does not require an extra-litigation impact on Counter-Plaintiffs. .................. 9

          2.   The post-complaint cease-and-desist letters support an abuse-of-
               process claim. ..................................................................................................... 10

          3.   The Poulos interviews and public statements post-date the complaint
               and support an abuse-of-process claim. ............................................................. 11

Conclusion ...................................................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Applewhaite v. Shinton*,
     859 F. Supp. 2d 157 (D.D.C. 2012) ....................................................................................... 3

*Armenian Assembly of Am., Inc. v. Cafesjian*,
     597 F.Supp.2d 128 (D.D.C. 2009) ........................................................................................ 2

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ............................................................................................................. 2

*Banneker Ventures, LLC v. Graham*,
     798 F.3d 1119 (D.C. Cir. 2015) ............................................................................................ 3

*Caplin & Drysdale v. United States*,
     491 U.S. 617 (1989) ............................................................................................................. 4

*Geier v. Jordan*,
    107 A.2d 440 (D.C. 1954) ................................................................................. 4-5

*Goodall v. Frank R. Jelleff, Inc.*,
    130 A.2d 781 (D.C. 1957) ....................................................................................5

*Hall v. Field Enterprises, Inc.*,
    94 A.2d 479 (D.C. 1953) .................................................................................. 5-6

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
    333 F.3d 156 (D.C. Cir. 2003) ............................................................................2

*Houlahan v. Worldwide Ass'n of Specialty & Schools*,
    677 F.Supp.2d. 195 (D.C. 2010) ..................................................................... 9-10

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004) ............................................................................................4

*Morowitz v. Marvel,*
    423 A.2d 196 (D.C. 1980) ...................................................................................5

*Neumann v. Vidal*,
    710 F.2d 856 (D.C. Cir. 1983) ..................................................................... 5, 7-8

*Scott v. District of Columbia*,
    101 F.3d 748 (D.C. Cir. 1996) ............................................................................7

*United States v. All Assets Held in Account No. 80020796*,
    83 F. Supp. 3d 360314 F.R.D. 12 (D.D.C. 2015) .......................................... 2-3

## STATUTES

U.S. Const. art. III ..................................................................................................4, 6

## RULES AND REGULATIONS

Fed. R. Civ. P. 12(b)(6).............................................................................................2

FED. R. CIV. P. 12(d) ................................................................................................3

## OTHER AUTHORITIES

Chris Cuomo Primetime Interview, *'We have no choice'—Dominion CEO to
    Chris Cuomo on why the company is filing defamation lawsuits*, at 4:50-
    5:13, CNN (Jan. 25, 2021) ......................................................................... 1-2, 12

**INTRODUCTION**

In a significant concession that is fatal to its motion to dismiss the counterclaim, Dominion acknowledges that its underlying defamation suit against Counter-Plaintiffs does not challenge the widely held concerns about the vulnerability of Dominion voting machines to third-party hacking. Counter-Defendant's Memorandum ("Counter-Defs.' Memo.") Counter-Defs.' Memo. at 1. In laying out the supposedly false allegations on which Dominion bases the underlying litigation— *e.g.*, ties to Venezuela, an indefinite and vague reference to a bribe, Dominion's actively hacking the 2020 election—Dominion quotes this Court on these claims: "[T]his is not a close call." *Id.* (quoting Slip Op. at 16 (ECF #45)). Significantly, Dominion has dropped from its grievance list the actual allegation that this Court found "not … close"—the video that Ms. Powell has in which the founder of the voting-technology company claimed the ability to switch votes. *See* Slip Op. at 16 (ECF #45). As the Counter-Plaintiffs' Answer makes clear, this was simply a misunderstanding of referring to Dominion when the video involves the founder of Smartmatic. *See* Answer, ¶¶ 60, 183 (ECF #49). But on the core argument that Dominion challenged "speaking out and drawing attention to the vulnerabilities in Dominion's election machines and software," Counterclaim ¶ 1, Dominion—through its counsel—says "That is wrong." Counter-Defs.' Memo. at 1. That denial makes the abuse of process clear.

Having trimmed the sails of the underlying litigation to the allegedly false statements disparaging relatively discrete and specific allegations about Dominion's actions or characteristics, Dominion—through its counsel—has put the scope of the litigation squarely at odds with what Dominion's chief executive officer says is the "ultimate goal" of Dominion's scorched-earth campaign of intimidation:

> The ultimate goal here is for however many millions of Americans
> are looking at the past election and they don't believe the result, the

> ultimate goal here is for them to understand … that the count
> actually was correct. That's the ultimate goal.

Chris Cuomo Primetime Interview, *'We have no choice'—Dominion CEO to Chris Cuomo on why the company is filing defamation lawsuits*, at 4:50-5:13, CNN (Jan. 25, 2021) (cited Counterclaim, ¶ 53 & n.25).[1] The ultimate goal involves accepting Dominion's word that its count of votes is definitive, which is infinitely broader than the purported scope of the underlying case against Counter-Plaintiffs, and is no valid reason for alleging defamation against Powell or DTR. Accordingly, Counter-Plaintiffs state a claim for abuse of process.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true … and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (internal quotation omitted). Nevertheless, "the complaint must contain sufficient factual matter … to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when it contains sufficient factual matter to permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a complaint—or here, a counterclaim[2]—a court may consider "'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' as well as 'documents upon which the plaintiff's complaint necessarily relies,'" *United States v. All Assets*

---

[1]     Available at https://www.youtube.com/watch?v=65qx-4g2bSc (last visited Dec. 15, 2021).

[2]     "The same standards govern a motion to dismiss with respect to an opposing party's counterclaims." *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F.Supp.2d 128, 134 (D.D.C. 2009).

*Held in Account No. 80020796*, 83 F. Supp. 3d 360, 367 n.4, 314 F.R.D. 12 (D.D.C. 2015) (quoting

*Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)); *Banneker*

*Ventures, LLC v. Graham*, 798 F.3d 1119, 1132-34 (D.C. Cir. 2015); *Applewhaite v. Shinton*, 859

F. Supp. 2d 157, 159-60 (D.D.C. 2012), without converting the motion into a summary judgment

motion pursuant to Rule 12(d). *See* FED. R. CIV. P. 12(d).

## SUMMARY OF ARGUMENT

Counter-Plaintiffs have an abuse-of-process claim here because (1) Dominion had an

ulterior purpose in filing the billion-dollar defamation claim against Sidney Powell *et al.*, and

(2) after process was issued—*i.e.*, after the lawsuit was filed—Dominion used the process for

improper purposes, including the intimidation of witnesses, clients, and experts involved in

litigation to which Ms. Powell was counsel, and to terminate unfavorable public discussions about

wholly unrelated Dominion vulnerabilities and election fraud writ large.

Dominion does not dispute that the counterclaim properly alleges that Dominion had an

ulterior motive for suing Counter-Plaintiffs in the underlying litigation. Rather, Dominion argues

that the counterclaim should be dismissed because it fails to allege that Dominion took improper

abusive actions *after* the lawsuit was filed. However, the complaint alleges that it did take these

improper actions, and by the same standard this Court applied to deny Defendants' Motion to

Dismiss, it must also deny Dominion's.

Dominion's argument is meritless and reflects, at best, an improper and gross misreading

of the counterclaim. Contrary to Dominion's motion, the counterclaim clearly alleges that

Dominion, *after it filed the Complaint*, used the existence of the lawsuit to intimidate and coerce

others not to speak out against Dominion. Dominion trumpeted its suit against Powell as a dire

warning to any others who might align with her in any way, that if they did so, they would suffer

the same litigation fate as Ms. Powell and others. Because the counterclaim properly pleads the

necessary elements of an abuse of process claim, Dominion's motion should be denied.

## ARGUMENT

**I.      COUNTER-PLAINTIFFS HAVE STANDING FOR THEIR COUNTERCLAIM.**

Dominion argues that Counter-Plaintiffs lack standing to assert injuries from Dominion's

barrage of cease-and-desist letters: "Powell likewise has no standing to complain of cease-and-

desist and document preservation letters sent to anyone other than her." Counter-Defs.' Memo. at

9 n.7 (citing WRIGHT & MILLER, 13A FED. PRAC. & PROC. JURIS. § 3531.9 (3d ed.)). While wrong

about third-party standing,[3] Dominion's argument is simply irrelevant; for it misses the point.

> **A.      The District of Columbia's standard for an abuse of process refutes Dominion's argument on third-party standing.**

Dominion's third-party standing argument is based on an inapposite part of the standard

for an abuse of process claim under District of Columbia law. When the standard is correctly

applied, it is clear that it is clear that the counterclaim's allegations that Dominion used the

underlying litigation against Counter-Plaintiffs to terrorize third parties, witnesses, experts, and

clients, and to silence public criticism on wholly unrelated issues, which states a claim for abuse

of process.

To state a claim for abuse of process in the District of Columbia, the moving party must

allege (1) an ulterior motive in initiating process, and (2) "an act in the use of process other than

such as would be proper in the regular prosecution of the charge" *Geier v. Jordan*, 107 A.2d 440,

---

[3]      A party can have third-party or *jus tertii* standing to assert the rights of absent third parties
if (1) they have their own Article III standing, (2) they share a relationship with the absent rights
holder; and (3) some hindrance keeps the absent rights holder from asserting the claim. *Kowalski
v. Tesmer,* 543 U.S. 125, 128-30 (2004) (*citing Powers v. Ohio,* 499 U.S. 400, 411 (1991)). For at
least of the cease-and-desist letters, Dominion contacted Ms. Powell's *clients*, Counterclaim, ¶ 50,
which qualifies as a sufficiently close relationship. *Kowalski,* 543 U.S. at 131. In any event, only
the first inquiry is jurisdictional. *Caplin & Drysdale v. United States*, 491 U.S. 617, 623 n.3 (1989).

441 (D.C. 1954). "The gist of the action for abuse of process lies in the improper use of process

after it is issued." *Goodall v. Frank R. Jelleff, Inc.*, 130 A.2d 781, 782 (D.C. 1957) (interior

quotation marks omitted); *Morowitz v. Marvel,* 423 A.2d 196, 198 (D.C. 1980). But the act

required by the second element can fall into either of two categories: (a) accomplishing something

beyond the litigation; *or* (b) compelling a party to take collateral action that the litigation itself

cannot compel:

> [T]he right to charge an abuse of process arises when there has been
> a perversion of court processes to accomplish some end which the
> process was not intended by law to accomplish, *or* which compels
> the party against whom it has been used to do some collateral thing
> which he could not legally and regularly be compelled to do.

*Hall v. Field Enterprises, Inc.*, 94 A.2d 479, 481 (D.C. 1953) (emphasis added); *accord Neumann*

*v. Vidal*, 710 F.2d 856, 860 (D.C. Cir. 1983). Significantly, the first prong of this test contemplates

actions outside the litigation that do not necessarily involve the party against which the litigation

was filed. Only the second prong refers to the party against which the litigation was filed. As such,

an abuse-of-process plaintiff can challenge the opposing party's process if that process is used for

an ulterior motive to compel *third-party action* outside the contours of the underlying litigation.

That effect on third parties is precisely the kind of conduct prohibited by the first prong of this

tort's second element. Dominion's purported grievances against Powell (e.g., statements about

bribery, Venezuela, or Dominion's hacking) have no connection to Dominion's ultimate goal.

Rather, Dominion's purpose was to shut down any discussion regarding the validity of its election

count, while at the same time making it difficult, if not impossible, to find witnesses with the

courage to face Dominion's lawfare,[4] not only in the underlying litigation but also in future

---

[4]    Lawfare refers to the process of harassing Counter-Plaintiffs with the burdens of scorched-earth litigation—making it difficult to conduct not only the underlying litigation but also future

challenges to use of Dominion's machines in future elections.

### B.   Counter-Plaintiffs do not assert third-parties' injuries.

Dominion claims that Ms. Powell has no standing to complain about cease-and-desist letters sent to "anyone other than her," arguing that any claims arising from such letters belong only to the letters' recipients. Counter-Defs.' Memo. at 9, n.7. That is simply no defense to the claim that the purpose of the litigation and of Dominion's letters was to intimidate the recipients as part of Dominion's effort to "silence anyone and everyone who had dared or might dare to question the reliability of Dominion's enterprise and ... to tarnish the reputations of Sidney Powell and Defending the Republic, Inc." Counterclaim ¶ 42; Section II.B.3, *infra*. The letters targeted, *inter alia,* attorneys who worked with Ms. Powell on post-election lawsuits, witnesses, and experts whose affidavits and work product appeared as exhibits in her pleadings. *Id.* at ¶¶ 47-48. The letters even targeted Ms. Powell's own clients, demanding that they "cease and desist taking part in defaming Dominion" and that they preserve communications with their own lawyer. *Id.* at ¶ 50. Of course, Counter-Plaintiffs clearly have standing to challenge abuse heaped on *Counter-Plaintiffs themselves*. *See Hall*, 94 A.2d at 480-481 (abuse of process includes "claim ... filed with the intent of embarrassing [plaintiff] with his employer"). That is Article III standing enough to assert third-party claims. *See* note 3, *supra*.

By alleging that Dominion uses the underlying litigation both to injure Counter-Plaintiffs for their allegedly defamatory statements (*e.g.*, *Dominion's hacking* and Venezuelan ties) while simultaneously scaring off others for unrelated claims (*e.g.*, Dominion's *vulnerability to hacking*), Counter-Plaintiffs suffer *first-party* injury. Counter-Plaintiffs also suffer the first party injury, as

---

election litigation—while as the same time coercing third parties not to challenge Dominion in future election litigation.

intended by Dominion, including difficulty in obtaining witnesses and persons who might provide

evidence. In addition, Dominion's abusive litigation has served its intended purpose of distracting

and depleting the resources and energy to challenge Dominion on the very issues that Dominion

cares most about but claims—through counsel—not to be challenging in the underlying litigation.

A viable abuse of process claim can be premised on attempts to coerce third parties, such

as Counter-Plaintiffs allege here. *Scott v. District of Columbia*, 101 F.3d 748, 756 (D.C. Cir. 1996).

In *Scott*, the Circuit Court distinguished the abuse of process case before it by referencing a prior

abuse of process case, *Neumann*, where the plaintiff had alleged abuse of process on the ground

that defendants had instituted litigation challenging plaintiff's patent for the purpose of

discouraging third parties from investing in plaintiff's business and to stifle competition.[5] In

commenting on *Neumann,* the *Scott* court noted that a plaintiff can maintain an abuse of process

action against a defendant alleged to have used the underlying litigation to threaten *third parties*

to take some action to benefit defendant: "the alleged goal of the employer's lawsuit was to stifle

competition by dissuading third parties from investing in the plaintiff's business venture and to

delay his patent application." Thus, the Court recognized that the threats against third parties such

as those in the instant case, "involved the type of extortionate activity that the Restatement [on

abuse of process] and the case law describe." *Scott*, 101 F.3d at 756. In short, Dominion's brief

third-party standing footnote is wholly meritless. Counter-Plaintiffs plead extensive first party

injuries which require denying the Motion to Dismiss.

II.     **COUNTER-PLAINTIFFS STATE A CLAIM FOR ABUSE OF PROCESS.**

The gravamen of Dominion's motion is that Counter-Plaintiffs fail to state an abuse-of-

---

[5]     In *Neumann*, the court held, without commenting on the merits of Plaintiff's abuse of process claim, that the claim was improperly dismissed on *res judicata* grounds. *Neumann*, 710 F. 2d at 860.

process claim because the counterclaim does not allege that Dominion abused process after

Dominion filed the underlying litigation: "A claimant must also plead that *after* filing suit the

plaintiff took actions that perverted the legal process. Powell does not do that anywhere in her 24

page counterclaim." Counter-Defs Memo at 1-2 (emphasis in original). Dominion also argues that

the counterclaim fails to state a claim because the underlying litigation is identical to the alleged

abuse that Counter-Plaintiffs claim. Counter-Defs.' Memo. at 1-2, 7-8. Both arguments are wrong.

First, because Counter-Plaintiffs cite events that occur *after* Dominion filed suit, *see*

Sections II.B.2-II.B.3, *infra*, Dominion's temporal argument is simply wrong. Second, the

counterclaim properly pleads both of the elements essential to an abuse of process claim outlined

in Section I.A, *supra*: (1) an ulterior motive for bringing the case, and (2) use of process beyond

prosecution of the case.[6]

### A.      Dominion does not dispute the ulterior motive.

Dominion does not dispute that the counterclaim satisfies the first prong of the abuse of

process tort in alleging that Dominion's ulterior purpose in filing its complaint against Ms. Powell

was to silence its critics and to mitigate the negative publicity about the deficiencies in Dominion's

voting machines generated from incidents such as the State of Texas refusing to certify Dominion

machines for use in Texas elections (Counterclaim at ⁋ 25), correspondence sent by Congressional

leaders complaining about the integrity of Dominion machines (*id.* at ⁋ 26), an NBC report

exposing Dominion's *false* claim that its voting machines were not connected to the internet (*id.*

at ⁋27), and the *Curling v. Raffensperger* lawsuit filed in in 2016 (wherein plaintiffs claimed that

---

[6]      The merits of an abuse of process claim are independent of the merits of the underlying action in which plaintiff claims process was abused. *Neumann*, 710 F.2d at 860 ("[A]n abuse of process action can be maintained even where the earlier suit was ostensibly legitimate, so long as the reasons for the suit are found to be illegitimate.").

Dominion's voting system was unconstitutionally insecure and deficient) (*id.* at ¶¶ 18-23). As such, Dominion concedes the adequacy of the counterclaim's pleading this element.

> **B.      Dominion's arguments under the second element fail.**

Dominion claims however, that the counterclaim does not meet the second "act in the use of process" prong because the counterclaim allegedly does not "plead that *after* filing suit, the plaintiff took actions that perverted the legal process." Counter-Defs.' Memo. at 1-2. Dominion is clearly wrong, both legally and factually.

Counter-Plaintiffs intend to take discovery aimed at uncovering other post-filing examples of Dominion's abuse of process; but the examples of Dominion's post-filing misconduct cited in the counterclaim are sufficient to state a claim for relief that is plausible on its face, and thus sustain the counterclaim against Dominion's motion.

> **1.      Dominion's legal analysis is flawed because an abuse-of-process tort does not require an extra-litigation impact on Counter-Plaintiffs.**

Dominion argues that filing and maintaining its underlying litigation against Counter-Plaintiffs cannot be an abuse of process, Counter-Defs.' Memo. at 4, and that Counter-Plaintiffs fail to claim that Dominion seeks "to accomplish some end which is without the regular purview of the process." *Id.* at 7 (quoting *Houlahan v. Worldwide Ass'n of Specialty & Schools*, 677 F.Supp.2d. 195, 199 (D.C. 2010)). But Dominion also claims that its lawsuit challenges *not* general issues of the vulnerabilities of Dominion's machines but only Counter-Plaintiffs' allegedly untrue claims such as *Dominion's* hacking, bribes, or Venezuelan ties. *Id.* at 1. And yet, Dominion also admits that the "ultimate goal" of its campaign is to clear its name on the vulnerability issues. *See* Counterclaim, ¶¶ 2-5, 51-53, 60-61, 64; Section II.B.3, *infra*. This glaring disconnect between Dominion's various and varying claims belies any legitimate reliance on cases like *Houlahan*.

Specifically, in *Houlahan*, "the alleged ulterior purpose of the lawsuit and the stated

9

purpose of the lawsuit [were] *the same.*" *Houlahan*, 677 F.Supp.2d. at 200 (emphasis added). Here, by contrast, Dominion attacks Counter-Plaintiffs about statements of relatively minor importance to Dominion's business (*e.g.*, ties to Venezuela or even Dominion's alleged hacking) as a means to bully, threaten, intimidate, and coerce the general public, election-integrity activists, and thought leaders into submission and silence over something unrelated but very important to Dominion's business (*i.e.*, Dominion machine's vulnerability to hacking). So, while both cases involve claims of suppressing speech and obtaining a public-relations advantage, *id.* & nn. 4-5, this case involves using the underlying litigation for a purpose outside the litigation, but *Houlahan* did not. That is as simple a distinction as to why Counter-Plaintiffs state a claim, but Mr. Houlahan did not.[7]

> **2.    The post-complaint cease-and-desist letters support an abuse-of-process claim.**

The counterclaim alleges that Dominion sent over 150 cease and desist letters to, among others, news media outlets and litigation witnesses, some of which threatened the recipients with the same type of litigation filed against Ms. Powell if they disparaged Dominion. Counterclaim at ¶¶ 56-57. Obviously, such threats could not have been made until *after* the suit against Ms. Powell was filed. Indeed, Dominion's argument conveniently ignores Paragraph 57 of the counterclaim, which alleges that *in a February 2, 2021, letter* (indisputably dated *after* Dominion sued the Counter-plaintiffs) Dominion attorneys Clare Locke threatened an individual who had prepared a series of reports questioning the presidential election. In that letter, Dominion's attorneys demanded that the individual issue a public apology and made a not-so-veiled threat that litigation would ensue if their demand were not met: "Dominion has already filed suits against Sidney

---

[7]    It is also relevant that, even after discovery and on summary judgment, Mr. Houlahan cited only an email to his publisher, which—as indicated—concerned 'the same" issue as the litigation. *Houlahan*, 677 F.Supp.2d. at 199-201. By contrast, Counter-Plaintiffs already have evidence of Dominion's use—or abuse—of the underlying litigation for purposes outside the litigation claims.

Powell and Rudy Giuliani. More will follow. … Conduct yourself accordingly." *Id.* at ¶ 57. To

ensure that the recipient of the letter understood the scope of the threatened litigation, Dominion's

lawyers included with the letter copies of the 147-page complaint against Ms. Powell and its

voluminous exhibits. There would have been no reason, other than intimidation, to have

bombarded the letter's recipient with Dominion's massive filings. *Id.*[8]

These actions, coupled with the aggressive and high visibility campaign run by Dominion's

public relations firm Hamilton Place Strategies, had the clear intent to intimidate and dissuade

anyone otherwise inclined to assist Ms. Powell and DTR in their efforts to detect and remedy

election fraud. Dominion misses the point when it suggests that Ms. Powell and DTR do not have

"standing" to complain about actions directed at third parties. Dominion hoped not only to silence

third parties, but to terrorize them into refusing to cooperate with Ms. Powell's and DTR's mission,

which continues to this day to ensure that future elections are secure. As Dominion warned one of

its targets: "Dominion has already filed suits against Sidney Powell and Rudy Giuliani. More will

follow … Conduct yourself accordingly." Counterclaim ¶ 57. Accompanying the letters with the

stacks of what Dominion called the "voluminous exhibits supporting those complaints" drove the

point home. *Id.*

> 3.    **The Poulos interviews and public statements post-date the complaint and support an abuse-of-process claim.**

Aside from its letters, Dominion also used the Powell litigation *after it was filed* to

intimidate the public. For example, on February 24, 2021, Dominion's CEO, John Poulos,

---

[8]    Counter-Plaintiffs do not dispute that Dominion's lawyers also sent cease and desist letters before the litigation against Ms. Powell and others was filed. However, that does not excuse the impropriety of the threatening letters Dominion sent *after* the lawsuit was filed. In any event, to put Dominion's spurious claims to rest, we have included examples of post-filing letters in Exhibit A, attached hereto.

appeared on CNBC to let "everyone" know that "[o]ur legal team is looking frankly at everyone, and we're not ruling anybody out." Counterclaim ¶ 64. In other words, no one is safe from suffering the litigation fate of Ms. Powell and her co-defendants if they dare to speak ill of Dominion.

Dominion's own statements about why it filed the lawsuit—and the veiled threats in those public statements—confirm the counterclaim's allegations about motive. *See, e.g.,* statement from John Poulos, after the lawsuit was filed, indicating that the purpose of the litigation was not to recover $1.3 billion but was instead "to restore our good name." Counterclaim at ¶¶ 60-61; *See also* public statements made by Dominion at the time the litigation was filed such as, "Today is the first step to restore our good name" and that "Dominion is taking steps to defend our good name and reputation." *Id.* at ¶¶ 62-63. And, as indicated above in the Introduction, Poulos also confirmed and admitted that the "ultimate goal" of the litigation is something wholly outside the litigation—to remove discussion of Dominions' flaws from public debate. Chris Cuomo Primetime Interview, *'We have no choice'—Dominion CEO to Chris Cuomo on why the company is filing defamation lawsuits*, at 4:50-5:13, CNN (Jan. 25, 2021) (cited Counterclaim, ¶ 53 & n.25).[9] This Court should not allow Dominion to use this Court's process to throw Dominion's weight around to suppress the public debate on issues critical to this nation.

## CONCLUSION

For all the foregoing reasons, Counter-Plaintiffs respectfully request that Dominion's motion to dismiss be denied.

---

[9]    Available at https://www.youtube.com/watch?v=65qx-4g2bSc (last visited Dec. 15, 2021).

Dated: December 15, 2021                         Respectfully submitted,

                                                 /s/ Lawrence J. Joseph
Howard Kleinhendler                              Lawrence J. Joseph
N.Y. Bar No. 2657120, admitted *pro hac vice*    D.C. Bar No. 464777
HOWARD KLEINHENDLER ESQUIRE                      LAW OFFICE OF LAWRENCE J. JOSEPH
369 Lexington Ave. 12th Floor                    1250 Connecticut Av NW Suite 700-1A
New York, New York 10017                         Washington, DC 20036
Tel: (917) 793-1188                              Tel: (202) 355-9452
Email: howard@kleinhendler.com                   Fax: (202) 318-2254
                                                 ljoseph@larryjoseph.com

*Counsel for Sidney Powell, Sidney Powell, P.C.*

                                                 *Local Counsel for All Defendants*