**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00040-CJN |
| | ) | |
| SIDNEY POWELL, SIDNEY POWELL, P.C., and DEFENDING THE REPUBLIC, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF DOMINION'S
<u>MOTION TO DISMISS POWELL'S COUNTERCLAIM</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................3

    I.    Abuse of process cannot be based on actions that allegedly target a
third party....................................................................................................3

    II.   Powell improperly argues "ulterior motive" based on unreasonable
inferences drawn from limited facts. ........................................................8

    III.  Powell has no standing to bring a third-party claim. ...........................13

CONCLUSION...................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*,
   383 F. Supp. 2d 32 (D.D.C. 2005) ............................................................................4

*Cooper v. Dominion*,
   No. 21-cv-2672 (D. Colo. Dec. 28, 2021) ........................................................1, 15

*Doe v. District of Columbia*,
   796 F.3d 96 (D.C. Cir. 2015) ...................................................................................5

*Geier v. Jordan*,
   107 A.2d 440 (D.C. 1954) ........................................................................................5

*Goodall v. Frank R. Jelleff, Inc.*,
   130 A.2d 781 (D.C. 1957) .....................................................................................3, 5

*Hall v. Field Enterprises, Inc.*,
   94 A.2d 479 (D.C. 1953) .......................................................................................3, 5

*Houlahan v. World Wide Ass'n of Specialty & Schools*,
   677 F. Supp. 2d 195 (D.D.C. 2010) ................................................3, 5, 6, 7, 8, 9, 13

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ..........................................................................................13, 15

*Lemon v. Kramer*,
   270 F. Supp. 3d 125 (D.D.C. 2017) .........................................................................4

*Morowitz v. Marvel*,
   423 A.2d 196 (D.C. 1980) ........................................................................................4

*Neumann v. Vidal*,
   710 F.2d 856 (D.C. Cir. 1983) .......................................................................3, 4, 5, 6, 7

*Powers v. Ohio*,
   499 U.S. 400 (1991) ...............................................................................................14

*Scott v. District of Columbia*,
   101 F.3d 748 (D.C. Cir. 1996) .....................................................................4, 5, 6, 7, 8

*Swanson v. Howard Univ.*,
   249 F. Supp. 3d 255 (D.D.C. 2017) .................................................................4, 5, 10

10305260v1/016952

*United States v. TDC Mgmt. Corp.*,
    263 F. Supp. 3d 257 (D.D.C. 2017), appeal dismissed, 2018 WL 2341804
    (D.C. Cir. Apr. 26, 2018) ................................................................................14, 15

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...........................................................................................13

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    485 F. Supp. 3d 1 (D.D.C. 2020), appeal dismissed, 2021 WL 5537747 (D.C.
    Cir. Nov. 19, 2021) ............................................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................10, 16

**Treatises**

Restatement (Second) of Torts ...........................................................................2, 5, 7

10305260v1/016952

## INTRODUCTION

Powell's opposition to Dominion's motion to dismiss makes a surprising revelation: Powell did not bring her counterclaim on behalf of herself. She brought it on behalf of anyone in the United States who might be afraid to discuss theoretical vulnerabilities in Dominion's voting machines because Dominion sued Powell for falsely accusing Dominion of rigging the 2020 election, of having rigged elections for Hugo Chavez, of having bribed Georgia officials for a no-bid contact, and other statements that have nothing to do with theoretical vulnerabilities in the machines.[1] Set aside that Powell's counterclaim alleges no such claim. Set aside that Powell does not identify a single person who says this lawsuit has intimidated them from speaking on that topic or any other. Set aside the robust discussion of theoretical vulnerabilities in Dominion's voting machines currently underway publicly in multiple forums, including a lawsuit brought by some of the very people Powell claims are intimidated.[2] Set aside Powell's hubris in bringing an untenable claim for the sole purpose of repeating in a public filing unfounded and debunked assertions about the machines' theoretical vulnerabilities. Even set aside the illogic of Powell's argument—that a defamation lawsuit that does not challenge speech relating to the theoretical vulnerabilities could possibly chill discussion by third parties on that topic. Powell's counterclaim must be dismissed for the simple reason that it does not state a claim for abuse of process. Among other things, the claim

---

[1] "Dominion used the underlying litigation against Counter-Plaintiffs to terrorize third parties, witnesses, experts, and clients, and to silence public criticism on wholly unrelated issues, which states a claim for abuse of process." ECF No. 58-2, Powell's Opposition to Dominion's Mot. to Dismiss ("Opposition") at 4.

[2] *See, e.g.,* Ex. 1, 1st Am. Compl. ¶ 1, ECF No. 31, *Cooper v. Dominion*, No. 21-cv-2672 (D. Colo. Dec. 28, 2021) (class action lawsuit brought by poll watchers who received cease-and-desist letters from Dominion).

Powell pivoted to in her opposition does not exist, as abuse of process or anything else. And even if it did, Powell does not have standing to assert it.

To be clear, Dominion's motion to dismiss exposed uncurable flaws in Powell's counterclaim based on Dominion's understanding (and as her counterclaim reads) that Powell brought the claim on behalf of herself. Powell completely ignores and therefore concedes those arguments. Powell does not dispute that this Court must apply a restrictive standard to her claim. She does not identify any way in which Dominion compelled her to "do some collateral thing which [s]he could not legally and regularly be required to do." Nor does she disagree that, although she pled that "Dominion's initiation and maintenance of its lawsuit against Defendants constitutes an abuse of process," that statement cannot be true, as a matter of law. She does not dispute that only actions taken after Dominion filed the lawsuit can be considered for her claim, but the sole "act" Dominion directed at her (a demand for retraction) was before Dominion sued her. Finally, she does not dispute that personal costs to her (financial or otherwise) flowing from the lawsuit do not give her a claim. Based on these facts, Powell's counterclaim must be dismissed as pled.[3]

It must also be dismissed as reformulated in her opposition brief. First, as set forth in the Restatement (Second) of Torts and as applied by the courts of the District of Columbia, abuse of process is a personal tort, not one that can be asserted based on actions allegedly taken against third parties. The distinction between first-party claims and third-party claims Powell reads into

---

[3] Gratuitously, Powell asserts that by not calling out in its motion to dismiss "the video that Ms. Powell has in which the founder of the voting-technology company claimed the ability to switch votes," Dominion has "dropped [the video] from its grievance list." *See* ECF No. 58-2, Opposition at 1. She is wrong. Dominion's motion to dismiss did not amend any portion of Dominion's Complaint or jettison any allegation in it.

10305260v1/016952

the standard is made up. The Restatement does not recognize it and neither has any D.C. court. Second, the statements directed to third parties that Powell targets—the alleged "threats" upon which she bases her claim—are expressly *related to* the defamatory statements. They do not address, much less threaten against, statements concerning theoretical vulnerabilities of Dominion's machines. Even under Powell's skewed formulation of the tort, these statements therefore cannot form the basis of her counterclaim. Finally, if a claim for abuse of process on behalf of wrongful conduct directed at a third-party could exist (it can't), Powell nevertheless has no standing to bring it.

## ARGUMENT

### I.   <u>Abuse of process cannot be based on actions that allegedly target a third party.</u>

Powell understands that her counterclaim must allege "that process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." ECF No. 58-2, Powell's Opposition to Dominion's Mot. to Dismiss ("Opposition") at 4–5 (citing cases);[4] *see Houlahan v. World Wide Ass'n of Specialty & Schools*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) (quotations omitted).

---

[4] Powell cites abuse of process cases that are forty to sixty years old, *see* ECF No. 58-2, Opposition at 4–5, maybe because claims in a few of those cases survived motion practice, *see Neumann v. Vidal*, 710 F.2d 856, 860 (D.C. Cir. 1983) (permitting claim to survive summary judgment); *Hall v. Field Enterprises, Inc.*, 94 A.2d 479, 481 (D.C. 1953) (same). *But see Goodall v. Frank R. Jelleff, Inc.*, 130 A.2d 781, 782 (D.C. 1957) (claim dismissed at pretrial hearing for failure to state a cause of action).

Importantly, none of Powell's dated cases evaluate an abuse of process claim in light of the restrictive standard that guides D.C. courts' present-day analysis. *Compare* ECF No. 55-1, Dominion's Mot. to Dismiss ("Mot.") at 2–4 (citing standard and cases), *with Neumann*, 710 F.2d at 860 (no discussion of restrictive standard in permitting claim to survive summary judgment); *Hall*, 94 A.2d at 481 (same). *See also Houlahan*, 677 F. Supp. 2d at 199 n.3 ("Both

To square the standard with her third-party claim, Powell grasps onto the word "or" and parses the prong into two types of claims—she reads the words "compels the party against whom it is used to do some collateral thing" as giving rise to a first-party claim, and "accomplish some end which is without the regular purview of the process" as supporting a third-party claim. Not one case makes that distinction and, accordingly, Powell cites to none. The cases all treat the prong as having a single scope. The language that follows "or" simply provides context to the language that precedes it. In short, all abuse of process claims focus on a defendant's improper actions vis-a-vis the plaintiff, not against some third party.[5]   Powell's made-up argument is unmoored from reality.

---

*Neumann* and *Whelan* set forth an expansive formulation of the abuse of process standard that is arguably inconsistent with the stricter standard formulated by the D.C. Court of Appeals.").

[5] *See, e.g., Lemon v. Kramer*, 270 F. Supp. 3d 125, 143–44 (D.D.C. 2017) (dismissing Lemon's claim for abuse of process because "Mr. Lemon has not alleged that Defendants sought a 'collateral thing which ***Mr. Lemon*** could not legally and regularly be compelled to do" (emphasis added)); *Swanson v. Howard Univ.*, 249 F. Supp. 3d 255, 256–59 (D.D.C. 2017) (dismissing ***plaintiff's*** abuse of process claim because "there is no allegation that defendant sought a 'collateral thing which ***plaintiff*** could not legally and regularly be compelled to do" (emphasis added)); *id.* (citing *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) for the proposition that abuse of process "elements were not established when plaintiff did not contend that the filing of criminal charges was intended to pressure him into taking any action or prevent him from taking action"); *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 46 (D.D.C. 2005) (dismissing ***plaintiff's*** abuse of process claim because "Defendants did not attempt to compel plaintiff to do some 'collateral thing which [***plaintiff***] could not legally and regularly be compelled to do'" (emphasis added)); *id.* at 47 (dismissing ***defendants'*** abuse of process counterclaim because plaintiff set forth "neither allegation nor evidence that [plaintiff's lawsuit] sought a 'collateral thing which [***defendants***] could not legally and regularly be compelled to do").

All of Powell's cited abuse of process cases (ECF No. 58-2, Opposition at 4–7) focus on a defendant's improper actions targeting the first-party plaintiff not some third party. *See Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) (first-party claim by arrestee for defendant's actions targeting the arrestee); *Neumann v. Vidal*, 710 F.2d 856 (D.C. Cir. 1983) (first-party claim by plaintiffs for defendant's actions targeting plaintiffs); *Morowitz v. Marvel*, 423 A.2d 196, 198–99 (D.C. 1980) (first-party claim by plaintiff for defendant's actions

The comments and illustrations to Section 682 of the Restatement (Second) of Torts demonstrate the claim's actual reach.[6] Section 682 reads:

> One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

Restatement (Second) of Torts § 682 (1977). Comment b explains that "[t]he usual case of abuse of process is one of some form of extortion, *using the process* to put pressure *upon the other to compel him* to pay a different debt or *to take some other action or refrain from it*." *Id.* cmt. b (emphasis added). The comment gives three examples of valid claims. All are first-party claims—they describe the act to accomplish an improper purpose as targeting the same person the legal process targeted. *See id.* cmt. b (discussing illustrations 1, 2, and 3). The Restatement includes no examples of using the legal process against one party to accomplish an improper purpose directed against another third-party.

Powell offers only one case, *Scott v. District of Columbia*, 101 F.3d 748, 756 (D.C. Cir. 1996), in support of her ability to assert a third-party abuse of process claim. She argues from *Scott*'s discussion of another case, *Neumann v. Vidal*, 710 F.2d 856 (D.C. Cir. 1983), that "[a]

---

targeting plaintiff to coerce settlement money from plaintiff); *Goodall v. Frank R. Jelleff, Inc.*, 130 A.2d 781, 782 (D.C. 1957) (first-party claim by plaintiff because defendant's actions targeted him and caused him to "suffer[] mental anguish and a complete impairment of his credit"); *Geier v. Jordan*, 107 A.2d 440, 440–41 (D.C. 1954) (first-party claim by plaintiff for defendant's actions targeting plaintiff to extort money from plaintiff); *Hall v. Field Enterprises, Inc.*, 94 A.2d 479, 480–81 (D.C. 1953) (first-party claim by plaintiff because defendant's actions targeted plaintiff and allegedly caused injury to plaintiff's reputation and unlawful seizure of his wages).

[6] D.C. courts look to Section 682 of the Restatement (Second) of Torts, including its comments, in interpreting the elements of a claim for abuse of process. *See, e.g., Doe v. District of Columbia*, 796 F.3d 96, 108 (D.C. Cir. 2015) (citing § 682); *Swanson,* 249 F. Supp. 3d at 258 (same); *Houlahan v. World Wide Ass'n of Specialty & Schools*, 677 F. Supp. 2d 195, 200 (D.D.C. 2010) (same); *Scott v. Dist. of Columbia,* 101 F.3d 748, 755–56 (D.C.Cir.1996) (same).

viable abuse of process claim can be premised on attempts to coerce third parties," ECF No. 58-2, Opposition at 7. But both *Scott* and *Neumann* are irrelevant. They both address first-party claims.

In *Scott*, an arrestee argued that the police committed abuse of process by bringing a DUI proceeding against him to hide the fact that they used excessive force in arresting him for the DUI. *Scott*, 101 F.3d at 755–56. Scott's claim was therefore based on use of process and non-judicial conduct both of which were directed at the arrestee.[7] 101 F.3d at 756.

*Neumann*—the case *Scott* distinguished—is a bit more complicated factually but is also a first-party claim.[8] Neumann, a developer, applied for a patent and decided to establish a business. He sought investors. In the meantime, another developer, RECO, challenged Neumann's patent application with the patent office and sued Neumann for misappropriation of trade secrets. In deciding the lawsuit, the court found that Neumann had not used RECO's trade secrets in the past but entered an injunction prohibiting Neumann from using them in the future. *See Neumann v. Vidal*, 710 F.2d 856, 858 (D.C. Cir. 1983).

During the ligation, Neumann's potential investors withdrew because they did not want to get involved in business with Neumann while the lawsuit was pending. After it resolved, Neumann sued RECO for abuse of process based on the earlier lawsuit and RECO's challenges

---

[7] It was dismissed, among other reasons, because "the officers instituted the criminal charge for precisely the purpose for which it was intended; establishing that Scott was guilty of a criminal offense." *Scott*, 101 F.3d at 756.

[8] Notably, Powell does not rely on *Neumann* itself, but instead on how *Scott* distinguishes *Neumann* from *Scott*. Powell's hesitation against relying directly on *Neumann* is likely because the "expansive formulation of the abuse of process standard" *Neumann* supports "is arguably inconsistent with the stricter standard" the D.C. courts formulated in later cases, and other D.C. courts have expressly declined to follow its teachings. *See Houlahan v. World Wide Ass'n of Specialty & Schools*, 677 F. Supp. 2d 195, 199 n.3 (D.D.C. 2010) (gathering cases).

10305260v1/016952

to Neumann's patent. The district court found that res judicata and estoppel barred the abuse of process claim because RECO obtained an injunction in the first lawsuit. *See id.* On appeal, the D.C. Circuit reversed because the earlier lawsuit had not provided the parties with "a full and fair opportunity to litigate" the claim and therefore res judicata and estoppel were inapplicable. *Id.* at 860–61. Like *Scott*, therefore, *Neumann* was a first-party claim because Neumann challenged multiple actions RECO directed at Neumann, not at any third-party.

Powell argues that she is doing something different—she is challenging Dominion's use of process against her based on Dominion's acts against third parties. Again, neither case law nor the Restatement of Torts recognize any such claim. Powell cannot find permission for a third-party abuse of process claim in two first-party cases.[9]

Powell also relies on *Scott*'s discussion of *Neumann* to suggest that she has properly alleged "first-party injury" flowing from her third-party claim. Those first party injuries, according to Powell,

> includ[e] difficulty in obtaining witnesses and persons who might provide evidence. In addition, Dominion's abusive litigation has served its intended purpose of distracting and depleting the resources and energy to challenge Dominion on the very issues that Dominion cares most about but claims—through counsel—not to be challenging in the underlying litigation.

---

[9] *Scott* held that reversing the district court was not contrary to *Neumann* because *Neumann* turned on principles of res judicata and estoppel, not on the merits of the abuse of process claim. *Scott*, 101 F.3d at 858. Ignoring this, Powell quotes dicta that speculates as to how *Neumann* might be distinguished from *Scott* had the *Neumann* court ruled on the merits instead.

What the dicta means is not obvious, either for that case or this one. But unraveling the meaning is unimportant. No court has ever cited or relied upon the dicta for any purpose, much less to recognize the existence of a third-party abuse of process claim.

As a practical matter, it is also not necessary to distinguish *Neumann*, a case decided in 1983, on the merits. As the court in *Houlahan* noted, D.C. courts have for years rejected *Neumann*'s expansive formulation of abuse of process in favor of a stricter standard. *See Houlahan*, 677 F. Supp. 2d at 199 n.3.

Opposition at 6–7. In other words, Powell is arguing the same injury, regardless of whether the claim she asserts is for herself or on behalf of others. Boiled down, her alleged injury is that this lawsuit is costing her money and she cannot find witnesses who will support her defamation. *Scott* does not begin to suggest that either injury supports any claim of abuse of process. *Scott* does not mention injury at all. But Dominion's motion to dismiss does, as do the cases Dominion cites. They demonstrate that under D.C. law, Powell cannot claim injury for events that flow naturally from the existence of the lawsuit against her. *See* ECF No. 55-1, Mot. at 5–6 (citing cases). Powell simply ignores the case law.

In its opening brief, Dominion detailed exactly how and why Powell's counterclaim does not state a first-party abuse of process claim. Rather than controvert Dominion's arguments or even acknowledge most of them, Powell created a new cause of action in her opposition. Neither the Restatement nor D.C. law has recognized Powell's third-party claim. This Court should not do so either.

## II.  Powell improperly argues "ulterior motive" based on unreasonable inferences drawn from limited facts.

The parties agree that allegations of "ulterior motive" is an essential element of an abuse of process claim. *Accord Houlahan*, 677 F. Supp. 2d at 199. And Powell says many times in her brief that Dominion did not challenge her motive allegations. *See* ECF No. 58-2, Opposition at 3, 8–9. But Dominion did challenge them (on the assumption that Powell was asserting a first-party claim).[10] To miss those challenges, Powell must ignore the relationship between pleading bad

---

[10] Of course, because Powell's abuse of process claim dramatically fails the second prong of the pleading test, whether it is a first- or third-party claim, the success of Dominion's motion to dismiss does not depend on addressing motive.

intent and pleading an act beyond filing suit that demonstrates bad intent. Motive and act are intertwined, and Dominion's motion to dismiss recognizes that.

On a macro level, Dominion used *Houlahan v. World Wide Ass'n of Specialty & Schools*, 677 F. Supp. 2d 195 (D.D.C. 2010), to show how easily another D.C. district court dismissed an abuse of process claim with a nearly identical narrative to Powell's, based on comparable facts. *See* ECF No. 55-1, Mot. at 6–10. More narrowly, Dominion criticized Powell for relying in her counterclaim on undated "acts," because abuse of process only focuses on actions taken after filing. *See id.* at 9 n.7.

As discussed, Powell's opposition reformulates her counterclaim from a first- to a third-party claim. Based on the reformulation, she brushes *Houlahan* aside because (as now described) "this case involves using the underlying litigation for a purpose outside the litigation, but *Houlahan* does not."[11] ECF No. 58-2, Opposition at 10. She also narrows the "acts" that demonstrate Dominion's "ulterior motive" to the only "facts" dated after Dominion sued Powell: (i) a portion of an exchange between Mr. Poulos and Chris Cuomo that aired during an interview on CNN on January 25, 2021, and (ii) a document preservation letter Dominion sent after it sued Powell.[12]

---

[11] If Powell's counterclaim pleads a first-party claim, *Houlahan* means the claim should be dismissed. If Powell's counterclaim pleads a third-party claim, the claim should also be dismissed because D.C. has never recognized such a claim.

[12] Powell says that "Counter-Plaintiffs intend to take discovery aimed at uncovering other post-filing examples of Dominion's abuse of process; but the examples of Dominion's post-filing misconduct cited in the counterclaim are sufficient to state a claim for relief that is plausible on its face." ECF No. 58-2, Opposition at 9. Powell recognizes that if the post-filing conduct in her counterclaim does not satisfy the elements of an abuse of process claim, she (obviously) cannot use discovery to fish for conduct that does.

Dispensing with Powell's rhetoric, therefore, this Court's job pursuant to Rule 12(b)(6) is to decide whether these two[13] facts support the inference that Powell draws from them: that Dominion acted to "silence anyone and everyone who had dared or might dare to question the reliability of Dominion's enterprise and . . . to tarnish the reputations of Sidney Powell and Defending the Republic, Inc," ECF No. 58-2, Opposition at 6. *See Swanson v. Howard Univ.*, 249 F. Supp. 3d 255, 257 (D.D.C. 2017) (under Rule 12(b)(6), "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint").

Powell urges that the CNN interview discloses that the "ultimate goal" of Dominion's "campaign of intimidation" was to force the public into accepting "Dominion's word that its count of votes is definitive." ECF No. 58-2, Opposition at 2. She both mischaracterizes the interview and misquotes Mr. Poulos. *See* ECF No. 49, Countercl. at 45 ¶ 53 (citing to https://www.youtube.com/watch?v=65qx-4g2bSc (last visited January 18, 2022)); ECF No. 58-2, Opposition at 2 n.2 (citing the same link to the same video). To start with, the interview relates to Dominion's lawsuit against *Rudy Giuliani*. It begins by showing Mr. Giuliani making public

---

[13] Footnote 8 to Powell's opposition calls Dominion's assertion that Powell's counterclaim is short on post-filing acts "spurious," and says she has "included examples of post-filing letters in Exhibit A, attached hereto" to put the assertion to rest. ECF No. 58-2, Opposition at 11 n.8. Exhibit A does not include "examples." It is a single letter, the only post-dated letter referenced in her counterclaim. That letter, a document preservation letter, is discussed *infra*.

Powell's opposition also refers to, and her counterclaim identifies, a cease-and-desist letter Dominion sent to Powell. However, that letter is irrelevant. Powell's third-party claim is based on Dominion's alleged targeting of third parties, and Powell is not a third party. Also, the letter was sent before Dominion filed its lawsuit and Powell cannot base her abuse of process claim on actions Dominion took before filing. *See* ECF No. 55-1, Mot. at 9 n.7 (discussing ECF No. 49, Powell's Countercl. at 43 n.23 which links to December 16, 2020 demand letter to Sidney Powell PDF at https://www.dominionvoting.com/legal-updates-learn-how-we-are-defending-dominion/).

statements about Dominion in public locations—statements over which Dominion is suing Mr.

Giuliani:

> This Dominion company is a radical left company.
> These crooked Dominion machines . . .
> They cheated with the machines.
> Then a Venezuelan company counted our votes.

*Id.* at 0:16–0:27. In that context, Mr. Cuomo asks Mr. Poulos:

> Why sue?

*Id.* at 0:41–0:42. Mr. Poulos responds:

> We have no choice. Disinformation in elections is a huge problem. What we are seeing
> right now I don't think we've ever seen before and *it's affecting certainly our good name
> and it's raising serious doubts in the electors' minds across the country*. And frankly, it's
> the only avenue we have to rectify the situation.

*Id.* at 0:44–1:11. Later in the interview, Mr. Cuomo says Mr. Giuliani claims to welcome the

lawsuit because it will allow him to "investigate the history, the finances, the practices" of

Dominion. Again, in that context, Mr. Cuomo asks Mr. Poulos:

> If you win, would the ultimate reward be to have Rudy Giuliani or anybody who is
> named in the suit say, "We were wrong, there is nothing that we could prove to show
> what we alleged against Dominion and therefore against the election." Is that the ultimate
> goal?

*Id.* at 4:10–4:30. Mr. Poulos's response (including the language Powell omits from her

opposition):

> The ultimate goal here is for [the millions of Americans who vote] *to understand how the
> process actually works, and the fact that there is one paper ballot for every vote cast in
> all of the territories and states that we've serviced, through election officials*, and that the
> count actually was correct. That's the ultimate goal.

*Id.* at 4:57–5:14 (emphasis added). Nothing in the interview remotely supports Powell's

allegation that Dominion sued Powell (or, for that matter, Giuliani) so the public would "accept[]

Dominion's word that its count of votes is definitive," or to "clear its name on the vulnerability

issues." ECF No. 58-2, Opposition at 2, 9. Rather, Mr. Poulos speaks plainly to rebutting the

specific allegations that Dominion rigged the 2020 election, and his hope that once Americans understand how the voting process works, with all its many safeguards (including paper ballots for recounting), Americans will come to understand what is true, namely, that the 2020 election was not rigged and the count was correct.

Nor does the single post-filing letter support an inference that Dominion sent the letter with the "ulterior motive" of silencing discussions of theoretical vulnerabilities in Dominion's voting machines. The letter, a document preservation demand directed to third-party Benjamin Turner, includes the following statement:

> We write to you because of your role in the ongoing misinformation campaigns falsely accusing Dominion of somehow rigging or otherwise improperly influencing the outcome of the November 2020 U.S. presidential election.

*See* ECF No. 58-3, Ex. A to Opposition (cited in ECF No. 58-2, Opposition at 11 n.8). The letter provides a link to the lawsuits against Powell and Giuliani, which allowed Mr. Turner to read the exact accusations of vote-rigging and improper influence Dominion's lawsuits targeted. It asks Mr. Turner to preserve documents relating to Dominion or "the disinformation campaign"—*i.e.*, the accusations in the lawsuits Dominion attached. But Powell and Dominion agree that the disinformation campaign the lawsuits target do not address the topic of theoretical vulnerabilities of Dominion voting machines. Neither the letter to Mr. Turner nor any like it support the inference Powell draws from them.

In sum, the story Powell tells about why Dominion sued her is not remotely recognizable from the evidence she pleads. It is incredible and not supported by anything Dominion said or did. Dominion sued Powell (and others) for claiming—publicly, falsely, and outrageously—that Dominion rigged the 2020 election, was created for the purpose of rigging elections for Hugo Chavez, bribed election officials, and so forth. The idea that these are "statements of relatively

minor importance to Dominion's business," ECF No. 58-2, Opposition at 10, is absurd and insulting; these are the statements that have caused Dominion enormous harm. Dominion's public appearances (such as Mr. Poulos's) and cease-and-desist letters (such as the one to Mr. Turner), sought to deter others *from continuing to repeat those very same sorts of enormously damaging defamatory statements*. Trying to stop people and organizations from defaming you is a valid use of the legal process, and coupling it with a public relations campaign to serve the same end does not convert the lawsuit into an abuse of process. *See Houlahan*, 677 F. Supp. 2d at 201 (bringing and publicizing a defamation lawsuit suit are, by design, "meant to silence individuals from making defamatory or otherwise harmful statements" and not evidence of abuse of process). Dominion had every right to send letters demanding that people—even Powell's clients—stop repeating the defamatory statements. Powell's assertion that Dominion was really concerned about discussion of theoretical vulnerabilities of its machines, and not false accusations of election rigging for Hugo Chavez and President Biden and bribing officials, is preposterous and contrary to actual facts, including the letter and television appearance Powell pled in her counterclaim.

Because Powell's allegations of Dominion's "ulterior motive" are built on unreasonable inferences, she should not be allowed to move forward with her claim, whether the claim relates to actions against her or against a third-party.

## III.   Powell has no standing to bring a third-party claim.

Finally, there is the issue of standing. The Supreme Court has "adhered to the rule that a party generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Powell claims an exception because,

she says, the claim of abuse of process itself allows the assertion of third-party rights. As Section I demonstrates, that is not true. Because it is not true, Powell cannot assert the rights of others without satisfying three criteria: (i) Powell must have suffered her own "injury in fact," (ii) she must have "a close relation" to the people whose rights she is asserting, and (iii) those people must be hindered in their ability to protect their own interests. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 34 (D.D.C. 2020), appeal dismissed, 2021 WL 5537747 (D.C. Cir. Nov. 19, 2021) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

The case law on third-party standing is wide and deep, but it is not necessary to wade in far here. Powell has the burden to prove standing "[b]ecause third-party standing is the 'exception rather than the norm.'" *United States v. TDC Mgmt. Corp.*, 263 F. Supp. 3d 257, 272 (D.D.C. 2017), appeal dismissed, 2018 WL 2341804 (D.C. Cir. Apr. 26, 2018). Powell makes only the most minimal stab at proof, and then only to address briefly one of the three criteria.

Citing paragraph 50 of her counterclaim, Powell argues that "[f]or at least [sic] of the cease-and-desist letters, Dominion contacted Ms. Powell's *clients*, which qualifies as a sufficiently close relationship." *See* ECF No. 58-2, Opposition at 4 n. 3 (emphasis in original). Even if such a poorly elucidated attorney-client relationship were enough for the second criteria, Powell does not purport to be suing only on behalf of whichever, and however many, current or former clients received letters. She purports to be suing on behalf of everyone in the United States who might be silenced by the existence of Dominion's lawsuit against her. Paragraph 50 of Powell's counterclaim does not even try to demonstrate "a close relation" between her and everyone else in the United States. *See Whitman-Walker Clinic*, 485 F. Supp. 3d at 36 (noting that the Supreme Court has denied the existence of a close relationship between an attorney and

"as yet unascertained criminal defendants" because "the class of potential third parties could have been literally any person"(discussing *Kowalski*, 543 U.S. at 129)).

Worse still, Powell offers no proof of either other criteria. As to the first, Powell cannot prove injury in fact because the injury she alleges *she* suffered is not injury that gives her standing. Being called out for committing defamation, and forced to expend time and resources in litigation, is a natural outgrowth of a defamation lawsuit and is not a permissible basis for an abuse of process lawsuit. *See* ECF No. 55-1, Mot. at 5–6 (citing cases).

Finally, Powell does not address the third criteria at all and so does not prove she meets it as to anyone's claim (much less as to everyone's). In short, she identifies no hindrance to any third-party's ability to protect their own interests and, as a factual matter, she could not. A hindrance is a "genuine obstacle" preventing the third-party from asserting her legal rights."[14] *TDC Mgmt. Corp.*, 263 F. Supp. 3d at 273–74. With respect to Powell's third-party claim, the most obvious proof that no hindrance exists is that eight self-described "everyday Americans" recently sued Dominion in the United States District Court for the District of Colorado on behalf of a class of all persons who received document preservation letters from Dominion. Ex. 1, 1st Am. Compl. ¶ 5, ECF No. 31, *Cooper v. Dominion*, No. 21-cv-2672 (D. Colo. Dec. 28, 2021). That lawsuit alleges the same conduct as Powell's counterclaim, and the individual plaintiffs in it allege more and broader claims against Dominion than even Powell does. While Dominion believes the claims are meritless, plainly the plaintiffs do not believe they are hindered from

---

[14] "The Supreme Court has recognized the following as sufficient hindrances justifying third-party standing: (1) deterrence from filing suit due to privacy concerns, (2) systemic practical challenges to pursuing one's own rights, or (3) the 'imminent mootness' of a case." *TDC Mgmt. Corp.*, 263 F. Supp. 3d at 274. None remotely applies here.

10305260v1/016952

asserting their own alleged rights for themselves and the class members they purport to represent. Clearly, nothing is hindering third-parties from asserting their own claims.

Powell has no standing to bring her counterclaim on behalf of any third-party.

## CONCLUSION

Whether Powell's counterclaim is a first- or third-party abuse of process claim, it is incurably flawed. The Court should dismiss it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* ECF No. 49, Countercl. at 28–52.


Dated: January 18, 2022                              Respectfully submitted,


                                                     */s/ Mary Kathryn Sammons*

Justin A. Nelson (D.C. Bar No. 490347)               Thomas A. Clare, P.C. (D.C. Bar No. 461964)
Mary Kathryn Sammons (D.C. Bar No.                   Megan L. Meier (D.C. Bar No. 985553)
TX0030)                                              Dustin A. Pusch (D.C. Bar No. 1015069)
Laranda Walker (D.C. Bar No. TX0028)                 CLARE LOCKE LLP
Florence T. Chen (D.C. Bar No. TX0025)               10 Prince Street
Brittany Fowler (*admitted pro hac vice*)            Alexandria, VA 22314
SUSMAN GODFREY LLP                                   Telephone: (202) 628-7400
1000 Louisiana Street, #5100                         tom@clarelocke.com
Houston, Texas 77002                                 megan@clarelocke.com
(713) 651-9366                                        dustin@clarelocke.com
jnelson@susmangodfrey.com
ksammons@susmangodfrey.com
lwalker@susmangodfrey.com                            Rodney Smolla (Bar No. 6327)
fchen@susmangodfrey.com                              4601 Concord Pike
bfowler@susmangodfrey.com                            Wilmington, DE 19803
                                                     rodsmolla@gmail.com
                                                     (864) 373-3882
Stephen Shackelford, Jr. (Bar No. NY0443*)*
Elisha Barron (*admitted pro hac vice*)
SUSMAN GODFREY LLP                                   *Attorneys for Plaintiffs*
1301 6th Avenue
New York, NY 10019
(212) 336-8330
sshackelford@susmangodfrey.com
ebarron@susmangodfrey.com


Davida Brook (D.C. Bar No. CA00117*)*

16

SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
dbrook@susmangodfrey.com

Stephen E. Morrissey (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA  98101
(206) 516-3880
smorrissey@susmangodfrey.com

17