IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

US DOMINION, INC., DOMINION VOTING )
SYSTEMS, INC., and DOMINION VOTING )
SYSTEMS CORPORATION, )
)
    *Plaintiffs*, )   No. 1:21-cv-00040 (CJN)
)
    v. )
)
SIDNEY POWELL, SIDNEY POWELL, )
P.C., and DEFENDING THE REPUBLIC, INC., )
)
    *Defendants*. )

**MEMORANDUM OF LAW IN SUPPORT OF
POWELL'S MOTION FOR PARTIAL STAY
AND PROTECTIVE ORDER**

**KENNEDYS CMK LLP**

Joshua A. Mooney DC Bar No. 471866
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Tel: 267-479-6700
Joshua.Mooney@kennedyslaw.com

Marc Casarino, pro hac vice
919 N. Market Street, Suite 1550
Wilmington, DE 19801
Tel: 302-308-6647
Email: marc.casarino@kennedyslaw.com

Michael J. Tricarico, pro hac vice
570 Lexington Avenue, 8th Floor
New York, New York 10022
Tel: (646) 625-3952
Email: Michael.tricarico@kennedyslaw.com

*Attorneys for Defendant Sidney Powell and
Sidney Powell, P.C.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii
TABLE OF AUTHORITIES ......................................................................................................... iii
INDEX OF EXHIBITS .................................................................................................................. iv
    I.    INTRODUCTION ............................................................................................................ 1
    II.    BACKGROUND .............................................................................................................. 2
    III.    GOVERNING STANDARDS ......................................................................................... 4
    IV.    ARGUMENT .................................................................................................................... 4
        A. The Court Can Craft the Narrowly Tailored Stay Requested Here ............................... 4
        B. The Close Relationship of Both Actions Favors the Requested Stay ............................ 6
        C. The Burden on the Court Factor Weighs in Favor of the Requested Stay ................... 11
        D. The Balance of Interests Favors the Requested Stay ................................................... 12
        E. The Brief Duration Favors the Requested Stay ........................................................... 12
        F. Ms. Powell Has Good Cause for the Protective Order Pending
           the Court's Decision ..................................................................................................... 13
    V.    CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                             **Page(s)**

*Am. Express Bus. Fin. Corp. v. RW Pro. Leasing Servs. Corp.*,
    225 F. Supp. 2d 263 (E.D.N.Y. 2002) ................................................................................ 6

*Doe v. Sipper*,
    869 F. Supp. 2d 113 (D.D.C. 2012) .................................................................................... 4

*Est. of Gaither ex rel. Gaither v. D.C.*,
    2005 WL 3272130 (D.D.C. Dec. 2, 2005) ........................................................................ 11

*Exch. Comm'n v. Dresser Indus. Inc.*,
    628 F.2d 1368 (D.C. Cir. 1980) ......................................................................................... 4

*Fid. Funding of California v. Reinhold*,
    190 F.R.D. 45 (E.D.N.Y. 1997) ......................................................................................... 5

*Gala Enters., Inc. v. Hewlett Packard Co.*,
    1996 WL 732636 (S.D.N.Y. Dec. 20, 1996) ..................................................................... 5

*Kurd v. Republic of Turkey*,
    2022 WL 17961245 (D.D.C. Dec. 27, 2022) ..................................................................... 4

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012) ............................................................................................... 12

*Mosley v. State*,
    560 S.E.2d 305 (Ga. App. Ct. 2002) .................................................................................. 7

*Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995) ................................................................................... 5

*Volmar Distributors, Inc. v. New York Post Co., Inc.*,
    152 F.R.D. 36 (S.D.N.Y. 1993) ......................................................................................... 7

*Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd.*,
    7 F. Supp. 2d 523 (D.N.J. 1998) ........................................................................................ 7

*Wehling v. Columbia Broad. Sys.*,
    608 F.2d 1084 (5th Cir. 1979) ......................................................................................... 12

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| A. | The Indictment |
| B. | Powell's Speedy Trial Request |
| C. | Dominion's September 8, 2023 Correspondence |
| D. | Dominion's August 24, 2023 Email Attaching Second Requests for Production to Powell |
| E. | Dominion's Outstanding Document Requests |

I.      **INTRODUCTION**

Under Fed. Civ. Pro. Rules 7(b) and 26(c), Defendants Sidney Powell and Sidney Powell, P.C. (collectively, Powell), move for a **60-day stay** of the service of any discovery demands or deposition notices upon them in this action, and a protective order providing no responses shall be served to any pending discovery demands, including plaintiffs' Second Requests for Production of Documents, which were propounded just days after Powell disclosed to plaintiffs the defendants' intended motion for stay as part of a meet and confer.

Ms. Powell has been indicted on multiple charges in *State of Georgia v. Donald J. Trump, et al*, Case No. 23-SC-188947 (Super. Ct., Fulton County) (Fulton Action). On August 25, 2023, Ms. Powell demanded a speedy trial. On September 6, 2023, the Fulton County Court granted that request. The criminal trial is set to begin on or about October 23, 2023.[1] To avoid being placed in what courts recognize as the "significant dilemma" of having to respond to discovery and/or appear for a deposition in this action during an active criminal action, thereby having to decide whether to assert or waive rights under the Fifth Amendment of the United States Constitution, Ms. Powell requests a **60-day** stay of discovery sought from her and Sidney Powell, P.C., for which she is the sole partner.

The United States Court of Appeals for the D.C. Circuit has identified four factors to consider, all of which favor Ms. Powell's request for a stay. They are:

1.  **Close Relationship.** Both actions are based on many of the same underlying events, legal theories, and other allegations to form a close relationship.

2.  **Burden on the Court (i.e., judicial efficiency).** A momentary stay would prevent unnecessary litigation and promote better judicial efficiency.

---

[1] Judge McAfee has indicated that he intends to have a jury seated in the Fulton Action against Sidney Powell and Kenneth Chesebro by November 3, 2023 and that the trial against these two defendants will proceed without delay.

3. **Hardship on the Parties.** Any hardship would be minimal for Dominion if a stay were granted and far greater for Ms. Powell if the stay were denied.

4. **Duration of Stay Requested.** Ms. Powell's request is for only *60 days* which is "relatively insignificant" and allows for discovery as between other parties in the Dominion litigations to proceed without even a brief delay.

In addition, Ms. Powell has demonstrated "good cause" for entry of a protective order requiring that Ms. Powell and her law firm not have to respond to pending discovery demands – whether as a "supplement" to demands already answered or in response to Dominion's Second Requests for Production of Documents, pending the court's decision and further directives in response to this motion.

II. **BACKGROUND**

On August 14, 2023, Ms. Powell was indicted in the Fulton Action. The indictment alleges that Ms. Powell, Rudolph Giuliani, Donald Trump, and other co-defendants participated in a multi-state conspiracy to overturn the results of the 2020 Presidential Election. Ms. Powell has been accused of seven violations of Georgia law. *See* Indictment 23SC188947 filed August 23, 2023. (Ex. A.)[2] The Indictment alleges that Ms. Powell undertook multiple acts in furtherance of a criminal RICO enterprise which implicate this lawsuit. *Id.* Ms. Powell promptly demanded a speedy trial. (Ex. B.)[3] On September 6, 2023, the Fulton County Court granted her request, and has indicated the

---

[2] The allegations include violation of Georgia's Racketeer Influenced and Corrupt Originations Act ("RICO") under O.C.G.A. § 16-14-4(c), two counts of Conspiracy to Commit Election Fraud under O.C.G.A. § 22-2-603 & 21-2-566, Conspiracy to Commit Computer Theft under O.C.G.A. § 16-4-8 & 16-9-93(a), Conspiracy to Commit Computer Trespass under O.C.G.A. § 16-4-8 & 16-9-93(b), Conspiracy to Commit Computer Invasion of Privacy under O.C.G.A. § 16-4-8 & 16-9-93(c), and Conspiracy to Defraud the State under O.C.G.A. § 16-10-21. A true and correct copy of the Indictment in the Fulton Action is enclosed as Exhibit A.

[3] A true and correct copy of the demand for a speedy trial, as filed, is enclosed as Exhibit B.

intention to have a jury seated for the trial against Ms. Powell and co-defendant Kenneth Chesebro no later than November 3, 2023.

The parties here met and conferred over Ms. Powell's intended motion for a stay beginning on August 22, 2023. Dominion refused to consent to a general stay, stating that they "cannot agree to even a 'short' [60-day] stay" that would permit Ms. Powell to "stop the completion of [her] document productions." (Ex. C.)[4] Further, Dominion responded to the initial meet-and-confer by propounding additional discovery on Ms. Powell, as if anticipating that a stay would be granted. (Ex. D.)[5] In fact, Dominion did not provide its non-consent position to the requested stay until *after* it had propounded its second round of discovery on Powell.

Dominion requested that we inform the Court of its position. Ms. Powell does so here:

> Dominion is willing to consent to a 60-day stay of this case, provided (1) Defendants continue to work to complete their document productions (all documents responsive to Dominion's outstanding discovery requests), produce a complete and compliant privilege log relative to those productions, and continue to meet and confer with Dominion as necessary to resolve any disputes regarding those productions and privilege logs; (2) for any dispute regarding document productions that the parties can't resolve, Defendants agree that Dominion can move to compel production of the disputed documents in one of [the] other DC cases (since the documents are also relevant to those cases); and (3) the stay will be automatically lifted if the current trial date for the Georgia trial is postponed or otherwise taken off the calendar, or after 60 days, whichever comes earlier, regardless of whether the criminal proceedings against Ms. Powell are still ongoing, unless Dominion and Defendants agree to jointly request a continuance of the stay.

(Ex. C.)

---

[4] A true and correct copy of Dominion's counsel's correspondence is enclosed as Exhibit C.

[5] A true and correct copy of Dominion August 24, 2023 email serving Dominion's second set of documents requests is enclosed as Exhibit D.

3

Dominion's suggested approach is unreasonable. To avoid being placed in the "significant dilemma" of having to defend both lawsuits simultaneously and the potential undermining of her rights under the Fifth Amendment, Ms. Powell requests a **60-day stay** of her responsive discovery and deposition obligations in this litigation (especially discovery propounded in anticipation of Ms. Powell's motion). Dominion has indicated some agreement with the concept of a stay in light of the parallel criminal action. *See supra.* However, Ms. Powell respectfully submits that her request for a 60-day stay of all discovery on her is the most reasonably tailored approach that would not delay the Dominion litigations and would protect her from the "significant dilemma" courts seek to avoid.

### III. GOVERNING STANDARDS

Whether to grant a stay rests with the broad discretion of the Court, looking to "the interest of justice and in the light of the particular circumstances of the case." *Doe v. Sipper*, 869 F. Supp. 2d 113, 115 (D.D.C. 2012) (internal quotes omitted); *Sec. & Exch. Comm'n v. Dresser Indus. Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980). A court may "stay civil proceedings, postpone civil discovery or impose protective orders and conditions[.]" *Kurd v. Republic of Turkey*, 2022 WL 17961245, at *1 (D.D.C. Dec. 27, 2022) (emphasis added). The court's authority "is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Sipper, supra.*

The party seeking a protective order "bears the burden of making the showing of good cause" under Fed. R. Civ. Pro. Rule 26(c). *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998). Trial courts have "broad discretion to issue and set the terms of a protective order." *Id.*

### IV. ARGUMENT

#### A. The Court Can Craft the Narrowly Tailored Stay Requested Here.

When determining whether to stay a civil litigation in the face of an ongoing, parallel criminal litigation, this Court looks to four factors: (a) the relationship between the civil and criminal actions; (b) the burden on the court; (c) the hardships or inequalities the parties would face if a stay was

4

granted (or the balance on interest); and (d) the duration of the requested stay. *Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012) (citing cases).[6] Each of these factors, individually and collectively, weigh in favor of the requested stay here. (*See infra,* Parts B-D.)

Further, Ms. Powell's request has been narrowly tailored so not to unnecessarily impact or delay discovery exchanged by other parties in the Dominion litigations, or to delay Dominion's prosecution of those actions. It is well settled that a court may tailor individualized relief on a case-by-case basis in order to protect the rights of a defendant in a civil action facing a parallel criminal action. *Gala Enters., Inc. v. Hewlett Packard Co.*, 1996 WL 732636, at *3 (S.D.N.Y. Dec. 20, 1996). In *Gala*, as an example, the New York federal court noted the different procedural stages of the separate criminal actions and determined that a general stay of the civil case would not be the best approach insofar as it would fail to balance the interests of the litigants and the court. *Id.* at *1. Instead, the *Gala* court granted the indicted party's stay, but allowed discovery to proceed against other uninvolved litigants. *Id.* Individual tailored relief, the court reasoned, better balanced the needs of the criminal defendant, the other litigants, and the court. *Id.* at *2; *see also Fid. Funding of California v. Reinhold*, 190 F.R.D. 45, 52 (E.D.N.Y. 1997) (granting stay of discovery for one party following his criminal indictment, but permitting discovery to proceed for other litigants); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (staying civil case following party's indictment).

Here, Ms. Powell seeks a protective order and a 60-day stay of responding to discovery served on her and her law firm. Her request is narrowly tailored to permit discovery to continue for the other parties so not to impair or delay Dominion's prosecution of its other litigation.

---

[6] The Court may give each factor as much weight as it determines to be necessary. *Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012).

### B. The Close Relationship of Both Actions Favors the Requested Stay.

The allegations against Ms. Powell in both actions are based upon many of the same alleged underlying events, legal theories, and even voting machines. This factor weighs in favor of a stay.

The necessity of a stay of civil litigation against a criminally indicted defendant is most compelling when there is a "close relationship" between the civil and criminal actions that implicates a defendant's Fifth Amendment rights. *Sipper*, 869 F. Supp. 2d at 116; *see also Sec. & Exch. Comm'n v. Dresser Indus. Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980) ("noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege"); *Kurd v. Republic of Turkey*, 2022 WL 17961245, at *2 (D.D.C. Dec. 27, 2022) ("D.C. Circuit has recognized that 'the strongest case for deferring civil proceedings until after completion of criminal proceedings is where,' as here, 'a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter'"); *Am. Express Bus. Fin. Corp. v. RW Pro. Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 265 (E.D.N.Y. 2002) ("risk of impairing the party's Fifth Amendment rights presents a stronger case for staying discovery, particularly when there are similar issues between the civil and criminal cases"). Under this factor, courts look to see if the civil and criminal actions arise from the same set of events. *Sipper*, 869 F. Supp. 2d at 116; *Dresser,* 628 F.2d at 1375-76 (strongest case for stay is where both actions involve same matter).[7] "A close relationship between the two actions, furthermore, is often viewed as the most significant factor in the balancing test." *Sipper*, 869 F. Supp. 2d at 116.

---

[7] *See also Volmar Distributors, Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (granting stay where indictment against defendants arose from same factual background alleged in civil complaint); *Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd.,* 7 F. Supp. 2d 523, 527 (D.N.J. 1998) (staying civil proceeding where civil and criminal actions involved many of the same real estate transactions).

6

This lawsuit and the Fulton Action have a close relationship. Both arise from the same or closely associated alleged facts, events, legal theories, and even voting machines. The Fulton Action alleges that Ms. Powell conspired with Giuliani, Trump, the Trump Campaign, and others to overturn the 2020 Presidential Election and, in doing so, targeted Dominion voting machines in Coffee County, Georgia. The crux of the Indictment relies on several purported predicate acts to support the RICO claims made against her. *E.g., Mosley v. State*, 560 S.E.2d 305, 308 (Ga. App. Ct. 2002) ("To prove a RICO violation, the state must show that the defendant committed two or more predicate criminal acts of the type included in the RICO statute as part of an enterprise engaging in a pattern of racketeering activity."). Many of the identified predicate acts implicate the Dominion lawsuit:

- The Indictment identifies statements made by Ms. Powell at the November 19, 2020 RNC press conference as a predicate act.[8] (Ex. A at 14, 20.)

- The Indictment alleges that Ms. Powell made "false statements and writings" while operating in Georgia, other states, and DC. (Ex. A at 15.)

- The Indictment identifies meetings Ms. Powell had in DC that Dominion claims are germane to its claims of defamation. (Ex. A at 43.)[9]

The Indictment identifies as a purported predicate act alleged false testimony given by Ms. Powell during her deposition by the January 6th Commission regarding the efforts and participation levels of other defendants, including Giuliani, to access Dominion voting machines in Georgia as

---

[8] *See* Ex. A at 20 (alleging "appearing at a press conference at the Republic National Committee Headquarters [on November 19, 2020] on behalf of DONALD JOHN TRUMP and Donald J. Trump for President, Inc…and made false statements concerning fraud in the November 3, 2020, presidential election in Georgia and elsewhere.").

[9] *See* Indictment at 43 (alleging December 18, 2020, White House meeting between Ms. Powell, Giuliani, and Trump to discuss "certain strategies and theories intended to influence the outcome of the November 3, 2020 presidential election, including seizing voting equipment and appointing [Ms. Powell] as special counsel with broad authority to investigate allegations of voter fraud in Georgia and elsewhere.").

7

part of an effort to overturn the 2020 election. (Ex. A at 69.) Dominion has sought related discovery from Ms. Powell regarding the January 6th Commission.[10]

Dominion's claims and litigation tactics involve the same events and theories. Dominion alleges that Ms. Powell "act[ed] in concert with allies and media outlets determined to promote a false narrative about the 2020 election" and that she engaged in a conspiracy with others, including Giuliani and the Trump Campaign, to smear Dominion as part of an overall effort to overturn the 2020 election. ECF 1 ¶¶ 1, 8-10. Of particular import, Dominion alleges that Ms. Powell acted in concert with Giuliani and the Trump Campaign to spread falsehoods about the integrity of elections conducted *in Georgia. Id.* ¶¶ 1, 4, 8-10, 37-46.

Dominion alleges that during a Washington D.C. press conference, as well as a "Georgia political rally" and purported media blitz, Ms. Powell falsely claimed that Dominion had rigged the election and "bribed Georgia officials for a no bid contract." *Id.* ¶¶ 1-4, 9. Dominion alleges that as a result of Ms. Powell's statements and conduct, Dominion employees and "Georgia election officials received death threats" and otherwise were harmed. *Id.* ¶¶ 8-9. Similarly, the Fulton Action involves an alleged conspiracy between Trump, Ms. Powell, and others to overturn the election, including through an alleged disinformation campaign and actions, concerning the election conducted in Georgia and with Georgia election officials and Dominion voting machines, with an alleged intent to establish a belief that Dominion and others had "rigged" the election in Georgia (and other states).

Dominion's outstanding discovery requests also implicate the Fulton Action and demonstrate the actions' close relationship. The requests include:

---

[10] In its Second Set of Requests for Production, Dominion requested all documents and testimony given to the January 6th Committee. *See* Ex. E, RFP 60-62, enclosing true and correct copies of Dominion's outstanding document requests.

- All documents produced by Ms. Powell and all deposition transcripts, exhibits, related audiovisual recordings, and expert reports in the currently pending litigations captioned *Smartmatic USA Corp., et al. v. Fox Corporation, et al.*, Case No. 151136/2021, Supreme Court, New York action, *Eric Coomer, PhD. v. Donald J. Trump for President, Inc., et al.*, Case No. 2020-CV-034319, District Court, Denver County, Colorado. (*See* Ex. E, RFP 51-58);

- All filings concerning Ms. Powell's appeal in *Timothy King v. Gretchen Whitmer*, Case No. 21-1786 (6th Cir.). (*See* Ex. E, RFP 59);

- All documents, formal or informal deposition or interview transcripts, exhibits, and the deposition or interview transcripts' corresponding audiovisual recordings provided by Ms. Powell to THE SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL. (*See* Ex. E, RFP 60-61);

- All documents or notes prepared by Ms. Powell in connection with THE SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL. (*See* Ex. E, RFP 62);

- All documents produced or provided by Ms. Powell to the State Bar of Texas or any other body, any deposition transcripts, exhibits and related audiovisual recordings, and any communications made or received to or from the State Bar of Texas or any other body in connection with *Commission for Lawyer Discipline v. Sidney Powell*, Case No. DC-22-02562, 116th Judicial District, Dallas County, Texas. (*See* Ex. E, RFP 63-65);

- All documents produced or provided by Ms. Powell to the Michigan Attorney Discipline Board or any other body, any deposition transcripts, exhibits and related audiovisual recordings, and any communications made or received to or from the Michigan Attorney Discipline Board or any other body in connection with *Commission* in *Michigan Attorney Grievance Commission v. Sidney Powell*, Case No. 23-34-GA, Attorney Discipline Board, Michigan. (*See* Ex. E, RFP 66-68);

- Any other documents produced by Ms. Powell, and all expert reports, deposition transcripts, exhibits, and the deposition transcripts' corresponding audiovisual recordings from the "Kraken" Lawsuits or any other litigation, governmental investigation, grand jury proceeding, or disciplinary action involving claims about Dominion, its current or former employees, alleged, actual, or potential fraud in the 2020 Presidential Election; or allegations that voting systems had deleted, lost, changed, or compromised votes. (*See* Ex. E, RFP 69-71);

- All documents and communications concerning financial contributions made by or to Defending the Republic, Sidney Powell, P.C., or any other for or non-profit organization in which Ms. Powell holds a title or control, in whole or in part. (*See* Ex. E, RFP 72-75).

Indeed, the close relationship between these requests and the Fulton Action should not come as a surprise given that Dominion served the discovery *after* Ms. Powell met and conferred with Dominion's counsel about a stay. Ms. Powell anticipates that Dominion will argue that its additional discovery should not be included in any stay because the discovery was served before Ms. Powell's instant motion. The contention should be rejected. It wholly ignores both the purpose and remedial nature behind the stay, and that Dominion quickly served its discovery days after Ms. Powell informed Dominion of her intent to seek the stay.

Dominion's claims, the basis of its claims, and the discovery Dominion has propounded and will propound on Ms. Powell implicate the Fulton Action. Given the close relationship between the civil and criminal actions based on the overlapping events, this factor weighs in favor of the requested stay.

### C. The Burden on the Court Factor Weighs in Favor of the Requested Stay.

Judicial economy favors staying civil actions in their entirety for a period of time or, where a stay can be tailored to prevent prejudice to the defendant who faces a parallel criminal action, staying discovery against that defendant. "While not as significant as some of the other factors," a court "has an interest in preventing unnecessary conflict and litigation that may otherwise cloud its docket and hamper judicial economy." *Est. of Gaither ex rel. Gaither v. D.C.*, 2005 WL 3272130, at *5 (D.D.C. Dec. 2, 2005) (maintaining stay when lifting it "would-in all likelihood-result in a significant amount of discovery-related litigation relating to motions for protective orders, claims of privilege, and conflicts over witness availability"). Courts also recognize that the trial of a criminal matter first may

assist in streamlining civil discovery in the civil case. *Kurd*, 2022 WL 17961245 at *2 (stay facilitates judicial economy by avoiding "unnecessary litigation").

Here, a strong argument could be made that the action should be stayed in its entirety, *i.e.*, a general stay imposed on the basis that allowing the criminal trial to proceed first would avoid anticipated discovery disputes, and sought for (or challenged) protective orders. Some of the discovery Dominion seeks may be produced in the criminal litigation, thereby removing disputes over it. While the judicial interest factor weighs in favor of a general stay, Ms. Powell seeks only a narrowly tailored stay that would protect her from the "significant dilemma" of having to provide written discovery responses and sit for depositions while simultaneously defending herself against the closely related Fulton Action.

### D. The Balance of Interests Favors the Requested Stay.

This factor looks to the hardships or inequalities that the parties would face if a stay were granted or not granted. *Sipper*, 869 F. Supp. 2d at 116. Because the hardships would be minimal for Dominion, and far greater for Ms. Powell, this factor weighs in favor of the requested stay.

Having to litigate both the Fulton Action and this lawsuit at the same time, including providing written discovery responses and sitting for depositions, would require Ms. Powell, prior to the October criminal trial, to choose to waive or assert her rights under the Fifth Amendment. This Court has labeled this scenario a "significant dilemma." *Kurd*, 2022 WL 17961245 at *2 ("The balance of hardships faced by the parties should a stay be granted favors Defendants for one main reason: discovery in this civil case could impact the criminal case to a significant degree. Discovery here could possibly implicate the Fifth Amendment rights of [defendants], which courts have recognized to be a 'significant dilemma.'"); *Sipper*, 869 F. Supp. 2d at 117 (calling scenario "significant dilemma" and weighing in favor of staying civil action); *see also Wehling v. Columbia*

11

*Broad. Sys.*, 608 F.2d 1084, 1088–89 (5th Cir. 1979) (concluding it is unfair to force party to choose between Fifth Amendment privilege and civil action).

If Ms. Powell were to invoke the Fifth Amendment and decline to answer written discovery or deposition questions, this invocation could be used against her to establish civil liability. *Sipper*, 869 F. Supp. 2d at 117–18 (citing *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012)). Likewise, public interests favor a general stay or, where one can be tailored, a stay of discovery and depositions, because "[t]he public has an interest in ensuring that the criminal discovery process is not subverted" through complications caused by a parallel civil action. *Gaither*, 2005 WL 3272130 at *5. Ms. Powell's current discovery obligations in this action would also require that she and her criminal defense counsel divert their attention for the quickly approaching criminal trial and tight briefing schedule to prepare for responses, testimony, and possibly other procedures in this litigation to Ms. Powell's disadvantage in both cases.

On the other hand, the requested 60-day stay of discovery and depositions of Ms. Powell, on behalf of herself and her law firm, would not inflict hardship on Dominion. Ms. Powell only seeks a 60-day stay, a length this Court has indicated is "relatively insignificant." *Gaither*, 2005 WL 3272130 at *4. While the stay may inconvenience Dominion, it would not create undue hardship or prejudice. This factor weighs in favor of the requested stay.

### E. The Brief Duration Favors the Requested Stay.

"A stay with a limited duration, as presented here, is more likely to be granted than an indefinite one." *Kurd*, 2022 WL 17961245 at *4 (finding "short duration of the requested stay also weighs in favor of Defendants"); *Sipper*, 869 F. Supp. 2d at 118 (granting 90-day stay). Dominion previously has complained of the inconvenience conjured by any delay, as Ms. Powell's alleged defamatory statements were made three years ago. However, as noted by this Court in *Gaither*, "a delay of only three (3) additional months, when roughly thirty-five (35) months have already passed,

is relatively insignificant[.]" *Gaither*, 2005 WL 3272130 at *4. Here, the short duration requested by Ms. Powell is only a pause of breath by comparison and weighs in favor of the requested stay.

### F. Ms. Powell Has Good Cause for the Protective Order Pending the Court's Decision.

Emails from Dominion's counsel contend that Ms. Powell must continue to respond to discovery during the pendency of this motion. Such a consequence undermines the purpose of this motion, especially since Ms. Powell anticipates her trial to begin in less than a month. *E.g., Gala*, 1996 WL 732636, at *3 (granting protective order against discovery in connection with stay of discovery against indicted defendant).

Federal Rule of Civil Procedure 26 governs whether a motion for a protective order should be granted. *See* Fed. R. Civ. P. 26(c)(1). The party from whom discovery is sought may seek such an order to curtail discovery. *In re Kincaid*, 2023 WL 5933341, at *2 (D.D.C. Aug. 9, 2023). Courts weigh "specific evidence of the harm that would result" to the movant absent a protective order against "plaintiffs' legitimate and important interests in trial preparation." *Id.*; *see also Blake v. Architect of Capitol*, 2021 WL 5990949, at *2 (D.D.C. Sept. 22, 2021); *Moldea v. New York Times Co.*, 137 F.R.D. 1, 2 (D.D.C. 1990 (granting stay of all discovery pending ruling on filed motion for summary judgment).

Here, it would be appropriate for the Court to enter a protective order staying discovery pending its decision on the instant motion for stay. To require Ms. Powell to continue to respond to discovery would create the very "significant dilemma" Ms. Powell seeks to avoid. Further, given that Ms. Powell's criminal trial is less than a month away, a continuance of discovery during the pendency of this motion would undermine the purpose of this motion and the Court's ability to render a decision.

V.      CONCLUSON

Ms. Powell moves for a **60-day stay** of discovery and depositions sought from her in this action to provide her time to prepare for her October 23, 2023 criminal trial and to avoid the "significant dilemma" of having to defend both lawsuits simultaneously and determining whether to assert or waive her rights under the Fifth Amendment. The four factors considered in this Circuit each and collectively favor a stay: both matters have a close relationship, arising from the same underlying events, legal theories, and allegations, a stay would promote judicial efficiency, the hardship on Dominion would be minimal and great on Ms. Powell, and the requested duration of the stay is brief and would not prevent discovery to continue unaffected, as between other parties in the Dominion litigations.

For these reasons, Ms. Powell respectfully requests the Court to grant her motion.

Dated: October 4, 2023         **KENNEDYS CMK LLP**

By: */s Joshua A. Mooney*

Joshua A. Mooney DC Bar No. 471866
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Tel: 267-479-6700
Joshua.Mooney@kennedyslaw.com

Marc Casarino, pro hac vice
919 N. Market Street, Suite 1550
Wilmington, DE 19801
Tel: 302-308-6647
Email: marc.casarino@kennedyslaw.com

Michael J. Tricarico, pro hac vice
570 Lexington Avenue, 8th Floor
New York, New York 10022
Tel: (646) 625-3952
Email: Michael.tricarico@kennedyslaw.com

*Attorneys for Defendant Sidney Powell and Sidney Powell, PC*