**<u>EXHIBIT A</u>**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| US DOMINION, INC., et al.,<br><br>*Plaintiffs,*<br><br>    v.<br><br>SIDNEY POWELL, et al.,<br><br>*Defendants.* | Civil Action No. 1:21-cv-00040 (CJN) |
| US DOMINION, INC., et al.,<br><br>*Plaintiffs,*<br><br>    v.<br><br>RUDOLPH W. GIULIANI,<br><br>*Defendant.* | Civil Action No. 1:21-cv-00213 (CJN) |
| US DOMINION, INC., et al.,<br><br>*Plaintiffs/Counter-Defendants,*<br><br>    v.<br><br>MY PILLOW, INC., et al.,<br><br>*Defendants/Counter-Plaintiffs, and*<br>*Third-Party Plaintiffs,*<br><br>    v.<br><br>SMARTMATIC USA CORP., et al.,<br><br>*Third-Party Defendants.* | Civil Action No. 1:21-cv-00445 (CJN) |

1

US DOMINION, INC., et al.,

*Plaintiffs,*

v.                                                    Civil Action No. 1:21-cv-02131 (CJN)

PATRICK BYRNE,

*Defendant.*

---

US DOMINION, INC., et al.,

*Plaintiffs/Counter-Defendants,*

v.                                                    Civil Action No. 1:21-cv-02130 (CJN)

HERRING NETWORKS, INC., et al.,

*Defendants/Counter-Plaintiffs, and*
*Third-Party Plaintiffs,*

v.

AT&T SERVICES., et al.,

*Third-Party Defendants.*

## ORDER REGARDING DISCOVERY MATTERS

On September 21, 2023, the Court directed the parties in the above-captioned cases to meet

and confer to propose a discovery protocol for the handling of electronic discovery and other

certain discovery matters.[1]  An agreed order was to be submitted for the Court's approval, or the

---

[1] Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems
Corporation ("Dominion"), and Defendants Sidney Powell, Sidney Powell, P.C., Defending the
Republic, Inc., Rudolph W. Giuliani, Michael J. Lindell, My Pillow, Inc., Patrick Byrne, Herring
Networks, Inc. d/b/a One America News Network, Charles Herring, Robert Herring, Sr., Chanel
Rion, and Christina Bobb ("Defendants"), who are voluntarily coordinating or whose cases are
coordinated solely for purposes of discovery (herein "the litigation"), are collectively referred to

parties were to submit any remaining disputes to the Court for resolution. The parties could not agree on all of the provisions and have submitted their dispute for resolution. Upon consideration of their submissions, it is hereby **ORDERED** as follows:

1.  **Protocol for Production of Electronically Stored Information and Paper Documents**

By agreement of the parties, electronically stored information ("ESI") and hard copy paper documents (which may be scanned and produced) shall be produced in accordance with the applicable provisions of the Federal Rules of Civil Procedure and the protocol attached hereto as **Exhibit 1**, with certain exceptions that may be separately negotiated.  This protocol governs the production of all documents and information by the parties in these cases, including both custodial and non-custodial documents and information.

2.  **Stipulation Regarding Expert Discovery**

By agreement of the parties, expert discovery shall be conducted in accordance with the applicable provisions of the Federal Rules of Civil Procedure subject to the stipulation attached hereto as **Exhibit 2**.  This stipulation applies to all testifying experts designated by the parties in these cases, including both affirmative and rebuttal experts.

3.  **Scope of Discovery**

    (a)  **Date Range**

Unless stated otherwise herein, or agreed to by the parties, or ordered by the Court, only documents, communications, or ESI, if any, created or revised during the following relevant time periods are discoverable:

- For Dominion's custodial documents, noncustodial documents, text messages, non-email communications, and other ESI, the relevant time period can be found in each Defendant's discovery requests, and the parties are separately negotiating time

---

herein as "the parties."  This Order does not cover any Third-Party Defendant in the captioned cases.

periods depending on such requests.

- For the Herring Defendants' custodial documents, noncustodial documents, and ESI, the relevant time period is January 1, 2020 through August 31, 2021, except that the relevant time period is September 1, 2020 through August 31, 2021 for text or other non-email messages.

- For the My Pillow and Lindell Defendants' custodial documents, noncustodial documents, and ESI, the relevant time period is January 1, 2020 through December 31, 2021, except that the relevant time period is September 1, 2020 through April 30, 2021 for text or other non-email messages.

- For the Powell Defendants' custodial documents, noncustodial documents, and ESI, the relevant time period is January 1, 2020 through January 8, 2021, except that the relevant time period is September 1, 2020 through January 8, 2021 for text or other non-email messages.

- For DTR's custodial documents, noncustodial documents, and ESI, the relevant time period is November 3, 2020 through January 8, 2021, except that the relevant time period is November 3, 2020 through January 8, 2021 for text or other non-email messages.

- For Christina Bobb's custodial documents, noncustodial documents, and ESI, the relevant time period is November 3, 2020 through August 10, 2021, except that the relevant time period is November 3, 2020 through April 30, 2021 for text or other non-email messages.

- For Patrick Byrne's custodial documents, noncustodial documents, and ESI, the relevant time period is January 1, 2020 through December 31, 2021, except that the relevant time period is September 1, 2020 through August 31, 2021 for text or other non-email messages.

4. **Determining Locations of Responsive Custodial Documents**

(a) **List of Custodians**

The parties have identified certain individuals who at least one party expects to have generated or maintained discoverable information—whether ESI or in paper form. These individuals are identified in the list of agreed custodians attached as **Exhibit 3** , along with a specific party. The inclusion in this list of agreed custodians does not necessarily mean that that the identified party has possession, custody, or control of documents for the individual. Nor does it mean that the identified party will conduct a custodian interview of the individual or produce his

4

or her documents, or that a party agrees the individual is likely to have generated or maintained discoverable information. The parties nonetheless agree to reasonably attempt to include said individuals as part of their preservation, collection, and search efforts for likely discoverable information as appropriate and as possible. Each party reserves the right to seek discovery from other custodians or other sources as discovery develops.

**(b)      Custodian Interview Process**

To the extent such interviews have not already been conducted, all parties must conduct custodian interviews to determine the work habits and data or document storage practices of each custodian, and thus potential custodial sources where each custodian may possess discoverable information, as understood by FRCP 26(b)(1). Where possible and appropriate, the parties agree to conduct custodian interviews of their respective individuals identified in the list of agreed custodians at **Exhibit 3**, in which the potential custodians are asked questions calculated to ascertain their knowledge concerning the likely location of any information relevant to the claims and defenses asserted in that party's particular case.

The parties shall complete their respective custodian interviews no later than 21 days after entry of this Order.

**5.      Search Methodology**

A producing party shall disclose to the requesting party the method it intends to use to locate the ESI it will review for responsiveness and relevancy. Such disclosure shall occur before the producing party implements its intended method, so that the parties can resolve any disputes regarding the adequacy of the search methodology in advance.

The producing party may locate the potentially responsive ESI using a linear (manual) review or any other method reasonably expected to identify the ESI that is responsive to pending discovery requests.

As of the date of this Order, some of the parties have exchanged search queries for the producing party's use. Where search queries are used, the parties shall try to reach agreement on appropriate search queries. Absent agreement on search queries, the producing party shall disclose what search queries, if any, were used to locate ESI, and the parties shall confer in good faith on additional queries as necessary. If search queries are not used, the producing party shall disclose to the requesting party the search methodology used to locate the ESI it will review for responsiveness.

### 6.   Responsiveness and Relevancy Review

A producing party is obligated to produce only those documents or ESI that are responsive and relevant to a pending discovery request in accordance with FRCP 26 and 34. If queries and custodians are used to locate potentially responsive documents or ESI, a producing party is required to conduct a responsiveness and relevancy review pursuant to FRCP 26 and 34 before producing documents to ensure that only documents that are actually responsive and relevant to a pending request for production are produced. The use of search queries is only a means by which the universe of documents needing responsiveness and relevancy review can be reduced, but it is not a substitute for such responsiveness and relevancy review, or any other requirement in the Federal Rules of Civil Procedure. No party shall be required to produce any documents or ESI until its objections to a particular request for production are resolved by agreement or by the Court.

The foregoing paragraph notwithstanding, productions between Dominion and the My Pillow and Lindell Defendants may be formulated by producing all documents containing search term hits without further responsiveness review, subject to screening for the removal of privileged communications.

7.   **Unique Terms Concerning the Review and Production of Custodial Text Messages and Other Non-Email Communications**

   (a)   **Review and Production Terms for Dominion and All Defendants Except the My Pillow and Lindell Defendants**

With respect to custodial text messages and other non-email electronic communications, including but not limited to those sent via instant messenger services, or third-party or other ephemeral messaging applications, the following terms shall apply except as otherwise stated in Paragraph 7(b) below:

   (i)   Dominion and Defendants will use the same search methodology as that disclosed by the producing party to the requesting party pursuant to Paragraph 5 to locate ESI it will review for responsiveness and relevancy per FRCP 26 and 34.

   (ii)   The time frame for custodial text messages and other non-email communications is set forth above in paragraph 3(a).

   (iii)   If search queries are used by the producing party to locate the custodial text messages and other non-email communications that the producing party will review for responsiveness and relevancy, such search terms shall be run across the entire agreed-to time period identified above for each applicable custodian likely to have discoverable information, to include, where appropriate and possible, each agreed custodian identified in **Exhibit 3**.

   (iv)   If a custodial text message or other non-email communication is identified by a search query, the producing party shall review the remainder of the message chain for a 24-hour period, meaning between 12:00 am and 11:59 pm on the day that the search query appears.  And if the content of the 24-hour period communication is responsive and relevant to the requesting party's pending

7

discovery request, the producing party shall produce all responsive, relevant, nonprivileged and nonprotected portions of that 24-hour period communication.

(v)     Where necessary, the parties shall work together in good faith to provide additional context for a conversation that appears over multiple days. The parties shall likewise work together in good faith to identify any text message threads that should be reviewed without exclusive reliance on search terms.

**(b)     Review and Production Terms for the My Pillow and Lindell Defendants**

The My Pillow and Lindell Defendants will search Mr. Lindell's phone for text messages responsive to Dominion's list of search terms and produce all non-privileged communications responsive to any of the search terms, subject to any withholdings or redactions for privilege. The parties advise that My Pillow has disclosed to Dominion which of its other employees have company-provided cell phones or devices, from a list of employees identified by Dominion as persons of potential interest in this case, and has further disclosed to Dominion information gathered concerning whether those other employees may have ESI related to this case on their company-provided cell phone or device. Dominion and My Pillow shall negotiate in good faith concerning any ESI specifically identified by Dominion that it seeks to discover from My Pillow company-provided cell phones or devices, and the Court shall resolve any such matter on which they are unable to reach agreement.

**8.     Production and Timing**

**(a)     Organizing Documents and ESI for Production**

A party's production must comply with FRCP 34(b)(2)(E)(i), meaning a producing party must produce responsive documents and ESI as they are kept in the usual course of business or must organize and label them to correspond to the categories in the requesting party's pending

8

discovery requests.  ESI is considered to be produced in the manner in which it is kept in the usual course of business when the ESI contains or is accompanied by original file path metadata.

Upon request, a producing party shall identify for the requesting party the specific discovery request to which the documents or ESI (by their Bates number) are responsive.  In addition, upon a party's request, Dominion shall produce or make available case-specific documents or ESI that are responsive to a Defendant's pending discovery request in a manner in which such documents or ESI are segregated from any global discovery or other discovery that may be responsive to some other party's discovery requests.

The requirements of the foregoing paragraph shall not apply as to the My Pillow and Lindell Defendants; correspondingly, neither Dominion, nor the My Pillow and Lindell Defendants may request the other to identify the specific discovery request to which any documents or ESI produced are responsive.

### (b)    Rolling Productions

The parties agree to cooperate with respect to a producing party's request for additional time to produce documents in response to discovery requests and specifically agree that rolling productions are in all parties' best interests.  To help save time and cost of related productions, the parties agree that a requesting party may identify a subset of discovery requests that it wishes the producing party to prioritize, and the producing party agrees to make reasonable efforts to focus its production efforts on those higher priority issues first.

### (c)    Supplemental Productions

The parties shall supplement discovery responses as required by FRCP 26(e).

### (d)    Interim Date for Substantial Completion of Document Production

By no later than January 31, 2024, the parties will substantially complete their production of all responsive documents or ESI to any document requests pending at the time of entry of this

9

Order, for which all objections have been resolved by agreement of the parties or the Court, including responsive documents or ESI from custodial or noncustodial sources. The parties further agree that documents withheld by a party as privileged or protected by this interim substantial completion date will be logged and a privilege log containing the documents served no later than January 31, 2024.

9.     **Post-Production**

(a)     **Privilege Log**

The parties agree to serve a privilege log identifying all documents, including communications by text messages or other applications, that the producing party either redacted or withheld from the production due to attorney-client privileged or work product protected content or any other privilege. .  The privilege log shall comply with FRCP 26(b)(5), or be produced in a manner otherwise agreed to by the parties. Deadlines for supplemental or amended privilege logs will be agreed upon by the parties. The parties also agree to the provisions set forth in **Exhibit 1** governing the content and production of privilege logs.

10.     **Relief from and Modifications of this Order**

Any party may obtain relief from any portion of this Order through the written consent of the affected parties to this litigation or through a subsequent court order. A party may not seek relief from the Court unless that party has conferred in good faith with the opposing party. When conferring about a proposed modification of this Order, the parties shall act consistent with the FRCP 1 mandate to seek the just, speedy, and inexpensive determination of litigation, as well as guiding controlling principles of FRCP 26(b)(1), FRCP 26(g)(1)(B)(ii), and FRCP 26(g)(1)(B)(iii).

*          *          *

**IT IS SO ORDERED**.

Date: October _____, 2023

_____
CARL J. NICHOLS
United States District Court Judge

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al., | |
| *Plaintiffs/Counter-Defendants,* | |
| v. | Civil Action No. 1:21-cv-00040 (CJN) |
| SIDNEY POWELL, et al., | |
| *Defendants/Counter-Plaintiffs.* | |

| | |
|---|---|
| US DOMINION, INC., et al., | |
| *Plaintiffs,* | |
| v. | Civil Action No. 1:21-cv-00213 (CJN) |
| RUDOLPH W. GIULIANI, | |
| *Defendant.* | |

| | |
|---|---|
| US DOMINION, INC., et al., | |
| *Plaintiffs/Counter-Defendants,* | |
| v. | |
| MY PILLOW, INC., et al., | Civil Action No. 1:21-cv-00445 (CJN) |
| *Defendants/ Counter- and Third-Party Plaintiffs,* | |
| v. | |
| SMARTMATIC USA CORP., et al., | |
| *Third-Party Defendants.* | |

US DOMINION, INC., et al.,
       *Plaintiffs,*

    v.

PATRICK BYRNE,                   Civil Action No. 1:21-cv-02131 (CJN)

      *Defendant.*

US DOMINION, INC., et al.,
       *Plaintiffs/Counter-Defendants,*

    v.

HERRING NETWORKS, INC. *et al.,*        Civil Action No. 1:21-cv-02130 (CJN)
      *Defendants/ Counter- and*
      *Third-Party Plaintiffs,*
    v.

AT&T SERVICES, *et al.,*
      *Third-Party Defendants.*

## [PROPOSED] ORDER AND STIPULATION REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS

Pursuant to the Federal Rules of Civil Procedure and Local Civil Rule 16.6, Plaintiffs US

Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation

("Dominion") and Defendants Sidney Powell, Sidney Powell, P.C., Defending the Republic, Inc.,

Rudolph W. Giuliani, Michael J. Lindell, My Pillow, Inc., Patrick Byrne, Herring Networks, Inc.

d/b/a One America News Network, Charles Herring, Robert Herring, Sr., Chanel Rion, and

Christina Bobb ("Defendants"), whose cases have been consolidated, or who are voluntarily

coordinating, for purposes of discovery, hereby stipulate and agree to be governed by this Order

and Stipulation Regarding Production of Electronically Stored Information and Paper Documents

("ESI Protocol").

2

## I.   <u>GENERAL PROVISIONS</u>

A.   **Applicability**: This ESI Protocol will govern the production of electronically stored information and paper documents.

B.   **Limitations & Non-Waiver**: Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of information produced in discovery. All objections to the authenticity or admissibility of any documents are preserved and may be asserted at any time. Pursuant to the terms of this ESI Protocol, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but a Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from disclosure, including foreign data protection laws. All Parties preserve all such privileges and protections, and all Parties reserve the right to object to any such privileges and protections.

C.   **Deadlines:** References to schedules and deadlines in this ESI Protocol shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

D.   **Definitions**:

   1.   Plaintiffs and Defendants, as well as their officers, and employees, are referred to as the "Parties" solely for the purposes of this ESI Protocol. A single Plaintiff or Defendant, as well as, where applicable, its respective officers, and employees, may also be referred to as a "Party" solely for the purposes of this ESI Protocol.

   2.   To avoid misunderstandings about terms, all Parties should consult the most current edition of The Sedona Conference Glossary.

E.   **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Confidential Discovery Material or Highly Confidential/Attorneys' Eyes Only material under any Protective Order entered in this matter.

F.   **Preservation:** The Parties agree that they shall continue to take reasonable steps to preserve relevant documents and ESI that may exist for a document or ESI, in accordance with their obligations under applicable law. By preserving information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

## II.   <u>GENERAL PRODUCTION FORMAT PROTOCOLS</u>

A.   **TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding

multi-page text and necessary load files. Each image will have a file name that is the unique "Bates" or document control number of that image, pursuant to ¶ II(F). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks. Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format (e.g., items identified in II(C) below), may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

B.      **Text Files:** Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

   1.     **OCR:** A producing Party may make paper documents available for inspection and copying/scanning in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, scan and OCR paper documents. Where OCR is used, the Parties will endeavour to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals or the existence of handwriting on a document, not all documents lend themselves to the generation of accurate OCR. In that case, a non-producing party may request that a physical copy of the document be provided. If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.

   2.     **ESI:** Except for redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, Parties shall provide OCR text in accordance with the specifications in Section II.B(l).

C.      **Production of Native Items:** The Parties agree that ESI shall be produced as TIFF images consistent with the format described in Section II(A) with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be the following:

   1.     Spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced only in native format. In the case of personal database (e.g., MS Access) files containing

confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced bearing that item's Bates number and confidentiality designation. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the Parties agree to meet and confer as needed in connection with producing native file types other than spreadsheet application files and multimedia audio/visual file types such as .wav, .mpeg and .avi. Prior to processing non-standard native files for production, the producing Party shall disclose the file type to and meet and confer with the requesting Party on a reasonably useable production format as needed. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data.

D.     **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

E.     **Native Integrity and Confidentiality:** Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata. The requesting Party shall also ensure that the confidentiality assigned to the document follows the native pursuant to Section II.K.

F.     **Bates or Document Control Numbering**:

1.     All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters, or embedded spaces, except for hyphens or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2.     If a Bates number or set of Bates numbers is intentionally skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3. The producing Party will take reasonable efforts to brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

G. **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

H. **Entire Document Families:** Subject to Paragraphs Il(L)(l) and Il(L)(2) below, entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, except the following:

1. junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the Parties);

2. documents that are withheld on the basis of privilege and in compliance with the Parties' stipulation or the Court's order on or local rules concerning such assertions of privilege; and

I. **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC00l.DAT). The volume names should be consecutive (i.e., ABC00I, ABC002, et. seq.). There should be one row in the load file per TIFF image. Every image in the delivery volume should be contained in the image load file. The image key should be named the same as the Bates number of the page. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered. The data load file (i.e., the .DAT file) should use standard Concordance delimiters: Comma - ¶ (ASCII 20); Quote - p (ASCII 254); and Newline - ® (ASCII I 74). The first record should contain the field names in the order of the data. All date fields should be produced in mm/dd/yyyy format. Use carriage-return line-feed to indicate the start of the next record. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered. The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC00l.DAT). The volume names should be consecutive to the extent possible (i.e., ABC00I, ABC002, et. seq.). If Foreign Language *I* Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format. Load files should not be split across volumes

regardless of delivery media.

J.   **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this paragraph will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

K.   **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of any Protective Order entered by the Court in the Litigation, or a stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images to the extent practicable. This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting Parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol, any Protective Order or confidentiality order, or any confidential stipulation shall not waive any protection or confidential treatment. The Parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The Parties agree to work together on an as-needed (and per document or category of document) basis to address any potential over (or under) designation.

L.   **Redactions**:

1.   **Personal Data Redactions:** A producing Party may redact personal information consistent with the parties' Stipulation Regarding Discovery Matters or any order entered by the Court.

2.   **Privilege Redactions:** a producing Party may redact information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, protection, or immunity recognized by U.S. law.

M.   **Production Media & Protocol:** A producing Party may produce documents via email,

readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), or via file-sharing service, including any network-based secure file transfer mechanism or SFTP. Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media. The producing Party must encrypt Production Media, and will provide a decryption key to the requesting Party in a communication separate from the production itself.

N.    **Foreign Language Documents:** To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the producing Party shall produce all such documents or ESI in the original language(s), as well as any English translations of such documents or ESI and certifications of such translations that are readily available and stored by the party in the ordinary course (i.e., that were not created specifically by a Party for the Litigation).

## III.    PAPER DOCUMENT PRODUCTION PROTOCOLS

A.    **Scanning:** A producing Party may make paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, OCR paper documents. Where OCR is used, the Parties agree that the following ¶¶ III(B)-(C) shall apply.

B.    **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, and (f) Confidentiality.

C.    **Unitization of Paper Documents:** Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly.

1.    **Unitization:** Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable. The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable. The Parties will make their best efforts to unitize documents correctly. However, non-responsive documents within a folder, clipped bundle, or binder need not be produced.

2.    **Identification:** Where a document, or a document group-such as folder, clipped bundle, or binder has-an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

8

D.    **Custodian Identification:** The Parties will utilize best efforts to ensure that paper records for a particular custodian are produced in consecutive Bates stamp order. *See* ¶ II(F) above.

## IV.   ESI METADATA FORMAT AND PROCESSING ISSUES

A.    **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files if they clearly do not have user-created content.

B.    **Metadata Fields and Processing**:

    1.    **Time Zone:** To the extent reasonably practicable, ESI items shall be processed using a consistent time zone, and the time zone (e.g., GMT) used shall be disclosed to the requesting Party.

    2.    **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

    3.    Except as otherwise set forth in this ESI Protocol, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

    4.    The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, and (f) Confidentiality.

C.    **Redaction:**

    1.    The Parties agree that generally, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C) above. Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format.

    2.    If the items redacted and partially withheld from production on the basis of privilege are Excel-type spreadsheets as addressed in ¶ II(C) above and native items are also withheld, to the extent reasonably practicable, each entire ESI item

9

must be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that does not print when opened as last saved by the custodian or end-user.

3.   If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Parties shall meet and confer as needed to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

D.   **Email Collection and Processing:**

1.   **Email Threading:** Email threads are email communications that contain prior or lesser included email communications. A most inclusive email thread is one that contains all of the prior or lesser included emails and attachments including each branch of the email thread. A producing Party may use email thread suppression to exclude email from production, provided however, that an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser included version of an email that does not include the attachment or content, even if all remaining content in the email is identical. The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. If the sender, recipient(s) (including any ccs or bccs), and date information on suppressed threads is unreadable in the produced inclusive thread, the producing Party shall provide a .csv or .xls file containing the metadata for the suppressed threads to the extent that the suppressed threads are within the scope of the collection and/or custodians.

E.   **De-Duplication:** To the extent consistent with the below subparts, the producing Party need only produce a single copy of a particular electronic document.

1.   **Vertical De-Duplication.** A producing Party may de-duplicate ESI vertically by custodian, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include identical content in the BCC or other blind copy field, even if all remaining content in the email is identical.

2.   **Horizontal De-Duplication.** A producing Party may de-duplicate ESI horizontally (globally) across the population of records, and provided further that: (a) an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all custodians who were in possession of a de-duplicated document must

10

be identified.

3.      Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents.

4.      Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments. Email families bearing an identical value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

F.      **Zero-byte Files:** The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

G.      **Hidden Text:** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows or worksheets.

H.      **Embedded Objects:** The parties agree that if a particular produced record contains an embedded object that is not readable in embedded format, the party receiving the record reserves the right to request production of the embedded object as a stand-alone record.

I.      **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .z, .RAR, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

J.      **Password-Protected, Encrypted, or Proprietary Software Files:** If the requesting party believes that non-duplicative information cannot be reviewed because a document that has been produced by a party is password-protected or encrypted, the requesting party may request that the producing party take reasonable efforts to identify the password for the ESI item or unencrypt the ESI item so that it can be reviewed. If proprietary software is necessary to view the ESI, the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

11

## V.   PRODUCTION OF PRIVILEGE LOGS.

1.    Except as provided below, for any Document redacted or withheld in its entirety, the producing Party shall produce privilege logs in MS Excel format or any other agreed-upon format that permits electronic sorting and searching.

2.    **Exclusions from Logging Potentially Privileged Documents:** Pursuant to the following sections (a) and (b), documents need not be reflected in a producing Party's privilege log, unless good cause exists to require that a Party do so or the Parties otherwise agree:

    (a)    Communications or work product after January 8, 2021, exclusively between a producing Party and its corporate in-house counsel (including consultants) regarding this litigation.

    (b)    Communications or work product after January 8, 2021, exclusively between a producing Party, including its in-house counsel (including consultants), and its outside counsel.  This provision is not intended to expand or contract the ability of a party to assert a claim of privilege. Each party will provide all other parties with a list of outside counsel at the time of producing a privilege log.

    (c)    Attorney-client privileged communications or work product of a party dated after the filing of the above-captioned litigation as to that party. Each party utilizing this exclusion will provide a list of all senders or recipients of communications that are not logged at the time of producing a privilege log.

3.    **Privilege Log Requirements:** Consistent with Fed. R. Civ. P. 26(b) and the Local Rules, and unless otherwise agreed by the Parties or Ordered by the Court, Privilege Logs shall contain the following information for each Document withheld or redacted on grounds other than those specified in ¶ II.L.1(1)-(2) above:

    (a)    a sequential number associated with each privilege log record;

    (b)    the date of the Document or ESI (if any);

    (c)    the Bates number of the Documents or ESI redacted;

    (d)    for the latest in time communication in any thread, the identity of persons who sent (and, if a document, the identity of the author of) the Document or ESI and, if a communication, the addressees, recipients, copyees, and blind copyees (with senders, authors, addressees/recipients, copyees, and blind copyees, each separately identified by those categories as applicable);

(e)     the subject line of a communication or title of a document unless the subject line or title reveal privileged information in which case a description of the communication or documents may be used, although the parties reserve all rights to challenge redaction of subject lines or the sufficiency of a description if used in lieu of subject line;

(f)     the type or nature of the privilege or immunity asserted (i.e., attorney-client privilege or work-product doctrine); and

(g)     an indication of whether the Document has been redacted or withheld in its entirety.

(h)     Where available for any category specified in ¶ V.3(a), objective metadata may be used to populate the values on a producing Party's Privilege Log, as long as such metadata is reasonably comprehensible.

4.   **Challenges to Privilege Claims:** Should a receiving Party, in good faith, have reason to believe a particular entry or category of entries on a Privilege Log or its associated Document does not reflect privileged information, or that the entry does not provide sufficient information to assess any such claim of privilege, the receiving Party may request additional information, and the producing Party will not unreasonably refuse to provide more information about the basis of the asserted privilege in compliance with Fed. Rule Civ. P. 26(b). Should a receiving Party, in good faith, have reason to believe a particular redaction or withheld Document is responsive and does not reflect privileged or protected discoverable information after the producing Party has provided the additional information, the requesting Party shall provide (i) the producing Party with its justification for believing the redaction or withheld Document may be responsive and not privileged or protected, and (ii) the producing Party an opportunity to re-consider its assertion of privilege or protection on the redaction or Document. The Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court. The requesting Party shall not challenge the producing Party's privilege log or any individual entries thereon without following the procedures set forth in this protocol, unless based solely on material non-compliance with this ESI Protocol. The withdrawal of an asserted privilege or protection following a challenge and subsequent meet and confer shall not be a basis to challenge other Documents included in the privilege log, except for duplicate documents.

VI.   **MISCELLANEOUS PROVISIONS**

A.   **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented

13

to the Court for resolution.

B.    **Variations or Modifications:** Variations from this ESI Protocol may be required. Any
practice or procedure set forth herein may be varied by agreement of the parties, which
will be confirmed in writing. In the event a producing Party determines that a variation or
modification is appropriate or necessary to facilitate the timely and economical production
of documents or ESI, the producing Party will notify the requesting Party of the variation
or modification. Upon request by the requesting Party, the Parties will meet and confer to
address any issues in a reasonable and timely manner prior to seeking Court intervention.

**IT IS SO ORDERED**.

_____
HON. CARL J. NICHOLS
United States District Court Judge

DATE: October ___, 2023

14

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name[1] | Field Description |
|---|---|
| BegBates | Control Numbers. |
| EndBates | Control Numbers. |
| BegAttach | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | Custodian name (ex. John Doe). |
| AllCustodians | Inclusive of the "Custodian" field value for any given document in a native upload |
| FilePath | The directory structure of the original file(s). Any container name is included in the path. |
| FileName | File name of the edoc or email. |
| NativeFile | Native File Link. |
| EmailSubject | Subject line of email. |
| DateSent | Date email was sent. |
| TimeSent | Time email was sent. |
| To / Recipients | All recipients that were included on the "To" line of the email. |
| From | The name and email address of the sender of the email. |
| CC | All recipients that were included on the "CC" line of the email. |
| BCC | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Date the document was created. |
| DateLast Modified | Date the document was last modified |
| Title | Any value populated in the Title field of the document properties. |
| Subject | Any value populated in the Subject field of the document properties. |
| Author | Any value populated in the Author field of the document properties. |
| TextPath | Relative path to the document level text file. |
| Legend / Confidentiality | Indicates if document has been designated as Confidential Discovery Material under the Protective Order. |
| Time Zone | Time zone the metadata was processed in. Each party will use its own method with respect to this field and will advise the other parties as to its method. |
| Hash | Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol.

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

US DOMINION, INC., et al.,

*Plaintiffs/Counter-Defendants,*

v.

SIDNEY POWELL, et al.,

*Defendants/Counter-Plaintiffs.*

Civil Action No. 1:21-cv-00040 (CJN)

US DOMINION, INC., et al.,

*Plaintiffs,*

v.

RUDOLPH W. GIULIANI,

*Defendant.*

Civil Action No. 1:21-cv-00213 (CJN)

US DOMINION, INC., et al.,
*Plaintiffs/Counter-Defendants,*

v.

MY PILLOW, INC., et al.,

*Defendants/Counter- and
Third-Party Plaintiffs,*

v.

SMARTMATIC USA CORP., et al.,

*Third-Party Defendants.*

Civil Action No. 1:21-cv-00445 (CJN)

US DOMINION, INC., et al.,

*Plaintiffs*,

     v.

PATRICK BYRNE,

*Defendant.*

Civil Action No. 1:21-cv-02131 (CJN)

US DOMINION, INC., et al.,

*Plaintiffs/Counter-Defendants*,

     v.

HERRING NETWORKS, INC., et al, .
*Defendant.*

Civil Action No. 1:21-cv-02130 (CJN)

## [PROPOSED] STIPULATION AND ORDER GOVERNING EXPERT DISCOVERY

Pursuant to Rule 26 and Rule 29 of the Federal Rules of Civil Procedure and Local Civil

Rule 16.6, Plaintiffs U.S. Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting

Systems Corporation ("Dominion"), and Defendants Rudolph Giuliani, My Pillow, Inc., Michael

J. Lindell, Sidney Powell, Sidney Powell, P.C., Defending the Republic, Inc., Patrick Byrne,

Herring Networks, Inc. d/b/a One America News Network, Charles Herring, Robert Herring, Sr.,

Chanel Rion, and Christina Bobb ("Defendants") (collectively "the parties"), by and through their

undersigned counsel, hereby stipulate and agree to the following regarding the scope of expert

discovery in each of the above-captioned matters (the "Dominion Cases"), which have either been

consolidated or voluntarily coordinated for purposes of discovery. [1]

1.      The parties shall comply with the Federal Rules of Civil Procedure and this stipulation, except to the extent the stipulation conflicts with the Federal Rules, in which case the stipulation governs.

2.      The parties will make all disclosures required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, as modified by the provisions of this stipulation and subject to the limitations set forth in Rule26(b)(4) of the Federal Rules of Civil Procedure and all applicable Court orders.

A.      **Disclosure of Documents Relied Upon by Experts**

3.      For purposes of expert discovery in these matters, the term "considered" as used in Rule 26(a)(2)(B)(ii) and Rule 26(b)(4)(C)(ii) of the Federal Rules of Civil Procedure means "relied upon." If the expert lists a document that has not been Bates stamped, the document will be identified by the date and a brief description of the document, such as the names of the author and addressee and the title.

4.      At the time an expert's report is provided, the party proffering a testifying expert will also produce to the other parties taking the testifying expert's deposition the following documents relied upon by a testifying expert in this case:

        a.      Documents relied upon by a testifying expert in the Dominion Cases that
        were obtained by one party from third parties and not produced to the other parties

---

[1] Specifically, the Court consolidated for discovery purposes only the above-captioned matters styled *US Dominion Inc., et al. v. Powell, et al.*, No. 1:21-cv-0040-CJN (D.D.C.), *US Dominion Inc., et al. v. Giuliani*, No. 1:21-cv-213-CJN (D.D.C.), *US Dominion Inc., et al. v. MyPillow, Inc., et al.*, No. 1:21-cv-00445-CJN (D.D.C.) and *US Dominion, Inc., et al. v. Herring Networks, et al.*, No 1:21-cv-02130-CJN (D.D.C.). To align the *US Dominion Inc., et al. v. Patrick Byrne*, No. 1:21-cv-02131-CJN (D.D.C.) matter with these, counsel for Dominion and Byrne have further agreed to voluntarily coordinate discovery between the Dominion Cases.

in this action;

    b.     Documents relied upon by a testifying expert in the Dominion Cases that have not been previously produced to the other parties in this action, excluding any publications or learned treatises if they are publicly available;

    c.     Documents relied upon by testifying expert in the Dominion Cases that were produced in the Dominion Cases for which there is no common Bates numbering or deposition exhibit number; and

    d.     Documents prepared by a non-testifying expert that were relied upon by a testifying expert in the Dominion Cases.

5.     Notwithstanding any of the provisions set forth herein, no communications between counsel for a party and the party's expert shall be produced, and no draft expert reports are discoverable.

6.     No party shall be required to produce any privileged work product between the expert witness and the proffering party's counsel regardless of when exchanged, and no party is required to produce any draft expert report..

7.     At the time an expert's report is provided, each party proffering the testifying expert will produce to the other parties: (a) the testifying expert's curriculum vitae; (b) a list of materials identified by Bates stamp or deposition exhibit number, if applicable, relied upon by the expert providing for each the date and title of the material and bates number (if applicable), or if publicly available, date and title of the material and will make reasonable efforts to include a URL link (if applicable); (c) a list that will include, at a minimum, the cases, administrative matters, or other proceedings in which the expert has given trial or other testimony in public within the last four (4) years, without prejudice to any party's right to request such information for a period not to exceed

ten (10) years.  If the request for information exceeding four (4) years is opposed, the party seeking

such additional information may apply to the Court for relief.  The list also will include the name

of the matter, the name of the court or other public body, the names of the parties and their attorneys,

whether the expert or the party for which he is testifying has a copy of the testimony, and a brief

description of the nature of the proceeding.

**B.**     **Depositions of Testifying Experts**

8.     As soon as practicable, the party taking a deposition will advise the other parties of

its good faith estimate of the amount of time it is anticipated that the testifying expert's deposition

will take, to be no longer than 7 hours on the record absent agreement by the parties or Court order.

9.     Each party will pay its testifying experts' fees and expenses incurred in connection

with the deposition of its own experts.  All costs incurred in the production of documents discussed

herein shall also be borne by the party producing the documents, unless modified by agreement of

the parties or Court order.

10.     The parties will make a good faith effort to schedule testifying expert depositions

at locations convenient for counsel and the experts.  In the absence of any agreement, each

deposition will take place at the location of the presenting party's counsel's offices.

11.     Testifying expert witnesses will appear for depositions without the necessity of

subpoenas.

12.     Nothing in this stipulation shall be construed to prevent or prohibit any party from

challenging an expert's qualifications or the admissibility of his or her opinion or report.

**IT IS SO ORDERED**.

 

                                    _____
                                    HON. CARL J. NICHOLS
                                    United States District Court Judge

DATE: October \_\_\_, 2023

**EXHIBIT 3**

## Dominion's Proposed Custodians

*Listed below are Dominion's proposed custodians for each case, separated by defendant. Dominion reserves its right to seek documents from non-custodial sources, including any central document repositories, for all requests. Dominion also reserves its right to add additional search terms and custodians as discovery develops.*

## US Dominion, Inc., et al v. MyPillow, Inc., et al

### Michael Lindell
1. Michael Lindell

### MyPillow
1. Dawn Curtis-Dollerschell
2. Kim Rasmessen
3. Shannon Smith
4. Nick Dressen
5. Todd Carter
6. Katelyn Gamlin
7. Michael Lindell
8. Darren Lindell
9. Jessica Maskovich
10. Heidi O'Donnell
11. Brad Carlson
12. James Furlong
13. Michael Thomas
14. Joe Schmieg
15. Rob Way
16. Jazmin Kampen
17. Bobbi Anderson
18. Dawn Garry
19. Heather Lueth
20. Jerry Johnson
21. Sarah Cronin
22. Thomas Clapp
23. Jennifer Duneman
24. Andy Wincel
25. Doug Wardlow
26. Mark Schabert
27. Wayne Belisle
28. Bob Roepke
29. Ron Falenschek
30. Charlie Kovacs
31. Mark Jones
32. Richard Swanson
33. David Boyd
34. Brian Schmieg

### *US Dominion, Inc. et al v. Powell, et al*

**Sidney Powell**
1. Sidney Powell

**Sidney Powell, P.C.**
1. Sidney Powell
2. ~~Julia Haller~~
3. ~~Brandon Johnson~~
4. ~~Emily Newman~~
5. ~~Tricia (tricia@federalappeals.com)~~

**Defending the Republic, Inc.**
1. Sidney Powell
2. ~~Michael Abidin~~
3. ~~Neal Coker~~
4. ~~Victor Sperandeo~~
2. Mary Pat Coughlin
3. Mary Bridget Kateri
~~5.~~4. Gene Bigelman
6. ~~Brannon Castleberry~~
7. ~~Lin Wood~~
8. ~~Brandon Johnson~~
9. ~~Michael Flynn~~
10. ~~Joseph Flynn~~
11. ~~Julia Haller~~
12. ~~Emily Newman~~
13. ~~Patrick Byrne~~
14. ~~Abby Jones~~
15. ~~Catherine Granito~~
16. ~~May O'Neill~~

### *US Dominion, Inc. et al v. Giuliani*

1. Rudy Giuliani

### *US Dominion, Inc. et al v. Byrne*

1. Patrick Byrne

### *US Dominion, Inc. et al v. OAN*

1. Agagas, Jennesh
2. Aksalic, Elma
3. Althaus, Shane
4. Ball, Dan

5. Betts, Keith
6. Blashinsky, Derek
7. Bobb, Christina
8. Britton, Alyssia
9. Brown, Justin Adam
10. Cohen, Dana
11. Dinow, Mike
12. Drew, Peyton
13. Fifield, Lilia
14. Finn, Emily
15. Gadow, Brandon
16. Golingan, Marty
17. Hamill, Stephanie
18. Harp, Natalie
19. Herring, Bobby
20. Herring, Charles
21. Herring, Robert
22. Hines, John
23. Hussion, Patrick
24. Kinsey, Camryn
25. Midkiff, Caroline
26. Myers, Stephanie
27. Oakley, Lindsay
28. Posobiec, Jack
29. Rouz, Kristian
30. Scott, Taylor
31. Sharp, Pearson
32. Shippen, Olivia
33. Rion, Chanel
34. Unutona, Sani
35. Wolk, Jezzamine

**Christina Bobb**
   1.   Christina Bobb

### Defendants' Proposed Custodians

*Listed below are the Defendants' proposed custodians for Dominion in each case. Each Defendant reserves the right to seek documents from non-custodial sources, including any central document repositories, for all requests. Each Defendant also reserves the right to add search terms and custodians as discovery develops.*

### ~~Dominion Custodians for Non-OAN Defendants~~

~~For the avoidance of doubt, inclusion of an individual in this list of custodians does not represent that Dominion has possession, custody, or control of documents for said individual, nor that Dominion is agreeing to production of all documents for or to engage in a custodial interview of that individual. Dominion has separately negotiated custodians with OAN, and the below list does not apply to OAN.~~

Dominion

1.   Aamer Chaudhry
~~1.~~2.Amir Ebrahimi
~~2.~~3.Andy Banks
~~3.~~4.Aslam Hirani
~~4.~~5.Barry Herron
~~5.~~6.Ben Humphreys
~~6.~~7.Cathi Smothers
~~7.~~8.Christina Reich
~~8.~~9.Chuck Hogancamp
~~9.~~10.    Dallas Newby
~~10.~~11.    Daniel Mallatt
~~11.~~12.    Darren Silverburg
~~12.~~13.    David Moreno
~~13.~~14.    Diedre Lazenby
~~14.~~15.    Eric Coomer
~~15.~~16.    Ethan Tyree
~~16.~~17.    Giovanni Costantiello
~~17.~~18.    Goran Obradovic
~~18.~~19.    Howard Cramer
~~19.~~20.    Ian MacVicar
~~20.~~21.    Ian Piper
~~21.~~22.    Ivan Vukovic (Vucovic)
~~22.~~23.    Jason Frank
~~23.~~24.    Jeremy Holck
~~24.~~25.    Jerry Wagoner
~~25.~~26.    Jessica Bowers
~~26.~~27.    John Hastings
~~27.~~28.    John Poulos
~~28.~~29.    Juan Serratti
~~29.~~30.    Kay Stimson
~~30.~~31.    Logan Dingwall
~~31.~~32.    Mark Beckstrand
~~32.~~33.    Matthew Horace

6

33.34.___ Megan Berg
34.35.___ Melissa Romero
35.36.___ Michael McGee
36.37.___ Mike Frontera
37.38.___ Nebojsa Cirovic
38.39.___ Nick Coudsy
39.40.___ Nick Ikonomakis
40.41.___ Nicole Nollette
41.42.___ Paul Casanova
43. Paul Chavez-Cassanova
42.44.___ Paul Schmitt
43.45.___ Phil Schmidt
44.46.___ Ron Rosania
45.47.___ Ronald Morales
46.48.___ Scott Tucker
47.49.___ Sean Bodwell
48.50.___ Sheannse Smith
49.51.___ Sheree Noell
50.52.___ Srdjan Markovic
51.53.___ Steven Bennett
52.54.___ Surendar Gupta
53.55.___ Tami Koch
54.56.___ Thanh Hoang
55.57.___ Thomas Feehan, Jr.
56.58.___ Tim Baumbach
57.59.___ Waldeep Singh
58.60.___ Xavier Khouri
59.61.___ Yash Dave
62. Yvonne Cai
60.63.___ Zavier Khouri

5

**Dominion Custodians for OAN Defendants**

*Dominion has agreed to the following custodians in the OAN case. OAN has requested additional custodians. Dominion does not believe any additional custodians are warranted at this time.*

1. Banks, Andy
2. Baumbach, Tim
3. Beckstrand, Mark
4. Bennett, Steven
5. Berg, Megan
6. Bodwell, Sean
7. Bowers, Jessica
8. Chaudhry, Aamer
9. Chavez-Casanova, Paul
10. Constantiello, Gio
11. Coomer, Eric
12. Cramer, Howard
13. Dave, Yash
14. Dingwall, Logan
~~14.~~15. Feehan, Jr., Thomas
~~15.~~16. Frontera, Mike
~~16.~~17. Hastings, John
~~17.~~18. Herron, Barry
~~18.~~19. Holck, Jeremy
~~19.~~20. Holmes, Cheryl
21. Ben Humphreys
~~20.~~22. Ikonomakis, Nick
23. Khouri, Zavier
~~21.~~24. Koch, Tami
~~22.~~25. Mallatt, Daniel
~~23.~~26. McGee, Michael
~~24.~~27. MacVicar, Ian
~~25.~~28. Morales, Ronald
29. Moreno, David
~~26.~~30. Newby, Dallas
~~27.~~31. Noell, Sheree
~~28.~~32. Nollette, Nicole
~~29.~~33. Obradovic, Goran
~~30.~~34. Papoulias, Steve
~~31.~~35. Piper, Ian
~~32.~~36. Poulos, John
~~33.~~37. Reich, Christina
~~34.~~38. Rosania, Ron
~~35.~~39. Singh, Waldeep
~~36.~~40. Stimson, Kay
~~37.~~41. Vukovic, Ivan (Vucovic)
42. Wagoner, Jerry
~~38.~~43. security@dominionvoting.com

6