# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al., <br><br> *Plaintiffs/Counter-Defendants*, <br><br> v. <br><br> SIDNEY POWELL, et al., <br><br> *Defendants/Counter-Plaintiffs*. | Civil Action No. 1:21-cv-00040 (CJN) |
| US DOMINION, INC., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> RUDOLPH W. GIULIANI, <br><br> *Defendant*. | Civil Action No. 1:21-cv-00213 (CJN) |
| US DOMINION, INC., et al., <br><br> *Plaintiffs/Counter-Defendants*, <br><br> v. <br><br> MY PILLOW, INC., et al., <br><br> *Defendants/ Counter- and Third-Party Plaintiffs*, <br><br> v. <br><br> SMARTMATIC USA CORP., et al., <br><br> *Third-Party Defendants.* | Civil Action No. 1:21-cv-00445 (CJN) |

US DOMINION, INC., et al.,
           *Plaintiffs*,

      v.

PATRICK BYRNE,

           *Defendant*.

Civil Action No. 1:21-cv-02131 (CJN)

US DOMINION, INC., *et al.,*

           *Plaintiffs/Counter-Defendants*,

      v.

HERRING NETWORKS, INC. *et al.,*

           *Defendants/ Counter- and
           Third-Party Plaintiffs*,

      v.

AT&T SERVICES, *et al.,*

           *Third-Party Defendants.*

Civil Action No. 1:21-cv-02130 (CJN)

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DOMINION'S MOTION FOR ENTRY OF ORDER ON DISCOVERY MATTERS</u>

# TABLE OF CONTENTS

INDEX OF EXHIBITS ................................................................................................ vi

INDEX OF ABBREVIATIONS .................................................................................. viii

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND .........................................................................................4

    A.    The Court Orders Consolidation For Discovery Across The Cases ......................5

    B.    The Parties Exchange Document Requests, Go Several Rounds On Search Terms, Custodians, And The Basics Of ESI Discovery, But Lack Finality ..............................................................................................................5

        1.    Defendants Seek Broad Discovery, Including All Documents Produced In *Fox*, But When Dominion Produces What They Ask, They Backtrack ....................................................................7

        2.    Lindell Proposes Search Terms, Which Dominion Accepts ......................9

        3.    Dominion Seeks To Create Order In The Discovery Process But Some Defendants Refuse To Engage ..........................................................10

        4.    Dominion Cobbles Together Some Agreements With Some Parties Through Endless Emails, Telephone Calls, and Zooms ...............10

        5.    Byrne Participates In The Discovery Process On His Own Terms ...........12

        6.    OAN Flip Flops On Search Terms ..........................................................12

    C.    Dominion Seeks Court Guidance On The Discovery Process And Negotiates With Defendants About The Discovery Stipulation In Good Faith ................................................................................................................13

LEGAL STANDARD ..................................................................................................14

ARGUMENT ..............................................................................................................15

I.    The Agreed And Nearly Agreed Discovery Stipulation Provisions In Both Parties' Proposed Orders Are Reasonable And There Is Good Cause To Enter Them. ........................................................................................................16

II.    Dominion's Discovery Stipulation Proposal Strikes The Better Balance On The Disputed Issues. ...............................................................................................19

    A.    Custodian Interviews ............................................................................19

B.     Relevance And Responsiveness Review & Organization Of Documents .............25

C.     Search Term "Hit" Reports ......................................................................33

D.     Date Ranges for Searches ......................................................................35

E.     Text Messages Production ......................................................................40

CONCLUSION .....................................................................................................42

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barnes v. D.C.*,
   289 F.R.D. 1 (D.D.C. 2012)................................................................15

*Burris v. Versa Products, Inc.*,
   No. 07-3938 (JRT/JJK), 2013 WL 608742 (D. Minn. Feb. 19, 2013) ...................41

*Castle Aero Fla. Int'l, Inc. v. Mktg. & Fin. Servs., Inc.*,
   No. 11-2672, 2013 WL 12152475 (D. Minn. Jan. 4, 2013)..........................33, 34

*Celle v. Filipino Rep. Enterprises Inc.*,
   209 F.3d 163 (2d Cir. 2000)................................................................36

*Chevron Corp. v. Salazar*,
   275 F.R.D. 437 (S.D.N.Y. 2011) ...........................................................22

*Consumer Fin. Prot. Bureau v. Navient Corp.*,
   No. 3:17-CV-101, 2018 WL 6729794 (M.D. Pa. Dec. 21, 2018)...........................29

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
   513 F. Supp. 3d 839 (N.D. Ill. 2021) ................................................19, 20

*Eramo v. Rolling Stone, LLC*,
   209 F. Supp. 3d 862 (W.D. Va. 2016) .......................................................35

*Federal Deposit Ins. Corp. v. Boggus*,
   No. 2:13-CV-00162-WCO, 2015 WL 11457700 (N.D. Ga. May 13, 2015)...................27, 28

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*,
   103 F.3d 1007 (D.C. Cir. 1997)............................................................14

*Freeman v. Giuliani*,
   No. 21-3354 (BAH), 2023 WL 5600316 (D.D.C. Aug. 30, 2023)...................21, 38

*Gilmore v. Jones*,
   No. 3:18-cv-00017, 2021 WL 68684 (W.D. Va. Jan. 8, 2021)..........................35

*Harris v. City of Seattle*,
   152 Fed. Appx. 565 (9th Cir. 2005)........................................................35

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989).................................................................15, 35

*Herbert v. Lando*,
    441 U.S. 153 (1979)..........................................................................................35

*In re Actavis Holdco U.S., Inc.*,
    No. 19-3549, 2019 WL 8437021 (3d Cir. Dec. 6, 2019)........................................30

*Lamaute v. Power*,
    339 F.R.D. 29 (D.D.C. 2021)..............................................................................15

*Nunes v. Lizza*,
    12 F.4th 890 (8th Cir. 2021) ........................................................................36, 37

*Outzen v. Kapsch Trafficcom USA, Inc.*,
    1:20-cv-01286-TWP-MJD, 2021 WL 3673786 (S.D. Ind. Aug. 19, 2021)...............28, 29, 32

*Palin v. New York Times Co.*,
    940 F.3d 804 (2nd Cir. 2019)..............................................................................35

*Pass & Seymour, Inc. v. Hubbell Inc.*,
    255 F.R.D. 331 (N.D.N.Y. 2008)........................................................................32

*Samsung Electronics America, Inc. v. Yang Kun Chung*,
    321 F.R.D. 250 (N.D. Tex. 2017) .......................................................................41

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)..........................................................................................35

*State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*,
    No. 19-10835, 2020 WL 7056039 (E.D. Mich. Dec. 2, 2020) ................................23

*Sweeney v. Nationwide Mut. Ins. Co.*,
    No. 2:20-CV-1569, 2023 WL 2549549 (S.D. Ohio Mar. 17, 2023)..........................34

*U2 Home Entertainment, Inc. v. KyLin TV, Inc.*,
    No. 06-CV-2770 (DLI), 2008 WL 1771913 (E.D.N.Y. Apr. 15, 2008) .....................41

*United States ex rel. Shamesh v. CA, Inc.*,
    314 F.R.D. 1 (D.D.C. 2016)...............................................................................15

*United States v. McGraw-Hill Companies, Inc.*,
    No. CV 13-0779-DOC, 2014 WL 8662657 (C.D. Cal. Sept. 25, 2014)......................41

*UPMC v. Highmark Inc.*,
    No. 2:12-CV-00692-JFC, 2013 WL 12141530 (W.D. Pa. Jan. 22, 2013)...................29

*US Dominion, Inc., et al. v. Fox News Network, LLC*,
    No. N21C-03-257-EMD (Del. Super. Ct.)..............................................................8

*US Dominion, Inc., et al. v. Newsmax Media, Inc.*,
No. N21C-08-063-EMD (Del. Super. Ct.)............................................................8, 23

*Venture Corp. v. Barrett*,
No. 5:13-CV-03384-PSG, 2014 WL 5305575 (N.D. Cal. Oct. 16, 2014)..............................32

*Washington v. Thurgood Marshall Acad.*,
232 F.R.D. 6 (D.D.C. 2005)....................................................................................27, 32

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
569 F. Supp. 3d 626 (E.D. Mich. 2021).........................................................................21

*Williams v. Taser Int'l, Inc.*,
No. CIVA 106CV-0051-RWS, 2007 WL 1630875 (N.D. Ga. June 4, 2007) ........................29

*Zerangue v. TSP Newspapers, Inc.*,
814 F.2d 1066 (5th Cir. 1987) ..................................................................................36

*Zuckerbrot v. Lande*,
167 N.Y.S.3d 313 (N.Y. Sup. Ct. 2022) ......................................................................35

**Rules**

Fed. R. Civ. P. 1 ....................................................................................................14

Fed. R. Civ. P. 26 ........................................................................................15, 31, 41

Fed. R. Civ. P. 29 ...............................................................................................16, 18

Fed. R. Civ. P. 34 ......................................................................................... *passim*

Fed. R. Evid. 502(d)................................................................................................29

**Other Authorities**

§ 2104 Leave of Court—When Required, 8A Fed. Prac. & Proc. Civ. § 2104 (3d
ed.) ......................................................................................................................19

Restatement (Second) of Torts §580A cmt.(d)...........................................................36

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | Dominion's Proposed Order Regarding Discovery Matters |
| 1-1 | Agreed ESI Protocol |
| 1-2 | Agreed Expert Stipulation |
| 1-3 | Proposed Custodians |
| 1-4 | Proposed Custodian Interview Topics |
| 1-5 | Proposed Applications |
| 1-6 | Proposed Search Terms |
| 2 | September 15, 2023 E. Hadaway Email |
| 3 | Powell's Second Set of Requests for Production to Dominion |
| 4 | Byrne's First Set of Requests for Production to Dominion |
| 5 | Byrne's Second Set of Requests for Production to Dominion |
| 6 | OAN's First Set of Requests for Production to Dominion |
| 7 | My Pillow's Third Set of Requests for Production to Dominion |
| 8 | March 11, 2023 K. Sammons Email |
| 9 | August 7, 2023 D. Mavin Email |
| 10 | August 9, 2023 J. Pull Email |
| 11 | August 15, 2023 J. Sibley Email |
| 12 | August 24, 2023 D. Marvin Email |
| 13 | August 31, 2023 J. Neerman Email |

14          October 2, 2023 J. Neerman Letter

15          September 22, 2022 *Fox* Order Concerning
            Text Message Review and Production

16          October 13, 2023 *Newsmax* Order Granting in
            Part Motion to Compel Against Newsmax

17          May 26, 2022 *Fox* Order on Productions

18          July 28, 2022 *Fox* Order on Fox News
            Network's Text Message Production

## INDEX OF ABBREVIATIONS

| ABBREVIATION | DESCRIPTION |
|---|---|
| Lindell ECF ## | ECF docket entry in *US Dominion, Inc. v. My Pillow, Inc., et al.*, 1:21-cv-00445-CJN (D.D.C.) |
| Powell ECF ## | ECF docket entry in *US Dominion, Inc. v. Sidney Powell et al.*, 1:21-cv-00040-CJN (D.D.C.) |
| Giuliani ECF ## | ECF docket entry in *US Dominion, Inc. v. Giuliani, Inc., et al.*, 1:21-cv-00213-CJN (D.D.C.) |
| Byrne ECF ## | ECF docket entry in *US Dominion, Inc. v. Patrick Byrne*, 1:21-cv-02131-CJN (D.D.C.) |
| OAN ECF ## | ECF docket entry in *US Dominion, Inc. v. Herring Networks, Inc. et al.*, 1:21-cv-02130-CJN (D.D.C.) |
| [Defendant] Compl. | Dominion's Complaint filed in the above-captioned matter against the identified Defendant. |

**INTRODUCTION**

The five defamation cases at issue all arise from Defendants' spread of falsehoods about Dominion in connection with the 2020 Presidential Election. Dominion's view has long been that a coordinated discovery process is fair and will create efficiencies across the cases. This brief supports Dominion's request that the Court resolve the parties' remaining disputes about the discovery process and enter Dominion's proposed Order Regarding Discovery Matters.[1]

On September 21, 2023, the Court directed the parties to meet and confer to propose a discovery stipulation for the handling of discovery matters and either submit an agreed order for the Court's approval or submit remaining disputes for resolution. Following written and verbal exchanges over several weeks, the Dominion Plaintiffs (herein "Dominion") and Defendants Michael Lindell and My Pillow, Inc., Sidney Powell, Powell, P.C., Defending the Republic ("DTR"), Rudolph Giuliani, Patrick Byrne, One America News Network et al. ("OAN"), and Christina Bobb ("the parties") have made substantial progress but have not reached full agreement.

In particular, the parties diverge on the best path forward for document searches and production. The pivotal context here is that these are defamation cases, and, typically, discovery in a defamation case is, and should be, largely directed toward evidence of the defendant's conduct and circumstantial or direct evidence of their mental state. Nonetheless, and in further effort to compromise, Dominion has largely accepted Defendants' re-writing of Dominion's original discovery proposal and efforts to obtain extremely broad discovery from Dominion. Yet, Defendants continue to push proposals that would decrease transparency into whether they are

---

[1] Dominion's proposed Order Regarding Discovery Matters is filed herewith as Exhibit 1 to this Brief. References herein to **Exhibit 1, Exhibit 2, Exhibit 3, Exhibit 4, Exhibit 5** and **Exhibit 6** in this Brief are to Exhibits to that proposed Order, which are filed herewith as Exhibit 1-1, Exhibit 1-2, Exhibit 1-3, Exhibit 1-4, Exhibit 1-5, and Exhibit 1-6 to this Brief.

complying with their discovery obligations and impose immense, unwarranted additional discovery burdens on Dominion.  Those aspects of Defendants' proposal should be rejected.

In this Brief, Dominion focuses on five areas of disagreement, each of which is foundational to a fair and efficient discovery plan or will improve transparency for *all* parties, likely reducing future motion practice.

1. **Custodian Interviews:**  Custodian interviews are the touchstone for locating responsive custodial messages and documents.  Dominion's proposal affords transparency and uniformity in three critical elements of the interviews: (i) defining custodians to be interviewed, (ii) identifying what electronic applications, or "Apps," the parties should ask custodians about, and (iii) specifying topics to guide the interviews.  By contrast, Defendants' proposal offers a black box about the who, what, and how of the interviews.  Defendants' proposal also improperly limits questioning to "work habits and data," when no such restriction is defined, let alone appropriate.  A clear, detailed, and thorough interview process will ensure all parties receive the discovery they are entitled to, as well as eliminate future disputes about whether sufficient efforts were made to locate responsive documents and minimize the need to re-interview custodians down the line.  This finality is of particular import for Dominion, which has agreed to the largest number of custodians.

2. **Relevance and Responsiveness Review and Organization of Documents:** Dominion's proposal provides for a responsiveness review of custodial ESI by disclosing and, where Defendants elected to engage, negotiating custodians, search terms, and time periods. Although Dominion thinks the best practice in cases such as these is not to perform any secondary review where parties risk defining relevance for the other side, Dominion's proposal does not require or prohibit any party from performing that additional review should they desire. Defendants, however, argue that Dominion must also apply a secondary review for both

responsiveness and relevance and must, upon request, identify each document that corresponds with a particular document request.  No such obligations exist, nor do they make sense where Defendants have collectively served 639 RFPs on Dominion.  Rule 34 requires only that a party produce documents as kept in the ordinary course of business—which Dominion has done. Defendants' proposal will cause undue delay, cost, and prejudice.

3.     **Search Term "Hit" Reports:**  Dominion believes all parties should provide hit reports if requested.  Every Defendant except OAN and Powell/Powell, P.C. has provided hit reports upon request, yet Defendants nonetheless join in opposing a requirement to provide them. This makes no sense.  Hit reports facilitate at least two important objectives: they enable parties to negotiate search term syntax to alleviate burden, and they enable parties to examine the delta between term hits and documents produced as a data point in determining if a party has met its discovery obligations.  In short, hit reports, which are an industry standard tool, are inexpensive to create and invaluable to both parties.  Defendants have given no valid reason to refuse them.

4.     **Date Ranges for Searches:**  Dominion's proposed date range for custodial documents is based in the time period of the defamatory conduct and relevant to defendants' motive and failure to retract and damages.  Defendants' proposed time periods place an undue burden on Dominion while seeking to constrict their own obligations.  For text messages, Dominion proposes a time period between its original proposal and Defendants' desired proposal, with the caveat that OAN and Byrne should produce messages for a longer period since they continued to defame Dominion into mid-2021.  For noncustodial documents, Dominion proposes the parties respond based upon document requests.

5.     **Text Messages:**  Dominion and Defendants' proposals are not far apart.  Under Dominion's proposal, each party is permitted to redact privileged or highly sensitive

nonresponsive information from text and other non-email electronic messages, but must produce entire 24-hour segments without other redactions. Defendants' proposal, by contrast, would allow for over-redaction by permitting the parties to redact for responsiveness within text chains. However, as is commonly known, text message communications require context to understand. Redacting all data except a single or few texts in a given text conversation would impede the receiving party's ability to meaningfully assess the information, refresh a deponent's recollection, or use the text message at trial.

***

For the above reasons, and as described in more detail below, Dominion respectfully requests that the Court enter its proposed order.

## FACTUAL BACKGROUND

This motion arises in the context of defamation actions with overlapping evidence and witnesses. Following the 2020 Presidential Election, Defendants Sidney Powell, Patrick Byrne, Michael Lindell, and Rudolph Giuliani publicly espoused falsehoods about Dominion, while privately colluding with one another and their associates by email and non-email electronic messages and in person to manufacture evidence that the election was stolen, bank-roll conspiracy theorists, use promo codes to profit from their defamatory publications, and strategize about how to use lies about Dominion to overthrow the legitimate results of the 2020 Presidential Election. *See* Powell Compl. ¶¶ 57-58, 87-90, 104-109; Byrne Compl. ¶¶ 40-57; Lindell Compl. ¶¶ 38-50, 92-100, 145-153; Giuliani Compl. ¶¶ 19-31, 45-70. Defendant OAN gave a ready platform for these false statements, while privately OAN talent, producers, editors, and executives received a myriad of information debunking the claims. *See* OAN Compl. ¶¶ 170-181, 197-223, 241-260.

This Court consolidated the *Powell*, *Giuliani*, and *Lindell* cases and more recently the *OAN* case for the purposes of discovery. For the better part of a year (indeed, even predating the Court's

most recent order on *OAN* consolidation), Dominion has diligently worked to effectuate coordinated discovery by jointly presenting Defendants (originally, in the *Giuliani*, *Powell*, and *My Pillow* cases) with proposals as to basic discovery infrastructure, such as search terms, custodians, hit reports, electronically stored information ("ESI"), and expert discovery protocols. But despite the Court's consolidation order, and despite Dominion's diligent efforts, the parties were unable to reach an efficient consolidated approach to discovery.  Lack of coordination resulted in countless hours spent on emails, phone calls, and meet and confers with still much in dispute.  For that reason, Dominion sought Court guidance, which led to the subject process with the goal of obtaining a stipulation to govern the parties' discovery moving forward.

### A.   The Court Orders Consolidation For Discovery Across The Cases

After denying Powell, Giuliani, and Lindell/My Pillow's motions to dismiss, the Court ordered the parties to "participate in discussions about a consolidated discovery schedule."  Lindell ECF 85 (November 2021 Order).  In the spring of 2022, the Court entered a scheduling order governing consolidated discovery for the *Powell*, *Lindell*, and *Giuliani* cases.  Lindell ECF 121.

After the Court denied Byrne's and OAN's motions to dismiss, the Court consolidated *OAN* with *Powell*, *Lindell*, and *Giuliani* for the purposes of discovery, OAN ECF 134 (July 24, 2023 Order), and has entered the *OAN* amended scheduling order across the *Powell*, *Lindell*, *Giuliani*, and *Byrne* cases, *see* Lindell ECF 180.  Byrne is voluntarily coordinating with the cases.

### B.   The Parties Exchange Document Requests, Go Several Rounds On Search Terms, Custodians, And The Basics Of ESI Discovery, But Lack Finality

The parties have engaged in extensive written document request discovery.  In total, Defendants have now served **639** document requests on Dominion:

| Requests for Document Production to Dominion, By Propounding Party | | | | |
|---|---|---|---|---|
| Powell / Powell PC | Giuliani | Lindell / My Pillow | Byrne | OAN |
| 84 | 20 | 200 | 90 | 245 |

And Dominion has served document requests on each Defendant:

| Requests for Document Production by Dominion, By Receiving Party | | | | | |
|---|---|---|---|---|---|
| Powell / Powell PC | DTR | Giuliani | Lindell / My Pillow | Byrne | OAN |
| 125 | 58 | 75 | 181 | 77 | 84 |

In response to Defendants' document requests, Dominion has produced over 828,000 documents, over 780,000 of which were previously produced in the *Fox* litigation, of which an additional sum of over 26,000 documents were produced based on the Lindell/My Pillow search terms alone (over 220,200 of the Fox litigation documents also hit on the Lindell/My Pillow terms), and another approximately 20,000 of which were produced based on other requests, including for deposition transcripts and exhibits, threats, Salesforce data, customer contracts, media and documents cited in the complaints, correspondence with Staple Street Capital, corporate formation documents, agreements and schedules from Dominion's acquisition of Sequoia, financial records, and other items.  Dominion has also offered to produce Teams and OneDrive data, but no Defendant has taken up the offer.  To assist in their review of these documents, Dominion has provided all Defendants with a high-level index of its production.  Ex. 2 (September 15, 2023 E. Hadaway Email).

Although no Defendant has provided an index for its production, the total numbers for Defendants' document production fall along these lines:

| Number of Documents Produced, By Defendant | | | | | |
|---|---|---|---|---|---|
| Powell / Powell PC[2] | DTR | Giuliani | Lindell / My Pillow | Byrne | OAN |
| 8,930 | 20 | 17,212 | 3,136,032 | 4,697 | 9,388 |

---

[2] This total includes the 2,941 documents produced by Ms. Powell in response to Dominion's subpoena in the *Fox* litigation, which were permitted for use in the subject cases.

While Dominion has been highly transparent about its productions, not all Defendants can say the same.  For example, Powell and Powell, P.C. have refused to disclose the search terms that they used to select communications they have produced to date.  And while they more recently agreed to produce documents that hit on Dominion's search terms and produce a privilege log, to date, they have not done so.  DTR has produced a single PDF that appears to consist of 20 discrete documents but to date has produced zero custodial communications.  But OAN's approach has been even worse.  Although it is a large corporate media defendant, OAN has produced few documents and, despite acknowledging it has relied on search terms to identify responsive documents, has refused to disclose the search terms it used or produce a hit count.

As recounted below, the story of the parties' document productions reveals a theme: Dominion has consistently pushed for coordination and transparency, while Defendants, for the most part, have treated discovery as if it should be a moving target, and often a black box.

### 1. Defendants Seek Broad Discovery, Including All Documents Produced In *Fox*, But When Dominion Produces What They Ask, They Backtrack

How did the parties get here?  All along, the *Fox* Litigation has featured prominently among the Defendants' document requests.  Indeed, Defendants Powell, Byrne, and OAN have sought ***the entire document production*** Dominion made in the Delaware *Fox* litigation:

> **Powell Second Set of RFPs, No. 1**: Any documents produced in the matter of *US Dominion Inc., et al. v. Rudolph Giuliani* (1:21-cv-00213) (D.D.C.); *US Dominion Inc., et al. v. My Pillow, Inc. et al.* (1:21-cv-00445) (D.D.C.); *US Dominion Inc., et al. v. Fox news Network et al.* (C.A. No. N21C-03-257) (Del. Sup. Court); *US Dominion Inc., et al. v. Fox Corporation* (C.A. No. N21C-11-082) (Del. Sup. Court); and *Curling et al. v. Dominion Voting Systems, Inc.* (1:21-164) (District of Colorado) (collectively the "Dominion Litigations").

Ex. 3 (Powell Second Set of RFPs to Dominion), No. 1; *see also id.* Nos. 1, 2 & 4 (seeking deposition transcripts and expert reports from the *Fox* case).

> **Byrne First Set of RFPs, No. 13**: All documents, written discovery responses, or document productions you or your counsel have sent to Fox News in response to any interrogatory, request for production, or request for admission propounded on Dominion by Fox News in the litigation styled *US Dominion, Inc. et al. v. Fox News Network, LLC*, commenced in the Delaware Superior Court in New Castle County as Case Number N21C-03-257.

Ex. 4 (Byrne First Set of RFPs to Dominion), No. 13: *see also* Ex. 5 (Byrne Second Set of RFPs to Dominion) Nos. 69-70, 72-77 (seeking other materials from the *Fox* case).

> **OAN First Set of RFPs, No. 65:** All discovery and transcripts (including, but not limited to, written discovery requests, written discovery responses, subpoena responses, Open Records Act requests, Open Records Act responses, deposition notices, deposition transcripts, deposition videos, hearing transcripts, and similar material) related to, arising out of, or produced in the lawsuits filed by any Dominion Entity relating to the U.S. 2020 local, state, and federal elections, including but not limited to *US Dominion, Inc., et al. v. Powell, et al.*, No. 1:21-cv-00040 (D.D.C.); *US Dominion, Inc., et al. v. Giuliani, et al.*, No. 1:21-cv-00213 (D.D.C.); *US Dominion, Inc., et al. v. MyPillow, Inc., et al.*, No. 1:21-cv-00445 (D.D.C.); *US Dominion, Inc., et al. v. Fox News Network, LLC*, No. N21C-03-257-EMD (Del. Super. Ct.); *US Dominion, Inc., et al. v. Newsmax Media, Inc.*, No. N21C-08-063-EMD (Del. Super. Ct.); *US Dominion, Inc., et al. v. Patrick Byrne*, No. 1:21-cv-02131 (D.D.C.); and *US Dominion, Inc., et al. v. Fox Corporation, et al.*, No. N21C-11-082 (Del. Super. Ct.).

Ex. 6 (OAN First Set of RFPs to Dominion), No. 65; *see also* No. 66 ("Documents exchanged with defendants or presented to the Court during any hearing or at trial" in the *Fox* case); No. 176 (all documents and communications concerning Dominion's interrogatory responses in the *Fox* case).

Lindell/My Pillow likewise sought materials produced in the *Fox* litigation, including all deposition transcripts and trial exhibits, among other documents.  *See* Ex. 7 (My Pillow Third Set of RFPs to Dominion), RFP Nos. 1-5, 7-8.

In late 2022 and early 2023, the parties negotiated extensively over the scope of documents Dominion would produce to Defendants in the *Powell*, *Giuliani*, and *Lindell* cases.  Given the breadth and depth of Dominion's production in *Fox*, the similarity of the issues involved in that case and the cases against the then-consolidated Defendants, Powell, Giuliani, and

Lindell/My Pillow, and the sheer number and scope of Defendants' requests, Dominion ultimately

made a simple proposal: Dominion would produce every document it had produced in *Fox*, subject

to certain date limitations.  Defendants could then review the production, and if upon completing

their review, Defendants needed more, Dominion would engage in good faith discussions to

supplement its production.

   ***Those Defendants agreed to this approach in March 2023.***  *See* Ex. 8 (March 11, 2023

K. Sammons Email).  In a March 11, 2020 email, Ms. Powell's counsel confirmed the agreement:

> The Powell defendants' understood the parties to have agreed upon a rather simple
> process.  Dominion is to produce in our cases what it produced in the Fox News
> case.  The defendants will evaluate that production.  If there are any discovery
> requests not fully satisfied by that production, the defendants reserved the right to
> seek further production from Dominion for those existing discovery requests.  In
> addition, the defendants reserved the right to serve additional discovery upon
> Dominion.

*Id.* at 2.

   But after Dominion produced all non-privileged emails and attachments it had produced in

*Fox* for the applicable date range, those Defendants backtracked, complained that Dominion's

productions to date were nothing more than a "document dump," and that they each were entitled

to start the discovery process over, individual case by individual case, without respect to what

Dominion had already produced. At that point, Dominion paused its production in the hope that

through further discussion, the parties could come to ground on a process that made sense.

    **2.**  **Lindell Proposes Search Terms, Which Dominion Accepts**

   On May 24, 2023, counsel for Lindell/My Pillow provided Dominion with a list of

proposed search terms they wanted Dominion to use in searching for documents responsive to their

discovery requests.  Given consolidation for purposes of discovery, Dominion's counsel asked the

then-consolidated Defendants to confirm they all agreed to the May 24 Lindell/My Pillow search

terms.  Counsel for Giuliani promptly agreed, but counsel for Powell and DTR did not respond.

Hearing nothing from Powell and DTR, Dominion agreed to the May 24 Lindell/My Pillow search terms, with a few modifications for burden that Dominion identified.  Dominion has since produced all non-privileged emails that hit on those terms, subject to Dominion's modifications, for its agreed custodians for its proposed time period.

### 3. Dominion Seeks To Create Order In The Discovery Process But Some Defendants Refuse To Engage

Still finding it difficult to get clear agreement—or for that matter disagreement—on various discovery issues, also in May 2023, Dominion invited all the consolidated Defendants (Powell/Powell, P.C., DTR, Lindell/My Pillow, and Giuliani) to participate in a discovery stipulation that would offer some finality and order to the discovery process.  During an initial May 19, 2023 conference organized by Dominion, counsel for Powell/Powell, P.C., DTR, and Lindell/My Pillow agreed to consider a discovery stipulation process.

On June 2, Dominion proposed search terms and custodians to Powell, Giuliani, Lindell/My Pillow, and Byrne, and requested hit reports for its proposed custodians.  Few responded.  Two weeks later, Dominion circulated a proposed discovery stipulation, recirculating the proposed search terms and custodians, and providing a draft ESI protocol and expert stipulation.  Dominion requested to meet.  On June 30, counsel for Powell/Powell, P.C., DTR, and Lindell/My Pillow met with Dominion's counsel to discuss the stipulation and their positions.  Powell/Powell, P.C. stated they would not participate in the stipulation process.  Counsel for Giuliani did not attend.

### 4. Dominion Cobbles Together Some Agreements With Some Parties Through Endless Emails, Telephone Calls, and Zooms

Despite not reaching agreement on use of a discovery stipulation, during the June 30 conference, the then-consolidated parties continued to negotiate by email and Zoom, sometimes in groups and sometimes unilaterally, and almost always at Dominion's urging.  For example,

Dominion, Powell/Powell, P.C., and Lindell/My Pillow agreed to an interim date for substantial completion of July 21, 2023, and those parties made productions on or around that deadline. DTR and Giuliani made no custodial email productions.

Yet still, at that point in the summer of 2023, Defendants' productions remained for the most part a black box. For example, Powell and Powell, P.C. refused to provide any information about their search terms, despite admitting to using some of their own, and rejected all of Dominion's proposed custodians apart from Sidney Powell. DTR offered no clarity on proposed custodians and made no custodial production. Lindell used his own search terms, not Dominion's, and refused to accept most of Dominion's proposed custodians, in addition to dropping a 3 million document production of cast vote records and other files from Conan Hayes, a former professional surfer turned conspiracy theorist. Giuliani claimed to be unable to produce additional documents at the time due to lack of funds.

The consolidated parties also negotiated a deadline for the production of privilege logs, and, after extensive back and forth, some parties ultimately agreed on August 31, 2023. *See* Ex. 9 (August 7, 2023 D. Marvin Email); Ex. 10 (August 9, 2023 J. Pull Email); Ex. 11 (August 15, 2023 J. Sibley Email). Dominion and Lindell/My Pillow produced privilege logs in accordance with the parties' agreement. However, just before the deadline, Powell requested 2 to 3 additional weeks to make a production of documents and provide a privilege log but never followed through. Ex. 12 (August 24, 2023 D. Marvin Email). Powell and DTR have not provided a privilege log. Indeed, Powell has still not made the production of documents promised by her counsel in August.

On hit reports, Defendants Lindell/My Pillow, Giuliani, and DTR provided hit reports to Dominion. Dominion provided a hit report for Lindell/My Pillow's May 24 search terms. But Defendant Powell/Powell, P.C. has refused to provide hit reports.

### 5.      Byrne Participates In The Discovery Process On His Own Terms

Meanwhile, Dominion served its first set of document requests on Byrne on May 24, 2023. Dominion proposed search terms and custodians on June 2.  On June 28, Dominion also provided a copy of its proposed discovery stipulation to Byrne.  Byrne has responded to document requests, made a document production, provided a privilege log, and provided a hit report.  The parties began negotiating the ESI protocol and expert stipulation, but Byrne wanted some different provisions from the consolidated Defendants.

### 6.      OAN Flip Flops On Search Terms

Negotiations with OAN have, in many respects, been fruitful.  For example, the parties have agreed on custodians.  Yet in one crucial respect, OAN is the main driver behind Defendants' opaque approach to document production. ***After*** OAN had agreed to most of Dominion's search terms, it withdrew that agreement when Dominion made clear that it would require hit counts as a tool to assist in the transparency of OAN's responsiveness review process.  OAN then started producing documents without any disclosure as to what search terms it was using.

On July 27, 2023, Dominion proposed search terms for OAN, and after a month of negotiations, OAN had agreed to 181 of Dominion's proposed 210 search terms, leaving only 29 to be negotiated. OAN indicated that it was analyzing those terms and "anticipated providing you with a response next Friday." Ex. 13 (August 31, 2023 J. Neerman Email).  In the meantime, OAN noted that "[w]e have begun processing the documents that hit on the 181 search queries and are reviewing for responsiveness." *Id.*

In subsequent meet and confers, however, OAN changed course.  It asserted that Dominion had no right to hit counts for any search terms to which OAN had agreed.  As it noted on October 2, OAN "will not agree to Dominion's proposed use of hit count reports as a weapon to evaluate the quality of the responsiveness review." Ex. 14 (October 2, 2023 J. Neerman Letter).  So long as

Dominion reserved the right to request hit counts, OAN would rescind its prior agreement on search terms, refuse to negotiate, and start producing documents it believes are responsive to Dominion's requests for production, with no insight into how it is doing so. *Id.*

True to its word, OAN recently produced documents and indicated that it had applied search terms. Despite Dominion's requests, OAN still has not (1) indicated if they applied any of Dominion's search terms or some unspecified search terms of its own, or (2) provided hit counts for any search term whatsoever.

### C.      Dominion Seeks Court Guidance On The Discovery Process And Negotiates With Defendants About The Discovery Stipulation In Good Faith

On September 21, 2023, the consolidated parties (now including OAN) and Byrne appeared before Judge Nichols to discuss various discovery disputes, including the subject discovery process. At the conclusion of the hearing, Judge Nichols ordered the parties to discuss the terms of a proposed joint discovery stipulation, and, if unable to reach agreement, to brief disputed issues. Judge Nichols also ordered a similar process for depositions.

For the past month, the parties' counsel have worked collaboratively. Dominion and Lindell/My Pillow were able to resolve the items on which Dominion sought permission to move to compel. The parties also worked on provisions of a joint stipulation by email and during two conferences, the first held on October 3, 2023, and the second held on October 5, 2023. The parties came to agreement on some provisions but were not able to reach agreement on all.

A few unexpected events have also happened in the interim. Previously, on September 12, 2023, Dominion served a deficiency letter on Lindell/My Pillow based on its production to date. On October 2, 2023, Lindell/My Pillow responded, indicating that they intended to cure many of the issues Dominion identified. Then a few days later, on October 5, 2023, counsel for Lindell/My Pillow moved to withdraw, and as part of their meet and confer statement with

Dominion, agreed to continue remedying their production deficiencies and to produce documents that hit on Dominion's search terms without additional relevance review.  *See* Lindell ECF 196.

On October 4, 2023, counsel for Ms. Powell and Powell, P.C., filed a motion for partial stay of discovery.  *See* Powell ECF 103.  As explained in Dominion's response to Powell's motion, Dominion did not oppose a stay so long as there were reasonable conditions in place to ensure the consolidated cases and coordinated processes, such as the subject discovery stipulation process, did not suffer.  *See* Powell ECF 105.

Then, as has been widely reported, on October 19, Ms. Powell pleaded guilty in the Fulton County, Georgia case, which was the basis for her motion to stay.[3]  Now that there is no conflict with her trial, Ms. Powell's counsel has stated that Ms. Powell will withdraw her motion for a partial stay of discovery.  Dominion intends to now seek leave to file a motion to compel discovery on the outstanding discovery that she owes if she does not timely cure her deficiency.

## LEGAL STANDARD

This Court exercises wide discretion in the management of the discovery process.  *See Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997).  Indeed, "[t]rial courts exercise considerable discretion in handling discovery matters, and a district court's decision to permit or deny discovery is reviewable only for an abuse of discretion."  *Id.*  Under Rule 1 of the Federal Rules of Civil Procedure, the rules governing discovery should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

---

[3] *See* Marshall Cohen, *Trump Attorney Sidney Powell Pleads Guilty in Georgia Election Subversion Case*, CNN.com (Oct. 19, 2023), https://www.cnn.com/2023/10/19/politics/sidney-powell-fulton-county-georgia-2020-election-subversion/index.html.

When considering motions to compel, "[c]ourts consider the prior efforts of the parties to resolve the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C) . . . ." *Barnes v. D.C.*, 289 F.R.D. 1, 5-6 (D.D.C. 2012).  "Relevance, for discovery purposes, has been 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.'" *Lamaute v. Power*, 339 F.R.D. 29, 34 (D.D.C. 2021) (quoting *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016)).

Rule 26 also requires that discovery be proportional to the needs of the case, which courts assess by considering "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* at 34 (quoting Fed. R. Civ. P. 26(b)(1)). The determination of proportionality must be made on a case-by-case basis, and "[o]nce relevance has been established, the burden shifts to the party opposing discovery to show why the discovery should not be permitted." *Id.* at 35.  "To satisfy that burden the refusing party must make a specific, detailed showing." *Id.*

## ARGUMENT

While the parties are close on many issues, where they diverge, the differences matter. Again, fundamentally, these are defamation cases, in which the thrust of discovery typically is, and should be, directed toward evidence of the defendants' conduct and circumstantial or direct evidence of their mental state. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989).  Defendants' proposals in some instances err by seeking to invert the balance of discovery.  In other instances, Defendants' proposals simply reach beyond what the Federal Rules require and would create costly make-work.  In most others, Defendants push for an unreasonable

lack of transparency for themselves, while simultaneously claiming Dominion has given them too much but also done too little, placing Dominion in an impossible bind.

Dominion's proposal chiefly aims to avoid delay and the backtracking of previously reached agreements that at least some parties relied on in producing documents, while accommodating the needs of OAN, Bobb, and Byrne as they enter the group discussion, and taking into account efficiencies gained through transparency and coordination across the cases.

The below addresses Dominion's proposal in two parts: (1) agreed and nearly agreed provisions; and (2) disputed provisions requiring more involved discussion.

## I.     The Agreed And Nearly Agreed Discovery Stipulation Provisions In Both Parties' Proposed Orders Are Reasonable And There Is Good Cause To Enter Them.

Rule 29 of the Federal Rules of Civil Procedure permits the parties to stipulate to "other procedures governing or limiting discovery."  The below addresses (i) provisions to which the parties have agreed and (ii) provisions that are either nearly agreed or are sufficiently self-explanatory without more argument, subject to concerns raised by the Court or Defendants.

*First*, to Dominion's understanding and belief, the parties have agreed on the following provisions for the discovery stipulation:

- **Section 1** and **Exhibit 1 (Protocol For Production Of Electronically Stored Information And Paper Documents)**[4]

- **Section 2** and **Exhibit 2 (Stipulation Regarding Expert Discovery)**

- **Section 3(a) (List Of Custodians)**[5]

- **Section 8(b) (Rolling Productions)** and **Section 8(c) (Supplemental Productions)**

---

[4] Dominion has recently learned that DTR does not join in the load file portion of the ESI protocol.

[5] This provision appears at Section 4(a) of Defendants' proposal.  **Exhibit 3** is not fully agreed.

Each of the above provisions are reasonable and will promote the just and efficient management of the cases.

**Second**, the parties' proposals as to the following provisions are close enough and the differences sufficiently self-explanatory that resolution is possible without additional argument, subject to any requests or questions the Court may pose or may arise from Defendants' briefing:

**Section 4 (Search Methodology):** The first paragraph of Section 4 of Dominion's Proposal (Section 5 in Defendants' Proposal) is agreed upon by the parties. The second paragraph of Dominion's proposal includes "search terms, custodians, and time frames" as an acceptable search methodology, which Dominion has addressed in detail in Part II. *See infra* § II.B.

On the third paragraph of the Search Methodology section, both parties contemplate disclosure of search terms, acknowledge that negotiations are ongoing between some parties, and recognize the parties' respective needs to seek additional search terms in the future or to seek modifications of search terms. However, Defendants' proposal omits the search terms that the parties have agreed to run, whereas Dominion's proposal includes them (**Exhibit 6**). Defendants' proposal provides less certainty and suggests that the parties are just starting negotiations when negotiations for most parties have actually been going on for over four months. The parties cannot afford to leave the door open to more backsliding.

Dominion's proposal also requires disclosure of any search queries used by a party as any part of their search and production process, even if not used in a traditional search term / custodian / time frames approach. This provision increases transparency and enables the parties to better communicate about and potentially resolve disputes about the scope of searches and production.

By contrast, Defendants' proposal lacks any measure of transparency into search terms used by a party that claims they are "not using" search terms (but in fact are using some form of

search queries as part of their collection and production process).  Dominion's proposal thus provides more transparency and thus minimizes the risk of future disputes.

Finally, Dominion's proposal specifically notes the fact that no party is using Technology Assisted Review or "TAR."  Dominion's view is that the use of TAR to limit productions is not an appropriate methodology given the circumstances of the case.  Since each party has correctly decided not to use TAR, the issue does not merit more discussion.

**Section 8(d) (Interim Date for Substantial Completion):** Defendants' proposed date for substantial completion of document production, January 31, 2024, adds unnecessary delay.  The farther Defendants push out discovery, the more difficult it is for the parties to complete review of documents, move through resolution of any disputes about the sufficiency of productions, and complete depositions within the case management order's timeline.  Although Dominion would prefer sooner, Dominion proposes a compromise of December 1, 2023.

As Dominion has stated to Defendants, Dominion has long been ready to push ahead to depositions and intends to complete any additional production based on OAN and Byrne's new proposed search terms as soon as possible.  The parties should be able to work diligently and complete the bulk of their productions by the December 1, 2023 deadline.

**Section 9 (Privilege Log):** Since the parties agreed to be bound by **Exhibit 1**, Dominion removed the sentence that Defendants proposed that provides that the parties can follow the Federal Rules instead of **Exhibit 1**.  Dominion's proposal effectuates the parties' careful negotiation, whereas Defendants' proposal would backtrack and render the privilege log provision in **Exhibit 1** a dead letter.  *See* Fed. R. Civ. P. 29.

**Search 10 (30(b)(6) Depositions):** As part of the corporate party deposition process, Dominion seeks to afford parties the opportunity to notice a 30(b)(6) deposition for discovery-

related topics ahead of and without prejudice to later serving a second deposition notice with additional topics on merits and any other issues. The goal is to resolve search methodology and scope of searching and production disputes up front. By contrast, Defendants' proposal includes no provision at all.

However, there is no doubt that 30(b)(6) depositions count as a single deposition under the Federal Rules. *See* § 2104 Leave of Court—When Required, 8A Fed. Prac. & Proc. Civ. § 2104 (3d ed.) (explaining that the Federal Rules Committee Notes makes clear "that a Rule 30(b)(6) deposition should be considered a single deposition even though more than one person is designated to testify"). Thus, Dominion's proposal simply affords the expediency of tackling discovery related topics early on, through a first deposition, without having to issue a 30(b)(6) notice covering all topics prematurely—this position accords with the spirit and Committee construction of the Rule, as well as efficiency and common sense.

**Section 11 (Relief from and Modification of this Order):** Defendants added this provision. Dominion's one disagreement is that the provision should refer to the Federal Rules generally to include all the applicable obligations, as opposed to only a subset.

## II.   Dominion's Discovery Stipulation Proposal Strikes The Better Balance On The Disputed Issues.

### A.   Custodian Interviews

Custodian interviews are the touchstone for locating responsive custodial messages and documents. Courts in D.C. and across the country recognize that "the custodian interview is not merely a theoretical best practice," but rather "like the initial client interview, a proper and thorough custodian interview is mandated by the Federal Rules of Civil Procedure and the Rules of Professional Conduct." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d

839, 926-927 (N.D. Ill. 2021); *see also id.* at 924-929 (collecting caselaw and summarizing custodian interview obligations as reflected in law, codes of conduct, and treatises).

Both sides agree custodian interviews should occur.  Both sides agree neither party is obligated to interview individuals who are not reasonably available to the party, such as former employees.  However, Dominion's proposal for Section 3 (Custodian Interviews) provides greater clarity about who is to be interviewed, what Apps they are to be questioned about, and which topics should guide questioning.  That is the better approach, and Dominion's proposal should be entered.

***First***, Dominion's proposal provides a more definitive rule about who should be interviewed.  To the extent a custodian is a "current employee," or the person is "otherwise available" to the party (which could include someone who is a long-term contractor), the parties should conduct a custodian interview.[6]

By contrast, under Defendants' position, parties only must interview individuals "[w]here possible and appropriate," Def. Proposed Order at 5, a provision without substance, meaning OAN could decide it is not "appropriate" to interview its founder, Robert Herring, Sr., or the President of Herring Broadcasting, OAN's owner, Charles Herring, because of their busy schedules, effectively licensing OAN, or any Defendant, to pick and unilaterally choose who to interview.

***Second***, Dominion's proposal also affords greater transparency and uniformity with another critical element of interviews: Apps (**Exhibit 5**).  Based on experience and consistent with views of courts in the District, Dominion believes that "messages and email communications with

---

[6] Dominion's proposed **Exhibit 3** contains a list of the proposed custodians.  As reflected in the compromise language that Dominion accepted from Defendants' proposal, inclusion in the list does not denote agreement about whether the person has discoverable information but does mean that each party will "reasonably attempt to include said individuals as part of their preservation, collection, and search efforts for likely discoverable information as appropriate and as possible." Ex. 1 at 4.  As of the time of filing, at least one Defendant disagrees with **Exhibit 3**.

associates or other contemporaneous records of [a defendant's] thoughts when he made the false statements" are vital evidence in these defamation cases. *Freeman v. Giuliani*, No. 21-3354 (BAH), 2023 WL 5600316 at *16 (D.D.C. Aug. 30, 2023).  For that reason, clarity about Apps a custodian regularly uses is significant, as "an attorney may not simply rely on custodian self-collection of ESI," but must "test the accuracy of the client's response to document requests to ensure that all appropriate sources of data have been searched and that responsive ESI has been collected."  *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021) (citation omitted).

Memories with respect to communications on Apps may be particularly fuzzy, such that an open-ended question about usage that does not run through specific Apps might not spur a complete response from a custodian.  For example, just asking the custodian what Apps they used, as Defendants' proposal would do, may result in them forgetting they used WhatsApp as well as texts, or even thinking in their heads that the questioner is including WhatsApp when they say texts.  But specifically asking whether the person used WhatsApp, for example, will help avoid such problems.  By identifying a list of Apps, in addition to asking a broad "anything else" question pertaining to regular usage, Dominion's proposal maximizes the chance a custodian will remember, while imposing no, or a *de minimis*, burden—literally the time it takes to run through the list of Apps with a particular custodian already being interviewed.

***Third***, Dominion's proposed topics (**Exhibit 4**) further clarify and streamline the process by distilling requests for production into a manageable list of categories, while simultaneously providing some measure of assurance that each custodian has been asked about key topics in a manner that will elicit complete responses.

Defendants' proposal, on the other hand, offers no guidance, and Defendants have not proposed topics of their own.  Under that view, what are Defendants asking their custodians?  The answer is that we have no idea.  It could be that Defendants are asking only, "Did you have any conversations about Dominion?"  Dominion would view that approach as horribly under-inclusive of what is alleged in the complaint.  Still, recognizing that it would be taxing to go through the complaint sentence by sentence with each custodian, Dominion has offered Defendants seven categories of topics.  Rather than engage with the topics, Defendants have chosen a position of zero visibility into their process.  Again, posing an open-ended question or providing a custodian with a lengthy list of Requests for Production does not offer the same assurance as a set of topics designed to capture the issues in the case.

***Finally***, Defendants' limit of the interview to "the ***work habits*** and data or document storage practices of each custodian" is improper and should be rejected.  Def. Proposed Order at 5 (emphasis added).  To begin, several Defendants are being sued as individuals, so their "work habits" are not the right paradigm to think about communications at issue at all.  Moreover, for Sidney Powell, Mike Lindell, Rudolph Giuliani, and Patrick Byrne, the line between personal and professional is non-existent, and any effort to impose a work/personal distinction would be arbitrary and highly prejudicial.  But even for the corporate Defendants, Defendants' proposal suggests a lack of obligation to collect ESI on current employees' professional devices that don't relate to their "work habits," whatever that means, to say nothing of a lack of obligation to collect ESI on personal devices such as non-work issued cell phones.  Not so.

Courts overwhelmingly hold that current employees—and all of their documents—are within a corporate employer's possession, custody, or control.  *See e.g.*, *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448 (S.D.N.Y. 2011) ("Courts have repeatedly found that employers have control

over their employees and can be required to produce documents in their employees' possession."); *State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*, No. 19-10835, 2020 WL 7056039, at *6 & n.4 (E.D. Mich. Dec. 2, 2020) ("The fact that responsive emails, if they exist, will be in the employees' personal email accounts is of no moment.").  Consistent with that rule, and in cases similar to those at issue here, the Court that oversaw the Dominion/Fox case and more recently the Special Master overseeing discovery in the Dominion/Newsmax case has ordered Defendants Fox and Newsmax, respectively, to collect and search texts from current employee custodians' personal devices.  *See* Ex. 15 (September 22, 2022 *Fox* Order); Ex. 16 (October 13, 2023 *Newsmax* Order).

Furthermore, the cases here are not cases where a bright line separates business-related and personal documents.  Take OAN, as one example.  One of the central issues in that case is whether any of OAN's media professionals expressed, behind the scenes, disbelief about the election-related lies the network was airing publicly.  Journalists and media professionals of course do not only express their views about world events in strictly professional settings, such as on-the-record interviews.  Journalists and media professionals, like anyone else, often discuss major news events and develop their views about these events, based on their engagements with all kinds of people, including friends and acquaintances—and those discussions can happen via all manners of electronic communications.  And in OAN's case, it went further by taking matters into its own hands to go out and "make" the news.  OAN Compl. ¶¶ 101-105 (discussing fictional report OAN published).  What if OAN decides fabricated source material is outside its reporting "work"?

Adding on, messages to individuals who do not work for or regularly appear as guests on OAN, which could include, by way of example only, elected officials, individuals with knowledge of election administration, trusted friends and advisors, and sources who do not appear as guests

on OAN's programs, in which OAN custodians acknowledge the falsity of allegations about Dominion or are informed of their falsity, would be among the most powerful documents to show OAN's actual malice.

Not only is there no bright line distinction between business-related and personal communications as a general matter; the line between personal confidant and professional contact is particularly blurred in this case. Mike Lindell, My Pillow's founder and CEO, communicated throughout December 2020 and January 2021 with "Stop the Steal" and "Women for America First" organizers Amy and Kylie Kremer, whose rallies Lindell spoke at and My Pillow sponsored.[7]  Anything the Kremers said to Lindell or anyone else at My Pillow about the allegations against Dominion is discoverable and relevant, even if those contacts were supposedly personal, not business-related.  Dominion's theory is that Lindell was motivated to lie about Dominion in part to prop up his business.

Furthermore, Mike Lindell employs many of his family relatives, and he has utilized My Pillow and various Lindell entities fluidly for personal and business matters.  And Sidney Powell's on-and-off status in relation to Trump's legal team as opposed to her own individual capacity has been widely reported.  Powell Compl. ¶¶ 59-72.  Moreover, according to her counsel, the individuals who worked with Powell, such as Emily Newman, Brandon Johnson, and Julia Haller, were not employees of her law firm, Powell, P.C., but certainly have relevant communications about the facts and information Ms. Powell had and relied upon.

---

[7]    *See    Casey    Tolan*,    *The    Operative*,    CNN    (Jun.    2021), https://edition.cnn.com/interactive/2021/06/us/capitol-riot-paths-to-insurrection/amy-kremer.html; Kylie Kremer Production CTRL0000030809, January 6th Committee Supporting Materials,    https://www.govinfo.gov/content/pkg/GPO-J6-DOC-CTRL0000030809/pdf/GPO-J6-DOC-CTRL0000030809.pdf.

Requiring the parties to conduct thorough and robust custodian interviews now will help avoid future disputes and minimize the need for repeated interviews should the parties later disagree about the methodology used to identify the location of potentially relevant information. This type of clarity and efficiency will serve all parties and is particularly important to Dominion, which has agreed to the largest number of custodians of any party.

Otherwise, one can imagine the disputes and delays. For example, what if the parties get to Charles Herring's deposition and it turns out he used Signal to speak with President Trump's campaign but forgot to tell his attorneys about that because they did not ask him specifically about Signal? What if the parties get to Christina Bobb's deposition and it turns out she did not search for and produce communications about her involvement in Cyber Ninjas because she saw that as "personal" and not "work" habits or data?[8] Dominion's proposal minimizes the risk of that scenario and the potential duplication of custodian interviews should the parties bring a dispute to the court thereafter. Achieving some sense of finality through this kind of transparent process is particularly important for Dominion given that it has agreed to the largest number of custodians of any party, but will likewise provide greater assurances of finality of the process to all parties.

### B.    Relevance And Responsiveness Review & Organization Of Documents

This section addresses two interrelated provisions: Defendants' proposed secondary relevance and responsiveness review requirement (which Dominion's proposal omits) and Dominion's organization of documents provision (which departs from Defendants' proposal in one significant way). Dominion addresses each provision in turn.

---

[8] *See* Jerod MacDonald-Evoy, *OAN Correspondents' Organization Supplied Volunteers For The Arizona "Audit,"* AZ Mirror (Jun. 7, 2022), https://www.azmirror.com/2022/06/07/oan-correspondents-organization-supplied-volunteers-for-the-arizona-audit/ (reporting that Bobb used her organization Voices and Votes to pay hundreds of thousands of dollars to the "audit" effort, supplied volunteers to participate, and also reported on the "audit" for OAN).

*First*, Dominion's proposal recognizes that, under Rule 34 of the Federal Rules of Civil Procedure, parties are required to produce documents that are responsive to a properly served document request. And Dominion's proposal permits the parties to locate those responsive documents using a linear (manual) review; the combination of search terms, custodians, and time frames; or any other method reasonably expected to identify the ESI that is responsive to pending discovery requests. Dominion believes that, where a party elects to use search terms, custodians, and time frames to identify responsive documents, the best practice in cases such as these is for the producing party to forego any secondary responsiveness review, as such supplemental reviews increase the risk that a producing party will fail to produce certain documents that are indeed responsive to a document request because, in the producing party's view, the documents are not relevant. Nevertheless, Dominion's proposal neither requires nor prohibits any producing party from performing an additional responsiveness review should they desire.

Defendants, however, take the position in Section 6 of their proposed stipulation that not only should producing parties be *allowed* to perform an additional responsiveness review, but that they should be *required* to apply a secondary review for both responsiveness and relevance.[9] Defendants go even further and insist that a producing party must, upon request, identify each document that corresponds with a particular document request. No such obligations exist.

Under Rule 34, a producing party must produce documents "as they are kept in the usual course of business or [the producing party] must organize and label them to correspond to categories in the request" and "produce [ESI] in a form or forms in which it is ordinarily maintained or in a reasonably useable forms or forms." Fed. R. Civ. P. 34(b)(2)(E)(i-ii). Courts

---

[9] Adding further complication, Defendants' proposal states that Lindell/My Pillow alone is immune from the responsiveness review requirement.

in this District have reaffirmed this point, holding that "defendant is not required to identify to which requests the produced documents are responsive, if defendant produces them as they are kept in the usual course of business." *Washington v. Thurgood Marshall Acad.*, 232 F.R.D. 6, 10 (D.D.C. 2005).

Dominion's proposal expressly provides for adherence to this provision of Rule 34. Section 8(a) of Dominion's proposal provides that "a producing party must produce responsive documents and ESI as they are kept in the usual course of business," and further notes that ESI is considered to be produced as such "when the ESI contains or is accompanied by original file path metadata." Ex. 1-1 (ESI Protocol) at 8.

Where plaintiffs have done as Dominion did here and required production of documents as kept in the usual course of business, courts have soundly rejected the argument Defendants make for a secondary responsiveness review. For example, in *FDIC v. Boggus*, the parties were in dispute about the terms of a protocol to govern the production of ESI, and the Court rejected defendants' call for a secondary responsiveness review requirement similar to the one Defendants make:

> Plaintiff is not required to conduct a responsiveness review because the parties have agreed to produce the documents as they were kept in the usual course of business. The production, therefore, is presumed to have some underlying logic to the organization and structure of the production; a further responsiveness review is unnecessary under these circumstances.

*Federal Deposit Ins. Corp. v. Boggus*, No. 2:13-CV-00162-WCO, 2015 WL 11457700, at *1 (N.D. Ga. May 13, 2015). In explaining its decision, the Court specifically relied on Rule 34, reasoning that because "FDIC has agreed to produce discoverable material as it was kept in the usual course of business," "further responsiveness review, therefore, is not necessary to match relevant discovery with the corresponding request." *Id.* at *2. The court further explained that since all

documents would be required to be produced in "TIFF" formatting, "the documents will be fully searchable, and if defendants are concerned that the FDIC and they cast too wide a net during initial production, the defendants may use further search queries to filter out irrelevant documents without a great deal of cost to either party." *Id.*

*FDIC* is squarely on point.  Just as in *FDIC*, Dominion's proposal requires production of documents in the usual course of business.  Ex. 1-1 at 8.  And just as in *FDIC*, the parties are required under the terms of **Exhibit 1**, the parties' ESI Protocol, to produce documents in TIFF formatting.  Ex. 1-1 at 3, 4.  The same outcome follows: this Court should reject Defendants' proposal requiring a secondary responsiveness review.

The court's decision and reasoning in *Outzen v. Kapsch Trafficcom USA* are similarly instructive.  There, the defendant Kapsch produced documents using search terms and custodians without additional relevancy and responsiveness review, and the plaintiffs claimed foul.  But just as in *FDIC*, the court in *Outzen* recited Rule 34, and found that Kapsch had satisfied the Rule's requirements because he "has organized the documents it has produced by custodian and has produced them with metadata fields that maintain the original file path and folder information." *Outzen v. Kapsch Trafficcom USA, Inc.*, 1:20-cv-01286-TWP-MJD, 2021 WL 3673786, at *7 (S.D. Ind. Aug. 19, 2021).  Just as in *Outzen*, here Dominion has agreed to provide original file path information and other metadata.  *See* Ex. 1-1 at App. 1.

Indeed, the *Outzen* court explained how the use of search terms and custodians suffices as a responsiveness and relevance filter when considering how inspection of documents is intended to work:

> In the halcyon days before e-discovery, when documents were kept in filing cabinets rather than on servers, a corporate party could satisfy its obligations under Federal Rule of Civil Procedure 34(b)(2)(E)(i) by giving the requesting party access to the files of the relevant employees or departments within the corporation. For

example, the response could say "the responsive documents may be found by examining the files maintained by employees Smith and Jones and the files maintained by the Finance Department." The responding party would then either provide copies of or access to those files as they were kept in the ordinary course of business. It would be up to the requesting party to search through them and separate the relevant from the irrelevant. The rule implicitly recognizes that such a review would be equally burdensome on either party and allows the producing party to decide which is more palatable: permitting the requesting party to rummage through its files or incurring the expense of culling the responsive documents from those files and organizing them according to each request.

*Id.* Just as in *Outzen*, Dominion "has done the equivalent of giving Plaintiffs access to its files, with the additional step of limiting its production to those documents that contain the search terms agreed upon by the parties," and just as there, here Dominion's "production of the non-privileged documents that resulted from using the agreed-upon search terms to search the relevant document custodians' files satisfied its obligations under Rule 34," and "[n]o additional responsiveness or relevance review was required." *Id.* Again, the same result should follow here.

Furthermore, contrary to Defendants' narrative, responsiveness and relevance review is not the norm. Indeed, some courts have actually ordered parties, over their objection, to produce documents without any additional responsiveness or relevance review whatsoever (a proposal that Dominion no longer seeks here[10]):

[D]istrict courts have, in some circumstances, ordered the production of documents without a manual relevance review, *see, e.g., Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2018 WL 6729794, at *2 (M.D. Pa. Dec. 21, 2018); *UPMC v. Highmark Inc.*, No. 2:12-CV-00692-JFC, 2013 WL 12141530, at *2 (W.D. Pa. Jan. 22, 2013); *Williams v. Taser Int'l, Inc.*, No. CIVA 106CV-0051-RWS, 2007 WL 1630875, at *6 (N.D. Ga. June 4, 2007), and these orders are neither tantamount to "search warrants" nor clear outliers, as the dissent suggests, (v) a similar approach is contemplated in Federal Rule of Evidence 502(d), by which a court may order production without a privilege review . . . .

---

[10] Earlier in discovery, Dominion advocated for no relevance review, but in an effort to compromise has proposed that each party can review for relevance and responsiveness, if it so chooses. Dominion reserves the right to challenge a party's production if it appears the party's relevance and responsiveness review has resulted in withholding of relevant and responsive documents.

*In re Actavis Holdco U.S., Inc.*, No. 19-3549, 2019 WL 8437021, at *1 (3d Cir. Dec. 6, 2019).

Dominion's proposal, which neither requires nor prohibits a secondary responsiveness or relevance review, is far less aggressive than what those courts have ordered. Defendants' proposal, on the other hand, is an outlier that would go beyond Rule 34's requirements.

Dominion's proposal also makes more sense in the context of discovery to date. Here, several Defendants have requested that Dominion produce all documents produced in the *Fox* litigation. Of the over 828,000 documents that Dominion has produced in these cases, over 780,000 were previously produced in the *Fox* litigation. Under Defendants' proposal, serious questions about burden arise: For example, would Dominion have to withdraw its production and go back and review 780,000 documents for "relevance" to each Defendants' complaint, despite that fact that the documents are squarely responsive to and were produced at Defendants' request? And how would that sort of filtering work, given that the five cases are consolidated or coordinating for discovery, and Defendants collectively have propounded some **639** requests? Defendants' proposal would invite an enormous burden and delay, in addition to incalculable permutations of disputes between different parties' view of what is relevant to their complaints. Would one Defendant complain that Dominion *should not* have produced a document because it was not relevant to Dominion's claims against that Defendant? But another Defendant claim Defendant was obligated to produce the same document because it was relevant to Dominion's claim against that Defendant? Defendants' proposal generates confusion.

Defendants' proposal also creates a perverse incentive. Requiring a secondary "responsiveness" review would enable parties to use search terms to ratchet up the number of documents a responding party must review. This is not merely a hypothetical. Here, for example, OAN has sought terms like revenue!, PR!, *izing, .gov, and *secur*; not surprisingly, these terms

generate tens or hundreds of thousands of hits.  Requiring Dominion to conduct a secondary review of documents that hit on requested search terms such as these proposed by Defendants is nothing more than make-work.

Requiring a "relevance" review, as Defendants propose, also invites discovery games, as parties could load up discovery with document requests guaranteed to turn up almost exclusively irrelevant materials and place the producing party in the pickle of having to first try and locate responsive documents but then paradoxically weed out almost all, or all, of the responsive documents because they are not relevant.  Defendants' proposal would allow parties to weaponize the discovery process and turn Rule 26's general aim of broad discovery on its head.  Parties are generally *permitted* to withhold from production documents that are responsive to an adversary's request for production but truly not relevant (provided the producing party lodges a proper relevance objection to the request).  But there is no *obligation* imposed by the Federal Rules that a party must withhold from production documents that are responsive to an adversary's request, yet somehow not "relevant" to the litigation.

To the extent parties are concerned about receiving irrelevant materials in response to their document requests, the answer is not a "responsiveness and relevancy review" that imposes obligations beyond those required by the Federal Rules.  Rather, the focus should be on (1) tailoring documents requests so that they fit with the scope of relevancy defined by Rule 26(b) (*see* Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)"); and (2) engaging in good faith negotiations in order to identify the relevant custodians, determine the appropriate time frames, and construct a robust set of search terms that can be used to identify documents responsive to those requests.

Dominion's proposal, which allows the parties to utilize search terms, custodians, and time periods to locate responsive documents, gives Defendants exactly what they asked for and fully satisfies its obligations under the Rules.[11]

**Second**, the provision on organization of documents that Dominion mentioned above— Section 8(a)—should be entered using Dominion's proposed language, without Defendants' addition of a requirement to match up discovery requests with document productions.[12]   As discussed above, courts in this District have held that a "defendant is not required to identify to which requests the produced documents are responsive, if defendant produces them as they are kept in the usual course of business." *Washington*, 232 F.R.D. at 10.  Courts around the country have done the same. *See, e.g.*, *Outzen*, 2021 WL 3673786, at *7; *Venture Corp. v. Barrett*, No. 5:13-CV-03384-PSG, 2014 WL 5305575, at *3 (N.D. Cal. Oct. 16, 2014); *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 333-34 (N.D.N.Y. 2008).  Again, all that is required under Rule 34 is that parties produce documents as kept in the usual course of business, such as by providing file path information, or by identifying documents by category—not both.  Dominion's proposal states just that.  Nothing more is needed or should be required.

---

[11] For the avoidance of doubt, Dominion reiterates that it has utilized custodian interviews to locate locations where responsive documents and communications may be located and has also produced a large number of noncustodial documents that it has located through targeted collection efforts.

[12] Defendants' proposal reads: "Upon request, a producing party shall identify for the requesting party the specific discovery request to which the documents or ESI (by their Bates number) are responsive.  In addition, upon a party's request, Dominion shall produce or make available case-specific documents or ESI that are responsive to a Defendant's pending discovery request in a manner in which such documents or ESI are segregated from any global discovery or other discovery that may be responsive to some other party's discovery requests."

### C.        Search Term "Hit" Reports

Whereas Dominion's search term "hit" report proposal (Section 5) seeks to provide transparency, Defendants' proposal (which does not provide for hit reports) seeks to obscure the document searching and production process, for no good reason.

A common feature of ESI discovery, a "hit" report is a report of the number of documents collected by a party from its document custodians that contain or "hit" on a given search term. Often hit reports with "unique" hits are provided.  The importance of hit reports to discovery are multi-fold.  As one district court explained, hit reports are an effective tool with "virtually no burden" that can advance search term discussions and ensure "quality control" on productions:

> First, hit reports do not actually disclose substantive information, but rather, they simply give the litigants an idea of the contours of the relationship between parties and the subject matter of the discussions in which the parties were engaged. Second, where there are concerns that a party has not produced all relevant documents, as there are here, a hit report allows the party propounding the discovery to conduct relatively unobtrusive quality control. Finally, there is virtually no burden on Defendants in executing a search and providing the results of that search. Accordingly, Defendants must provide complete, unredacted hit reports including the terms listed herein. Then, the list may be used to narrow discovery requests in this lawsuit.

*Castle Aero Fla. Int'l, Inc. v. Mktg. & Fin. Servs., Inc.*, No. 11-2672 (PAM/JJG), 2013 WL 12152475, at *2 (D. Minn. Jan. 4, 2013) (quoting a prior discovery order).

Given this, it is perhaps not surprising most parties have provided hit reports upon request. OAN, however, will not.[13]  As explained, *supra* pp. 12-13, OAN previously agreed to the vast majority of Dominion's proposed search terms, but upon Dominion's request for a hit report, OAN's counsel revoked agreement on all of the agreed terms.

---

[13] OAN recently produced documents and indicated that they had applied search terms.  Despite Dominion's requests, OAN has not (1) indicated if they applied any of Dominion's search terms or some unspecified search terms of their own, or (2) provided hit counts for any search term.

Dominion asks that the Court order the parties to provide hit reports upon request because, as reflected in the caselaw cited above, they are helpful.  Parties can better negotiate search terms and discuss burden arguments.  This use of hit reports is standard across modern civil litigation, and it is difficult to imagine how parties would communicate concretely or present burden analysis to the Court without this standard document.

Courts have recognized this exact issue.  For example, in *Sweeney v. Nationwide Mut. Ins. Co.*, the district court overruled a defendant's objections to a magistrate's report, noting that "[t]he Magistrate Judge further found that Defendants had not provided any information to support their proportionality objection, noting that Defendants had not run a hit report for Plaintiffs' proposed search terms 1, 2, and 5, and therefore the Court was unable to evaluate the time and cost required to review documents returned by Plaintiffs' proposed searches."  No. 2:20-CV-1569, 2023 WL 2549549, at *2 (S.D. Ohio Mar. 17, 2023).  In affirming the magistrate's order, the court further endorsed the need for a hit report: "Defendants still have not provided the Court with appropriate information to evaluate the proportionality of Plaintiffs' proposed searches, as the hit report returning over 580,000 hits (which Defendants ran only after the Magistrate Judge issued the January 6, 2023 Order) did not account for the Magistrate Judge's suggestion that the parties remove general search terms such as '401k' or 'plan.'"  *Id.* at *3.

Following productions, parties can also better evaluate whether there is a discrepancy between the number of documents that "hit" on a highly relevant and unique term, such as "Dominion" in this case, and the number of documents produced.  Experience has shown that the mutual transparency such reports provide is a critical, irreplaceable tool in litigation.  In the Delaware Dominion case against Fox News, Dominion was able to determine that of the number of "hits" on its proposed search terms, Fox News had produced less than 5% of documents that hit

on Dominion's search terms.  Ex. 17 (May 26, 2022 *Fox* Order) at ¶¶ 11, 25.  In light of this jarring discrepancy, and after substantial briefing where both sides made their arguments, Judge Eric Davis ultimately ordered Fox to produce all documents that hit on the search terms without additional relevance review.

Hit reports are generally unobjectionable and here would advance the parties' ability to ensure production of highly relevant documents.  Defendants' objection to providing them, which really boils down to OAN and Powell's objection, makes little sense for any reason other than to avoid the use of hit reports to evaluate and confirm the appropriateness of search methodology.

### D.      Date Ranges for Searches

Dominion's proposed date ranges are calculated to capture, among other evidence, proof of actual malice, and for that reason they are relevant and proportional to the needs of the cases.

Actual malice may be shown through direct evidence.  But a plaintiff also can prove actual malice through circumstantial evidence, rather than from the mouth of the defendant, because defendants are prone to assert their good-faith belief in the truth of their publications.  *Herbert v. Lando*, 441 U.S. 153, 170 (1979).  Circumstantial evidence of actual malice comes in many forms.  Categories of such evidence include evidence that the defendant: (1) relied on inherently improbable or obviously unreliable sources, s*ee St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Zuckerbrot v. Lande*, 167 N.Y.S.3d 313, 335-336 (N.Y. Sup . Ct. 2022); (2) possessed a financial motive to lie about the plaintiff, *see Harte-Hanks Communc'ns, Inc. v Connaughton*, 491 U.S. 657, 668 (1989); *Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 68684 at *8 (W.D. Va. Jan. 8, 2021); (3) departed from journalistic standards, *see Harte-Hanks*, 491 U.S. at 667-68; *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016); (4) conceived of the false narrative before publication, *see Palin v. New York Times Co.*, 940 F.3d 804, 813 (2nd Cir. 2019); *Harris v. City of Seattle*, 152 Fed. Appx. 565, 568 (9th Cir. 2005) (unpublished); and (5) refused to retract and

continued to repeat statements that had been proven false, *see Nunes v. Lizza*, 12 F.4th 890, 900-901 (8th Cir. 2021); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071-1072 (5th Cir. 1987). *See generally* Restatement (Second) of Torts §580A cmt.(d).

No one factor need be conclusive, and actual malice can be demonstrated by the accumulation of circumstantial evidence. *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 183 (2d Cir. 2000). Dominion's proposed date ranges seek discovery that is proportional to the need to establish actual malice, among other elements.

***Custodial e-mails and documents:*** Dominion proposes January 1, 2020 to December 31, 2021 for all parties, subject to modification by agreement of the parties or Court order.

On the start date, all parties except Bobb and Defending the Republic agree to Dominion's proposal for searches of their own documents. Bobb and DTR propose a start date of November 3, 2020. However, shortening the date range from January 1 to November 3 for Ms. Bobb would deprive Dominion of important evidence of her knowledge of falsity, for example, her likely awareness of the well-expected and widely reported phenomenon of the "red mirage / blue wave," which refers to the anticipated shifting of the leading candidate expected to arise due to mail in versus in person voting patterns in red and blue jurisdictions, extenuated due to the 2020 global pandemic. OAN Compl. ¶ 66.

It would also hinder Dominion's ability to show her creation of a preconceived narrative that the election was stolen, her motive, and her bias, for example, through communications in advance of the November 2020 Presidential Election with Trump campaign associates. It would also undermine Dominion's ability to demonstrate the unreliability of the sources she relied upon, for example, based upon prior or lack of prior use of those sources, as well as her departure from

journalistic norms that she otherwise knew to uphold, such as training and documents prior to the accused conduct would reveal.

In contrast, Ms. Bobb has put forth no evidence of any burden that using the date range would cause to her, and as such cannot show undue burden. Regardless, any burden would be proportional to the needs of case. Defending the Republic would face zero burden, since it did not exist in January 2020, but to the extent its custodians have responsive information or documents from the time period, that are in DTR's possession, they should be produced.

As to the end date, other Defendants' proposals would force Dominion to apply a hodge-podge of date ranges tied to their 639 document requests, while affording Defendants constricted end dates, ranging from January 8, 2021 (Powell, Powell, P.C., and Defending the Republic) to August 10, 2021 (Bobb) to August 31, 2021 (OAN), essentially tracking the filing of complaints. Their proposals should not be adopted.

The idea that relevant and discoverable information stops at the filing of the complaint is a non-starter. Documents and communications later in time may contain key admissions of falsity. For example, as has been widely reported, Christina Bobb, a named Defendant in the *OAN* case and an attorney who worked with Giuliani, later admitted in an interview to the January 6 Committee that she could not point to any evidence of wrongdoing by Dominion.[14] Communications by Defendants admitting to the falsity of their claims are valid admissions that are discoverable. Likewise, communications and documents that continue to disparage Dominion following the filing of Dominion's complaints against each of the Defendants go to their failure to retract, which is circumstantial evidence of actual malice. *See Nunes*, 12 F.4th at 900-901. Here,

---

[14] *See January 6 Committee Final Report* at 223 (Dec. 22, 2022) *available at* https://www.govinfo.gov/app/details/GPO-J6-REPORT/.

in particular, there is ample evidence that some defendants, including Lindell and Byrne, continue their public campaign of lies about Dominion on social media, political campaign ads, and other platforms.[15]  Their undeterred, wanton, and willful conduct is also relevant to damages.

Dominion's date range should be no broader than that for Defendants, and although Dominion disputes the need for so much discovery from so many Dominion custodians, Dominion has largely agreed to Defendants' request.  However, Dominion's proposal, capping the date range for emails and other custodial documents for Dominion to be the same as it is for Defendants, is fair and more than sufficient to afford Defendants discovery into the key time period of the 2020 Presidential Election.  That is the primary time period for which Dominion employees' conduct could potentially be at issue pertaining to the claims and defenses in the matter.

*Text and other non-email electronic communications:* Dominion proposes September 1, 2020 to April 30, 2021 for all parties except OAN and Byrne, and September 1, 2020 to August 31, 2021 for OAN and Byrne, as those complaints were filed in August 2021 and address defamatory statements continuing through mid-2021.  Lindell/My Pillow agrees with Dominion's proposal.  The other Defendants propose shorter timeframes with varying dates.

For reasons similar to those applicable to email communications, Dominion is entitled to and has a substantial need for these communications.  Indeed, the need for text and other non-email electronic messages is all the greater, given the candor that individuals often display in their text communications.  *See Freeman*, 2023 WL 5600316, at *16 (ordering production of text messages due to their significance as "circumstantial evidence of Giuliani's state of mind").  And

---

[15]     S*ee, e.g.*, Gramma Smith, Twitter (Sep. 26, 2023), https://twitter.com/gramma_smith/status/1706660895919645017?s=46&t=Xu-vn0q6W4wDCBUrs-7pmQ, and *Mike Lindell Discusses Huge Breaking News Related to His Legal Battles,* Frank Speech (Oct. 5, 2023), https://frankspeech.com/Video/mike-lindell-discusses-huge-breaking-news-related-to-his-legal-battles.

while the most relevant messages are those that occurred contemporaneously with the statements, text and other messages from later days may reflect later admissions of falsity, may go to the defendant's failure to retract and bias, and ultimately may be probative of Dominion's damages— for example, if Lindell is texting with a elections officials concerning whether to continue using Dominion voting machines, which is probable given the widely reported public campaign he has waged to get rid of Dominion machines from counties across the nation.[16]

*Noncustodial documents:* Dominion proposes January 1, 2020 to December 31, 2021 or as otherwise stated in discovery responses or agreed through meet and confers for noncustodial document productions.  Varying date ranges based upon discovery responses is consistent with how party production has proceeded to date.  By contrast, Defendants' proposal would only require Dominion to respond specifically based upon requests, while reserving for Defendants the same unjustified contracted time periods Defendants propose for custodial documents.  Defendants' proposal does not allow for noncustodial documents to have date ranges that are different based on the request, which does not match the needs of the case.  To illustrate, Dominion has requested materials produced in other lawsuits or to congressional committees, which may have been produced after 2021—and which are likely to be both highly relevant and present very little burden to produce.  Dominion has also requested agreements between and among various Defendants— which go to motive, bias, and control, in addition to establishing relationships for sources, which may be probative of actual malice—and which should not be limited to those beginning January 2020 or worse November 2020.

---

[16] *See, e.g.*, Dani Anguiano, *Mike Lindell backs rightwing California county as it ditches voting machines*, The Guardian (Mar. 4, 2023), https://www.theguardian.com/us-news/2023/mar/03/mike-lindell-shasta-county-california-dominion-voting-systems.

In sum, Dominion's proposal is both more balanced—all parties are subject to the same provision—and more tailored to the needs of the case to obtain specific sorts of noncustodial documents, be they financial, administrative, or otherwise.

### E.   Text Messages Production

The parties agree that relevant and responsive information may have been communicated through text messages and other non-email electronic communications.  The crux of the parties' dispute on this topic centers on the scope of permitted redactions.

Dominion proposes that, for any day on which there is a message that hits on a search term, that conversation be produced in full for the 24-hour period (between 12:00 a.m. to 11:59 p.m.) of that day.  Dominion further proposes that the parties be allowed to redact from the produced thread any privileged or highly sensitive nonresponsive information.  And Dominion specifies the types of nonresponsive information the parties should be permitted to redact: (1) personal medical/health information; (2) personal financial information, other than compensation; (3) personal marital, sexual, romantic relationship, or identity/orientation information; (4) personal familial information unrelated to the 2020 Presidential Election or issues in dispute in these cases, such as unresponsive conversations with spouses or minor children about private family affairs; and (5) personal religious affiliation information.

Dominion's approach is reasonable, as it recognizes the privacy interests at play, while accounting for the fact that text message and other non-email electronic communications often require context, and unnecessary redactions interfere with the receiving parties' ability to comprehend the conversation, use the document to refresh a deponent's recollection, or otherwise utilize the information in a meaningful way.  In the Dominion/Fox case, the Delaware Court found that 24-hour periods with similar personal information redactions struck the right balance.  *See* Ex. 18 (July 28, 2022 *Fox* Order).

Defendants, on the other hand, insist that a party is only required to produce "responsive, relevant, nonprivileged and nonprotected portions" of the 24-hour period communication.  In other words, Defendants propose that parties be permitted to redact any information within the text thread they deem irrelevant.  This should not be allowed.

Because the scope of permissible discovery and standard for relevance under Rule 26 are broad, "unilateral redactions are inappropriate if they seek not to protect sensitive or protected information, but merely to keep non-responsive information out of an adversary's hands."  *United States v. McGraw-Hill Companies, Inc.*, No. CV 13-0779-DOC (JCGx), 2014 WL 8662657, at *4 (C.D. Cal. Sept. 25, 2014).  And courts routinely reject parties' attempts to withhold portions of responsive documents just because those portions are nonresponsive or irrelevant.

For example, in *Burris v. Versa Products, Inc.*, the district court ordered a responding party to remove redactions they had applied based on non-responsiveness, finding the party had no legal basis for applying the redactions under Rule 26.  *See* No. 07–3938 (JRT/JJK), 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013) ("because these types of redactions find no support in the Rules and are fraught with the potential for abuse, the Court will not permit them unless the circumstances provide an exceedingly persuasive justification to do so").  *See also Samsung Electronics America, Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 299 (N.D. Tex. 2017) (responding party "cannot redact nonprivileged information from any responsive document because the information is not itself responsive[]"); *U2 Home Entertainment, Inc. v. KyLin TV, Inc.*, No. 06-CV-2770 (DLI), 2008 WL 1771913, at *1, *3 (E.D.N.Y. Apr. 15, 2008) (ordering party to produce unredacted versions of "concededly discoverable" documents it had previously redacted on relevance grounds).

This rule makes even more sense in the context of text messages, where the starting point of a single text may be the entire history of the conversation, which could be months, years, what have you.  Dominion understands that going back months or years and requiring parties to review and produce all those texts is not practical and so instead is suggesting only a day.

Moreover, permitting the parties to pick, choose, and produce only those portions of a document they believe are relevant and responsive is not only inconsistent with the Federal Rules, but it also creates a situation where the parties will have no way to check each other's work, as parties are not required to log redactions for relevance.  At minimum, the proposal breeds suspicion amongst the parties that would potentially prompt further discovery disputes.

There is simply no reason why parties should need to redact non-privileged materials other than the types outlined in Dominion's proposal.  Between those permitted redactions and restrictions imposed by the Protective Order governing the disclosure of discovery materials in these cases, the parties' privacy interests are sufficiently guarded.  The Court should adopt Dominion's proposed provisions related to text messages and other non-email electronic communications.

## CONCLUSION

In conclusion, Dominion's proposal is focused on the end goal: the orderly and expeditious advancement and development of its cases through discovery to trial.  Therefore, and for the foregoing reasons, Dominion respectfully submits that the Court should enter Dominion's proposed Order Regarding Discovery Matters.


Dated:  October 20, 2023                              Respectfully submitted,

                                                     _/s/ Laranda Walker_____
                                                     Laranda Walker (D.C. Bar No. TX0028)
                                                     Mary K. Sammons (D.C. Bar No. TX0030)

Jonathan Ross (D.C. Bar No. TX0027)
Elizabeth Hadaway (*Admitted pro hac vice*
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
jross@susmangodfrey.com
ehadaway@susmangodfrey.com

Stephen Shackelford, Jr.
(D.C. Bar No. NY0443)
Eve Levin (D.C. Bar No. 1672808)
Mark Hatch-Miller (*Admitted pro hac vice*)
Christina Dieckmann (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Fl. New
York, NY 10019
Tel: (212) 336-8330
sshackelford@susmangodfrey.com
elevin@susmangodfrey.com
mhatch-miller@susmangodfrey.com
cdieckmann@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
dbrook@susmangodfrey.com

Edgar Sargent (*Admitted pro hac vice*)
Katherine Peaslee (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com
kpeaslee@susmangodfrey.com

Thomas A. Clare, P.C.
(D.C. Bar No. 461964)
**CLARE LOCKE LLP**
10 Prince Street

Alexandria, VA 22314
Tel: (202) 628-7400
tom@clarelocke.com

*Attorneys for Plaintiffs/Counter-Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of October, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

_/s/ Elizabeth Hadaway_
Elizabeth Hadaway