# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>SIDNEY POWELL, et al.,<br><br>*Defendants*. | Civil Action No. 1:21-cv-00040 (CJN) |
| US DOMINION, INC., et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUDOLPH W. GIULIANI,<br><br>*Defendant*. | Civil Action No. 1:21-cv-00213 (CJN) |
| US DOMINION, INC., et al.,<br><br>*Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>MY PILLOW, INC., et al.,<br><br>*Defendants/Counter-Plaintiffs, and Third-Party Plaintiffs*,<br><br>v.<br><br>SMARTMATIC USA CORP., et al.,<br><br>*Third-Party Defendants*. | Civil Action No. 1:21-cv-00445 (CJN) |

1

| | |
|---|---|
| US DOMINION, INC., et al., <br><br>*Plaintiffs*, <br><br>v. <br><br>PATRICK BYRNE, <br><br>*Defendant*. | Civil Action No. 1:21-cv-02131 (CJN) |
| US DOMINION, INC., et al., <br><br>*Plaintiffs/Counter-Defendants*, <br><br>v. <br><br>HERRING NETWORKS, INC., et al., <br><br>*Defendants/Counter-Plaintiffs*, *and* <br>*Third-Party Plaintiffs*, <br><br>v. <br><br>AT&T SERVICES., et al., <br><br>*Third-Party Defendants*. | Civil Action No. 1:21-cv-02130 (CJN) |

## ORDER REGARDING DISCOVERY MATTERS

On September 21, 2023, the Court directed the parties in the above-captioned cases to meet and confer to propose a discovery protocol for the handling of electronic discovery and certain other discovery matters.[1] An agreed order was to be submitted for the Court's approval, or the

---

[1] Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation ("Dominion"), and Defendants Sidney Powell, Sidney Powell, P.C., Defending the Republic, Inc., Rudolph W. Giuliani, Michael J. Lindell, My Pillow, Inc., Patrick Byrne, Herring Networks, Inc. d/b/a One America News Network, Charles Herring, Robert Herring, Sr., Chanel Rion, and Christina Bobb ("Defendants"), who are voluntarily coordinating or whose cases are coordinated solely for purposes of discovery (herein "the litigation"), are collectively referred

2

parties were to submit any remaining disputes to the Court for resolution. The parties could not agree on all the provisions and have submitted their dispute for resolution. Upon consideration of their submissions, it is hereby **ORDERED** as follows:

1. **Protocol for Production of Electronically Stored Information and Paper Documents**

By agreement of the parties, electronically stored information ("ESI") and hard copy paper documents (which may be scanned and produced) shall be produced in accordance with the applicable provisions of the Federal Rules of Civil Procedure and the protocol attached hereto as **Exhibit 1**, with certain exceptions that may be separately negotiated. This protocol governs the production of all documents and information by the parties in these cases, including both custodial and noncustodial documents and information.

2. **Stipulation Regarding Expert Discovery**

By agreement of the parties, expert discovery shall be conducted in accordance with the applicable provisions of the Federal Rules of Civil Procedure, subject to the stipulation attached hereto as **Exhibit 2**. This stipulation applies to all testifying experts designated by the parties in these cases, including both affirmative and rebuttal experts.

3. **Determining Locations of Responsive Custodial Documents**

    (a) **List of Custodians**

The parties have identified certain individuals who at least one party expects to have generated or maintained discoverable information—whether ESI or in paper form. These individuals are identified in the list of custodians attached as **Exhibit 3**, along with a specific party. The inclusion of a custodian in this list does not necessarily mean that that the identified party has

---

herein as "the parties." This Order does not cover any Third-Party Defendant in the captioned cases.

possession, custody, or control of documents for the individual. Nor does it mean that the identified party will conduct a custodian interview of the individual or produce his or her documents, or that a party agrees the individual is likely to have generated or maintained discoverable information. The parties nonetheless agree to reasonably attempt to include said individuals as part of their preservation, collection, and search efforts for likely discoverable information, as appropriate and as possible. Each party reserves the right to seek discovery from other custodians or other sources as discovery develops.

      **(b)**     **Custodian Interview Process**

To the extent such interviews have not already been conducted, parties will interview custodians to determine sources where the custodian may have discoverable information, as that term is understood by FRCP 26(b)(1). The parties agree to conduct custodian interviews of individuals associated with them in the list of custodians at **Exhibit 3** who are available for interview by the party (which at minimum includes all current employees). In every interview, the party will ask each custodian questions calculated to determine the custodian's knowledge of the likely location of any information relevant to the claims and defenses in the particular case or cases to which it is a party. In the interviews, the parties will specifically ask (1) whether the custodian communicated with anyone about the topics in **Exhibit 4** on any application, otherwise known as "Apps," including those identified in **Exhibit 5,** that the person regularly used to communicate during the time period identified in Section 6 concerning non-email electronic communications; and (2) where the custodian may have stored non-email custodial documents or information relevant to the litigation that would not be duplicated in the party's own documents.

The parties shall complete their respective custodian interviews no later than 21 days after entry of this Order and shall confirm in writing to all parties that the interviews have been completed.

  **(c)**   **Searches Based on Custodian Interviews**

Absent agreement, the parties shall search the Apps identified by the custodian identified in response to (b)(1) for communications the topics described in **Exhibit 4**. The parties shall also search any locations identified in response to (b)(2) above for any documents related to the litigation.

  **4.**   **Search Methodology**

A producing party shall disclose to the requesting party the method it intends to use to locate and produce responsive ESI. Such disclosure shall occur before the producing party implements its intended method, so that the parties can resolve any disputes regarding the adequacy of the search methodology in advance.

The producing party may locate the potentially responsive ESI using a linear (manual) review; search terms, custodians, and time periods; or any other method reasonably expected to identify the ESI that is responsive to pending discovery requests. No party is using Technology Assisted Review ("TAR").

As of the date of this Order, some of the parties have exchanged search terms for the producing party's use. **Exhibit 6** contains agreed search terms for:

- My Pillow / Lindell
- Powell / Powell P.C.
- Giuliani
- Byrne
- Dominion (for terms requested by My Pillow / Lindell)[2]

---

[2] Giuliani, Powell / Powell P.C., and DTR have not proposed any search terms for Dominion to use. OAN and Dominion remain in negotiations about OAN's proposed search terms for Dominion.

Where responsive documents are to be located using search terms, the parties shall try to reach agreement on the appropriate terms and bring any disagreements to the Court for resolution. If search terms are not used, the producing party shall confirm to the requesting party the search methodology used to locate responsive ESI.

Both parties reserve their rights to seek additional search terms as discovery continues and to seek relief or modification of search terms or other search methodology as they deem necessary.

**5.     Hit Reports**

Upon request, any party will produce a report of the total number of document hits that result from applying each search term requested by a party to the custodial documents of the applicable custodian for the specified time period, regardless of whether the search term or custodian is agreed. The report shall provide unique hit counts for documents on which a term hits and, separately, for those documents plus family members.

**6.     Time Periods for Document Production**

Unless otherwise agreed by the parties or ordered by the Court, the following time periods for the production of communications and documents apply:

- Custodial e-mails and documents: **January 1, 2020 to December 31, 2021**
- Non-email electronic communications: **September 1, 2020 to April 30, 2021***
    - *The time period for document production of non-email electronic communications for OAN and Byrne is **September 1, 2020 to August 31, 2021**
- Noncustodial documents: **January 1, 2020 to December 31, 2021** or as otherwise stated in discovery responses or agreed through the meet and confer process.

The parties are free to work with each other on a case-by-case basis to reach agreement on additional or modified time periods.

7. **Unique Terms Concerning the Review and Production of Custodial Text Messages and Other Non-Email Electronic Communications**

With respect to custodial text messages and other non-email electronic communications, including but not limited to those sent via instant messenger services, or third-party or other ephemeral messaging Apps that are to be searched according to custodian interview responses, the following terms shall apply:

(i) Search terms shall be run across the entire agreed time period identified above for each applicable custodian. For any day that hits on a search term, the conversation shall be produced in full for a 24-hour day, meaning between 12:00 am to 11:59 pm on the day that the search term appears, subject only to the following exceptions:

   (a) The parties may review each resulting 24-hour time period for privilege, but any message withheld in whole or in part due to privilege shall be logged in a timely fashion;

   (b) The parties may review communications for relevance and responsiveness, and if the entire 24-hour time period thread is nonresponsive and irrelevant, the party is not obligated to produce the thread, but in no circumstances may a party redact for relevance or responsiveness if any part of the 24-hour time period thread is responsive and relevant, except as set forth in Section 7(i)(c) below;

   (c) The parties may redact unresponsive information that falls into the following categories: (1) personal medical/health information; (2) personal financial information, other than compensation; (3) personal marital, sexual, romantic relationship, or identity/orientation information; (4) personal familial information unrelated to the 2020 Presidential Election or

7

issues in dispute in these cases, such as unresponsive conversations with spouses or minor children about private family affairs; and (5) personal religious affiliation information. For the avoidance of doubt, this exception does not include or allow for the redaction of any search term as it appears in the message, for any reason, including one or more of these five exceptions. Any communication redacted based on these categories should be included in a privacy log that includes the basis of the redaction;

(d)     The time period for custodial text messages and other non-email electronic communications is set forth above in Section 6; and

(e)     Where necessary, the parties shall work together in good faith to provide additional context for a conversation in a text chain that appears over multiple days. The parties shall likewise work together in good faith to identify any text message threads that should be reviewed without exclusive reliance on search terms.

**8.     Production and Timing**

(a)     **Organizing Documents and ESI for Production**

A party's production must comply with FRCP 34(b)(2)(E), meaning a producing party must produce responsive documents and ESI as they are kept in the usual course of business or must organize and label them to correspond to the categories in the requesting party's pending discovery requests. ESI is considered to be produced in the manner in which it is kept in the usual course of business when the ESI contains or is accompanied by original file path metadata.

(b)     **Rolling Productions**

The parties agree to cooperate with respect to a producing party's request for additional time to produce documents in response to discovery requests and specifically agree that rolling

8

productions are in all parties' best interests.  To help save time and cost of related productions, the parties agree that a requesting party may identify a subset of discovery requests that it wishes the producing party to prioritize, and the producing party agrees to make reasonable efforts to focus its production efforts on those higher priority issues first.

      **(c)**      **Supplemental Productions**

The parties shall supplement discovery responses as required by FRCP 26(e).

      **(d)**      **Interim Date for Substantial Completion of Document Production**

By no later than December 1, 2023, the parties will substantially complete their production of all responsive documents or ESI to any document requests pending at the time of entry of this Order, for which all objections have been resolved by agreement of the parties or the Court, including responsive documents or ESI from custodial or noncustodial sources.  The parties further agree that documents withheld by a party as privileged or protected by this interim substantial completion date will be logged and a privilege log containing the documents served no later than December 29, 2023.

**9.**      **Privilege Log**

The parties agree to serve a privilege log identifying all documents, including communications by text message or other Apps, that the producing party either redacted or withheld from the production due to attorney-client privileged or work product protected content or any other privilege.  Deadlines for supplemental or amended privilege logs will be agreed upon by the parties.  The parties also agree to the provisions set forth in **Exhibit 1** governing the content and production of privilege logs.

**10.**      **Corporate Party 30(b)(6) Depositions**

To facilitate early resolution of discovery and document production issues, the corporate parties, upon request, will designate a deponent for a 30(b)(6) deposition on discovery and

document search and production issues, such as the locations of custodial and noncustodial documents and the searches conducted (including search terms and/or manual review) to respond to document requests served on that party, without prejudice to the parties' rights to take any additional deposition(s) on other 30(b)(6) topics later.

11.     **Relief from and Modifications of this Order**

Any party may obtain relief from any portion of this Order through the written consent of the affected parties to this litigation or through a subsequent court order.  A party may not seek relief from the Court unless that party has conferred in good faith with the opposing party.  When conferring about a proposed modification of this Order, the parties shall act consistent with the FRCP 1 mandate to seek the just, speedy, and inexpensive determination of litigation, as well as guiding controlling principles of the Federal Rules.

*     *     *

**IT IS SO ORDERED**.

Date:                                                          _____
                                                                       CARL J. NICHOLS
                                                                       United States District Court Judge