# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 1:21-cv-02131-CJN |
| ) | |
| PATRICK BYRNE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT PATRICK BYRNE'S**
**FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFFS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and applicable local rules, Defendant Patrick Byrne ("Byrne"), by counsel, hereby requests that Plaintiffs US Dominion Inc., Dominion Voting Systems Inc., and Dominion Voting Systems Corporation (collectively, "Plaintiffs") produce for inspection and copying the documents and things requested herein in accordance with all applicable rules and the Instructions and Definitions set forth below, within 30 days of their service upon Plaintiffs.

**INSTRUCTIONS**

These requests for production are subject to the following instructions.

A. These requests call for the production of all responsive documents, information, or objects that are in your possession, custody or control, whether held by you or your past or present agent, employee, or representative acting on your behalf. These requests for production also call for all responsive documents, information, or objects that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents, information, or objects that you have placed in the temporary possession, custody, or control of any third party.

B. These requests are continuing in nature. Any document not produced because it has not been located or discovered by the return date shall be provided immediately upon location or discovery subsequent thereto, as Plaintiffs' response to these requests must be promptly supplemented in accordance with Federal Rule of Civil Procedure 26(e) and applicable local rules.

1

C. No documents or information requested herein should be destroyed, modified, removed, transferred, or otherwise made inaccessible. If you have knowledge that any document or information requested herein has been destroyed, discarded, or lost, please identify the document or information requested and provide an explanation of the destruction, discarding, loss, or disposal, and the date at which the document or information was destroyed, discarded, or lost.

D. All responsive documents and information are to be produced as they are kept in the usual course of business, including any labels, file markings, or similar identifying features, or shall be organized and labeled to correspond to the categories of documents requested herein.

E. If there are no documents or information in response to a particular request, please state so in writing. If you withhold any responsive documents or information or categories of documents or information based on any objection or claim of protection, please state so in writing.

F. If your response is that any document was but no longer is in your possession, custody or control, please include a statement (1) identifying the document; (2) describing where the document is now; (3) identifying who has control of the document; (4) describing how the document became lost or destroyed or was transferred; and (5) identifying each of those persons responsible for or having knowledge of the loss, destruction, or transfer of the document from your possession, custody, or control.

G. Each request contemplates production of all documents in their entirety. If only a portion of a document is responsive to one or more requests, the document shall be produced in its entirety.

H. Examples of responsive items set out in any request should not be construed to limit the scope of the request.

I. If you object to any document request on any ground other than privilege, you must specify: (1) the part of the request that is objectionable and respond and allow inspection of materials responsive to the remainder of the request; and (2) whether any responsive materials are being withheld on the basis of an objection.

J. To the extent you assert that a document contains information that should be protected from disclosure (based on the attorney-client privilege, work product doctrine, or another protection) and non-privileged information, the non-privileged portions of the document must be produced. For each such document, indicate the portion of the document withheld by stamping the words "REDACTED" on the document in an appropriate location that does not obscure the remaining text.

K. If you consider any responsive document to be protected by a privilege, please provide a privilege log that includes: (1) the reason for withholding the document; (2) a statement of the basis for the claim of privilege, work product or other

ground of nondisclosure; and (3) a brief description of the document, including: (a) the date of the document; (b) number of pages, attachments, and appendices; (c) the names of its author, authors or preparers and an identification by employment and title of each such person; (d) the name of each person who was sent, shown or blind or carbon copied the document, or has had access to or custody of the document, together with an identification of each such person; (e) the present custodian; and (f) the subject matter of the document, and in the case of any document relating or referring to a meeting or conversation, identification of such meeting or conversation.

L. With respect to Electronically Stored Information ("**ESI**") protocols:

1. Records existing as ESI shall be produced in non-proprietary electronic form and shall include text data and image data held. Records that do not exist as ESI may be produced in paper or other original format, or be converted into and produced as ESI.

2. ESI must be produced in Static Images by converting native files into a standard image format capable of being viewed and printed on standard computer systems. A Static Image should be provided in either Tagged Image File Format (TIFF) or Portable Document Format (PDF). Each such image must convey all the information the document contains, disclosing all track changes, hidden content, notes, and any hidden slides, rows, or columns, subject to any redactions.

3. File types that do not convert cleanly to TIFF or PDF format—such as Microsoft Excel spreadsheets, image, audio, or video files, or any other file not suitable for production in TIFF or PDF format—must be produced in native. When producing files in native format, the native files are to be named with a unique production number assigned to the document, with the original filename to be included in the FileName metadata field.

4. If load files were created in the process of converting native files to Static Images, or if load files may be created without undue burden or cost, load files should be produced and be accompanied by all corresponding document-level extracted text and document-level metadata.

5. ESI shall be produced either on portable storage media (e.g., CD/DVD or a flash drive), or by an electronic file transfer site. ESI may be transmitted in an encrypted container. Decryption keys and/or passwords should be produced separately at the time the data are produced. Please do *not* encrypt individual file contents if the container is encrypted.

6. Production sets should be produced with Bates numbers endorsed on all pages in the bottom right of the page, without obscuring any portion of the original file.

7. Non-responsive family members must be produced together with responsive family members.

8. In instances where you assert a privilege with respect to a subset of documents within a family of documents, please replace any subset of privileged documents with a Bates-numbered slipsheet stating "Document Withheld as Privileged" and log such document on your privilege log.

9. For further discussion or clarification on ESI protocols, please contact the undersigned.

## DEFINITIONS

A. Unless otherwise stated herein, these requests seek the production of documents, records, objects, or information created, modified, or in any way related to the period from January 1, 2018 to present.

B. "**2020 presidential election**" shall mean the U.S. Presidential Election that occurred on November 3, 2020 and all voting by any means (including in-person, or mail-in voting) for that election.

C. The word "**action**" refers to the instant case captioned *US Dominion Inc., et al. v. Patrick Byrne*, pending before the US District Court for the District of Columbia as Case No. 1:21-cv-02131-CJN.

D. The words "**and**" and "**or**" shall mean shall be construed disjunctively or conjunctively to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

E. The word "**any**" shall be construed to include "**all**" and vice versa.

F. "**Byrne**" refers to Defendant Patrick Byrne.

G. "**Communication**" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including without limitation, written, oral, or electronic transmissions.

H. The term "**Complaint**" refers to the original and any amended complaint or petition filed by Plaintiffs in this action.

I. "**Concerning**" shall mean referring, relating to, discussing, describing, depicting, reflecting, regarding, containing, analyzing, studying, reporting, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

J. The term "**document**" shall be given the broadest interpretation permitted, and it shall mean all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on

4

|   |   |
|---|---|
|   | such copies or otherwise, including without limitation correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, certificates, drawings, plans, interoffice and intra-office communications, or offers, notations in any form made of conversations, telephone calls, meetings or other communications; bulletins, printed matter (including newspapers, magazines and other publications, and articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, invoices, ledgers, worksheets (and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation photographs, charts, graphs, and microfiche, microfilm, videotape, or film recordings) and electronic, mechanical or electrical records or representations of any kind (including without limitation tapes, cassettes, discs, recordings), or transcriptions thereof. Documents also include, but are not limited to, electronic mail or email, text messages, facsimiles, instant messages (IMs), calendars, diaries, appointment books, agendas, journals, drafts, voicemail messages, post cards, post-it notes, reports, logs, message slips, invoices, checks, paystubs, letters, memoranda, agreements, contracts, tax returns, bank statements, video recordings, audio recordings, computer programs, printouts, and all other written, graphic, or electronic materials of any nature whatsoever. A draft or non-identical copy of a document is a separate document within the meaning of this term. Any copy containing thereon or having attached thereto any alterations, notes, comments or other written material not included in the originals or copies referred to in the preceding sentence shall be deemed a separate document within the foregoing definition. A document includes all appendices, schedules, exhibits, and other attachments. |
| K. | "**Dominion**" refers to each or any of the following named entities in this suit: US Dominion Inc., Dominion Voting Systems Inc., and/or Dominion Voting Systems Corporation, as well as any officers, directors, partners, employees, attorneys, accountants, representatives, or agents acting on behalf of these entities, and/or all others who have purported to act on their behalf or obtained information on their behalf. |
| L. | "**Donald Trump**" means and refers to the 45th President of the United States. |
| M. | The word "**each**" shall be construed to include "**every**" and vice versa. |
| N. | "**Fox Corp.**" means and refers to Fox Corporation, and its past or present subsidiaries, affiliates, attorneys, agents, representatives, officers, directors, employees, or other persons acting on its behalf, including any regional affiliates or contributors, whether paid or unpaid. |
| O. | "**Fox News**" means and refers to Fox News Network, LLC, and its past or present subsidiaries, affiliates, attorneys, agents, representatives, officers, directors, employees, or other persons acting on its behalf, including any regional affiliates or contributors, whether paid or unpaid, and including the Fox News Channel, the |

    Fox Business Channel, Fox News Radio, Fox News Digital, which includes the fox.com, foxnews.com, and foxbusiness.com websites, Fox's social media accounts, and Fox's digital subscription services, including but not limited to Fox Nation.

P. To "**identify**" means the following.

1. To identify, when used in reference to a person, means to state: (a) a person's name; (b) the person's present or last known address and telephone number; (c) if a business, governmental entity, or association, the nature of the organization; and (d) if an individual, the person's place of employment and position.

2. To identify, when used in reference to a document, means to specify the document in sufficient detail to permit the undersigned to locate, identify and retrieve the record, which may include, but is not necessarily limited to, stating: (a) its date, or if it bears no date, the date when it was prepared; (b) the name and address of the person or persons who prepared it; and (c) the present location of the document and the name, address, and telephone number of its custodian.

3. To identify, with respect to communications, means to give, to the extent known, (a) a description of the substance of the communication; (b) the form of the communication (e.g., telephone, facsimile, email, text message, etc.); (c) the identity of all parties to and/or present at the time of the communication, as well as the full name, present or last known address, and the current or last known place of employment of each person; (d) the identity of the person whom you contend initiated the communication; and (e) the time, date, and place of the communication.

Q. The term "**including**" shall mean "including, but not limited to."

R. "**Other News Organization**" means and refers to other news organizations, whether print, radio, online, or television, including but not limited to the ABC News, NBC News, Newsmax, One America News Network, New York Times, Wall Street Journal, Washington Post, and any and all news organizations or publications referenced in the Complaint.

S. The term "**person**" where used herein includes human beings, corporations, limited liability companies, partnerships, associations, joint ventures, government agencies (federal, state, or local), or any other organization cognizable at law; and where an employee, contractor, or worker performs some task about which an inquiry is made in these discovery requests, as part of his or her employment or work, "person(s)" includes both the employing and employed person(s).

T. To "**state**" or "**describe**" means to set forth all facts discoverable under Federal Rule of Civil Procedure 26 that are known to Plaintiffs. When you are requested

6

to describe or to explain something, please state all relevant circumstances, including identification of persons and dates.

U. **"Trump Administration"** means and refers to Donald Trump, and/or any of his agents, staff members, appointees, employees, members of the cabinet, or officials within any executive department or agency, including but not limited to advisors, attorneys, and family members.

V. **"Trump Campaign"** means and refers to the entity Donald Trump for President Inc. and any individual who you understood to be speaking on behalf of the campaign to re-elect Donald Trump to a second term as President of the United States, and/or any of its agents, staff members, employees, advisors, or attorneys at or during the time period referenced in any individual requests, including but not limited to Jared Kushner, Ivanka Trump, Bill Stepien, Jason Miller, Stephen Miller, Justin Clark, Matt Morgan, Donald Trump Jr., Eric Trump, Lara Trump, Kimberly Guilfoyle, Katrina Pierson, Boris Epshteyn, Michael Roman, Kayleigh McEnany, Gary Michael Brown, and Katherine Friess.

W. The pronouns "**you**," "**your**," "**yours**," or "**yourself**" and the like, refers to Plaintiffs US Dominion Inc., Dominion Voting Systems Inc., and/or Dominion Voting Systems Corporation. You and the like also refer to others acting on your behalf.

X. Any word in the singular form shall also be construed as plural and vice versa.

Y. The masculine form shall also be construed to include the feminine and vice versa.

## REQUESTS FOR PRODUCTION

1. All documents referred to, responsive to, identified in, or relied upon in preparing your answers to Byrne's First Set of Interrogatories to Plaintiffs, or any other discovery request issued in this action to Plaintiffs. There is no time limit on this request.

2. All documents and communications produced in response to any subpoena, discovery request, public information request, lawsuit, arbitration, or other proceeding concerning Byrne. There is no time limit on this request.

3. All documents you intend to introduce or rely on at any hearing or trial of this action. There is no time limit on this request.

7

4. All documents and communications concerning Byrne. There is no time limit on this request.

5. All documents and communications concerning The America Project, Inc. There is no time limit on this request.

6. All documents and communications concerning the six-part blog series *How DJT Lost the White House*, available on the website called DeepCapture.com.

7. All documents and communications concerning the book titled *The Deep Rig: How Election Fraud Cost Donald J. Trump the White House, By a Man Who did not Vote for Him* (2021).

8. All documents and communications concerning the documentary film titled *The Deep Rig* (2021).

9. All documents related to, or referenced in, the claims, allegations, or defenses set forth in the pleadings, or pre-answer motion to dismiss briefing. This request includes, but is not limited to, all documents, communications, and things that concern the truth or falsity of any statement you contend Byrne made about Dominion. This request also includes, but is not limited to, all documents, communications, and things to support your contention that Byrne made his statements about Dominion with actual malice because he (a) published claims that are so inherently improbable that only a reckless person could have believed them; (b) relied on facially unreliable sources; (c) deliberately ignored widely available evidence that contradicted his statements; (d) fabricated evidence to support a preconceived narrative about election fraud; and (e) stood to financially benefit from his statements about Dominion. There is no time limit on this request.

10. All reports, memoranda, notes, or other documents prepared or reviewed by any expert witness identified by you in this action. There is no time limit on this request.

11. All documents relied upon in reaching any opinion by any expert witness identified by you in this action. There is no time limit on this request.

12. All engagement letters or agreements between you and any of the experts, consultants, or advisors you propose or contemplate calling as an expert witness in this action.

13. All documents, written discovery responses, or document productions you or your counsel have sent to Fox News in response to any interrogatory, request for production, or request for admission propounded on Dominion by Fox News in the litigation styled *US Dominion, Inc. et al. v. Fox News Network, LLC*, commenced in the Delaware Superior Court in New Castle County as Case Number N21C-03-257.

14. All documents, written discovery responses, or document productions you or your counsel have sent to Fox News in response to any interrogatory, request for production, or request for admission propounded on Dominion by Fox News in the litigation styled *US Dominion, Inc. et al. v. Fox Corporation et al.*, commenced in the Delaware Superior Court in New Castle County as Case Number N21C-11-082.

15. All documents reflecting communications between and among you and Donald Trump, the Trump Administration, or the Trump Campaign, regarding Dominion, election fraud, or the 2020 presidential election.

16. All documents reflecting communications between and among you and Rudolph Giuliani, regarding Dominion, election fraud, or the 2020 presidential election.

17. All documents reflecting communications between and among you and Sidney Powell or Sidney Powell P.C., regarding Dominion, election fraud, or the 2020 presidential election.

18. All documents reflecting communications between and among you and Mike Lindell, regarding Dominion, election fraud, or the 2020 presidential election.

19. All documents reflecting communications between and among you and Fox News, Fox Corp. or any Other News Organization, regarding Dominion, election fraud, or the 2020 presidential election.

20. All internal documents or communications concerning Dominion's assessment, analysis, or opinion on the impact, severity, significance, injuries, reputational harm, or damages caused by any allegedly false or defamatory statement about Dominion, election fraud, or the 2020 presidential election that was made or published by any party who is not Byrne.

21. All documents and communications concerning or relating in any way to Dominion CEO John Poulos's testimony before Congress on January 9, 2020.

22. All documents and communications concerning the results of any testing of Dominion machines or Dominion software by Idaho National Labs, industry group professionals, hackers, the Department of Homeland Security, or other federal, state, or local government partners to evaluate vulnerabilities in Dominion machines or Dominion software, from January 1, 2018 to present.

23. All documents and communications concerning the alleged anomalies, errors, or the fluctuating vote totals in the Antrim County, Michigan results in the 2020 presidential election.

24. All documents and communications concerning the Georgia election security reports on the cybersecurity vulnerabilities of Dominion machines or Dominion software in Georgia, prepared by University of Michigan professor J. Alex Halderman and Auburn University assistant professor Springall. There is no time limit on this request.

25. All documents and communications concerning the Georgia election security reports on the cybersecurity vulnerabilities of Dominion machines or Dominion software in Georgia, prepared by the research nonprofit MITRE. There is no time limit on this request.

26. All documents or information concerning the "small number of subcomponents" that "are sourced from China" for Dominion voting machines, as alleged in paragraph 99 of the Complaint.

27. All documents or information concerning the country of origin of all component or subcomponent parts for Dominion voting machines.

28. All documents or information concerning or relating in any way to the Texas Secretary of State's refusal to certify Dominion's voting machine system in the State of Texas.

29. All documents or information concerning or substantiating your contention that Byrne "wrote [or] directed" the documentary film titled *The Deep Rig*, as alleged paragraph 153(r) of the Complaint.

30. All documents concerning evidence that Byrne "actually knew" his statements about Dominion were false, as alleged in paragraph 154 of the Complaint.

31. All documents concerning evidence that Byrne "recklessly disregarded" the falsity of his statements about Dominion, as alleged in paragraph 154 of the Complaint.

32. To the extent they have not been produced already, all publicly available records or information that you contend was available to and considered by Byrne prior to the

publication of any of his alleged defamatory statements in paragraph 153 of the Complaint. This request includes official government statements and findings, court rulings, retractions or public apologies from other sources that had previously published claims about Dominion that are similar to any of the alleged statements made by Byrne.

33. To the extent they have not been produced already, all documents concerning or substantiating your contention that Byrne disregarded reliable information that was available to and considered by Byrne prior to the publication of any of his alleged defamatory statements in paragraph 153 of the Complaint.

34. To the extent they have not been produced already, all documents concerning or substantiating your contention that Byrne made inherently improbable claims, as alleged in the pleadings.

35. To the extent they have not been produced already, all documents concerning or substantiating your contention that Byrne relied on obviously unreliable sources or sham evidence, as alleged in the pleadings.

36. To the extent they have not been produced already, all documents concerning or substantiating your contention that Byrne had a financial motive to make false statements about Dominion, as alleged in the pleadings.

37. To the extent they have not been produced already, all documents concerning or substantiating your contention that Byrne had or committed to a preconceived narrative to make false statements about Dominion, as alleged in the pleadings.

38. All documents concerning or substantiating your contention that Byrne hired Russell Ramsland, as alleged in the Complaint and argued in Dominion's briefing (at 15-16) in opposition to Byrne's motion to dismiss.

39. All documents concerning or substantiating your contention that Byrne hired Doug Logan, as alleged in the Complaint and argued in Dominion's briefing (at 16-17) in opposition to Byrne's motion to dismiss.

40. All documents concerning or substantiating your claim that "conservative projections show lost profits from existing customers of over $463 million and from potential new customers of over $68 million" as a result of Byrne's statements, as alleged in paragraph 151 of the Complaint.

41. All documents concerning or substantiating your claim that Byrne's statements "decimated Dominion's goodwill and destroyed the enterprise value of a business that has worth potentially more than $1 billion (based on updated EBITDA and multipliers of comparable companies) before the viral disinformation campaign," as alleged in paragraph 151 of the Complaint.

42. To the extent they have not been produced already, all documents concerning the loss of goodwill, loss of profits, or irreparable damage alleged in paragraph 162 of the Complaint.

43. To the extent they have not been produced already, all documents sufficient to establish Dominion's sales and revenue by product or service for the past 10 years, beginning January 1, 2012 to present.

44. To the extent they have not been produced already, all documents sufficient to establish the forecasts, estimates, or future projections of sales and revenue for calendar years 2020, 2021, 2022, 2023, 2024, and 2025, whenever such forecasts, estimates, or future projections may have been created, or any other forecast, estimate, or projection relied upon by you to support your damages claims.

45. All documents and communications concerning how Dominion, or any of its public relations firms, including but not limited to Hamilton Place Strategies, perceived the alleged defamatory statements of Byrne about Dominion.

46. All documents and communications concerning how Dominion, or any of its public relations firms, including but not limited to Hamilton Place Strategies, perceived the alleged defamatory statements of Fox News, Fox Corp., or any Other News Organization about Dominion. This response should include, not at the exclusion of all else, any documents or communications concerning or addressing the Louisiana radio host Jeff Crouere's statement "Tell Kyle we don't want a Dominion voting machine lawsuit here like they had in Georgia," as alleged in paragraph 141 of the Complaint.

47. All documents and communications concerning how Dominion, or any of its public relations firms, including but not limited to Hamilton Place Strategies, perceived the alleged defamatory statements of Sydney Powell, Rudy Giuliani, or Mike Lindell about Dominion.

48. Copies of the "death threats and calls for jail time" referenced in paragraph 127 of the Complaint.

49. Copies of the text messages referenced in paragraph 131 of the Complaint.

50. Copies of the voicemail messages left on Dominion's customer support and main office lines referenced in paragraphs 132 and 134 of the Complaint.

51. Copies of any and all threats, including the "numerous others" referenced in paragraph 135 of the Complaint.

52. All documents concerning or substantiating your claim that Dominion "has spent more than $600,000 on private security for the protection of its people," as a result of Byrne's statements as alleged in paragraph 135 of the Complaint.

53. All documents concerning or substantiating your claim that Dominion "has been forced to make significant expenditures in an attempt to mitigate the harm to its business [, including by] . . . incur[ing] expenses of more than $700,000" to date, as a result of Byrne's statements as alleged in paragraph 136 of the Complaint.

54. Copies of the multi-year contracts with state and local governments alleged in paragraph 137 of the Complaint.

55. All documents concerning or substantiating your claim that "elected officials who are Dominion's actual and potential customers have received emails, letters, and calls from their constituents demanding that they cease and avoid contracting with Dominion or using Dominion machines" as alleged in paragraph 138 of the Complaint.

56. All documents concerning or substantiating your claim that "state legislators in various states in which Dominion has contracts—including California, Colorado, Florida, Michigan, Ohio and Pennsylvania—are reviewing or have stated their intent to review and reassess those contracts. They have done so because of pressure from constituents and donors as a direct result of the lies peddled by Byrne and his collaborators," as alleged in paragraph 139 of the Complaint.

57. Copies of the "Intent to Award Letter" and "Notice of Cancellation" alleged in paragraph 140 of the Complaint, together with all documents or communications concerning the same, including but not limited to, any replies, forwards, internal or external discussion or communications about such "Intent to Award Letter" or "Notice of Cancellation." This request

includes any and all documents or communications substantiating your claim that the "cancellation was due to the lies about Dominion," as alleged in paragraph 141 of the Complaint.

58. All documents and communications concerning or substantiating your claim that "Trump supporters in Louisiana have called 'to block Louisiana's current voting machine vendor, Dominion Voting Systems, from participating in an open bid process for the new multimillion-dollar contract' because they 'blame' Dominion 'for Trump's loss in key swing states'," as alleged in paragraph 141 of the Complaint.

59. All documents and communications concerning or substantiating your claim that "Dominion has not received numerous contracts as a result of the lies spread by Byrne," as alleged in paragraph 142 of the Complaint.

60. All documents and communications concerning or substantiating your claim that "Election officials have even told Dominion that Dominion is losing business because of the Dominion name," as alleged in paragraph 142 of the Complaint, together with all documents or communications concerning the same, including but not limited to, any replies, forwards, internal or external discussion or communications about the same.

61. All documents and communications concerning or substantiating your claim that "Even many rational elections administrators who reject the lies are unwilling to deal with the political blowback from many of their constituents," as alleged in paragraph 142 of the Complaint.

62. Copy of the email from "one official [who] wrote in an email: 'I don't trust Dominion Voting Systems at all,'" as alleged in paragraph 144 of the Complaint, together with all documents or communications concerning the same, including but not limited to any replies, forwards, or discussion about said email.

63. All documents concerning or substantiating your claim that "Byrne's defamatory campaign has spurred sham audits," including all documents evidencing the "harm" caused by said audits, as alleged in paragraph 146 of the Complaint.

64. All documents concerning or substantiating your claim that "Political candidates are now running campaign platforms based on the lies that Byrne manufactures, published, and republished," caused by said audits, as alleged in paragraph 149 of the Complaint.

65. All documents concerning or substantiating your claim that "As a result of the radioactive falsehoods spread by Byrne and his allies, elected officials insurers, and potential investors have been deterred from dealing with Dominion," as alleged in paragraph 150 of the Complaint.

66. Copies of all profit and loss statements prepared by you or on your behalf for each fiscal year from 2018 through present.

67. Copies of your US federal income tax returns for years 2018, 2019, 2020, 2021, 2022, and 2023 (once available).

68. All documents evidencing or supporting any damages allegedly suffered by Dominion as a result of Byrne's alleged defamatory statements in paragraph 153 of the Complaint.

Dated: August 10, 2023          Respectfully submitted,

/s/Alfred D. Carry
Robert N. Driscoll (DC Bar #486451)
Alfred D. Carry (DC Bar #1011877)
McGlinchey Stafford PLLC
1275 Pennsylvania Avenue NW, Suite 420
Washington, DC 20004
Tel: (202) 802-9999
Fax: (202) 330-5897
rdriscoll@mcglinchey.com
acarry@mcglinchey.com

Daniel Thomas Plunkett (admitted *pro hac vice*)
McGlinchey Stafford PLLC
601 Poydras Street, Suite 1200
New Orleans, LA 70130
Tel: (504) 596-2778
Fax: (504) 910-9542
dplunkett@mcglinchey.com

*Counsel for Defendant Patrick Byrne*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 10th day of August, 2023 by email to all counsel of record at:

Jonathan J. Ross
Mary Kathryn Sammons
Laranda Walker
SUSMAN GODFREY LLP
1000 Louisiana Street, #5100
Houston, TX 77002
jross@susmangodfrey.com
ksammons@susmangodfrey.com
lwalker@susmangodfrey.com

Eve Levin
Zachary Savage
Stephen Shackelford, Jr.
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
elevin@susmangodfrey.com
zsavage@susmangodfrey.com
sshackelford@susmangodfrey.com

Davida Brook
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
dbrook@susmangodfrey.com

Thomas A. Clare
Megan L. Meier
Dustin A. Pusch
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
tom@clarelocke.com
megan@clarelocke.com
dustin@clarelocke.com

*Counsel for Plaintiffs*

/s/Alfred D. Carry
Alfred D. Carry
*Counsel for Defendant Patrick Byrne*