# Exhibit 8

| | |
|---|---|
| **From:** | Katie Sammons |
| **To:** | Andrew Parker |
| **Cc:** | Marc Casarino; Brooke Behrens; Bill Dunseth; Christopher Maldonado; Joe Pull; marc@coburngreenbaum.com; Laranda Walker; Joshua A. Mooney; Daniel S. Marvin; Michael J. Tricarico |
| **Subject:** | Re: Dominion v. Lindell/MyPillow: Response to February 10 and February 6 letters [KEN-LEGAL.FID44216805] |
| **Date:** | Saturday, March 11, 2023 1:54:13 PM |

To be clear, we are not agreeing to produce anything Lindell/My Pillow want because they want it. You have served hundreds of document requests, many of which are irrelevant to this case. And many of which are extremely overbroad. So that's the whole point on agreeing to the process—to make sure you really want/need everything you've asked for that we haven't already located (and we've located millions of documents) before we waste resources on documents that you don't want or are not appropriate in this case.

I'll respond to the rest of your email when I have a chance.

Get Outlook for iOS

**From:** Andrew Parker <Parker@parkerdk.com>
**Sent:** Saturday, March 11, 2023 1:45:10 PM
**To:** Katie Sammons <KSAMMONS@SusmanGodfrey.com>
**Cc:** Marc Casarino <Marc.Casarino@kennedyslaw.com>; Brooke Behrens <BBehrens@susmangodfrey.com>; Bill Dunseth <bdunseth@susmangodfrey.com>; Christopher Maldonado <CMaldonado@susmangodfrey.com>; Joe Pull <Pull@parkerdk.com>; marc@coburngreenbaum.com <marc@coburngreenbaum.com>; Laranda Walker <LWalker@susmangodfrey.com>; Joshua A. Mooney <Joshua.Mooney@kennedyslaw.com>; Daniel S. Marvin <Daniel.Marvin@kennedyslaw.com>; Michael J. Tricarico <Michael.Tricarico@kennedyslaw.com>
**Subject:** Re: Dominion v. Lindell/MyPillow: Response to February 10 and February 6 letters [KEN-LEGAL.FID44216805]

<mark>EXTERNAL Email</mark>

As we have said Marc's description is what joe and I have described. We have provided additional search terms needed. We expect the initial "Fox News" production to be concluded and also request our search terms to then be run and produced. We have a right to our discovery to be fully responded to. We continue to seek that. If the Powell team wishes to be on calls where we are discussing lindell MyPillow discovery we have no objection. The written communications have anlready included the Powell team.

Sent from my iPhone

> On Mar 11, 2023, at 1:18 PM, Katie Sammons <KSAMMONS@susmangodfrey.com> wrote:
>
> Thanks, Marc. it's good to know you'd like to participate and that you have the same understanding that we do. For our part, we were surprised that the Lindell/My Pillow folks were not including you on any communications, which is why we haven't. We aren't privy to any agreements you all have with each other and assumed this was the way you wanted to proceed. In any case, we will include you on all communications re discovery moving forward.

Get Outlook for iOS

---

**From:** Marc Casarino <Marc.Casarino@kennedyslaw.com>
**Sent:** Saturday, March 11, 2023 1:11:11 PM
**To:** Andrew Parker <Parker@parkerdk.com>; Katie Sammons
<KSAMMONS@SusmanGodfrey.com>; Brooke Behrens <BBehrens@susmangodfrey.com>; Bill
Dunseth <bdunseth@susmangodfrey.com>; Christopher Maldonado
<CMaldonado@susmangodfrey.com>; Joe Pull <Pull@parkerdk.com>;
marc@coburngreenbaum.com <marc@coburngreenbaum.com>
**Cc:** Laranda Walker <LWalker@susmangodfrey.com>; Joshua A. Mooney
<Joshua.Mooney@kennedyslaw.com>; Daniel S. Marvin <Daniel.Marvin@kennedyslaw.com>;
Michael J. Tricarico <Michael.Tricarico@kennedyslaw.com>
**Subject:** RE: Dominion v. Lindell/MyPillow: Response to February 10 and February 6 letters
[KEN-LEGAL.FID44216805]

EXTERNAL Email
Counsel,

Counsel for the Powell defendants has not been privy to many of the telephone conversations
that are referenced in your email communications below.  Given that our cases have been
consolidated for purposes of discovery, we would appreciate that going forward any discussions of
discovery-related matters or scheduling include us.

The Powell defendants' understood the parties to have agreed upon a rather simple process.
Dominion is to produce in our cases what it produced in the Fox News case.  The defendants will
evaluate that production.  If there are any discovery requests not fully satisfied by that
production, the defendants reserved the right to seek further production from Dominion for those
existing discovery requests.  In addition, the defendants reserved the right to serve additional
discovery upon Dominion.

It appears from the most recent email exchanges between Ms. Sammons and Mr. Parker that they
have arrived back at the process I have described.  Regardless, the Powell defendants appreciate
that Dominion has produced a subset of the Fox News production, and request that the balance of
Dominion's production be delivered as soon as possible.  Thank you.

Marc

P.S.  I note that in recent email exchanges my partner Josh Mooney's email address was
incorrect.  Kindly check that you are using his proper email address:
Joshua.Mooney@kennedyslaw.com


Marc Casarino
Partner
for Kennedys

## Kennedys
T +1 302 308 6647
M +1 302 740 0004
www.kennedyslaw.com

---

**From:** Andrew Parker <Parker@parkerdk.com>
**Sent:** Saturday, March 11, 2023 1:27 PM
**To:** Katie Sammons <KSAMMONS@SusmanGodfrey.com>; Joshua.Mooney@kennedys.com;

Marc Casarino <Marc.Casarino@kennedyslaw.com>; Brooke Behrens
<BBehrens@susmangodfrey.com>; Bill Dunseth <bdunseth@susmangodfrey.com>;
Christopher Maldonado <CMaldonado@susmangodfrey.com>; Joe Pull <Pull@parkerdk.com>;
marc@coburngreenbaum.com
**Cc:** Laranda Walker <LWalker@susmangodfrey.com>
**Subject:** RE: Dominion v. Lindell/MyPillow: Response to February 10 and February 6 letters

Hello Katie, thank you for your reply.  When you misstate our phone conversations it requires a response to correct the reference and record.  While you may disagree with what we understand occurred during our calls, we need to lay out what was said and what we understand was agreed to.  Nothing we said in our response to your statements or otherwise are false let alone "flat-out false".  You repeatedly say you do not want to go back and forth regarding what we agreed to during phone calls, but then you persist to state things that are different from what we discussed. I note that some of our disagreement is simply our reasonable misunderstanding of what you appear now to be saying but we did not understand you to be saying during our conference call.  I do not feel there is value in going through each attack you make in your email below.

Our objective is to get full and complete response to our discovery which we have had a difficult time receiving and still do not have.  Thank you for providing a part of your discovery from your client's Fox News case.  We now want to be sure we have full and complete responses to the discovery in our case.  We will work with you toward that objective.

As for the substance of trying to work together to complete discovery, following is an answer to the issues you raise below:

1.  Yes, the additional search terms we are proposing concerning My Pillow RFP 82 and Lindell RFP 5, 8, and 12 are included in the email sent on March 9.
2.  We are not under the "notion" that Dominion "has an obligation to run whatever terms [we] request whenever [we] request them."  We are proposing terms that we believe are appropriate to gather documents responsive to the Defendants' RFPs, with the objective of getting Dominion's document production completed. This is precisely what you asked us to provide on our previous call.  If Dominion wants to discuss the search term list and propose amendments, we are open to discussing that. In our understanding, that is how the meet and confer process works – exchanging counterproposals until agreement or firm disagreement is reached. Our list is limited and focused.
3.  Our proposed additional search terms were developed by reviewing the existing list provided by Dominion and identifying relevant subject matter likely to fall through the cracks with that list of search terms. We are willing to go back and tie them to the specific RFPs that they relate to, although that process seems like unnecessary work for any of the additional terms that Dominion does not dispute.
4.  We are not aware of the details of your internal production process. Please continue with the production that is in process. Our communications concerning the search terms are intended to resolve outstanding issues and move party document discovery a step in the direction of completion, not interrupt productions already in process.
5.  We will respond to your comments on the specific discovery requests next week. From an initial review of your comments, it looks like the items needing further discussion is not large.

Please confirm that we are in agreement regarding process re 1-4 and we will get you 5 shortly.   Thank you Katie,

ADP


<image001.jpg>


Confidentiality Notice: This email transmission and its attachments, if any, are confidential and intended only for the use of particular persons and entities. They also may be attorney work product and/or protected by the attorney-client privilege or other privileges. Delivery to someone other than the intended recipient(s) shall not be deemed to waive any privilege. Review, distribution, storage, transmittal or other use of the email and any attachment by an unintended recipient is expressly prohibited. If you are not the named addressee (or its agent) or this email has been addressed to you in error, please immediately notify the sender by reply email and permanently delete the email and its attachments without copying or disclosing them.

---

**From:** Katie Sammons <KSAMMONS@SusmanGodfrey.com>
**Sent:** Friday, March 10, 2023 4:59 PM
**To:** Joshua.Mooney@kennedys.com; Marc Casarino (marc.casarino@kennedyslaw.com) <marc.casarino@kennedyslaw.com>; Brooke Behrens <BBehrens@susmangodfrey.com>; Bill Dunseth <bdunseth@susmangodfrey.com>; Christopher Maldonado <CMaldonado@susmangodfrey.com>; Andrew Parker <Parker@parkerdk.com>; Joe Pull <Pull@parkerdk.com>; marc@coburngreenbaum.com
**Cc:** Laranda Walker <LWalker@susmangodfrey.com>
**Subject:** RE: Dominion v. Lindell/MyPillow: Response to February 10 and February 6 letters

Andy,

I'm afraid your response proves our point that presenting disputed allegations as facts in this format is unproductive and distracts from the issues the parties are trying to reach agreement about. One example from your email below:

> Defendants acceded to Dominion's document production from the Fox News litigation ==only== as a first step to get the production process started, ==since it appeared that was the only way to get any production from Dominion.==

The highlighted language is flat-out false. It is also unnecessary and saying it does not make it true. In this and future correspondence, Dominion will reply to all argumentative statements by simply by

4 of 23

saying your letter is inaccurate except as expressly noted in our response. In any case, we continue to wish that the parties would move forward without these unnecessary and counter-productive barbs which, again, accomplish nothing constructive.

<u>Party Negotiations and Search Terms</u>

Your concern about our recitation of additional relevant facts takes at least one comment out of context—where you argue that the "twisting of our discussion . . . . is troubling." We have not twisted anything. We did not say in that email or otherwise that Dominion will *only* produce in the DC litigation documents it produced in the FNN litigation. Our language focused on procedure:

> It also ignores that the parties agreed Dominion would produce documents for an appropriate time period subject to those agreed search terms and custodians, Lindell/MyPillow would review those documents, and if Lindell/MyPillow believes documents are missing that it needs, if will ask for them. That is the procedure the parties agreed to and that is the procedure Dominion intends to follow.

Interestingly, that procedure is exactly what your letter says, in part and using more words:

> As we discussed at length and reiterate here, further production and discussion are necessary before Dominion's production obligations are met. For the next steps concerning Dominion's production from search terms,
>
> (1) Lindell/MyPillow will review the documents produced by Dominion on February 25, 2023 and then circle back to Dominion with identified deficiencies.
> (2) Lindell/MyPillow will supply Dominion with a list of additional search terms that they ask Dominion to apply to the non-email documents already collected from Dominion custodians. These terms will include the terms

already provided to Dominion in my letter of February 10, plus additional terms based on Dominion's responses to specific requests for production in your email, specifically MyPillow RFP 82, Lindell RFPs 5, 8, 12. (3) Dominion should produce Dominion's email and non-email documents responsive to both lists of search terms (the terms used to create Dominion's February 25 production plus the additional terms that Defendants provide as per item (2) above).

The process you are describing is, in fact, the process Dominion proposed back in November 22—and on multiple occasions following that call—with two exceptions. First, the procedure Dominion is following does not relate only to the February 25 production. It relates to all productions.

Second, you've added that you'll be providing additional search terms concerning MyPillow RFP 82 and Lindell RFP 5, 8, and 12. I assume those are included in the terms sent yesterday. If not, please provide them now. With respect to the additional terms you sent yesterday (and any for 5, 8, 12, and 82), the agreed protocol is contrary to the notion (which you seem to be under) that Dominion has an obligation to run whatever terms you request whenever you request them. We do not. Before we will agree, we need for you to tie your proposed search terms to one or more document requests and represent that you've reviewed the existing search terms and the existing search terms and documents Dominion has produced are insufficient to locate the documents Lindell/MyPillow are now requesting through the use of new terms.

Finally, with respect to the additional search terms you requested at the start of this exercise (which is when you were supposed to identify deficiencies in the terms), recall that none of those have been run against any custodian's documents in the form you

identified them. So the process of production is different. New search terms that would capture new documents need to first be run against the full universe of custodial documents, the number of hits for each search identified and, based on that number, the scope of the search negotiated. Because you asked us to prioritize getting documents to you immediately, we have focused on documents already available. As a result, we've produced over 250,000 emails and are readying a new production of hundreds of thousands more documents constituting documents with customers. If you'd prefer that our vendor put the production process on hold while we deal with those additional terms you requested at the start of the process, we're happy to do that. Please let us know.

Our responses to your discussion of individual document requests appear in the email below.

Katie and Laranda

**Mary Kathryn Sammons**
**ksammons@susmangodfrey.com**
**1000 Louisiana, Suite 5100**
**Houston, TX 77002**
**Direct: 713.653.7864**
**Cell: 713.515.0745**

**SUSMAN GODFREY LLP**
**Houston | New York | Los Angeles | Seattle**

---

**From:** Andrew Parker <Parker@parkerdk.com>
**Sent:** Thursday, March 9, 2023 11:38 AM
**To:** Katie Sammons <KSAMMONS@SusmanGodfrey.com>; Joe Pull <Pull@parkerdk.com>
**Cc:** Laranda Walker <LWalker@susmangodfrey.com>; Marc Eisenstein <marc@coburngreenbaum.com>; Joshua.Mooney@kennedys.com>; Marc Casarino (marc.casarino@kennedyslaw.com) <marc.casarino@kennedyslaw.com>; Brooke Behrens <BBehrens@susmangodfrey.com>; Bill Dunseth <bdunseth@susmangodfrey.com>; Christopher Maldonado <CMaldonado@susmangodfrey.com>
**Subject:** RE: Dominion v. Lindell/MyPillow: Response to February 10 and February 6 letters

EXTERNAL Email
Hello Katie and Laranda,

Thank you for your email below of March 7 regarding the Defendants' discovery requests.  In the Defendants' view, the parties' correspondence advances the discovery process by memorializing the parties' views concerning the items discussed at our meet-and-confer sessions. We believe the list of disputed items is narrowing. Defendants' goal in this exchange is to boil down the list of discovery requests to identify the issues on which the parties have firm disagreements, so that those issues can be presented to the Court for resolution, with the ultimate goal being the completion of party document discovery as soon as possible.

This email sets forth the issues that Defendants currently understand to remain disputed, from the Defendants' discovery requests. As you will see, the list is now much shorter than the items flagged in my correspondence of February 10 and 16.

<u>Party Negotiations</u>

Your email indicates that Dominion disagrees with my previous description of the parties' negotiations around Dominion's production. I included a summary of the facts that are important and relevant. I understand from your email that Dominion has a different view of which facts are important and relevant. Defendants disagree with numerous characterizations stated in your email, in particular the assertion that Defendants have declined or refused to accept productions from Dominion. Defendants also particularly disagree with the sentence "That is the procedure the parties agreed to and that is the procedure Dominion intends to follow," which incorrectly implies that Defendants agreed to accept whatever document production process Dominion is following as final. No such agreement was reached; Defendants only agreed that Dominion could <u>begin</u> its production process by producing a subset of the documents produced in the Fox News litigation.  The twisting of our discussion in this regard is troubling.  While there are several other misstatements in your email regarding the process, I do not feel there is value in addressing each item further here.

<u>Search Terms</u>

Defendants strongly disagree that the parties have "reached agreement on a process that is essentially the same as Dominion proposed back in November 2022." Dominion did not produce any documents for more than two months after the Court's protective order was entered. Defendants acceded to Dominion's document production from the Fox News litigation <u>only</u> as a first step to get the production process started, since it appeared that was the only way to get any production from Dominion. As we discussed at length and reiterate here, further production and discussion are necessary before Dominion's production obligations are met. For the next steps concerning Dominion's production from search terms,

> (1) Lindell/MyPillow will review the documents produced by Dominion on February 25, 2023 and then circle back to Dominion with identified deficiencies.
> (2) Lindell/MyPillow will supply Dominion with a list of additional search terms that they ask Dominion to apply to the non-email documents already collected from Dominion custodians. These terms will include the terms already provided to Dominion in my letter of February 10, plus additional terms based on Dominion's responses to specific requests for production in your email, specifically MyPillow RFP 82, Lindell RFPs 5, 8, 12.

(3) Dominion should produce Dominion's email and non-email documents responsive to both lists of search terms (the terms used to create Dominion's February 25 production plus the additional terms that Defendants provide as per item (2) above).

<u>Other 8 Requests</u>
Your email refers to "8 requests" which are not specified by number. Because Defendants cannot clearly identify which requests this paragraph is discussing, or what Dominion's specific response is to each of the 8 requests, Defendants will disregard these statements and focus on Dominion's responses to the specific requests.  It would be helpful if you identify each of the 8 requests to determine if we can agree on some or all of them.

<u>Timing of Production</u>
One of the purposes of my February 16 letter was to spur Dominion to produce *promptly* the documents that it has already agreed to produce. Your response reiterates that Dominion will produce these materials, but it does not indicate when they will be produced. Please inform Defendants the date upon which Dominion will complete its production of the documents agreed to be produced in your responses below.

<u>Specific Remaining Disputed Requests</u>
**My Pillow RFP 17.**  Your email states that you "understand" Dominion does not have any responsive documents.  Defendants need written confirmation of that fact from Dominion, preferably in a written discovery response.

[Katie Sammons]  Dominion will provide the requested written confirmation in the form of an updated RFP response as soon as Dominion confirms that my understanding is correct.

**My Pillow RFP 20.**  Defendants agree that Dominion's source code can be produced subject to protective procedures. We believe the Court's December 6, 2022 protective order provides Dominion with the ability to adequately protect its source code, but we acknowledge the order seems to contemplate a separate protective order for source code. Please provide for our consideration a specification of any additional protections Dominion seeks concerning the production of its source code.

[Katie Sammons]  The protective order does not "seem to contemplate" a separate protective order for source code. It expressly provides for it. We will propose such an order for your review.

**My Pillow RFP 78.**  It appears the parties have a firm disagreement on this request and further discussion of it is not necessary.

[Katie Sammons]  I am checking with the client to determine if it will produce some subset of these with certain redactions. I will let you know as soon as we get an answer.

> **My Pillow RFPs 79-80.**  Defendants do not understand why specifically identified documents – quarterly and annual income statements and balance sheets – would be subject to a search term production.  Dominion must have a file that contains these documents. It should simply produce them.

[Katie Sammons] Because Lindell/MyPillow object to running search terms to locate these documents, Dominion will determine whether, as Lindell/MyPillow suggest, it "must have a file that contains these documents" as opposed to running search terms for them.

> **Lindell RFPs 31, 91-94, 96-98.**  Defendants do <u>not</u> agree these requests can appropriately be limited by the use of search terms. If Dominion attempts to use at trial non-produced documents responsive to any of these requests, or if Dominion untimely produces documents clearly responsive to any of these requests, Defendants will object based on Dominion's failure to timely produce the documents in response to these requests.

[Katie Sammons]  I am at a loss to understand what you mean. We all agree (at least I think you do too) that to the extent any party knows of responsive documents without running search terms, they will produce those documents. In other words, running search terms is not a basis for withholding from production responsive documents that any party is otherwise aware of. Our responses to your RFP's do not relate to those documents or or—more importantly—abrogate that agreement. However, if you don't view that as an agreement we've made, please let me know immediately. With respect to your proposed objection, I don't know what you mean re "failure to timely produce the documents." Please expand.

[Katie Sammons] As to 31, Dominion conducted a reasonable search for these documents in the Fox litigation and was only able to locate them using search terms. In other words, the documents

you're requesting don't exist in a file or other specific place from which they can reasonably be identified or produced. But the documents located by search terms include, to the extent they exist and based on the search terms you approved, discussions of value of the company pre-election, resale value, the effects of the lies about Dominion on its ability to secure new and renewal business, and other topics the request appears to cover. If you don't want those, we will agree not to produce them. If all you want is documentation of Dominion's worth before the election, that will be the subject of an expert analysis and documents produced in connection with that analysis will be provided pursuant to the Federal Rules of Civil Procedure.

As to 91-94 and 96-98.  Many, if not most of the documents responsive to this request are in the custody or control of Lindell and MyPillow. Dominion expects Lindell and MyPillow to produce those in discovery. To the extent Dominion has possession of documents responsive to these requests—i.e., documents that prove the falsity of the defendants' statements—they are not located in a file or other specific place. The only way to reasonably search for these documents is using search terms. If you believe the documents can reasonably be located elsewhere, please let us know where. In the interim, if you object to using the agreed search terms to locate these documents, let us know that.

> **Lindell RFP 32.** Defendants do <u>not</u> agree this request can appropriately be satisfied by the use of search terms.  Please note this request does not seek "all" documents identifying owners, but rather only documents sufficient to identify all owners. Dominion must locate and produce these by producing documents from its file related to transactions in the company's stock.

[Katie Sammons] You mention a "file." What file is that? I don't know of one. I do know that documents that identify the owners are contained in the documents identified by search terms. That's all the RFP asks for. That's all we need to produce. (Note: This "document request" is really an interrogatory, but we're still

responding to it.)

**Lindell RFP 33.**  Please identify the documents that Dominion believes sufficiently respond to this request, so that Defendants can determine whether they agree.

[Katie Sammons] Dominion will produce the discrete documents your request identifies, to the extent those exist and can be located during a reasonable search.

**Lindell RFP 35.** Defendants do <u>not</u> agree this request can appropriately be satisfied by the use of search terms. Dominion certainly has one or more files in which the documents responsive to this request are kept. Dominion must search that location and produce the responsive files, without attempting to rely on search terms.

[Katie Sammons] I will check to determine whether "files" of these meeting minutes exist. We will not use search terms to locate them.

**Lindell RFP 46.** Your email does not address this RFP. Defendants assume that Dominion will produce the requested materials, since Dominion previously agreed to do so, and the remaining question is *when* Dominion will produce them.

[Katie Sammons] The response is the same as it was for the we already said we will produce.

**Lindell RFP 65.** Please explain the basis for Dominion's position that it is prohibited from producing responsive materials. Defendants need enough information concerning this issue to determine whether a court order can overcome the objection.

[Katie Sammons] After speaking more with the client, I've revised our answer. Some communications with CISA are discoverable and they will be produced. CISA prohibits dissemination, even occasionally within Dominion, as to some communications. Dominion will withhold those documents from production but log them so they can be identified.  Otherwise, to the extent such communications exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce them as part of the ".gov" production that is in process.

**Lindell RFP 100.** Defendants acknowledge that they are bound by the Protective Order in this case. Defendants agree to be bound by the Protective Order in the *Curling* case for purposes of the Halderman report covered by that order. Defendants reserve the

right to seek the court's approval to depart from the terms of either order as appropriate.

[Katie Sammons] We will need to formalize your agreement to be bound by the protective order in this case and in *Curling* before we can produce the unredacted report. We will prepare a document for your signatures.

> **My Pillow RFP 1, 3 (September 6, 2022 requests).**  Lindell/MyPillow have never declined an offer to produce Dominion hardware or software used to administer the 2020 presidential election. Defendants have distinguished between the equipment actually used by counties and exemplars of such equipment provided by Dominion. Both categories of equipment are discoverable. Dominion's response to RFPs 1 and 3 refused to produce any responsive information. If Dominion has changed its position, please notify Defendants. Defendants believe they have a right to discover these materials from Dominion and will seek intervention from the Court if necessary.

[Katie Sammons] Dominion is willing to produce these exemplars, although they are no longer readily available in Susman Godfrey's offices, which they were at the time we previously offered them. Before production of them, we will need to negotiate security procedures and protocols around the review to ensure that the equipment and software remain, after the review, in the same condition they are produced. .

> **My Pillow RFP 2, 4 (September 6, 2022 requests).**  Your email does not address these RFPs. Because Dominion's prior responses to these two items refused to produce any responsive documents, Defendants interpret this to mean that Dominion continues to refuse to produce any responsive and the parties have a firm disagreement about which further discussion is unnecessary.

[Katie Sammons] You are correct. Dominion will not produce documents responsive to these requests.

> **My Pillow RFP 5 (September 6, 2022 requests).**  Defendants do not understand your response, which states that documents "captured by the agreed search terms" will be produced. RFP 5 seeks "Hardware." Defendants do not understand how "Hardware" could be captured by search terms.

[Katie Sammons] I misread your request. This request either asks for the same hardware as RFP 1 or hardware in the possession of

counties that purchased and used it, which Lindell/MyPillow are already going to image. Dominion will not make any further inquiries in response to this request unless Lindell/MyPillow can explain what else they're asking for and why what they are already getting is insufficient.

> **My Pillow RFP 6 (September 6, 2022 requests).**  Thank you for the clarification. When Dominion has completed its check to determine whether it has documents responsive to this request, notify Defendants of the determination.

[Katie Sammons] This request either asks for the same software as RFP 3 or software in the possession of counties that purchased and used it, which Lindell/MyPillow are already going to image. Dominion will not make any further inquiries in response to this request unless Lindell/MyPillow can explain what else they're asking for and why what they are already getting is insufficient.

> **My Pillow RFP 7 (September 6, 2022 requests).**  Defendants do <u>not</u> agree this request can appropriately be limited by the use of search terms. If Dominion attempts to use at trial non-produced documents responsive to this request, or if Dominion untimely produces documents clearly responsive to this request, Defendants will object based on Dominion's failure to timely produce the documents in response to this request.

[Katie Sammons] With respect to your proposed objection, I don't know what you mean re "failure to timely produce the documents." Please expand.

Whether Defendants want documents responsive to this request located by search terms, they are captured in part by search terms. Please let me know whether you are rejecting the production of those documents. Additional information responsive to this request will be part of Dominion's expert reports and documents will be produced pursuant to the Federal Rules of Civil Procedure in connection with that report.

> **My Pillow RFP 8, 9 (September 6, 2022 requests).** Your email does not address these RFPs. Defendants understand that Dominion will produce the requested materials, since Dominion previously agreed to do so, and the remaining question is *when* Dominion will produce them.

[Katie Sammons] As to RFP 8, to the extent such documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce them.

**Initial Disclosures Damages Calculation.**  Dominion's damages calculation in its initial disclosures is plainly deficient, because the Complaint provides a particularized damages amount and the initial disclosures provide no information concerning how that amount was derived. Your email does not indicate when, or if, Dominion will update its damages calculation disclosure. If Dominion does not provide an adequate supplemental disclosure concerning damages by March 31, 2023, Defendants will feel free to include this issue in any motion to compel brought to the Court.

[Katie Sammons] Ok, we understand your position.

Again, in Defendants' view, this correspondence is productive in crystalizing the details of Dominion's document production and narrowing the scope of disputed issues. Matters discussed orally but not reduced to writing are fertile ground for later disputes, and documenting the outcome of each individual request for production is useful for preventing later disputes.

Next steps:
1. Dominion should complete the next steps related to search terms identified above under the heading "search terms" (we will get you the information referenced yet this week in order for you to proceed with the search term next steps);
2. Dominion should produce the documents it has agreed to produce;
3. Dominion should provide information/productions in response to the specific items identified above. The Defendants are not looking to unnecessarily extend the discussion of these matters, so if Dominion's position is that it declines to provide the requested materials, it is sufficient for Dominion to so state;
4. Dominion should run the additional search terms provided by Defendants;
5. Dominion should identify the 8 requests and we can work through to see if we can agree.

Defendants will respond to your proposal to extend the scheduling order in a separate communication.

Dominion is currently undertaking the steps necessary to satisfy its production obligations under the Federal Rules of Civil Procedure. Dominion does not agree that Lindell/MyPillow can unilaterally determine those steps or impose them on Dominion. Please do not take our refusal to address your "next steps" as agreement to them.

Confidentiality Notice: This email transmission and its attachments, if any, are confidential and intended only for the use of particular persons and entities. They also may be attorney work product and/or protected by the attorney-client privilege or other privileges. Delivery to someone other than the intended recipient(s) shall not be deemed to waive any privilege. Review, distribution, storage, transmittal or other use of the email and any attachment by an unintended recipient is expressly prohibited. If you are not the named addressee (or its agent) or this email has been addressed to you in error, please immediately notify the sender by reply email and permanently delete the email and its attachments without copying or disclosing them.

**From:** Katie Sammons <KSAMMONS@SusmanGodfrey.com>
**Sent:** Tuesday, March 7, 2023 2:28 PM
**To:** Joe Pull <Pull@parkerdk.com>; Andrew Parker <Parker@parkerdk.com>
**Cc:** Laranda Walker <LWalker@susmangodfrey.com>; Marc Eisenstein <marc@coburngreenbaum.com>; Joshua.Mooney@kennedys.com; Marc Casarino (marc.casarino@kennedyslaw.com) <marc.casarino@kennedyslaw.com>; Katie Sammons <KSAMMONS@SusmanGodfrey.com>; Brooke Behrens <BBehrens@susmangodfrey.com>; Bill Dunseth <bdunseth@susmangodfrey.com>; Christopher Maldonado <CMaldonado@susmangodfrey.com>
**Subject:** Dominion v. Lindell/MyPillow: Response to February 10 and February 6 letters

Andy and Joe,

This email responds to your February 10, 2023 and February 16, 2023 letters in the form we discussed on March 1, 2023.

First (as we discussed), Dominion disagrees with the content and conclusions of those letters—including with your selective recitation of the "history" of our various discussions around production of Dominion documents. Your letters leave out, for example, the November 10, 2022 discussion among the Powell/DTR and Lindell/MyPillow defendants that superseded all prior meet and confers (documented in multiple emails— e.g., K. Sammons email to M. Casarino and others on November 12, 2022; K. Sammons email to J. Pull and others on January 5, 2023); the fact that during the November 10, 2022 discussion, Dominion proposed an alternative way forward that would be more efficient for all parties; the fact that the Powell, Lindell, MyPillow, and the DTR defendants tentatively agreed to the approach pending confirmation from their clients; the fact that Lindell ultimately and unilaterally derailed that approach by refusing to agree that it would not publicly disseminate documents in any Dominion production until the Court resolved the competing Protective Orders; the fact that the Court entered Dominion's version of the protective order in

mid-December, which prohibited public dissemination of those documents; the fact that since January, the parties have engaged in multiple meet and confer discussions around the processes for Dominion's production and have reached agreement on a process that is essentially the same as Dominion proposed back in November 2022; and the fact that Dominion has subsequently produced several hundred thousand emails for agreed custodians and search terms for an appropriate time period and is readying for production several hundred thousand more at Lindell/MyPillow's request (constituting conversations between Dominion and its customers). All of this in addition to litigating and negotiating the terms under which Lindell may access Dominion equipment in over 30 counties, with the Court (again) ruling in favor of the protections Dominion proposed.

During our discussions last week, Lindell/MyPillow acted as if none of these discussions/negotiations had occurred. In frustration, I offered to re-answer the voluminous document requests Lindell/MyPillow and the Powell/DTR defendants served in an effort to avoid further discussions. Lindell and My Pillow declined my offer (the Powell defendants were not on the call) and asked that Dominion, instead, review the requests in the last 12 pages of their February 16, 2023 letter and respond to the questions they raise.

I have now read those pages many more times. For 33 of the 41 requests, Dominion already agreed to produce documents for the agreed custodians captured by the agreed search terms and appropriate date parameters—and your letter admits that fact. Any further answer was unnecessary, but Dominion has repeated the information below as requested. As to each of those 33, Lindell/MyPillow demand that the documents be produced "immediately." That demand ignores the parties' extensive negotiations over search terms and custodian and the fact that the requested documents can only be located through the search term process. It also ignores that the parties agreed Dominion would produce documents for an appropriate time period subject to those agreed search terms and custodians, Lindell/MyPillow would review those documents, and if Lindell/MyPillow believes documents are missing that it needs, if will ask for them. That is the procedure the parties agreed to and that is the procedure Dominion intends to follow.

As to the other 8 requests, there are several for which Dominion already provided the information requested or (in the case of equipment and software) offered to provide it and the Lindell/MyPillow defendants refused. As to several others, Dominion confirms that it does not have, and never has, possession custody or control over the requested documents—they are in the hands of customers, as Lindell/MyPillow know because they have subpoenaed them from those customers. For the remaining few, Dominion either continues to stand on its objections or has updated information which it provides below.

1. (17) As I understand it, Dominion does not have and has never had log files from the 2020 election. Those belong to the counties.
2. (20) Dominion's source code is among its most highly confidential proprietary information. Because of the sensitivity of these trade secrets and in accordance with paragraph 3 of the Protective Order Governing the Production and Exchange of Confidential Information, Dominion will produce source code after the entry of a separate protective order for source code, which Dominion is willing to negotiate but will insist that it include terms that provide the broadest protection available for that information.
3. (53) These exist and Dominion has already agreed to produce.
4. (66) The request is both broad and vague, as we discussed on our call last week. Dominion agrees to produce contracts in effect at the time of the 2020 Presidential election. Dominion already agreed to this.
5. (71) The request is both broad and vague. Dominion will produce documents and correspondence of cancellations and non-renewals since the 2020 Presidential election, as well as evidence of the values for those contracts (including expert analysis at the appropriate time). To the extent further documents exist and are captured by the agreed search terms, Dominion will also produce those that fall within the appropriate data parameters. Dominion already agreed to this.
6. (72) Same as the answer to 5.
7. (74) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.
8. (75) To the extent these documents exist and are captured by the

agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

9. (76) See answer to 5 above.

10. (77) See answer to 5 above.

11. (78) Absent any explanation of their relevancy, Dominion will not produce the requested documents. They are not relevant to the issue of damages.

12. (79) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

13. (80) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

14. (82) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

15. (5-8) We are asking our client whether these exist. To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

16. (10) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

17. (12) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

18. (13) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

19. (30) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

20. (31) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters (including expert analysis at the appropriate time), Dominion will produce. Dominion already agreed to this.

21. (32) To the extent these documents exist and are captured by the

agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

22. (33) Dominion already agreed to produce certain documents (which your letter notes), which Lindell/MyPillow have agreed to accept subject to a reservation of rights.

23. (35) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

24. (36) Dominion already agreed to produce these documents.

25. (39) Dominion already provided this information to Lindell/MyPillow during the process of agreeing to custodians.

26. (40, 41) To the extent these documents exist as narrowed by Dominion, and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

27. (42) Dominion already agreed to produce these documents.

28. (44) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

29. (45) Dominion already agreed to produce these documents.

30. (57) Dominion already agreed to produce these documents.

31. (61) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

32. (65) Subsequent to providing responses to Lindell's document requests, Dominion learned that, to the extent it has any documents responsive to this request for any time-period, it is prohibited from producing them.

33. (91, 92, 93, 94, 96, 97, and 98) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

34. (100) To the extent defendants agree to be bound by both the Protective Order in this case, and the terms of the Order entered in the *Curling* case, Dominion will produce the Haldeman report in both redacted and unredacted form (we believe Lindell/MyPillow already have the redacted report).

35. (1) Dominion already offered to produce Dominion hardware used to

administer the 2020 Presidential election and Lindell/MyPillow declined Dominion's offer. Lindell/My Pillow opted instead to obtain images of the requested documents from various counties.

36. (2) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

37. (3) Dominion already offered to produce Dominion hardware used to administer the 2020 Presidential election and Lindell/MyPillow declined Dominion's offer. Lindell/MyPillow opted instead to obtain images of the requested documents from various counties.

38. (5) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

39. (6) The counties have (or don't have, depending on their retention policies) the software. To the best of Dominion's knowledge, it has no documents responsive to this request, but is double checking.

40. (7) To the extent these documents exist and are captured by the agreed search terms and appropriate date parameters, Dominion will produce. Dominion already agreed to this.

41. (9) Dominion already agreed to produce documents response to this request.

Interrogatory No.1: Dominion already provided responsive information to Lindell/MyPillow during the process of agreeing to custodians. Dominion agrees to update its interrogatory answer to reflect that information.

Initial Disclosures: Dominion will update its disclosures as appropriate and also provide further (and more detailed) information in connection with its expert reports pursuant to the Scheduling Order.

As we also discussed during our meet and confer last week, Dominion continues to believe that letters like your February 10, 2023 and February 16, 2023 letters are unhelpful; lead to unnecessary work; and use up time that could better be used in discussing the parties' productions. We implore you to discontinue writing those unproductive letters, to which you insist we respond, even if (like these) they are out of date and made unnecessary by later discussions.

Finally, our team has been looking at the schedule for these cases, and we think it make senses to consider jointly asking the Court to slightly extend

the deadlines. We would propose moving everything out approximately two months as set forth below. Let us know if you're in agreement or would like to discuss.

| | Current Deadline | Proposed New Deadline |
|---|---|---|
| Deadline line to Serve Document Requests under FRCP 34 | May 5, 2023 | July 7, 2023 |
| Deadline for Completion of Fact Discovery | September 22, 2023 | November 22, 2023 |
| Deadline for Proponents to Designate Expert Witnesses and Produce Expert Reports under FRCP 26(a)(2) | October 13, 2023 | December 15, 2023 |
| Deadline for Opponents to Designate Expert Witnesses and Produce Expert Reports under FRCP 26(a)(2) | November 10, 2023 | January 19, 2924 |
| Deadline for Proponents to Produce Responsive Expert Reports | December 8, 2023 | February 16, 2024 |
| Deadline for Expert Depositions | January 19, 2024 | March 29, 2024 |
| Status Conference | In-person on February 7, 2024 at 10:00 am | In person on April __, 2024 at _____ _.m. |
| Deadline to File Dispositive Motions | March 1, 2024 | May 3, 2024 |
| Deadline to File Oppositions to Dispositive Motions | March 29, 2024 | May 31, 2024 |
| Deadline to File Supplies in Support of Dispositive Motions | April 19, 2024 | June 21, 2024 |

Please give us your thoughts,

Katie and Laranda

This email has been scanned for viruses and malicious content by Kennedys email security service provided by Mimecast. For more information on email security, visit http://www.mimecast.com