**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | |
|     *Plaintiffs,* | ) | No. 1:21-cv-00040 (CJN) |
|     v. | ) | |
| SIDNEY POWELL, SIDNEY POWELL, P.C., and DEFENDING THE REPUBLIC, INC., | ) ) | |
|     *Defendants.* | ) ) ) | |

**POWELL DEFENDANTS' OPPOSITION TO**
**DOMINION'S MOTION FOR ENTRY OF ORDER ON DISCOVERY MATTERS**

**KENNEDYS CMK LLP**

Joshua A. Mooney DC Bar No. 471866
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Tel: 267-479-6700
Joshua.Mooney@kennedyslaw.com

Marc Casarino, pro hac vice
919 N. Market Street, Suite 1550
Wilmington, DE 19801
Tel: 302-308-6647
Email: marc.casarino@kennedyslaw.com

Michael J. Tricarico, pro hac vice
570 Lexington Avenue, 8th Floor
New York, New York 10022
Tel: (646) 625-3952
Email: Michael.tricarico@kennedyslaw.com

*Attorneys for Defendants Sidney Powell and*
*Sidney Powell, P.C.*

## <u>TABLE OF CONTENTS</u>

SUMMARY ........................................................................................................................ 1

ARGUMENT ................................................................................................................... 2

    I.   DOMINION SEEKS A DISCOVERY ORDER THAT WOULD PERMIT IT TO CONTINUE IRRELEVANT AND NON-RESPONSIVE DOCUMENT DUMPS.......... 2

       A.  What is Dominion Hiding? ..................................................................... 2

       B.  Dominion Ignores the Absurd Results of its Discovery by Hits................................ 4

       C.  Dominion Wrongly Conflates Relevancy with Responsiveness. ................................ 6

       D.  Dominion's Purported Production "In the Ordinary Course" Does Not Cure Dominion's Gamesmanship................................................................................. 9

       E.  The Cases Relied on by Dominion Are Inapposite................................... 12

    II.  DOMINION'S INSISTENCE OF KNOWINGLY NAMING NON-PARTIES AS "AGREED UPON" CUSTODIANS DISPLAYS THE DISINGENUOUS NATURE OF THEIR STIPULATION................................................................................. 15

    III.  HIT REPORTS, BY THEIR DEFINTION, EXCEED THE SCOPE OF RULE 26 ........ 16

CONCLUSION.................................................................................................. 16

## TABLE OF AUTHORITIES

Page(s)

Cases

*Alford v. Aaron Rents, Inc.*,
  2010 WL 2765260 (S.D. Ill. May 17, 2010) ........................................................ 10

*Armor Screen Corp. v. Storm Catcher Inc.*,
  2009 WL 291160 (S.D. Fla. Feb. 5, 2009) ........................................................... 11

*Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*,
  2014 WL 10714011 (D. Minn. Dec. 5, 2014) ...................................................... 16

*DL v. D.C.*,
  274 F.R.D. 320 (D.D.C. 2011) ......................................................................... 6, 7

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
  513 F. Supp. 3d 839 (N.D. Ill. 2021) .................................................................. 16

*Eng. v. Washington Metro. Area Transit Auth.*,
  323 F.R.D. 1 (D.D.C. 2017) ................................................................................ 8

*FDIC v. Boggus*,
  2015 WL 11457700 (N.D. Ga. May 13, 2015) ................................................ 13, 14

*Henderson v. Holiday CVS, L.L.C.*,
  2010 WL 11505168 (S.D. Fla. Aug. 11, 2010) ................................................. 9, 10

*In Re Mentor Obtape Transobturator*,
  2009 WL 152495 (M.D. Ga. Jan. 22, 2009) .......................................................... 9

*Money Mailer, LLC v. Brewer*,
  2020 WL 1515647 (W.D. Wash. Mar. 30, 2020) ................................................... 13

*Oklahoma, ex rel. Edmondson*,
  2007 WL 1498973 (N.D. Okla., May 17, 2007) ..................................................... 9

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ............................................................................................ 8

*Outzen v. Kapsch Trafficcom USA, Inc.*,
  2021 WL 3673786 .............................................................................. 10, 12, 13

*Pass & Seymour, Inc. v. Hubbell Inc.*,
  255 F.R.D. 331 (N.D.N.Y. 2008) ..................................................................... 14, 15

*Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*,
  2021 WL 5087362 (D. Minn. Jan. 5, 2021) ...................................................................... 6, 11

*Stooksbury v. Ross*,
  528 Fed. App'x 547 (6th Cir. 2013) ............................................................................... 4

*U.S.C.F.T.C. v. Am. Derivatives Corp.*,
  2007 WL 1020838 (N.D. Ga. Mar. 30, 2007) .................................................................. 10

*United States ex rel. Shamesh v. CA, Inc.*,
  314 F.R.D. 1 (D.D.C. 2016) ........................................................................................... 8

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
  202 F. Supp. 3d 1 (D.D.C. 2016) .................................................................................... 8

*Venture Corp. v. Barrett*,
  2014 WL 5305575 (N.D. Cal. Oct. 16, 2014) .................................................................. 14

*Washington v. Thurgood Marshall Academy*,
  232 F.R.D. 6, 10  (D.D.C. 2005) .................................................................................... 14

*Wonderland Switzerland AG v. Britax Child Safety, Inc.*,
  2020 WL 6365382 (D.S.C. Oct. 29, 2020) ...................................................................... 4

*Youngevity Int'l Corp. v. Smith*,
  2017 WL 6541106 (S.D. Cal. Dec. 21, 2017) .................................................................. 7

*Zelaya v. UNICCO Serv. Co.*,
  682 F.Supp.2d 28 (D.D.C. 2010) .................................................................................... 8

Rules

Fed. R. Civ Pro. 26 ................................................................................................ passim

Fed. R. Civ Pro. 34 ................................................................................................ passim

**SUMMARY**

Defendants Sidney Powell and Sidney Powell, PC (collectively, Powell), oppose the adoption of Dominion Plaintiffs' (Dominion) proposed "Order on Discovery Matters (i.e., its "Discovery Stipulation," which is anything but). Dominion bases its motion on falsehoods. Its proposal contravenes fundamental requirements of FRCP 26 and 34, and substantially prejudices Powell.

The Discovery Stipulation seeks to legitimize Dominion's unmitigated and improper "document dump" by negating Dominion's obligation to review its documents for relevance to this lawsuit, or produce them in a manner pursuant to which Powell can reasonably determine which documents are responsive to their discovery requests. Dominion's approach ignores cases throughout the country that prohibit "document dumps," and the mere production of documents in the manner in which they are kept in the ordinary course of business where – like here – the resulting production is very large or obscures the location of relevant documents.

Its motion narrates and relies upon revisionist history easily exposed by Dominion's own words and emails. Indeed, Dominion's false narrative illustrates the gamesmanship Dominion has engaged in and seeks to continue to engage in with the Court's blessing.

Finally, Dominion wrongly insists that former employees over whom Powell has no control must serve as custodians and that custodial interviews must be micromanaged beyond the FRCP's directives.  Dominion's additional requirement that Powell run "hit counts" is not required under the FRCP and would be unproductive because it would not yield relevant or responsive documents.

To save the Court time and resource given the parties' filings in the various Dominion litigations, Powell goes straight to argument.

**ARGUMENT**

**I.     DOMINION SEEKS A DISCOVERY ORDER THAT WOULD PERMIT IT TO CONTINUE IRRELEVANT AND NON-RESPONSIVE DOCUMENT DUMPS**

### A.  What is Dominion Hiding?

Dominion's revisionist history of the parties' discussions surrounding discovery is riddled with inaccuracies, if not blatant falsity. Indeed, if Dominion's quest to strip away discovery requirements of the Federal Rules were so just, it begs the question as to why Dominion must engage in its histrionics?

Powell has not "backtracked." Dominion's self-described "simple proposal" (ECF 107-1 at 9) leaves out one important detail – that Dominion represented that its "Fox production" would be responsive to Powell's discovery. It wasn't. Not even close.[1]

After Powell reviewed the 678,195 documents initially produced, ***only approximately 3.5%*** were relevant and responsive to Powell's discovery under Rule 26(b).[2] Powell then sought discovery under the auspices and requirements of the Federal Rules, including Rules 26(b) and 34 – just as Dominion's "simple proposal" and Katie Sammons' March 11, 2023 email describe. ECF 107-1 at 9. Dominion then "backtracked" and refused to engage in such discovery, all without

---

[1] As noted in its brief, Dominion's production was "subject to certain date restrictions," itself a "relevancy" determination by Dominion that undermines its own position. EFC 107-1 at 9. Dominion further "reiterates" that "for the avoidance of doubt, it has utilized custodian interviews to locate locations where responsive documents and communications may be located" and has "also produced a large number of noncustodial documents that it has located through targeted [unspecified] collection efforts." EFC 107-1 at 932, n.11. ***Thus, Dominion itself reveals its willingness to engage in relevancy restrictions when it serves Dominion's own ends.*** The requirements under FRCP 26(b) are meant to prohibit such blatant gamesmanship.

[2] Altogether, Dominion has now dumped *8.4 million pages of documents*. ECF 106-1 at 1.

justification and without legal authority. *E.g.,* ECF 106-1 at 4-6. Its filibusters and refusals culminated with the absurd "stipulation" that Dominion *now confesses* Powell never agreed to. ECF 107-1 at 10.

Dominion's claim that Powell has not been transparent is also false and misleading to the Court. Dominion claims that Powell has conducted discovery in a "black box" because she "refused" to disclose search terms used to respond to Dominion's discovery or produce a privilege log. ECF 107-1 at 11. Nothing can be further from the truth. If Dominion wishes to have the search terms used, it can ask for them (it never did) – but it is unnecessary. What Dominion omits is that, after much back-and-forth, on August 30, 2023, the parties agreed to have Powell re-run a production search using 151 of the 152 search queries requested by Dominion. Ex. A.[3] (This is why Dominion never asked for Powell's search terms – it wanted its own search queries, which Powell ultimately agreed to.) Thus, Dominion knows what search queries are being used – its own – despite representing otherwise to the Court.[4] Powell has not "refused" to produce a privilege log, but instead withheld on creating one until it resolved the discovery dispute with Dominion – which it did, on August 30, 2023. Thus, its claim that Powell breached an August 31 deadline also is deliberately false.

Again, it is worth emphasizing that if Dominion's quest to strip away the Federal Rules' discovery requirements was so just, it would not engage in these false narratives with the Court. It

---

[3] Exhibit A is a true and correct copy of the August 30, 2023 email of D. Marvin. Dominion also ignores that Ms. Powell was indicted on August 14, 2023, and that on August 25 she sought a speedy trial. This led to a requested stay.

[4] Indeed, the statements are similar to Dominion's representation to the Court at the September 21, 2023 conference that Powell had agreed to the use of search terms to respond to its discovery, which Dominion had to retract when confronted by Powell's counsel.

is more than ironic that while Dominion has sued Powell alleging falsehoods, it has been far from straightforward with the Court, perhaps most egregiously falsely advising the Court that Powell agreed on search terms to be run against Dominion's production, when they did not. What is Dominion trying to hide? Indeed, even after having Powell's motion a workday's worth of time prior to the filing of its own, false narratives are the best counterargument Dominion can conjure. *Compare* ECF 106 (filed 5:01pm) *with* ECF 107 (filed 11:59pm).

**B.  Dominion Ignores the Absurd Results of its Discovery by Hits.**

"The term 'document dump' is often used to refer to the production of voluminous and mostly unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests." *Wonderland Switzerland AG v. Britax Child Safety, Inc.*, 2020 WL 6365382, at *5 n.l (D.S.C. Oct. 29, 2020) (citing *Stooksbury v. Ross*, 528 Fed. App'x 547, 550 (6th Cir. 2013)). That is quintessentially what Dominion already has done. The absurd results of Dominion's proposed Discovery Stipulation should not be lost, nor its impact on the individual defendants like Powell. *E.g.,* ECF 106-1 at 6 (Under the search term "Powell," Dominion's initial production included hundreds of thousands of pages of voter rolls with voters named "Powell"; election ballots with candidates named "Powell"; and polling stations with the surname "Powell," like "Powell Middle School).

Dominion seeks a discovery process where it produces documents about capital market report cards and other documents referencing comments from Federal Reserve Chair Jerome "Powell," candidate Herbert "Powell" for a local San Diego office. Other examples from Dominion's self-described "responsive" production, without limit, include:

- A Verizon Bill which included a charge to a call to Powell, Texas;
- November 17, 2021 meeting minutes from Fulton County including a discussion of the death of Colin Powell;
- Emails of John Powell – an employee of Chicago Board of Elections;

4

- A 2022 Dominion Event Based Revenue Budget, including Powell Township, Michigan;
- A Google Calendar meeting invitation with participant Nathan Powell;
- Financial projections including data from Powell County, Kentucky, and Powell County, Montana;
- Documentation relating to Pamela Powell, a recipient of an email from the PA board of elections regarding the PA ballot deadline;
- Documentation relating to Conservative Party of Candida 2020 Leadership vote Desk Test results, including the results from North Island Powell River and Sydney Victoria;
- Documentation relating to a precinct address in Louisiana Mooretown Executive Center, 3913 Powell St., Louisiana; and
- Documentation relating to Clifton Lewis Powell, an absentee voter in Louisiana missing a challenge number.

For the search term "Fox" used by Dominion, Dominion has produced documents that relate to the following:

- Fox Crossing Village in Wisconsin, including ballots, a voter file list, and a Dominion revenue document;
- The Michael J. Fox Foundation, which relates to Parkinson's Disease;
- A ballot of support for the Stem Cell Ballot Measure in California;
- A precinct address – the Fox Theatre in Atlanta, Georgia;
- A job description written by a Mike Fox;
- The judicial candidate Judge Terry Fox in Elbert County, Colorado;
- An excel file from a Michael Fox Cobb;
- Emails between a James Fox and a Jeff Fox about the waitlist for a golf event; and
- A ballot for Denise Dede Fox.

These are just examples. There are more. In short, Dominion seeks a discovery process where it can *and has represented that all of these documents are responsive* to Powell's discovery requests. *E.g.,* ECF 106-6 (E. Hadaway Email, July 25, 2023).

Indeed, Dominion dumped over 700,000 pages of documents on Powell for no other reason than they contain the word "Fox." Dominion did not care if the documents relate to a fox (the animal), a charity (the Michael J. Fox Foundation), a restaurant (Fox & Fiddle) or a business

(Fox Rent-A-Car). Dominion produced it all with the unspoken command to go fish. In a review of a small sample (approximately 7%) of Dominion's "Fox" production, the following "Fox" hits, wholly unrelated to this matter, were revealed on ballots, in emails, and contained in voluminous excel spreadsheets, among other places:[5]

- Steve Fox, Melissa Fox, Albert Fox, Timothy Fox, Jenni Fox, Michael Fox, Don L. Fox, Daniel A. Fox, Tim Fox, Ava Fox, Bernice Fox, Danielle Nicole Fox, Calvin Fox, James R. Fox, Vivica Fox, Allen Fox, Richard B. Fox, Dale A. Fox, Nadine Fox, Michelle Fox, Denise Dede Fox, Judge Terry Fox, Michael Fox Cobb, Benjamin Ezra Fox, Denise Doris Fox, Nathan James Fox, Papa Fox, Thomas Fox, Mary Fox Goodner, Lyle Fox, Jeanne Fox, Lloyd Fox, Kali Fox Miller, Debby Turner Fox, Trayee Fox, Coleman Fox, Jen Fox, Mary A. Fox, Fox Mulder, Dale A. Fox, David K. Fox, Sherrie M. Fox, Ronald Fox, Dwayne K. Fox, Kody Fox, Brody Fox, Kenric Fox, The Fox Theatre , Fox River, Village of Fox Crossing, City of Fox Lake, Fox Road Elementary School, Red Fox Drive, Fox Court, City of Fox Lake, Town of Fox Lake, 11141 Fox Avenue, 1328 Fox Hill Street, Fox Bluff Blvd., Fox Crossing Village, Fox Run Drive, Fox Hunt Ln., Black Fox Trl., Silver Fox Court, Foxwood, Fox Point,  Fox Hound Ct., Fox Lake Town, Fox Forrest, Dr., Grand Fox Cir., Gray Fox Xing, Red Fox Run, Fox Hall Blvd., Foxfire Dr., Fox Cir., Fox Rd., Fox Crossing, Fox Meadow Dr., Fox Spring, Rd., Fox Trce., Fox Den Rd.,  Red Fox Trl., Foxdale Dr., Fox Knoll Dr.

Powell has zero confidence that the remaining 93% of the Dominion "Fox" production will yield different results, and neither should this Court.

### C.  Dominion Wrongly Conflates Relevancy with Responsiveness.

Rule 26 governs the scope of discovery through relevancy. *DL v. D.C.*, 274 F.R.D. 320, 324 (D.D.C. 2011). "[T]he scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation." *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, 2021 WL 5087362, at *2 (D. Minn. Jan. 5, 2021). Rule 34 governs document production and provides that

---

[5] For the sake of brevity, Powell has not provided bates numbers for the "Fox" hits, but will provide them upon request.

a party may request that any other party produce documents that are responsive to those requests and "within the scope of Rule 26(b)." *DL*, 274 F.R.D. at 324. Dominion's Discovery Stipulation excises relevancy under FRCP 26(b) and responsiveness under FRCP 34. It sanctions Dominion's refusal to conduct any relevancy or responsiveness review by replacing the Federal Rules with "hits," whereby *a hit on a broad search term not tailored to the facts of this litigation* means the document is relevant to the claims and defenses of the litigation, and responsive to discovery.

While Dominion contends that nothing more is required of it than producing over 8.4 million pages of documents in a document dump, Powell disagrees. ECF 106-1 at 7-10 (citing cases prohibiting document dumps). Relevancy and responsiveness are not synonyms. Relevant means "having significant and demonstrable bearing on the matter at hand" or "affording evidence tending to prove or disprove the matter at issue or under discussion."[6] Responsive means "giving response : constituting a response : ANSWERING."[7] Thus, documents must be relevant (bearing on the litigation at hand) and responsive (answering the discovery request). *See Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017) ("search terms do not, however, replace a party's requests for production" and it is inappropriate to "conflate[] a hit on the parties' proposed search terms with responsiveness. The two are not synonymous").

Dominion's assertion that the number of parties and requests renders the concept of "relevance" unknowable or "invites discovery games" is specious for several reasons. ECF 107-1 at 30. As a preliminary matter, the contention ignores that Dominion chose to file *five different*

---

[6] *See* https://www.merriam-webster.com/dictionary/relevant.

[7] *See* https://www.merriam-webster.com/dictionary/responsive.

*lawsuits* comprising of *681 pages* (*1,054 numbered paragraphs* – excluding the voluminous subparagraphs) of pleadings with different factual assertions and backgrounds in each. This is not one lawsuit – why else did Dominion file *five separate, individual* lawsuits? While there is some factual overlap, each of the cases is unique and requires specific document requests that do not bear on the other parties and other actions. Dominion also improperly conflates the interests of the parties, deprives the individual defendants' ability to shape their defenses and conduct the appropriate discovery under the parameters of the individual litigation matter at hand. *Cf. United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 8 (D.D.C. 2016) (discovery sought was "too far removed from the government's allegations in the Amended Complaint to fall within the scope of discovery based on the Amended Complaint alone."). In fact, Dominion's complaints about discovery are laughable considering that it has hired a literal army of attorneys in multiple law firms residing in at least five different major cities against Powell, and who filed multiple actions against multiple parties. ECF 107-1 at 42-44 (signature page).

Dominion's contention also ignores the express language of Rule 26(b) and the history of cases defining relevance under the rule. *E.g., United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on any party's claim or defense") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Eng. v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 18 (D.D.C. 2017) (information having "no possible bearing on the claim or defense of a party" is irrelevant) (quoting *Zelaya v. UNICCO Serv. Co.*, 682 F.Supp.2d 28, 32 (D.D.C. 2010)). It also ignores Dominion's own admitted selective relevancy reviews. *See supra,* note 1. Dominion and its army of attorneys know what Rule 26 relevancy is.

**D. Dominion's Purported Production "In the Ordinary Course" Does Not Cure Dominion's Gamesmanship.**

Dominion argues that so long as it represents that it has produced documents as kept in the ordinary course of business, and produced a self-described "high level overview" as a so-called "index," ECF 107-3, it has satisfied its obligations under Rule 34, and by extension Rule 26(b). Courts reject this argument.

Courts throughout the country repeatedly hold that although Rule 34 allows a party to produce responsive documents as they are kept in the ordinary course of business, it does not allow the type of wholesale document dump Dominion has engaged in here. *See Henderson v. Holiday CVS, L.L.C.*, 2010 WL 11505168, at *2 (S.D. Fla. Aug. 11, 2010) ("many courts have held that it is not enough for a party who produces documents as they are kept in the ordinary course of business to simply invite the requesting party to sift through its file cabinets in an effort to locate those documents that are responsive to its requests"); *In Re Mentor Obtape Transobturator*, 2009 WL 152495, *5 (M.D. Ga. Jan. 22, 2009) ("Merely categorizing the documents produced does not, without some further explanation, satisfy the requirement that they be produced as kept in the usual course of business," just as "the mere presence of an index does not, standing alone, make the documents reasonably usable to a requesting party who has no familiarity with the producing party's index or method of organization"); *see also Oklahoma, ex rel. Edmondson,* 2007 WL 1498973, *4 (N.D. Okla., May 17, 2007) ("Defendants do not satisfy their Rule 34 obligations by merely opening their files, and leaving Plaintiff to sift through documents in an effort to locate those that are responsive to its requests. Rather, Defendants are obligated to provide some reasonable assistance to Plaintiff in the location of responsive documents.").

Instead, "courts hold that to the extent a party elects to produce responsive documents as they are maintained in the ordinary course of business, it must either direct the responding party

to the locations within its files where documents responsive to the specific requests may be found, or provide a key or index to assist the responding party in locating the responsive documents." *Henderson*, 2010 WL 11505168, at *3; *Alford v. Aaron Rents, Inc.*, 2010 WL 2765260, *22 (S.D. Ill. May 17, 2010) (given fact the responding party is the party most familiar with its own business records, Rule 34 requires the documents produced as kept in the ordinary course of business to be accompanied by an "indices or other tool" to guide the requesting party; absent such tool the production is akin to a "blanket 'dump' of documents [and] is deficient."); *U.S.C.F.T.C. v. Am. Derivatives Corp.*, 2007 WL 1020838, at *5 (N.D. Ga. Mar. 30, 2007) ("the producing party 'has an obligation to organize the documents in such a manner that [the requesting party] may obtain, with reasonable effort, the documents responsive to their requests.'"). Here, Dominion has done neither.

Contrary to Dominion's reliance on *Outzen*,[8] which involved an agreed-upon use of search terms not present here, a producing party may *not* "simply direct[] the requesting party to the file cabinets and say[], 'Here are our documents as they are kept in the ordinary course of business[.]'" U.S.C.F.T.C., 2007 WL 1020838, at *5. Instead, "to the extent the producing party elects to produce responsive documents as they are kept in the ordinary course of business, it must either direct the responding party to the location or locations within its files where documents responsive to each of their specific requests may be found, or provide a key or index to assist the responding party in locating the responsive documents." *Id.; see also Henderson*, 2010 WL 11505168 at *3 ("while Rule 34 does not obligate a producing party to per se organize and label usable documents for the requesting party's convenience, a party exercising Rule 34's option to produce records as they are kept in the usual course of business should 'organize the documents in such a manner that

---

[8] As discussed in Part I.E below, *Outzen* is factually inapposite.

[the requesting party] may obtain, with reasonable effort, the documents responsive to their requests") (quoting *Armor Screen Corp. v. Storm Catcher Inc.*, 2009 WL 291160, *2 (S.D. Fla. Feb. 5, 2009)).

The federal court's recent decision in *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, 2021 WL 5087362 (D. Minn. Jan. 5, 2021) is illustrative. The decision involved a discovery dispute in which defendants contended that "because plaintiffs had produced documents responsive in bulk, they could not determine in reference to any particular request whether Plaintiffs have produced documents responsive to that request, represent that they do not possess documents responsive to that request, or have produced some and withheld other documents responsive to that request." *Id.* at *8. The plaintiffs, in turn, contended that they complied with FRCP 34 by producing documents as kept in the ordinary course of business. *Id.* The court disagreed:

> In the present case, Plaintiffs' method of producing responsive documents in bulk is merely a[n] improper document dump that does not provide Defendants with any specification as to, or meaningful way of determining, which of the produced documents are responsive to which particular request or requests….[citations omitted].
>
> Accordingly, Plaintiffs must specifically respond to each Request for Production of Documents, and Plaintiffs must reference by bates number which documents respond to which specific Requests for Production of Documents.

*Speed RMG Partners*, 2021 WL 5087362 at *8-9.

Here, Dominion may not simply run broad search terms and instruct Powell to fish from its bulk production for the responsive documents. Instead, at the very least, it must either direct Powell to the locations within its files where documents responsive to the specific requests are

11

located, or provide a key or index that assists Powell in locating the responsive documents. As demonstrated by its "hits only" approach, Dominion has done – and intends to do –  neither.

Instead, Dominion has thus far dumped over 8.4 million pages of documents on defendants with its self-described "high level overview." ECF 107-3. That document is useless. It does not permit Powell to determine which documents are responsive to which requests. Nor does it distinguish between documents produced to the various defendants or advise where responsive documents can be located. Instead, it buries relevant documents in an ocean of irrelevancy.

### E.  The Cases Relied on by Dominion Are Inapposite.

To justify its document dumps, Dominion cites to a handful of cases. Those cases, however, do not justify Dominion's discovery conduct, or the conduct it proposes moving forward. As a preliminary matter, they did not involve a document dump of 8.4 million pages on individual defendants. This fact alone makes every case cited by Dominion distinguishable. But the cases fail for other reasons, too.

Dominion's reliance on the court's reasoning in *Outzen v. Kapsch Trafficcom USA, Inc.* betrays the deficiency in their production. As an initial matter, *Outzen* is factually distinguishable since the parties there had *agreed upon the use of search terms* to be used to identify relevant documents. ***No such agreement exists here.*** Specifically, Dominion relies on *Outzen* for the proposition that it should not be required to review its production for relevancy because "[j]ust as in Outzen, Dominion has done the equivalent of giving Plaintiffs access to its files, with the additional step of limiting its production to those documents that contain the search terms agreed upon by the parties." ECF 107-1 at  29. But Powell never agreed on search terms, and Dominion's reliance on *Outzen* fails on that fact alone. *Outzen*, 2021 WL 3673786 at *8 ("Because Kapsch is producing the documents retrieved by the search terms *agreed upon by the parties* as those

documents are kept in the usual course of business, Kapsch does not have to further review those documents for relevance or responsiveness in order to comply with Federal Rule of Civil Procedure 34(b)(2)(E)(i)." (emphasis added)).

Powell advised Dominion repeatedly her belief that limiting Dominion's production to search terms was an infeasible way to conduct discovery in this litigation, and that a relevancy review under FRCP 26(b) and responsiveness review under FRCP 34 were needed. Even the *Outzen* court recognized that the Federal Rules prohibit a producing party from dumping "voluminous, poorly organized documents on its adversary" and/or forcing a party to "to rummage through piles of paper in search of what is relevant." 2021 WL 3673786, at *6 (S.D. Ind. Aug. 19, 2021) (*citing Money Mailer, LLC v. Brewer*, 2020 WL 1515647, at *1 (W.D. Wash. Mar. 30, 2020)). Yet, Dominion simply ignored Powell and dumped millions more pages of irrelevant documents on Powell.

Dominion's reliance on *FDIC v. Boggus*, 2015 WL 11457700 (N.D. Ga. May 13, 2015) also is bogus. The FDIC filed an action against former directors and officers of a failed bank in which the parties were disputing a proposed ESI discovery protocol. *Id.* at *1. There, the court ultimately agreed upon a protocol that did not require the FDIC "to conduct a responsiveness review *because the parties have agreed* to produce the documents as they were kept in the usual course of business." *Id.* (emphasis example). Notably, the court detailed a proposed ESI that was rejected – a protocol that is strikingly similar to Dominion's "Stipulation":

> The FDIC proposed a two–phase ESI production. In the first phase, the FDIC would produce ESI identified by the FDIC in its initial disclosures. In the second phase, the FDIC and bank directors would agree to a list of search terms, apply those search terms to the remaining ESI, the FDIC would upload the documents by search term hit, and the bank directors would review the ESI and select documents for production.

> The court found that the FDIC's protocol did not comply with Rule 34(b)(2)(e). The Rule requires a producing party to produce documents "as they are kept in the usual course of business or [the producing party] must organize and label them to correspond to the categories in the request" and "produce [ESI] in a form or forms in which it is ordinarily maintained or in a reasonably useable form or forms." FED. R. CIV. P. 34(b)(2)(E)(i-ii).

*Id.* This is the protocol that Dominion now seeks to have court ordered. Dominion is not producing documents pursuant to FRCP 34. *Supra*, Part I.D.

The *Boggus* decision, furthermore, did not address relevancy. Nor does Dominion address the limited scope of documents from which search terms were used in that case. In fact, the court's decision expressly rested upon the narrow scope of discovery and potentially responsive documents, concluding that the FDIC's estimated production of 150,000 documents (less than one-fifth of the documents here) was exaggerated. *Id.* at *2 ("The court finds it hard to fathom that the FDIC will end up producing anything close to 150,000 documents."). Dominion says nothing about these critical facts.

*Washington v. Thurgood Marshall Academy* also is inapposite, as there this Court denied a motion to compel, reasoning in part that the documents had been produced by the defendant school in the manner in which they were kept in the ordinary course of business. 232 F.R.D. 6, 10 (D.D.C. 2005). The decision does not discuss or reveal whether the records were voluminous, or – more critically – whether the production included anything close to the bounty of irrelevancy Dominion advocates here.[9]

---

[9] Dominion's reliance on both *Venture Corp. v. Barrett*, 2014 WL 5305575 (N.D. Cal. Oct. 16, 2014), and *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331 (N.D.N.Y. 2008) (without explanation) also is misplaced. Both decisions relied upon the responding party's organized production of documents as kept in the ordinary course of business and under the guardrails of FRCP 34. 2014 WL 5305575 a *2; 255 F.R.D. at 333 (noting that a "production of documents with

II.     **DOMINION'S INSISTENCE OF KNOWINGLY NAMING NON-PARTIES AS "AGREED UPON" CUSTODIANS DISPLAYS THE DISINGENUOUS NATURE OF THEIR STIPULATION**

The parties' joint agreement for document custodians reads:

> To the extent such interviews have not already been conducted, all parties must conduct custodian interviews to determine the work habits and data or document storage practices of each custodian, and thus potential custodial sources where each custodian may possess discoverable information, as understood by FRCP 26(b)(l). Where possible and appropriate, the parties agree to conduct custodian interviews of their respective individuals identified in the list *of agreed custodians* at Exhibit 3, in which the potential custodians are asked questions calculated to ascertain their knowledge concerning the likely location of any information relevant to the claims and defenses asserted in that party's particular case.

*E.g.,* ECF 106-4 at 5; ECF 107-1-3 at 6 (emphasis added).

Dominion has listed as proposed custodians for Powell 4 non-party individuals who are third parties and over whom Powell has no control.[10]  Powell does ***not agree*** to them and under the language above – which requires that the identified individuals be "agreed" upon – that should be the end of the discussion. Ex. B (explaining to Dominion that the proposed parties are not "agreed" upon).[11] Yet, Dominion moves the Court to order that the non-parties be listed as Custodians Powell "agrees upon" despite that fact that Powell does not and despite the fact that Powell has no control over them. Its motivation is clear – when Powell cannot exert control over them, Dominion will move for sanctions. It's another display of gamesmanship exhibited by

---

little detail of how they were routinely organized in the usual course of business did not satisfy the discovery rule."). In *Pass & Seymour*, the court held that the mere production of 405,367 pages of text searchable documents in 202 unlabeled folders was insufficient. 255 F.R.D. at 333.

[10] They are Julia Haller, Brandan Johnson, Emily Newman, and Tricia Dale. ECF 106-1 at 13.

[11] Exhibit B is a true and correct copy of an Oct. 20, 2023 remail of D. Marvin.

Dominion that has presently brought the parties to the Court. Dominion neither cities authority, nor is Powell aware of any, that has a party responsible for the conduct of a third party.

Nor are micromanaged custodian interviews necessary. Custodian interviews already are governed and required by the Federal Rules, and have been deemed "a modern outgrowth of a client interview." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 963-64 (N.D. Ill. 2021) ("With regard to ESI, reasonable inquiry necessitates a proper custodian interview."). Dominion's absurd and frivolous request to have Julia Haller, Brandan Johnson, Emily Newman, and Tricia Dale named as Powell custodians should be denied.

## III.      HIT REPORTS, BY THEIR DEFINTION, EXCEED THE SCOPE OF RULE 26

By definition, "hit reports" fall outside the scope of FRCP 26(b) as non-relevant and non-responsive. *See Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*, 2014 WL 10714011, at *14 (D. Minn. Dec. 5, 2014) ("Arctic Cat bears no legal obligation to produce non-responsive, irrelevant, outside–of–the–scope–of–Rule–26 ESI"). Dominion has no right to them.

## CONCLUSION

Plaintiffs' proposed Discovery Protocol undermines the discovery guardrails provided by Federal Rules of Civil Procedure 26 and 34 and legitimizes Dominion's unmitigated document dump. The result will be more delays and substantial prejudice to Powell (and the other defendants). As to its provisions for "hit" counts, custodians and custodial interviews, Dominion's proposals exceed the bounds of the Federal Rules and setup further Dominion games.

For the reasons discussed herein and in Powell's Motion to Adopt Discovery Protocol Jointly Proposed by All Defendants (ECF 106), Powell respectfully requests that the Court deny Plaintiffs' Motion for Entry of Order on Discovery Matters, reject Plaintiffs' Proposed Discovery

Protocol, and adopt Defendants' Discovery Protocol.


Dated: October 31, 2023                    **KENNEDYS CMK LLP**

                                        By:*/s Joshua A. Mooney*
                                        Joshua A. Mooney DC Bar No. 471866
                                        1600 Market Street, Suite 1410
                                        Philadelphia, PA 19103
                                        Tel: 267-479-6700
                                        Joshua.Mooney@kennedyslaw.com

                                        Marc Casarino, pro hac vice
                                        919 N. Market Street, Suite 1550
                                        Wilmington, DE 19801
                                        Tel: 302-308-6647
                                        Email: marc.casarino@kennedyslaw.com

                                        Michael J. Tricarico, pro hac vice
                                        570 Lexington Avenue, 8th Floor
                                        New York, New York 10022
                                        Tel: (646) 625-3952
                                        Email: Michael.tricarico@kennedyslaw.com

                                        *Attorneys for Defendants Sidney Powell and*
                                        *Sidney Powell, PC*