# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC. and DOMINION VOTING SYSTEMS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>SIDNEY POWELL, SIDNEY POWELL, P.C. and DEFENDING THE REPUBLIC, INC.,<br><br>Defendants. | Case No. 21-cv-0040-CJN |

## DEFENDANTS SIDNEY POWELL AND SIDNEY POWELL P.C.'S FIRST SET OF DOCUMENT DEMANDS TO PLAINTIFFS

**PLEASE TAKE NOTICE** that, pursuant Rule 34 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and the Local Civil Rules of the District of Columbia, Defendants Sidney Powell and Sidney Powell, P.C hereby demand that Plaintiffs produce the documents and materials specified below, within thirty (30) days of the service of these demands, at the offices of the undersigned attorneys, or at such other time and place, or in such other manner, as may be mutually agreed upon in writing by counsel for the parties. Production shall be in accordance with the Instructions and Definitions set forth below and Fed. R. Civ. P. 34.

**PLEASE TAKE FURTHER NOTICE** that Defendants will object to the introduction at trial of any evidence that has not been exchanged in a timely fashion pursuant to this or any subsequent document demand.

## I.  DEFINITIONS

A.       As used herein, the terms "Document" or "Documents" mean any kind of written, printed, handwritten, typed, photographed, or recorded matter, of any type or description,

1

howsoever and by whom prepared, produced, reproduced, disseminated or made, in any form, including but not limited to writings, letters, minutes, correspondence, telegrams, telexes, bulletins, notes, instructions, memoranda, and any other means of preserving thoughts or expression, however produced, reproduced or retained. "Document" and "Documents" also include all electronic data, e-mail, electronic text messages, i-Messages, WhatsApp communications, Signal communications, instant messaging communications, encrypted application communications, social media communications, voice or video recordings, or other electronic communications, whether stored on personal computers, a computer network, server or backup system, or computer tapes, discs, hard drives, external storage devices, cloud storage facilities, or any other electronic media or medium. Designated documents shall mean originals in each instance (or copies thereof if originals are unavailable), regardless of origin or location, which are in Plaintiffs' possession, custody or control, or in the possession, custody or control of Plaintiffs' agents, representatives, employees, or counsel, and any copies or reproductions that differ in any respect from the original, such as copies containing marginal notations or other variations. Designated documents are to be taken as including all attachments, exhibits, enclosures, appendices and other documents that relate to or refer to such designated documents. The enumeration of various specific items as included within the definition of the word "Document" herein shall not be taken to limit the generality of this word, and the requests herein are directed and intended to obtain all "documents" in the broadest and most comprehensive sense and meaning of this word.

B.      As used herein, the phrase "relating to" or "concerning" means evidencing, constituting, relating to, containing, concerning, discussing, referring to, reflecting, regarding, pertaining to, demonstrating, describing, substantiating, representing, comprising, directly or

indirectly, in whole or in part.

C.      As used herein, the term "communication(s)" means every manner or method of transmittal, disclosure, exchange of information, statement, or discussion between two or more persons, including but not limited to, face-to-face meetings, telephone conversations, voicemails, recordings, emails, texts, and correspondence, and every other means for the transmittal, passing, delivering or giving of information, whether written, oral, or electronic.

D.      As used herein, the term "person" means all individuals, entities, firms, organizations, groups, committees, regulatory agencies, governmental entities, business entities, corporations, limited liability companies, partnerships, trusts and estates.

E.      As used herein, the term "Dominion" refers to US Dominion, Inc., Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation, and each of their corporate parents, affiliates, predecessors, co-venture partners, subsidiaries, shareholders, directors, executives, employees, agents, assigns, professionals, accountants, attorneys, consultants, experts, investigators, trusts, and any person acting on their behalf.

F.      As used herein, the term "HSBC" refers to HSBC Bank USA, HSBC Holdings PLC, and each of their corporate parents, affiliates, predecessors, co-venture partners, subsidiaries, shareholders, directors, executives, employees, agents, assigns, professionals, accountants, attorneys, consultants, experts, investigators, trusts, and any person acting on their behalf.

G.      As used herein, the term "Sequoia" refers to Sequoia Voting Systems, Inc.  and each of its corporate parents, affiliates, predecessors, co-venture partners, subsidiaries, shareholders, directors, executives, employees, agents, assigns, professionals, accountants, attorneys, consultants, experts, investigators, trusts, and any person acting on its behalf.

H.      As used herein, the term "Smartmatic" refers to Smartmatic Corp., Smartmatic USA Corp., Smartmatic International Holding B.V., SGO Corporation Limited,  and each of their corporate parents, affiliates, predecessors, co-venture partners, subsidiaries, shareholders, directors, executives, employees, agents, assigns, professionals, accountants, attorneys, consultants, experts, investigators, trusts, and any person acting on their behalf.

I.      As used herein, the term "Staple Street Capital" refers to Staple Street Capital LLC and each of its corporate parents, affiliates, predecessors, co-venture partners, subsidiaries, shareholders, directors, executives, employees, agents, assigns, professionals, accountants, attorneys, consultants, experts, investigators, trusts, and any person acting on its behalf.

J.      As used herein, the term "Powell" refers to Defendants Sidney Powell and Sidney Powell, P.C. and each of their corporate parents, affiliates, predecessors, co-venture partners, subsidiaries, shareholders, directors, executives, employees, agents, assigns, professionals, accountants, attorneys, consultants, experts, investigators, and any person acting on their behalf.

K.      As used herein, the term "Runbeck" refers to Runbeck Election Services, Inc., with offices at 2800 S. 36th Street, Phoenix, Arizona 85034,  and each of its corporate parents, affiliates, predecessors, co-venture partners, subsidiaries, shareholders, directors, executives, employees, agents, assigns, professionals, accountants, attorneys, consultants, experts, investigators, trusts, and any person acting on its behalf.

L.      As used herein, the term "UBS" refers to UBS Securities LLC, UBS Securities LTD, and UBS Group AG, UBS AG, and each of their corporate parents, affiliates, predecessors, co-venture partners, subsidiaries, shareholders, directors, executives, employees, agents, assigns, professionals, accountants, attorneys, consultants, experts, investigators, trusts, and any person

4

acting on their behalf.

M.      As used herein, the term "2020 Election" refers to the United States general election held on November 3, 2020.

N.      As used herein, the term "Election Official" means any person permitted to carry out the election functions of any local, state or federal election, including his contractors, agents, assigns, attorneys, or anyone authorized to act on his behalf.

O.      As used herein, the term "Voting Equipment" refers to any electronic device, mechanical device, computer, software, scanner, tabulator, modem, reader, paper ballot, instruction manual, marketing material, video, recording, video card, thumb drive, SIMM card, USB drive used in connection with and relating to any local, municipal, county, state or federal election in the United States, including Dominion's Democracy Suite 5.5 and 5.5A, Image Cast Precinct, Image Cast X, Prime-Direct-Recording Electronic Voting Machine, and Prime Ballot Marking Device.

P.      As used herein, the term "Complaint" refers to the Complaint filed by Dominion in the above-captioned matter.

Q.      As used herein, the term "Counterclaim" refers to the counterclaim filed by Powell in the above-captioned matter.

R.      As used herein, the terms "you" or "your" refer to Dominion.

## II.    **INSTRUCTIONS**

A.      In producing Documents, you are required to furnish all Documents known or available to you, regardless of whether you possess the Documents directly or they are in the possession or custody of your current or former business entities, agents, attorneys, employees, representatives or investigators. As to each requested Document that is not in your possession, you should indicate where the Document is located, if known.

B.      References to the singular shall include the plural and references to the plural shall include the singular.

C.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests documents and/or information which might otherwise be construed to be outside their scope.

D.      "His" or "Her" shall be construed to include any human being.

E.      If, in answering any of these Requests, you claim any ambiguity in interpreting either the Request or a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to answer, but there shall be set forth as part of the answer the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request.

F.      If any Request is not fully answered because of a claim of privilege, state the privilege asserted and the facts allegedly giving rise to the claim of privilege in detail sufficient to enable the court to decide if the privilege has been properly invoked.

G.      References to "including" shall be construed as "including without limitation."

H.      In the event a Document is not identified on grounds other than privilege, state foreach such Document: the type of Document, date, author or addressor, addressee of all copies, recipients of all copies, title, the present location or address of the custodian of all copies, the substance of the document, and the reasons for its non-production.

I.      If any Document requested to be identified was at one time in existence, but is no longer in existence, please so state, and identify for each Document: (a) the type of Document; (b) the type of information contained therein; (c) the date on which it was created; (d) the author(s) and recipient(s), if applicable; (e) the date on which it ceased to exist; (f) the

circumstances under which it ceased to exist; and (g) the identity of all persons having knowledge of the contents of such document.

J.　　　Pursuant to Fed. R. Civ. P. 26(e), you are under a duty to seasonably supplement any response to a Request for which you learn that the response is in some material respect incomplete or incorrect. In addition, the Requests shall be deemed to be continuing and any Document requested herein that is currently unavailable but which becomes available to you or your attorneys, agents, employees or representatives up to the conclusion of the proceedings herein must be produced in a timely manner in a supplementary document production.

K.　　　Unless otherwise stated in a Request, these Requests require production of all documents for the period from January 1, 2000 to the present, or which refer or relate to all or any portion of that period.

## III.　DOCUMENTS REQUESTED

1.　　　Each federal, state and local income tax return filed by Dominion for fiscal years 2016 through 2021.

2.　　　Each financial statement relating to Dominion created between January 1, 2016 and the present date, including audited or unaudited, actual or pro forma: balance sheets, income statements, cash flow statements, profit and loss statements, and budgets.

3.　　　Each Document relating to Dominion's acquisition by its management team and Staple Street Capital on or about July 16, 2018, including, offering memoranda, valuations (actual and pro forma), due diligence documents, financial statements, purchase agreements, contracts, government filings, inventories, term sheets, and side letters.

4.　　　Each Document relating to any financing or investment from or by HSBC to Dominion including any collateral posted or conveyed by Dominion to HSBC for any loan

or financing or investment from January 1, 2016 to the present date, and including all documents and communications relating to any of Dominion's patents sold, licensed, or pledged to HSBC.

5.      Each Document relating to any investment, loan or financing involving Dominion and UBS from January 1, 2016 to the present date.

6.      Each Document relating to any investment, loan or financing involving Dominion and State Street Capital from January 1, 2016 to the present date.

7.      Each Document identifying Dominion's ownership between January 1, 2016 and the present, including stockholders' registers.

8.      Each set of minutes of Dominion's Board of Directors' meetings between January 1, 2016 and the present.

9.      Each corporate formation document and any amendment thereto of Dominion between January 1, 2000 and the present, including certificate of incorporation, articles of incorporation, and by-laws.

10.     Documents sufficient to identify the members of Dominion's Board of Directors and management between 2000 and today.

11.     Each Document relating to Dominion's acquisition of Sequoia or any of its assets, on or about June 4, 2010, including agreements, inventories, employees, equipment, intellectual property, assignment of any contracts or intellectual property, patents, and trademarks.

12.     Each Document concerning any agreement between or among Dominion on the one hand, and Smartmatic on the other, relating to Voting Equipment.

13.     Each contract with a local, state or federal municipality or governmental

8

entity, or any other person, for the sale or service of Voting Equipment sold or leased by Dominion, between January 1, 2016 and the present.

14.     Each contract or agreement between Dominion and any person relating to the 2020 Election, including inventories of all Voting Equipment used by that person in the 2020 Election, the locations of said equipment, and the Dominion employees assigned to assist or manage the election, and any post-election recounts, for said person.

15.     Each Document relating to Dominion's contracts with the State of Georgia between 2019 and the present concerning its Voting Equipment including marketing presentations, email, correspondence, and pricing.

16.      Each Document relating to the net profit earned by Dominion on any contract with any person concerning Voting Equipment.

17.     Each Document relating to Dominion's lost profits caused by any statement made by Powell, including any losses from Dominion's alleged failure to secure a contract for the sale or lease of its Voting Equipment to the State of Louisiana or with Stark County, Ohio, including emails, memos, and correspondence.

18.     Each Document relating to any damages allegedly caused by Powell for any claims set forth in the Complaint.

19.     Each Document relating to the design, development and operation of Dominion's Voting Equipment from 2006 to date, including, plans, drawings, patents, source codes, manuals, marketing materials, marketing presentations, videos, and instruction materials.

20.     Each Document relating to any person located outside the United States including but not limited to anyone located in Bosnia or Serbia, that assisted, designed,

consulted or otherwise participated in the design, programming, or servicing of any

Dominion Voting Equipment that was used by any person in the 2020 Election.

21.     A list of each Dominion employee including position and tenure from 2016

to date.

22.     Copies of Dominion's websites from January 1, 2016 to the present,

including any sites or pages that have been deleted or altered.

23.     Lists of all Documents shredded, destroyed, erased or otherwise

compromised  when Dominion vacated its corporate headquarters in Colorado after the

2020 Election.

24.     All Documents relating to Dominion's document preservation policies

distributed to Dominion employees, officers and directors, between January 1, 2020 and

the present date.

25.     Each Document relating to Dr. Eric Coomer and the design, marketing or

functionality of Dominion's Voting Equipment.

26.     Each Document relating to any statements made by Dr. Coomer concerning

the 2020 Election, including email, correspondence, and text messages.

27.     Each Document relating to Dr. Eric Coomer's departure from Dominion's

employ, including correspondence, email, agreements, and payments.

28.     Each Document relating to Dominion's patents concerning Voting

Equipment, including research memos, emails, and correspondence.

29.     Each Document concerning the design and capability of Dominion's Voting

Equipment to be accessed remotely.

30.     Each Document concerning the running of an algorithm on Dominion's

Voting Equipment.

31.     Each Document evidencing or constituting communications between Dominion and any Election Official in the United States where Dominion Voting Equipment was used during the 2020 Election discussing the capabilities, the security, or the reliability of the Dominion Voting equipment.

32.     Each Document relating to updates done by Dominion or anyone acting on Dominion's behalf to any of Dominion's Voting Equipment used in the 2020 Election within 90 days of the 2020 Election.

33.     Each Document describing the role and activities of Dominion employees, representatives or contractors in assisting Election Officials in carrying out voting on Dominion's Voting Equipment before, during and after the 2020 Election, including, support, supervision, trouble-shooting, programming, re-counts, ballot processing, machine or thumb drive storage, chain of custody assistance with voting results or voter information, review, manipulation or deletion of audit logs.

34.     Each Document relating to Dominion's participation in or assistance with any vote or election audit concerning the 2020 Election, including recounts, audit log inspection, review, or deletion.

35.     Each Document relating to the counting of votes from the 2020 Election at the State Farm Arena in Atlanta, Georgia.

36.     Each Document relating to any person, other than Dominion, which is funding the instant litigation against Powell, including, agreements, wire transfers, and checks.

37.     Each Document relating to each defamatory statement allegedly made by

Powell against Dominion.

38.      Each cease-and-desist letter, preservation letter, and/or retraction demand sent by Dominion to any person relating to its Voting Equipment, the 2020 election, or any statement made by Powell, including all attachments thereto.

39.      Each Document supporting Dominion's claims in the Complaint.

40.      Each Document between Dominion and any person, excluding counsel, relating to the bringing, or prosecution, of this action against Powell, including Marc Elias, representatives of the Democratic National Committee, representatives of the United States government, any law enforcement agency or representative thereof, officials or agents of the United States Central Intelligence Agency or the United States Federal Bureau of Investigation.

41.      Each Document relating to Dominion's attempt to rehabilitate its reputation through this action, including marketing plans, public relations plans, press strategy plans, videos, memos, emails, and text messages.

42.      Each Document relating to inquiries from Senators Elizabeth Warren, Amy Klobuchar, Mark Warner, Jack Reed, and Gary Peters, dated on or about March 27, 2019, relating to voting machine vulnerabilities, including emails, correspondence, text messages, and research.

43.      Each Document relating to Runbeck, including contracts, ownership interests, ballot specifications, printing instructions, delivery instructions, and customer lists.

44.      Each Document relating the 2020 HBO Documentary, *The Kill Chain: The Cyber War on America's Elections* including any cease-and-desist letters, preservation

letters, and/or retraction demands sent by Dominion to HBO or those appearing in the documentary contesting the truth or accuracy of statements made therein about Dominion's Voting Equipment.

45.     Each Document relating to Dominion's involvement in any election outside the United States between 2009 and the present.

46.     Each Document relating to Dominion's Patent No. 9,202,113 as described in Paragraph 34 of the Counterclaim.

47.     Each Document relating to Dominion's Patent No. 8,864,026 as set forth in Paragraph 41 of the Counterclaim.

48.     Each Document relating to Dominion's Patent No. 8,876,002 as set forth in Paragraph 42 of the Counterclaim.

49.     Each Document relating to Hamilton Place Strategies, including but not limited to their retention and their advice to rehabilitate Dominion's reputation.

50.     Each Document Dominion intends to use in support of its case or in defense of the Counterclaim, including documents for impeachment only.

Dated: January 18, 2022

/s/ Howard Kleinhendler
Howard Kleinhendler
N.Y. Bar No. 2657120, admitted *pro hac vice*
HOWARD KLEINHENDLER ESQUIRE
369 Lexington Ave. 12th Floor
New York, New York 10017
Tel: (917) 793-1188
Email: howard@kleinhendler.com


*Counsel for Sidney Powell,*
*Sidney Powell, P.C.*

To:

Katie Sammons
Sussman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002