**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

US DOMINION, INC., DOMINION VOTING ) 
SYSTEMS, INC., and DOMINION VOTING )
SYSTEMS CORPORATION, )
    *Plaintiffs,* )   No. 1:21-cv-00040 (CJN)
    v. )
SIDNEY POWELL, SIDNEY POWELL, )
P.C., and DEFENDING THE REPUBLIC, INC., )
    *Defendants.* )

**POWELL DEFENDANTS' OPPOSITION TO DOMINION'S MOTION FOR
DEPOSITION PROTOCOL**

**KENNEDYS CMK LLP**

Joshua A. Mooney DC Bar No. 471866
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Tel: 267-479-6700
Joshua.Mooney@kennedyslaw.com

Marc Casarino, pro hac vice
919 N. Market Street, Suite 1550
Wilmington, DE 19801
Tel: 302-308-6647
Email: marc.casarino@kennedyslaw.com

Michael J. Tricarico, pro hac vice
570 Lexington Avenue, 8th Floor
New York, New York 10022
Tel: (646) 625-3952
Email: Michael.tricarico@kennedyslaw.com

*Attorneys for Defendants Sidney Powell and
Sidney Powell, P.C.*

# **TABLE OF CONTENTS**

SUMMARY ..................................................................................................................................... 1

GOVERNING STANDARDS ........................................................................................................ 3

ARGUMENT .................................................................................................................................. 3

    I.    DOMINION HAS NOT SHOWN A LEGITIMATE NEED FOR BLANKET REMOTE DEPOSITIONS ................................................................................................ 3

        A.    Scheduling In-Person Depositions Will Not Be Complicated and Already Has Been Resolved by the Parties. ................................................................................ 4

        B.    Dominion's Concern Over Costs is Rich. ............................................................. 5

        C.    Dominion's "Safety Concerns" are Invalid and Shameless. .................................. 8

    II.    POWELL WILL SUFFER SIGNIFICANT PREJUDICE IF DENIED THE RIGHT TO CONDUCT IN-PERSON DEPOSTIONS. ................................................................... 9

CONCLUSION ............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Doe v Bd. Of Regents of Univ. of Neb.*,
    2022 WL 17343852 (D. Neb. Nov. 30, 2022) .......................................................................... 9

*Dollard v. City of Safety Harbor, Fla.*,
    No. 8:21-CV-304-MSS-JSS, 2022 WL 1212791 (M.D. Fla. Apr. 25, 2022) ............................ 3

*Henry v. Tacoma Police Dept.*,
    2023 WL 5530201 (W.D. Wash., at Tacoma, Aug. 23, 2023) ................................................. 7

*Huddleston v. Bowling Green Inn of Pensacola*,
    333 F.R.D. 581 (N.D. Fla. 2019) ............................................................................................. 6

*In re Broiler Chicken Antitrust Litig.*,
    2020 WL 3469166 (N.D. Ill. June 25, 2020) ....................................................................... 3, 9

*L.D.M. by & through Matheny v. LMH Health*,
    2021 WL 5906039 (D. Kan. Dec. 14, 2021) .......................................................................... 10

*List v. Carwell*,
    2020 WL 5988514 (D. Minn. Oct. 9, 2020) ............................................................................. 3

*Rennenger v. Aquawood, LLC*,
    2022 WL 20854177 (S.D. Iowa Dec. 20, 2022) ...................................................................... 4

*Roh v. Schultz*,
    2022 WL 2132559 (D.D.C. June 14, 2022) ........................................................................... 10

*Rubio v. City of Visalia*,
    2022 WL 193072 (E.D. Cal. Jan. 21, 2022) ........................................................................... 10

*Shvartser v. Lekser*,
    292 F. Supp. 3d 272 (D.D.C. 2018) ......................................................................................... 6

*Swenson v. GEICO Casualty Company*,
    2020 WL 4815035 (D. Nev. Aug. 19, 2020) ............................................................................ 3

*Troxel v. Gunite Pros, LLC*,
    2022 WL 2762905 (S.D. Ala. Mar. 17, 2022) ...................................................................... 4, 7

*Tsien v. Bd. of Regents of Univ. Sys. of Ga.*,
    2021 WL 6617307 (S.D. Ga. Nov. 12, 2021), *aff'd*, 2021 WL 6617308 (S.D. Ga. Dec. 20,
    2021 .................................................................................................................................... 6, 7

*United States v. Approximately $57,378 in U.S. Currency*,
  2010 WL 4347889 (N.D. Cal. Oct. 27, 2010) .......................................................................... 10

*United States v. Balega*,
  2022 WL 20100634 (D. Minn. Mar. 10, 2022) ...................................................................... 4, 9

*United States v. Rock Springs Vista Dev.*,
  185 F.R.D. 603 (D. Nev. 1999) ................................................................................................ 6

*Williams v. Camden USA Inc.*,
  No. 3:19-CV-691-AJB-AHG, 2021 WL 3022675 (S.D. Cal. July 15, 2021) ........................... 11

Rules

Fed. R. Civ. Pro. 26 ............................................................................................................................ 1

Fed. R. Civ. Pro. 30(b)(4) ........................................................................................................... passim

Fed. R. Civ. Pro. 34 ............................................................................................................................ 1

Fed. R. Civ. Pro. 45 ........................................................................................................................ 1, 6

Other Authorities

Chris Henry, *Love Them or Hate Them Remote Depositions are Here to Stay,*
  Boston Bar Association, Nov. 7, 2022 ...................................................................................... 11

Mary A. Salamone & Michelle Wells, *Entering a New Era: Taking and Defending Remote Depositions*,
  American Bar Association, Dec. 11, 2020 ................................................................................. 8

Megan Mineiro, *Judges Tout Covid for Opening Judiciary Up to Technology,*
  Courthouse News Service, June 25, 2020 ................................................................................. 11

Robert L. Haig, Editor-in-Chief & Theodore M. Grossman, Author, *Deposition by Remote Means*,
  3 Bus. & Com. Litig. Fed. Cts., Section 31:13 (5th Ed., ABA, November 2022) .................... 10

## SUMMARY

Defendants Sidney Powell and Sidney Powell, PC (collectively, Powell), oppose Dominion Plaintiffs' Motion for Deposition Protocol, which requires by default that all depositions be conducted remotely.[1]

If it had its way, Dominion would light a match to the Federal Rules of Civil Procedure to weaponize the rules of discovery for its own ends in disregard of federal practice standards. Fresh off the heels of asking this Court to allow it to dump millions of irrelevant documents on Powell in violation of FRCP 26 and 34, Dominion now asks the Court to flip Fed. R. Civ. Pro. 30(b)(4) by making remote depositions the norm instead of the exception. Worse, Dominion provides no "legitimate need" for its unprecedented ask, and instead relies upon speculation, hyperbole, and conjecture. Its cited reasons of scheduling, travel costs, and the flu are pretextual, if not absurd. Indeed, Dominion's concerns *were not articulated during meet-and-confers*. There is good reason why.

*First*, concern over scheduling is a fabrication. The parties already have agreed that for all of Dominion employees (and former employees that it represents), if the parties cannot agree on deposition dates, ***Dominion can select dates unilaterally.*** The same is true for Defendants. Thus, the parties already have resolved the scheduling complexities Dominion conjures. Dominion omits this agreement in its argument probably because it eviscerates Dominion's position.

*Second*, Dominion's concern about travel costs and burden on its employees (and counsel) to travel ignores that Fed. R. Civ. Pro. 45 requires depositions to take place within 100 miles of a witness's residence or workplace. It also ignores that many of Dominion's self-identified

---

[1] The Parties are in agreement as to the other provision of Dominion's proposed deposition protocol.

document custodians reside in states in which Dominion's appearing counsel are located. It also ignores that Dominion solely and wholly decided to file five separate lawsuits before this Court seeking over a billion dollars in damages against defendants, most of whom are individuals. To then complain about costs of travel to prove its claims is rich.

*Third*, Dominion shamelessly exploits the COVID-19 Pandemic and the extraordinary public health measures taken by governmental entities during 2020-21 to serve its own ends. The Pandemic was declared over long ago. Vaccines for the flu and COVID-19 are readily available, and Dominion's own attorneys have not worn masks in appearances before this Court or the Delaware Superior Court. Nor is Dominion waving its right to depose Ms. Powell in-person, and this Court can bet its bottom dollar that Dominion has every intention and expectation to depose Ms. Powell in person, COVID-19 and flu concerns notwithstanding. Dominion never raised this "concern" during calls with Defendants, which should speak to its *ad hoc* kitchen sink nature. Yet even if such concerns were sincere, courts repeatedly have ruled that the Pandemic's existence alone was insufficient to demonstrate a legitimate need for blanket remote depositions.

Finally, Dominion's request for a blanket rule of remote depositions is unjust because Powell will suffer enormous prejudice if denied the right to conduct in-person witness examinations. The enormity and high-profile nature of this matter cannot be overstated. Nor can the financial implication of Dominion's damage claims on Defendants be overstated. In-person witness examination is a bedrock principle of litigation, whether in discovery or a courtroom. Fed. R. Civ. Pro. 30(b)(4) also recognizes this principle, making in-person depositions the default. Powell was brought into this litigation involuntarily by Dominion, not the other way around. She only seeks the opportunity to defend herself and her law firm pursuant to Federal Rules of Civil Procedure and practice standards of this Court. Dominion chose to commence its litigation against

her here. Dominion has not pointed to a scintilla of evidence to deny Powell this right. For this reason, above all else, Dominion's motion should be denied.

## GOVERNING STANDARDS

Fed. R. Civ. Pro. 30(b)(4) is the standard. While remote depositions are allowed, they are the exception, not the rule. *See Dollard v. City of Safety Harbor, Fla.*, No. 8:21-CV-304-MSS-JSS, 2022 WL 1212791, at *1 (M.D. Fla. Apr. 25, 2022) (party taking deposition empowered to determine its means and location).

Courts considering a request for a deposition to be conducted remotely utilize a two-step analysis. *E.g., List v. Carwell*, 2020 WL 5988514, at *8 (D. Minn. Oct. 9, 2020); *Swenson v. GEICO Casualty Company*, 2020 WL 4815035, at *2 (D. Nev. Aug. 19, 2020); *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 (N.D. Ill. June 25, 2020). First, the party seeking an order that the deposition be conducted remotely "must advance ***a legitimate reason*** for seeking a remote deposition." *List*, 2020 WL 5988514, at *8 (*quoting Swenson,* 2020 WL 4815035, at *2) (emphasis added). Second, if a legitimate reason is shown, the burden shifts to the opposing party to make a particularized showing that conducting the deposition by remote means would be ***prejudicial***." *Id.* (same). The foregoing standard mandates that Dominion's motion be denied.

## ARGUMENT

**I. DOMINION HAS NOT SHOWN A LEGITIMATE NEED FOR BLANKET REMOTE DEPOSITIONS**

Dominion has not shown a legitimate need for a blanket order of remote depositions. As a threshold matter, the conundrum created by Dominion's request is best illustrated by its prematurity. Because no deposition has been noticed yet, under Fed. R. Civ. Pro. 30(b)(4), it is

impossible for assess a need for a remote deposition beyond speculation because the issue must be viewed through the prism of the specific circumstances of the individual deposition at issue. Indeed, numerous courts have rejected requests for blanket orders for remote depositions for this very reason. *Rennenger v. Aquawood, LLC*, 2022 WL 20854177, at *4 (S.D. Iowa Dec. 20, 2022) (denying request for an order requiring all depositions be taken by remote means absent showing by individual deponents seeking specific accommodation based on validated concerns); *United States v. Balega*, 2022 WL 20100634, at *3 (D. Minn. Mar. 10, 2022) (same); *see also Troxel v. Gunite Pros, LLC*, 2022 WL 2762905, at *1 (S.D. Ala. Mar. 17, 2022) (holding plaintiffs' claimed inconveniences and generalized COVID-19 concerns were not "sound basis or legitimate need" for ordering remote depositions).

Yet even an assessment of Dominion's alleged concerns demonstrate that they are generalized, speculative, and the byproduct of conjecture that fall well short of showing a requisite "legitimate need."

### A. Scheduling In-Person Depositions Will Not Be Complicated and Already Has Been Resolved by the Parties.

Dominion asserts that remote depositions are warranted because "coordinating dates acceptable to everyone with a right to be present [at in-person depositions] will be complicated." ECF No. 114-1 at 6. The reasoning is a farce.

The parties have already addressed the issue and cured it within both versions of the Deposition Protocol. Specifically, both Deposition Protocols provide that if the parties cannot agree upon a date to depose Dominion's employees or witnesses, ***Dominion may select a date unilaterally***. ECF 114-3 at 2 ("Scheduling of Party Depositions"). The same is true with Defendants. *Id*. In fact, the parties' agreement *would apply to all of the 63 Dominion employees listed in the Kurtz Affidavit* (ECF No. 114-4). Tellingly, Dominion omits this fact, as it eviscerates

4

Dominion's reasoning. It also ignores the obvious – scheduling challenges would still exist with remote depositions, hence the solution reached by the parties.

Dominion's other "legitimate reason" - that locating a place to host a deposition with many people "will not be easy" - is absurd. ECF No. 114-1 at 5-6. This is not the only large case involving multiple parties and law firms in the country, or even before this Court. Dominion knows that. Powell is, and Dominion should be, confident that the sophisticated law firms involved are capable of tackling such a "problem."

### B. Dominion's Concern Over Costs is Rich.

Dominion's purported concern about anticipated costs of travel from the five lawsuits it filed before this Court seeking over a billion dollars in damages is astounding. Notably, ***Dominion is the only party*** complaining about the costs of travel. Defendants, including individuals who seek to conduct discovery under federal practice standards to defend against Dominion's claims, do not. If Dominion wishes to save money, by taking its own depositions remotely, with the witnesses' agreement, it is free to do so. Defendants' Deposition Protocol would allow Dominion this option. However, Dominion should not be permitted to make the choice for everyone.

Nor does Dominion's "fear" itself withstand factual or legal scrutiny, or come anywhere close to satisfy the requirements of a legitimate need. For example, Dominion complains without citing any facts that its "counsel and employees would all have to *travel significant distance at significant cost*, wasting significant time to sit for depositions." ECF No. 114-1 at 8 (emphasis added). What is "significant" is that other than a bland, speculative, and baseless statement, Dominion offers nothing to support the contention. What is significant is that Dominion omits that many of its self-identified custodians reside in the same state as Dominion's counsel. *Compare* ECF No. 114-4 *with* ECF 114-2 (signature block). Significantly, Dominion also omits the

protection of Fed. R. Civ. Pro. 45, which *expressly requires* that depositions take place within 100 miles of a witness's residence or workplace. If travel for a deposition truly were burdensome, Dominion ignores Fed. R. Civ. Pro. 30(b)(4) and Defendants' Deposition Protocol, both of which expressly allow it to seek deposition by remote means.

Dominion also ignores the obvious: that before it chose to file its five lawsuits before this Court, it knew that its self-identified record custodians lived in 21 states, Canada, and Europe. ECF No. 114-4. It knew that it had customers in 28 US states. *Id.* It knew that it had operations across North America and elsewhere. ECF 114-2 at 8. Dominion filed the lawsuits anyway.[2]

This Court and courts around the country recognize the costs of travel are not a legitimate need to permit a court to order that a deposition be taken remotely. *See Shvartser v. Lekser*, 292 F. Supp. 3d 272, 274 (D.D.C. 2018) (traveling to an in-person deposition was not an "undue burden or expense"); *see also Tsien v. Bd. of Regents of Univ. Sys. of Ga.*, 2021 WL 6617307, at *2 (S.D. Ga. Nov. 12, 2021), *aff'd*, 2021 WL 6617308 (S.D. Ga. Dec. 20, 2021); *Huddleston v. Bowling Green Inn of Pensacola,* 333 F.R.D. 581, 585 (N.D. Fla. 2019) (noting plaintiff is required to bear reasonable burden and inconvenience its civil action presents); *United States v. Rock Springs Vista Dev.*, 185 F.R.D. 603, 604 (D. Nev. 1999) (finding plaintiff who commences litigation to obtain substantial monetary gain or benefit cannot invoke mere inconvenience or expense as legitimate reason to refuse in-person deposition).

---

[2] Dominion also baldly claims that it will bear a disproportionate burden for travel costs. ECF No. 114-2 at 8. How so? Because Dominion chose to file five lawsuits against multiple parties? Because Dominion chose a venue and counsel far from its headquarters? Does Dominion truly ignore that Defendants – many of whom are individuals – also will have counsel traveling to the same depositions? Dominion's suggestion of disproportionality is absurd.

*Tsien, supra,* also is instructive. There, the plaintiff wanted the court to order that his deposition be taken remotely from China rather than having to bear the costs of traveling to the United States. 2021 WL 6617307, at *2. The federal court rejected the request and was blunt in its assessment. Travel expenses do not constitute "legitimate reasons" or "good cause" to avoid an in-person deposition. *Id.* The court reasoned:

> Plaintiff chose to pursue complex, high-stakes litigation in this Court and must bear the burden associated with such litigation. This is especially true where, as here, the plaintiff presents no evidence or argument of being financially unable to pay these expenses."

*Id.*

"While travelling for depositions is inconvenient, a 'reasonable burden or inconvenience is expected' and – if demanded by the opposing party in the absence of good cause counseling a different course – *required*." *Troxel*, 2022 WL 2762905 at *2. Here, Dominion filed *five* high-stake lawsuits and publicized them to the world. It still does as an on-going press release on its website.[3] Dominion should have to bear the costs of litigating the actions it commenced. Its speculative concern about travel should not be enough to support a legitimate need for a remote deposition, let alone a blanket order that all depositions be taken by remote means.[4]

---

[3] *See* https://www.dominionvoting.com/legal-updates-learn-how-we-are-defending-dominion/ (last visited Nov. 14, 2023).

[4] Dominion's attempt to equate its circumstances with that of the unemployed *pro se* plaintiff in *Henry v. Tacoma Police Dept.,* 2023 WL 5530201 (W.D. Wash., at Tacoma, Aug. 23, 2023) is absurd. In *Henry*, the district court permitted the *pro se* plaintiff's deposition, scheduled to take place in two weeks' time, to proceed remotely because the unemployed plaintiff claimed a physical injury and the inability to afford travel from Georgia, where he had moved since commencing the action, to Washington state. In granting the protective order based on these specific hardships and lack of a showing of prejudice by defendant, the court cautioned that it expected future proceedings to occur in-person.

7

**C. Dominion's "Safety Concerns" are Invalid and Shameless.**

Dominion's reliance on the flu season and the public health emergency during 2020-21 caused by the COVID-19 Pandemic is astonishing. In fact, it further belies the sincerity of its other arguments and further illustrates its efforts to avoid federal practice standards by any means. Here are some undisputed facts.

The Pandemic has long been declared over.[5] Available vaccines for COVID-19 and the flu are plentiful. Dominion has not identified a single person with health concerns that would place them in a high-risk category.[6] If there were such an individual, and the parties could not agree upon a deposition location, both Fed. R. Civ. Pro. 30(b)(4) *and* Defendants' proposed Deposition Protocol provide means to resolve any such impasse. There is no factual support to make these purported concerns a legitimate need. Nor is there legal authority for the blanket application.[7]

---

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID%2D19%20PHE,share%20certain%20data%20will%20change. (last visited Nov. 15, 2023) ("The federal COVID-19 PHE (Public Health Emergency) declaration ended on May 11, 2023); *see also* https://www.whitehouse.gov/briefing-room/statements-releases/2023/05/09/fact-sheet-actions-taken-by-the-biden-harris-administration-to-ensure-continued-covid-19-protections-and-surge-preparedness-after-public-health-emergency-transition/ (last visited Nov. 15, 2023) (detailing end of COVID-19 public health emergency in May 2023).

[6] Powell also notes that during the past two years, Dominion's counsel have chosen not to wear masks in appearances before this Court and the Delaware Superior Court, despite the COVID-19 concerns Dominion now cites.

[7] Dominion's reliance on *Entering a New Era: Taking and Defending Remote Depositions* is misplaced. The article was published during the harrowing pandemic shut downs of the federal, state, and local governments, court houses, and law offices, and *not* in today's environment.

"[T]he existence of the COVID-19 pandemic alone is insufficient to demonstrate good cause; instead, the party requesting permission to conduct a deposition remotely must provide some context for the effects of the COVID-19 pandemic as applied to a specific deposition. *United States v. Balega*, 2022 WL 20100634, at *3 (D. Minn. Mar. 10, 2022); *see also In re Broiler Chicken*, 2020 WL 3469166, at *8 (declining to enter blanket order requiring remote depositions because of COVID-19). Indeed, Dominion does not cite one post-Pandemic decision to support its extraordinary request.[8] Speculative concerns about flu season or COVID-19 should not be enough to support a legitimate need for a remote deposition, let alone a blanket order that all depositions be taken by remote means.

## II. POWELL WILL SUFFER SIGNIFICANT PREJUDICE IF DENIED THE RIGHT TO CONDUCT IN-PERSON DEPOSTIONS.

Dominion initiated this litigation. Powell is an involuntary participant. Powell does not possess the financial assets that Dominion possesses. Yet, having now to defend against a 124-page complaint filed against her, Powell seeks to maintain the right to in-person witness examinations, a bedrock of our judicial system. A blanket order requiring depositions be conducted by remote means would remove that right and prejudice Powell.

As described in other briefing in this lawsuit, Dominion has dumped millions of pages of documents upon Powell. This lawsuit also involves audio, video, and photographic evidence – all

---

[8] Dominion's comparison of itself to a young doctoral student victimized by sexual harassment over three years similarly is also unconvincing. ECF No. 114-2 at 10 (citing *Doe v Bd. Of Regents of Univ. of Neb.*, 2022 WL 17343852 (D. Neb. Nov. 30, 2022)). Notably, the *Doe* court ordered a remote deposition based on factual evidence of "justifiabl[e]" concern of "mental, emotional, and psychological" distress of making plaintiff return to the place of her harassment. *Id.* at *3. Dominion has not identified a deposition that would bring a witness to such a location.

of which will be required to be presented to witnesses in a manageable manner under time-limited depositions. *E.g.,* ECF 114-2. The number of hours Defendants are permitted to have for *all* depositions, individually and collectively, also is capped. *Id.* Having to arrange and present such exhibits by remote means to witnesses and counsel would be overly complex and overly time consuming, thereby limiting Defendants' individual and collective ability to examine witnesses.[9]

As this Court noted last year, "[e]ven in the context of the ongoing pandemic, however, live testimony [remains] markedly preferable to remote testimony." *Roh v. Schultz*, 2022 WL 2132559, at *6 (D.D.C. June 14, 2022). No experienced litigation attorney would disagree. Live testimony allows examination of not just testimony, but body language and non-verbal cues that are obscured, if not eliminated, from deposition by remote means.

Witnesses also may be engaged in ways that are unavailable in a virtual setting. *Rubio v. City of Visalia*, 2022 WL 193072, at *2 (E.D. Cal. Jan. 21, 2022) (denying motion for remote depositions because in-person depositions are crucial to assessing witness's potential presentation at trial, veracity, and credibility); *L.D.M. by & through Matheny v. LMH Health*, 2021 WL 5906039, at *4 (D. Kan. Dec. 14, 2021) ("A significant amount of nonverbal information is gained through an in-person deposition and such information may not be as easily ascertained through a Zoom deposition. Non-verbal cues are less evident, and the exchange of documents is more difficult."); *United States v. Approximately $57,378 in U.S. Currency*, 2010 WL 4347889, at *1 (N.D. Cal. Oct. 27, 2010) (in-person deposition provides opportunity to observe witness's demeanor); *see also Deposition by Remote Means*, 3 Bus. & Com. Litig. Fed. Cts., Section 31:13

---

[9] Any lawyer who has conducted remote depositions knows that technical difficulties happen, as caused by, for example, small reproductions on screen, causing small font, other counsel's computer equipment, law firms' firewalls, wi-fi or other connectivity limitations.

(5th Ed., ABA, November 2022) (noting significant limitations of remote deposition, including exhibits, that hostile witnesses more readily yield admissions to in-person questioners, and that remote depositions more suitable for less important witnesses).[10]

While Dominion baselessly accuses Defendants' counsel of expected hostility and intimidation of witnesses and "improper off- or on-camera behavior" (ECF 114-2 at 8, 10), in-person depositions will limit Dominion's ability to engage in the sort of shenanigans that are portended by the way it has conducted discovery thus far via document dumps and disregard of the Federal Rules of Civil Procedure. *See Williams v. Camden USA Inc.*, No. 3:19-CV-691-AJB-AHG, 2021 WL 3022675, at *3 (S.D. Cal. July 15, 2021) (recognizing disadvantages of videoconference depositions of key witnesses, such as the possibility of someone off-camera providing verbal and non-verbal cues to the deponent, the possibility of referring to other materials during the deposition, and limitations on counsel's ability to assess demeanor and credibility).

If Dominion does not wish to attend depositions in-person, that is its choice. To permit Dominion to make that choice for Powell would be prejudicial.

## CONCLUSION

Unlike Dominion, Powell is not a voluntary participant in this litigation. Powell, through the disputed portion of the Deposition Protocol, asks for nothing more than to have the means of

---

[10] Dominion's reliance on the Boston Bar Journal, *Love Them or Hate Them Remote Depositions are Here to Stay* (ECF No. 114-2 at 2) is misplaced. While a catchy title, the article merely expresses opinions as to how to best prepare a witness for a remote deposition, including obvious observations like labeling documents by bates numbers rather titles like "smoking gun," and is solely focused on situations in which parties agree to conduct depositions remotely. Similarly, Dominion's reliance on the article *"Judges Tout Covid for Opening Judiciary Up to Technology,"* misses the mark. (*Id.*) The article does not support Dominion's argument for remote depositions as a default, since judges do not attend depositions and the article does not discuss depositions.

depositions be governed by Fed. R. Civ. Pro. 30(b)(4) – the standard reflected in the disputed portion of Defendants' Deposition Protocol. Armed with only speculation and hyperbole, mixed with a few subtle attacks, Dominion has requested an unprecedented blanket order for remote depositions by default. Its reasoning does not demonstrate a legitimate need for such an extraordinary request. Further, the request would prejudice Powell, who must defend against the claims brought against her.

For these reasons, Powell respectfully requests that Dominion's motion be denied, and that her motion – requesting entry of Defendants' Deposition Protocol – be granted.

| | |
|---|---|
| Dated: November 15, 2023 | **KENNEDYS CMK LLP** |
| | By: */s Joshua A. Mooney*_____ |
| | Joshua A. Mooney DC Bar No. 471866<br>1600 Market Street, Suite 1410<br>Philadelphia, PA 19103<br>Tel: 267-479-6700<br>Joshua.Mooney@kennedyslaw.com |
| | Marc Casarino, pro hac vice<br>919 N. Market Street, Suite 1550<br>Wilmington, DE 19801<br>Tel: 302-308-6647<br>Email: marc.casarino@kennedyslaw.com |
| | Michael J. Tricarico, pro hac vice<br>570 Lexington Avenue, 8th Floor<br>New York, New York 10022<br>Tel: (646) 625-3952<br>Email: Michael.tricarico@kennedyslaw.com |
| | *Attorneys for Defendant Sidney Powell and Sidney Powell, PC* |